IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 18-cv-01144-WYD-STV**

DEBRA BOURICIUS,

    Plaintiff,

v.

MESA COUNTY, by and through the Mesa County Board of County Commissioners,

    Defendant.

___

**PLAINTIFF'S RESPONSE TO DEFENDANT'S DISCOVERY BRIEF**
___

    Plaintiff, Debra Bouricius, by and through counsel, in response to Defendant's Memorandum in Support of Discovery Dispute pursuant to this Honorable Court's order dated April 1, 2019 (Dkt. 46), states as follows:

### INTRODUCTION

    Plaintiff alleges that Mesa County violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* ("ADEA") when it terminated her and the three other oldest employees in the IT Department as part of a reduction in force.

    a.    <u>Mesa County Relied on Its Investigation to State of Colorado</u>.

    After she and other terminated employees timely filed charges of discrimination with the State of Colorado's Colorado Civil Rights Division ("CCRD"), Mesa County conducted its own investigation and then used that investigation to respond to the State, arguing that it had not violated the ADEA. Specifically, Mesa County admitted to State officials that it had a budget

crisis but other than some documents (mainly news clips) about the alleged shortfall, it did not have any documents supporting the reasons for the decision to terminate the older workers. Instead, the <u>only</u> evidence Mesa County relied on to supports its contention that it did not violate the law was its counsel's rendition of what the decision-maker, Town Administrator Frank Whidden, had asserted were the legitimate reasons for the layoff. (Exhibit A, email from Atencio to the CCRD; Exhibit B, Mesa County's response to the CCRD, pg. 4 (listing the reasons why Plaintiff was chosen to be terminated by Mr. Whidden); and, Exhibit C, email from Atencio to CCRD saying no documents exist.)

The State thereafter issued a determination that there was probable cause that Mesa County had violated the ADEA when it terminated all three employees. In so doing, the State found that the explanation given by Mr. Whidden, that Plaintiff's termination was based on the strength and weakness of her skills (*see* Ex. B, p. 4), was unworthy of belief (*see* Ex. D, CCRD Determination, p. 8). In making this finding, the State also noted that:

> The [CCRD] requested an interview with Whidden; however, Whidden declined to participate in an interview. [Mesa County] elaborated and stated that "he declines to do an interview and believes his position/statements are represented within Mesa County's Response to the Request for Information." [Mesa County] confirmed that Whidden was responsible for the decision to layoff the [Plaintiff].

(Ex. D, p. 6.)

When filing its Answer to the Amended Complaint in this case, Mesa County listed various Affirmative Defenses. Relevant here, those defenses include:

> M. "Mesa County . . . had in place a policy to prevent discrimination, harassment, and retaliation in the workplace, and Mesa County made good-faith efforts to implement and enforce its policies"; and
>
> R. "Ms. Bouricius' claims must be dismissed for any conduct Ms. Bouricius failed to notify Mesa County of or for which Ms. Bouricius failed to use the internal remedies of

>   Mesa County, thus denying Mesa County the opportunity to investigate her claims and take remedial action, if necessary."

(*See* Dkt. 39, Ans. to Amd. Compl.)

Plaintiff contends that by arguing these defenses, Mesa County has put its investigation at issue in this case. Essentially, Mesa County is arguing that if it had been given the chance to investigate the matter, it would have been able to take "remedial action" – but the investigation it did conduct proves the contrary. By putting its investigation, and even its ability to investigate this matter at issue, Defendants has waived any privilege associated with the investigation.

    b.    <u>2015 Wage Study Relevance Issue</u>.

Plaintiff also seeks a 2015 Wage Study that was conducted by Mesa County. Whidden became the County Administrator in December 2014. Around that time, Mesa County commissioned an independent Wage Study for 2015. Although it is understood that the third party conducted this study, Mesa County has refused to produce it publicly saying it was 'never finalized." The reasons Plaintiff believes this information is discoverable is because: 1) there is now a good-faith basis to question whether in fact Mesa County was having a budget deficit in 2017 and believe the 2015 study provides information about the overall economic health of the County; 2) even if there was a budget deficit, Plaintiff believes that there was information in that study showing that certain individuals were in fact overpaid and there were other cost cutting methods that were suggested to the County other than a reduction in force; and 3) media coverage has disclosed that in August 2015, about a year prior to the layoffs, the Defendants in this case removed the topic of wages and raises from the public agenda, then during the 2017 budget year, Defendant gave raises to almost every employee in the County, and Whidden and a few other top administrators received huge pay increases immediately thereafter. (Ex. E at pp. 2,

3

4.)  All of this information has been shielded from public scrutiny in violation of the Colorado Open Records Laws.  (*Id*.)

The limited budget related documents produced by Defendant so far do not justify Plaintiff's termination, do not explain the above issues, and do not explain why this information has been shielded from public view.  Moreover, Mesa County has even refused Plaintiff's request to provide <u>any</u> details about the type of information contained in the study.  Plaintiff believes the 2015 wage study will show an accurate picture of the wages in the departments, which employees merited increase or decreases in salaries, and if nothing else, provide important impeachment material against Mesa County and its alleged budget-crisis, as well as to impeach the credibility of the only person Mesa County asserts can prove its defense to this case.[1]

## ARGUMENT

### I.   Waiver of Privilege

Plaintiff asserts that by conducting its own investigation into the reasons underlying Plaintiff's termination, relying on that investigation to assert a defense at the CCRD, and now bringing affirmative defenses in this case that it had policies and procedures that Ms. Bouricious should have followed, that she failed to do so, and if she had that Defendant would have had an opportunity to conduct a good-faith investigation and take "remedial" action – Defendants have waived any privilege with respect to the investigation that the County actually conducted.

Defendant, however, asserts that because it will not rely on that "post-termination investigation" to prove its defense in this case.  This argument is a red-herring.  On the one hand,

---

[1] Although Plaintiff did not dispute that there was a "budget crisis" at the CCRD, new facts have now brought to light that in fact, that defense may also be pretextual.

the County asserts that Plaintiff deprived it of a fair opportunity to investigate her claims, that the County has policies to prevent discrimination that it implements in "good faith" and Plaintiff's failure to follow these policies should be a complete defense to this case. (*See* Aff. Def. M.) On the other hand, the County claimed to the CCRD that the investigation it actually did conduct exonerates it. This is the paradigm of the "sword and shield" defense. Defendant cannot have it both ways.

By asserting the Affirmative Defenses outlined above, Defendants have squarely put the investigation it did conduct into question – regardless of when that investigation occurred. This is akin to the exact same type of arguments that Courts have rejected in the *Faragher/Ellerth* line of cases – that Defendants cannot rely on an investigation as a defense (as Defendants did here to the CCRD), and then claim in litigation that it did not rely on that investigation and that any such investigation is privileged. Given the affirmative defenses asserted, Plaintiff has right to investigate whether Defendant actually conducted a "good-faith" investigation, as it claims it would have done but for Plaintiff's actions.

Importantly, undersigned counsel informed Defendant's counsel that if Mesa County withdraws it Affirmative Defenses "R" and "M" – that Plaintiff would not seek information about the investigation conducted. Defendant refuses to withdraw those defenses.

The *Faragher/Ellerth* affirmative defense may excuse an employer from liability for discrimination when it is used to show the employer acted in good faith in response to a plaintiff's charge of discrimination. In the *Faragher/Ellerth* line of cases, the court have routinely recognized that Defendants cannot use investigations as both a "sword and a shield." The underlying principle behind these cases is that when Defendants assert that they put

appropriate anti-discrimination policies in place, and then allege that they implement those policies in "good faith" – they cannot then shield those investigation from review by claiming privilege. *See EEOC v. Outback Steakhouse of Fla., Inc.*, 251 F.R.D. 603, 611 (D. Colo. 2018) ("Courts have interpreted an assertion of the *Faragher/Ellerth* affirmative defense as waiving the protection of the work product doctrine and attorney-client privilege in relation to investigations and remedial efforts in response to employee complaints of discrimination because doing so brings the employer's investigations into issue."); *Ambrose-Frazier v. Herzing Inc.*, 2016 U.S. Dist. LEXIS 30174, *12-14, 2016 WL 890406, citing *Williams v. United States Envtl. Servs., LLC*, No. 15-168, 2016 U.S. Dist. LEXIS 18290, 2016 WL 617447, at *5 (M.D. La. Feb. 16, 2016) ("Defendant has raised the *Faragher/Ellerth* affirmative defense . . . Defendant has cited to the investigation . . . to show that it exercised reasonable care to promptly correct any harassing behavior. . . By relying on its investigation to defend against Plaintiff's allegations, Defendant has waived any applicable privilege with respect to not only the investigative report, but any underlying documents."); *Angelone v. Xerox Corp.*, No. 09-6019, 2011 U.S. Dist. LEXIS 109407, 2011 WL 4473534, at *2 (W.D.N.Y. Sept. 26, 2011) ("[T]he clear majority view is that when a Title VII defendant affirmatively invokes a *Faragher-Ellerth* defense that is premised, in whole or in part, on the results of an internal investigation, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes and memoranda created as part of and in furtherance of the investigation."); *Reitz v. City of Mt. Juliet*, 680 F. Supp. 2d 888, 892-93 (M.D. Tenn. 2010) ("But the defendant cannot use the . . . report as a sword by premising its defense on the report, then later shield discovery of documents underlying the report by asserting privilege or work-product

protection."); *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 317-18 (N.D. Ill. 2010) ("Even assuming, *arguendo*, that the documents are attorney-client privileged or protected work product, any such protection for these particular documents was waived by [the defendant's] assertion of its *Faragher/ Ellerth* defense."); *Walker v. Cty. of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005) ("If Defendants assert as an affirmative defense the adequacy of their pre-litigation investigation into [the plaintiff's] claims of discrimination, then they waive the attorney-client privilege and the work product doctrine with respect to documents reflecting that investigation. Where a party puts the adequacy of its pre-litigation investigation at issue by asserting the investigation as a defense, the party must turn over documents related to that investigation, even if they would ordinarily be privileged.").

Whether Defendant in this case conducted the investigation before or after Plaintiff's termination is not relevant.  First, it is <u>always</u> true that investigations into these types of complaints do not happen until the person makes that complaint.  Thus, investigations by their nature do not occur until <u>after</u> the discrimination has occurred.  By terminating Plaintiff, Defendant further deprived Plaintiff of any ability to complain about the discrimination.  Applying Defendant's logic, as long as the investigation occurs after an employee is terminated, any such investigation is shielded by privilege.  This would essentially eviscerate any terminated employee's ability to question whether in fact Defendants implement anti-discrimination policies in good faith.

The argument advanced by Defendants was squarely rejected in *Fenceroy v. Gelita USA, Inc.*, 908 N.W.2d 235, 242 (Iowa 2018).  In *Fenceroy*, the defendant attempted to shield its attorney's administrative investigation from disclosure based on its claims of privilege.  *Id*. at

7

238. There, the defendant had asserted that plaintiff "unreasonably failed to take corrective opportunities provided by Defendant" and that the defendant had "exercised reasonable care to prevent and promptly correct any harassing behavior." *Id*. at 240. Through counsel, defendant presented witness statements to the Iowa Civil Rights Commission in support of its position. *Id*. at 239. The plaintiff then sought counsel's deposition and notes from his investigation that resulted in the defendant's position statement to the commission. *Id*. at 240. Defendant moved for a protective order on the basis of privilege arguing the investigation was conducted solely for the purpose of responding to the charge of discrimination. *Id*. Defendant further argued that it did not intend to rely on counsel's investigation in support of the *Faragher/Ellerth* defense and that it could not be "at issue" because the investigation occurred after the plaintiff had left the company. *Id*. As such, defendant posited that the post-termination investigation was not part of its *Faragher/Ellerth* defense and no privileges had been impliedly waived. *Id.*

Plaintiff countered that there were other provisions of the *Faragher/Ellerth* defense that were impacted by defense counsel's investigation: 1) it could be used to show reasonableness in preventing harassing workplace behavior; and 2) it could establish that plaintiff did not take advantage of the anti-discrimination policies. *Id*. at 241-242. Despite defendant's assertion that it did not intend to rely on the attorney's investigation as part of any affirmative defense, it still asserted defenses related to the sufficiency of its discrimination reporting procedure, training process and whether the plaintiff unreasonably failed to "correct the alleged harassment." *Id*. at 245. In finding a waiver of privilege, the Court noted that attorney investigations conducted for the purpose of responding to an agency charge are subject to the same waiver provisions as any other investigation. *Fenceroy*, 908 N.W.2d at 243-244.

The Court then concluded that if the defendant "wish[ed] to use [counsel's] investigation as evidence of their commitment to abiding by antidiscrimination statutes, plaintiff may not be kept from disputing that evidence . . .." *Id*. at 246.

Here, whether or not Mesa County intends to rely on the investigation that it advanced at the CCRD in the litigation in this case is completely irrelevant. <u>Plaintiff</u> has a right to pull back the curtain on the investigation that Defendant conducted to show that it does not in fact conduct good-faith investigations into complaints of discrimination to defeat that defense. By asserting that it conducts "good faith investigations," Defendant has put the quality of any of its investigations into the facts of this case at issue – and thereby waived any privilege associated with those investigations.

## II. Defendant's 2015 Wage Study is Relevant and Discoverable.

Mesa County also claims that the wage study is irrelevant and subject to the deliberative process privilege, especially because Whidden claims he did not rely on it in deciding to terminate Plaintiff. (Dkt. 47., p. 8.) In support of its position, Defendant provided privilege logs that contained very little information that is helpful in determining whether any privilege applies. (Group Exhibit F, Privilege Logs.) Mesa County has also submitted an affidavit of Frank Whidden in an attempt to further establish privilege, but it is similarly lacking. (Dkt. 47, Ex. 6.) However, it is highly likely the wage study is ripe with relevant information, and Defendant has not successfully met its burden in establishing that any of the information sought is privileged. As such, Plaintiff currently seeks all documents related to the 2015 wage study.

Because Defendant has provided no information related to exactly how it could justify Plaintiff's termination with respect to either her performance or the budget, Plaintiff's counsel

has scoured the public record, and returned some interesting results. First, Mesa County conducted a wage study in 2015. (Ex. E.) The study itself became an issue of much controversy when, after forcing the layoffs in question in this case several Mesa County officials, including Mr. Whidden, received substantial five-figure raises. Due to these seeming irregularities, the Mesa County clerk then publicly protested the County's decision to keep the study from the public by resigning from a committee. (*Id*.)

Within a year of the study being commissioned, with no written input from the finance department or anyone else, Frank Whidden took it upon himself to terminate a large portion of the older workers in IT, including Plaintiff. Again, with zero documentation, he allegedly singled out Plaintiff's performance to justify her termination. Essentially, to this day, Plaintiff is in the dark about the circumstances surrounding her termination. However, it is reasonable to assume, given the dearth of information related to either performance or the budget produced in this case, that the 2015 wage study contains information relevant to Mr. Whidden's sudden desire to rid his IT department of most of its older workers. As such, it is relevant and Plaintiff seeks its disclosure.

Defendant claims the deliberative process privilege to avoid producing the requested study. The deliberative process privilege has its roots at common law and is also found as an exemption to various open records acts, including the Colorado Open Records Act ("CORA"). *See City of Colorado Springs v. White*, 967 P.2d 1042, 1049 (1988); C.R.S. § 24-72-204(3)(a)(XII). The privilege is "qualified" and protects the frank exchange of information and ideas "critical to government decision-making." *See id.* The privilege protects, in particular, pre-decisional documents. *Id*. at 1051. However, a document may lose its privilege, *inter alia*,

if it is not actually used as part of a decision-making process. *Id.* at 1052 (*citing Representation Fund v. Int. Rev. Serv.*, 646 F.2d 646, 679 (1981)).  Further, the facts underlying the alleged deliberative materials are not protected by the privilege. *JM v. N.M. Dept. of Health*, No. 07-604, 2009 U.S. Dist. LEXIS 138175, at *14 (D.N.M. Aug. 20, 2009).  The burden is on the government to establish the privilege applies.  *City of Colorado Springs,* 967 P.2d at 1053.

Under CORA, deliberative process is a specific exemption that a government may claim if it establishes "the material is so candid or personal that public disclosure is likely to stifle honest and frank discussion within the government." C.R.S. § 24-72-204(3)(a)(XII).  If a government agency, pursuant to a CORA request, asserts the privilege it must: "provide the applicant with a sworn statement specifically describing each document withheld, explaining why each such document is privileged, and why disclosure would cause substantial injury to the public interest." *Id*.

Here, Defendant has not established the applicability of the privilege under either the common law or CORA.  Under either standard *it is incumbent upon the party seeking the benefit of the privilege to establish why it applies*.  Defendant has attempted to avoid this burden by seeking to undercut the potential evidentiary value of the wage study.  It has submitted an affidavit by Mr. Whidden that claims he did not use it in making his decision to layoff Plaintiff, and therefore, it is not relevant.  While Plaintiff has no reason to dispute that contention at this time, it does not settle the issue.

First, if the study was not used to evaluate which positions should be cut in advance of the 2017 budget, it begs the question of what it was used for.  If it did not have a role to play in any pre-decisional process, it is not privileged. *See City of Colorado Springs*, 967 P.2d at 1052.

Second, to the extent the study includes factual information (especially that which may indicate whoever did the study was seeking information on employee ages or other relevant facts), the underlying facts are not privileged. *JM*, 2009 U.S. Dist. LEXIS 138175, at *14.

Because Defendant has not even attempted to establish the privilege, and has not explained why the document was created, to whom it was given, what process if any it was used for, Plaintiff cannot begin to evaluate whether any privilege applies. Moreover, Defendant's argument that the CORA standards do not apply because Plaintiff did not seek the document pursuant to CORA is a non-starter. First, the standards are essentially the same as the common law. Second, one can presume that a party to litigation is entitled to more, not less public information than a non-litigant. While open records statutes may be persuasive in evaluating the confidential nature of government documents, they do not shield documents from discovery. *See Santiago v. City of Chicago*, No. 09-3137, 2010 U.S. Dist. LEXIS 29198, at *13-14 (N.D. Ill. Mar. 26, 2010) (rejecting argument that a FOIA exemption creates a federal evidentiary privilege).

As it stands, Plaintiff cannot be satisfied that the wage study was irrelevant to her layoff, or the 2017 budget as a whole. Further, Plaintiff cannot evaluate the legitimacy of Defendant's claim of the deliberative process privilege as she is entitled to do. As Defendant has not met its burdens, Plaintiff respectfully requests full disclosure of the wage study or, at the very least, the factual bases contained therein.

## CONCLUSION

Based on the foregoing, Plaintiff respectfully requests this Honorable Court enter an order requiring Defendants to produce the appropriate 30(b)(6) witness and the 2015 wage study.

DATED this 17th day of April 2019.

Respectfully submitted,

KING & GREISEN, LLP

s/ Paula Greisen
Paula Greisen
Julie K. Bisbee
1670 York Street
Denver, Colorado 80206
(303) 298-9878 telephone
(303) 298-9879 facsimile
greisen@kinggreisen.com
bisbee@kinggreisen.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April 2019, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT'S DISCOVERY BRIEF** with the Clerk of the Court using the CM/ECF system, and a copy was sent via electronic mail to the following:

Michael Santo
Alicia Severn
Bechtel Santo & Severn
205 N. 4th Street, Suite 300
Grand Junction, CO 81501
santo@bechtelsanto.com
severn@bechtelsanto.com

*Attorneys for Defendant Mesa County*

s/ Laurie A. Mool
Laurie A. Mool, Paralegal
