IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-CV-01144-WYD-STV

**DEBRA BOURICIUS,**

Plaintiff,

v.

**MESA COUNTY by and through the MESA COUNTY BOARD OF COUNTY COMMISSIONERS,**

Defendant.

---

**DEFENDANT'S REPLY TO ITS
MEMORANDUM IN SUPPORT OF DISCOVERY DISPUTE**

---

Defendant Mesa County submits this Reply to its Memorandum In Support of Discovery Dispute ("Mesa County's Memorandum"), and states as follows:

**I.      Introduction.**

Mesa County's Memorandum presented the Court with two issues.  First, whether Mesa County's assertion of Affirmative Defenses K, M, and R in its Amended Answer operate as waivers of Mesa County's attorney-client privilege with respect to the process Mesa County used to prepare a response that Mesa County submitted to the Colorado Civil Rights Division after it received Ms. Bouricius's Charge of Discrimination.

Second, whether Mesa County, in response to a discovery request propounded by Ms. Bouricius, must produce a document (i.e., a never-completed wage survey from 2015) not relied upon by Mesa County in making the employment decision(s) at issue in Ms. Bouricius's Complaint.

In her Response to Mesa County's Memorandum, Ms. Bouricius identifies meaningless standards (e.g., "Plaintiff cannot be satisfied that the wage study was irrelevant to her layoff"), often misstates Mesa County's arguments, and continually glosses over critical distinctions in her cited cases. In short, her arguments, as set forth in her Response, are without actual support in fact, law, or application. Accordingly, this Court should deny Ms. Bouricius's attempts to: (1) infringe on Mesa County's attorney-client privilege and work-product doctrine rights via F.R.C.P. 30(b)(6) Notice, Matter 6; and (2) produce documents that are irrelevant to this proceeding via Requests for Production 8 and 9.

## II.   Issue 1: Whether Mesa County must provide testimony regarding Ms. Bouricius's F.R.C.P. 30(b)(6) Notice of Deposition Matter 6 ("Matter 6"), which requests that Mesa County testify about the information it collected in preparation of its response to Ms. Bouricius's Charge.

As previously explained in its Memorandum, the first issue principally concerns Plaintiff's Revised Notice of [F.R.C.P.] 30(b)(6) Deposition. *See* Mesa County's Memorandum, Exhibit #1. In that Notice, Plaintiff identified her intent to depose an attorney for Mesa County regarding the information that attorney collected for purposes of submitting a response to the Colorado Civil Rights Division after it received Ms. Bouricius's Charge. *See* Mesa County's Memorandum, pages 2-7. In response, Mesa County asserted that those matters were covered by the attorney-client privilege and work-product doctrine, but Ms. Bouricius claimed that Mesa County had waived those privilege through its assertion of certain affirmative defenses (specifically, Affirmative Defenses K, M, and R). Ms. Bouricius is incorrect.

That is, as Mesa County explained in its Memorandum, it had not waived its attorney-client privilege because at no time during this litigation has Mesa County identified that the process it

2

engaged in to prepare the response it submitted to the Colorado Civil Rights Division is part of its Affirmative Defenses. Furthermore, in its Memorandum, Mesa County also identified that during this litigation it will not rely on any post-termination (1) investigation, (2) collection of information, or (3) preparation and submission of a response to the Colorado Civil Rights Division, as part(s) of its good-faith affirmative defenses. *See* Memorandum, pages 2-7.  In short, Mesa County specifically identifies that it has no intention of using the process it undertook for purposes of responding to Ms. Bouricius's Charge to avoid liability in this litigation.

In her Response, Ms. Bouricius lists a number of cases that she alleges stand for the proposition that a defendant who raises a good-faith defense (also commonly referred to in employment matters as the "*Farragher/Ellerth* defense") completely waives the attorney-client privilege with respect to any investigation, regardless when or for what purpose any such investigation occurred. *See* Response, pp. 3-9.  *See also* Mesa County's Amended Answer, Affirmative Defenses K, M, and R.  Yet, the cases cited do not establish any such proposition. Instead, the cases cited by Ms. Bouricius, in fact, explain that a waiver of a party's attorney-client privilege only occurs in those situations where the defendant intends to use an investigation or submission of a response to a charge of discrimination as part of its good-faith defense, which is not the case in this litigation.

For example, Plaintiff asserts that Mesa County's position was "squarely rejected" in *Fenceroy v. Gelita USA , Inc.,* 908 N.W.2d 235, 242 (Iowa 2018).  *See* Response, pp. 7-9.  This assertion is inaccurate because, in *Fenceroy,* the defendant/employer expressly relied upon the investigation it conducted when it submitted its response during the administrative proceeding and also when it filed its summary judgment motion. *See Fenceroy,* 908 N.W.2d at 244-245.  Mesa

3

County did not rely on any previously-completed investigation when it submitted its response to the Colorado Civil Rights Division, nor will it do so in this litigation. Furthermore, *Fenceroy* explained that an employer was not required to waive the attorney-client privilege when the employer intended to only rely on its policies and reporting procedures, not the submission in the administrative proceedings, for its *Faragher-Ellerth* defense:

> The critical point in *Treat v. [Tom Kelley Buick Pontiac GMC, Inc.,* 2009 WL 1543651, at *12 (N.D. Ind. June 2, 2009), a case cited by the defendant-employer in *Fenceroy*] was the existence of a trial court record to show the **employer took a position that the *Faragher–Ellerth* defense would only be supported by evidence that it had antidiscrimination policies and reporting procedures in place at the time of the alleged discriminatory conduct and that the plaintiffs failed to take advantage of the procedures. The employer in *Treat* made it clear that it would not offer any evidence of its actions after the plaintiffs made their complaints.**
>
> *Treat* underscores that an employer does not impliedly waive an attorney–client privilege merely by using an attorney to investigate a complaint of workplace discrimination but, rather, by subsequently relying on the investigation to prove a *Faragher–Ellerth* defense asserted in a lawsuit. In this case, as in *Harding [v. Dana Transport, Inc.,* 914 F.Supp. 1084, 1096 (D.N.J. 1996)], [defendant/employer] clearly relied on the investigation as proof of its affirmative defense during the administrative proceeding. Additionally, unlike in *Treat*, defendants relied on the investigation as proof of their affirmative defense during summary judgment proceedings.
>
> * * *
>
> The critical question presented when discovery of an attorney investigation is sought in a lawsuit based on workplace discrimination is whether the employer intends to rely on the investigation as evidence to help prove the *Faragher–Ellerth* defense.

*See Fenceroy,* 908 N.W.2d at 244-246 (emphasis added).

Accordingly, Ms. Bouricius's own case identifies not only that Mesa County's position was not "squarely rejected" by the *Fenceroy* decision, but that *Fenceroy,* instead, supports Mesa County's position that the attorney-client privilege is not waived when the employer relies only on its policies and the employee's failure to report any concerns during employment as part of its good-faith defenses. *See* Mesa County's Memorandum, pp. 2-7.

In fact, *Fenceroy* is not the only case cited by Ms. Bouricius in her Response that supports the distinction between whether a defendant/employer relies on an investigation or information-collection process in its defense or whether it relies upon other evidence. For example,

- *Walker v. Cty. of Contra Costa*, 227 F.R.D. 529, 535 (N.D. Cal. 2005)(cited by Ms. Bouricius in her Response, p. 7): "Where a party **puts the adequacy of its pre-litigation investigation at issue by asserting the investigation as a defense**, the party must turn over documents related to that investigation, even if they would ordinarily be privileged." (Emphasis added.)

- *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312, 317-18 (N.D. Ill. 2010)(cited by Ms. Bouricius in her Response, p. 7): "Likewise, in *Johnson v. Rauland–Borg Corp.*, 961 F.Supp. 208, 211 (N.D.Ill.1997), the court found that the employer's defense to the employee's Title VII hostile work environment claim—that it took reasonable responsive action by authorizing an outside attorney to investigate the matter—waived the attorney-client privilege with regard to the attorney's investigation. **Because the employer had placed the investigation and the reasonableness of its conduct into issue, the court concluded, it had waived the attorney-client privilege in that regard.**" (Emphasis added.)

- *Ambrose-Frazier v. Herzing Inc.,* 2016 WL 890406 at * 4 (E.D.La., Mar. 9, 2016)(cited by Ms. Bouricius in her Response, p. 6): "When a Title VII defendant affirmatively invokes a *Faragher-Ellerth* defense **that is premised at least in part on an internal investigation**, the defendant waives the attorney-client privilege and work-product doctrine for all documents created as part of that investigation." (Emphasis added.)

- *Williams v. United States Envtl. Servs., LLC* , 2016 WL 617447, at *5 (M.D. La. Feb. 16, 2016) (cited by Ms. Bouricius in her Response, p. 6): "**By relying on its investigation** to defend against Plaintiff's allegations,

5

>     Defendant has waived any applicable privilege with respect to not only the investigative report, but any underlying documents." (Emphasis added.)
>
> •   *Angelone v. Xerox Corp.,* 2011 WL 4473534, at *2 (W.D.N.Y., Sept. 26, 2011)(cited by Ms. Bouricius in her Response, p. 6)("[T]he clear majority view is that when a Title VII defendant affirmatively invokes a *Faragher-Ellerth* defense **that is premised, in whole or in part, on the results of an internal investigation**, the defendant waives the attorney-client privilege and work product protections for not only the report itself, but for all documents, witness interviews, notes, and memoranda created as part of and in furtherance of the investigation." (Emphasis added.)
>
> •   *Reitz v. City of Mt. Juliet,* 680 F. Supp. 2d 888, 892-93 (M.D. Tenn. 2010)(cited by Ms. Bouricius in her Response, p. 6).  In *Reitz,* the defendant/employer relied on its investigation during summary judgment briefing and the Court determined that "the defendant cannot use the . . . report as a sword **by premising its defense on the report,** then later shield discovery of documents underlying the report by asserting privilege or work-product protection." (Emphasis added.)

Contrarily, Mesa County definitively identified in its Memorandum that during this litigation it has not used, nor will it use, the collection of information for the response Mesa County submitted to the Colorado Civil Rights Division as part of its *Faragher/Ellerth* defense.  *See* Memorandum, pp. 2-7.  Instead, it will rely upon other evidence, such as its policies and training, as well as Plaintiff's failure to submit a complaint, as parts of its good-faith defense. Accordingly, this identification means that Mesa County has not waived its attorney-client privilege by asserting the *Faragher/Ellerth* affirmative defense with respect to its collection of information it gathered solely for purposes of preparing its legal response to the Colorado Civil Rights Division and Ms. Bouricius's Charge.

In making this identification, Mesa County is cognizant of this Court's instruction during the April 1, 2019 Discovery Hearing that if Mesa County subsequently attempts to use the process it undertook to collect information for purposes of preparing its response to Ms. Bouricius's Charge

as part of its good-faith defense, Ms. Bouricius would be permitted to show the Court, jury, etc. such inconsistency. Such an instruction is similar to that presented in *EEOC v. Outback Steakhouse of Fla., Inc.,* 251 F.R.D. 603, 611 (D. Colo. 2018), which was another case cited by Ms. Bouricius in her Response. *See* Response, p. 6. In *Outback Steakhouse,* the defendant informed the court that it would not use its investigation report as part of its *Faragher/Ellerth* defense with respect to certain plaintiffs, but would use the report only with respect to certain other plaintiffs. *Outback Steakhouse,* 251 F.R.D. at 612. In response, the *Outback Steakhouse* court noted that defendants would not be permitted to reverse such a statement later in the litigation:

> Of course, Defendants' judicial admission that they have not raised the *Faragher/Ellerth* affirmative defense as to the claims of other class members is binding on them during the future course of this litigation. Any attempt to raise that defense or to present evidence relating to it regarding any class members ... should not be permitted

*Outback Steakhouse,* 251 F.R.D. at 612.

Accordingly, as the process through which Mesa County collected information in preparing its response to Ms. Bouricius's Charge filed with the Colorado Civil Rights Division does not form the basis of Mesa County's Affirmative Defenses, Mesa County has not waived its attorney-client privilege.

Plaintiff also claims in her Response that Mesa County waived the attorney-client privilege because Mesa County is trying to use that process as a "sword-and-shield." *See* Response, pp. 5, 6. This is a misstatement of Mesa County's position. After all, Mesa County has, instead, explicitly stated **that it will not use** the process through which it collected information for purposes of responding to Ms. Bouricius's Charge, nor the report it submitted to the Colorado Civil Rights Division, as parts of its *Faragher-Ellerth* defense. *See* Mesa County's Memorandum, p. 2-7. In

7

essence, these issues will be neither swords, nor shields in that defense. So, Ms. Bouricius's repeated efforts to characterize Mesa County's position as a "sword-shield" approach is inaccurate.

Finally, Plaintiff, in her Response, boldly declares that "whether or not Mesa County intends to rely on the investigation that it advanced at the CCRD in the litigation in this case is completely irrelevant." *See* Plaintiff's Response, p. 9. Irrelevant, it is not. After all, even the cases cited by Ms. Bouricius in her Response (*see* Mesa County's Reply, pp. 2-6) articulate the "relevance" of Mesa County's declaration that it will not use the process by which it prepared its response that it submitted to the Colorado Civil Rights Division as part of its *Faragher-Ellerth* defense.

Accordingly, this Court must deny Ms. Bouricius's attempt to depose Mesa County regarding Matter 6 in her Amended F.R.C.P. 30(b)(6) Notice.

### III.   Issue 2: Whether Mesa County must respond to Requests for the Production of Documents 8 and 9, which relate to whether Mesa County actually experienced budget limitations, leading to the layoff that involved Ms. Bouricius.

In her Request for Production 8 (misnumbered as 1) and 9 (misnumbered as 2), Ms. Bouricius asked Mesa County to produce a "wage study" undertaken by Mesa County in 2015. *See* Mesa County's Memorandum, Exhibit 5. In its Memorandum, Mesa County explained that the Court should deny Ms. Bouricius the opportunity to obtain such documents because the documents are irrelevant to this litigation. *See* Mesa County's Memorandum, pp. 7-9. After all, Frank Whidden, the individual who made the decision to lay off Ms. Bouricius, stated in his Affidavit filed with Mesa County's Memorandum that he did not rely on any wage study as part of his decision to lay off Ms. Bouricius. *See* Mesa County's Memorandum, Exhibit 6. Thus, if the wage study and related information played no part in the employment decision at issue in this case—Ms. Bouricius's lay off—it cannot be relevant to Ms. Bouricius's claims or to Mesa County's defenses.

In response, Ms. Bouricius initially misstates Mesa County's argument in its Memorandum regarding this issue. That is, Ms. Bouricius asserts that Mesa County submitted Mr. Whidden's affidavit "...in an attempt to further establish privilege." *See* Response, p. 9. Such an assertion is a misstatement of Mesa County's position. After all, Mr. Whidden's Affidavit strictly discussed whether he reviewed the wage study in making the employment decisions at issue in this case (*see* Mesa County's Memorandum, Exhibit 6, ¶ 4) and Mesa County only referenced that Affidavit in its discussion regarding whether the wage study was relevant to Mr. Whidden's decision-making process. *See* Mesa County's Memorandum, p. 8 ("Thus, if the wage study and related information played no part in the employment decision at issue in this case – Ms. Bouricius's layoff – it cannot be relevant to Ms. Bouricius's claims or to Mesa County's defenses.") Thus, Mr. Whidden's Affidavit, and Mesa County's reference to it in its Memorandum, were strictly focused on the relevancy of the wage study, not any claim of privilege.

Ms. Bouricius's follow up arguments that it is "highly likely the wage study is ripe with relevant information" and that her counsel "scoured" public records to return "some interesting results" are also equally misplaced. *See* Response, pp. 9-10. After all, Mr. Whidden identified that he did not "review, reference, or rely upon" any wage study when making his employment decisions that involved Ms. Bouricius's employment. *See* Mesa County's Memorandum, Exhibit 6, ¶ 4). Accordingly, a document that was never used in making the decisions at issue in this litigation cannot be relevant, no matter what Ms. Bouricius may speculate to be "highly likely" or that her counsel believes is "interesting," which she does not identify or further describe. After all, neither baseless conclusion changes the fact that Mr. Whidden did not use the wage study to make any

determination with respect to Ms. Bouricius's employment and thus, any wage study is not relevant in this case.

Similarly misplaced is Ms. Bouricius's analysis regarding the standard for producing documents pursuant to a Colorado Open Records Act ("CORA") request when there has been no CORA request made. In short, the issue at hand before the Court is a discovery request made by Ms. Bouricius under the Federal Rules of Civil Procedure, not a CORA request. And while Ms. Bouricius can certainly offer the opinion that the standards of CORA requests and discovery requests are "essentially the same" (Response, p. 12), the fact is that they are not. That is, CORA requires that all public records be open for inspection, subject only to prescribed exceptions. C.R.S. § 24–72–201; *Denver Publ'g Co. v. Bd. of Cnty. Comm'rs,* 121 P.3d 190, 195 (Colo.2005). CORA defines a "public record" as "all writings made, maintained, or kept by the state ... for use in the exercise of functions required or authorized by law ... or involving ... public funds." C.R.S. § 24–72–202(6)(a)(I). And by its terms, CORA balances the public interest in access to information about how the government operates against the privacy interests of public officials and employees. Ch. 271, sec. 1, 1996 Colo. Sess. Laws 1479; *see Denver Publ'g Co.*, 121 P.3d at 194 (citing legislative declaration of intent for 1996 amendments to CORA, which addressed e-mail records). Further, CORA provides for a specific process if a party believes documents were improperly withheld pursuant to CORA's standards. *See* C.R.S. § 24-72-204.

Discovery requests, on the other hand, are governed by the Federal Rules of Civil Procedure and require that the information sought be relevant to the proceeding at hand and proportional to the needs of the case. *See* F.R.C.P. 26(b)(1). Thus, an individual may obtain a document through a CORA request because it is a public record, which is not subject to one of CORA's exceptions, but

be denied the document in a litigation because the document is not relevant to the case or is not proportional to the needs of the case pursuant to the Federal Rules of Civil Procedure. And, accordingly, since the matter pending before this Court is based on a discovery request, the standards employed with respect to the wage study must be those with respect to discovery requests, not to a CORA request.

In making a determination as to whether documents must be produced in litigation, F.R.C.P. 26(b)(1) permits:

> discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

But such access is not without its limits. And a district court is not, for example, "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *Bhasker v. Kemper Casualty Insurance Company,* 361 F.Supp.3d 1045, 1110-1111 (2019); *citing McGee v. Hayes,* 43 F. App'x. 214, 217 (10th Cir. 2002)(unpublished)("Discovery ... is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.").

Furthermore, the 2000 and 2015 amendments to F.R.C.P. 26(b)(1) have narrowed discovery's substantive scope and emphasized the need to make discovery proportional to the needs of the case. *Bhasker,* 361 F.Supp.3d at 1114. And the *Bhasker* decision, citing United States Supreme Court Chief Justice Roberts' 2015 Year-End Report, emphasized the importance of placing "reasonable limits" on discovery, achieved through a "common-sense approach" in making this determination:

>Chief Justice John Roberts' 2015 Year-End Report on the Federal Judiciary indicates that the addition of proportionality to rule 26(b) "crystalizes the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality." 28 Chief Justice John Roberts, 2015 Year-End Report on the Federal Judiciary at 6, Supreme Court of the United States, available at http://www.supremecourt.gov/publicinfo/year-end/year-endreports.aspx ("2015 Year- End Report"). He states that the proportionality concept seeks to "eliminate unnecessary or wasteful discovery," and to impose "careful and realistic assessment of actual need." 2015 Year-End Report at 7. This assessment may, as a practical matter, require "judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *State Farm Mutual Auto. Ins. Co. v. Fayda,* 2015 WL 7871037, at *2 (internal quotation marks omitted).

*Bhasker,* 361 F.Supp.3d at 1116-1117.

Additionally, in this discovery evaluation process, the burden of demonstrating relevance remains on the party seeking discovery. *Bhasker,* 361 F.Supp.3d at 1116-1117. In this matter, Ms. Bouricius has not met this burden. Instead, Ms. Bouricius tells a one-sided story based on unsupported speculation and conjecture regarding the employment action undertaken by Mesa County around the time of the wage study, even referencing an article regarding the resignation of an employee who had no connection to Ms. Bouricius or Mr. Whidden. *See* Response, pp. 9-10. Furthermore, at no point in that tale does Ms. Bouricius address the facts presented by Mesa County in its Memorandum, and supported by Mr. Whidden's affidavit, that at no point in his determination regarding Ms. Bouricius' employment did Mr. Whidden consider, use, etc. the wage study. Mesa County's Memorandum, Exhibit #6. Accordingly, Ms. Bouricius has not met her burden of being entitled to any wage study or supporting records.

In sum, any request for information about or related to a wage study, including the requests made in Requests for Production 8 and 9, are not relevant to any claims or defenses at issue in this case because Mr. Whidden, the individual who made the decision to lay off Ms. Bouricius, did not rely on any wage study as part of his decision to lay off Ms. Bouricius. Exhibit 6. Thus, if the wage study and related information played no part in the employment decision at issue in this case—Ms. Bouricius's lay off—it cannot have any possible bearing on the claim or the defense of either party, and Ms. Bouricius cannot use discovery as a fishing expedition.

**IV.     Conclusion.**

The discovery documents and information that Ms. Bouricius seeks via F.R.C.P. 30(b)(6) Notice, Matter 6 and via Requests for Production 8 and 9 should be denied. First, Ms. Bouricius's Matter 6 improperly fringes upon Mesa County's attorney-client privilege and work product doctrine rights, both privileges Mesa County has not waived in this case. Further, Requests for Production 8 and 9 request information that formed no part of Ms. Bouricius's allegations or Mesa County's defenses and, in addition, CORA matters are not properly before this Court. As a result, Mesa County respectfully requests the Court to strike Ms. Bouricius's F.R.C.P. 30(b)(6) Notice, Matter 6 and to prevent Ms. Bouricius from seeking any additional information about or related to Requests for Production 8 and 9.

Respectfully submitted this 24th day of April 2019.

BECHTEL SANTO & SEVERN

*s/ Alicia W. Severn*
Alicia W. Severn, #42432
Michael C. Santo, #24083
205 N. 4th Street, Suite 300
Grand Junction, CO  81501
Telephone: (970) 683-5888
Facsimile: (970) 683-5887
Email: severn@bechtelsanto.com
          santo@bechtelsanto.com
Attorneys for Defendant Mesa County

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing **DEFENDANT'S REPLY TO ITS MEMORANDUM IN SUPPORT OF DISCOVERY DISPUTE** was served this 24th day of April 2019, via CM/ECF to the following:

 Paula Greisen
Julie Bisbee
King & Greisen, LLP
1670 York Street
Denver, CO 80206
Telephone: (303) 298-9878
Fax: (303) 298-9879
greisen@kinggreisen.com
bisbee@kinggreisen.com
Attorneys for Plaintiff

*s/ Alicia W. Severn*
Alicia W. Severn, attorney

14