IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01144-WYD-STV

DEBRA BOURICIUS,

    Plaintiff,

v.

MESA COUNTY, by and through the Mesa County Board of County Commissioners,

    Defendant.

_____

**PLAINTIFF'S EXPERT DISCLOSURE PURSUANT TO FED. R. CIV. P. 26(a)(2)**
_____

Plaintiff, pursuant to Fed. R. Civ. P. 26(a)(2), hereby submits the following Expert Disclosure:

### Retained Experts

1. William H. Kaempfer, Ph.D., ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dr. Kaempfer may be called to provide expert testimony consistent with his expert report. Dr. Kaempfer may be called to provide expert testimony in the field of economics and to testify as to the Plaintiff's economic damages. A summary of his expert testimony is as follows:

- **Opinions and Bases Therefor:** This information is set forth in the narrative report appended hereto as Exhibit 1. In addition, Dr. Kaempfer may be called to rebut the opinions of Defendant's expert(s).

**EXHIBIT 10**

**REDACTED**

- **Data or Other Information Considered:** This information is described in the narrative report appended hereto as Exhibit 1.

- **Exhibits to be Used:** Exhibits which may be used at trial have yet to be determined.

- **Qualifications of Witness:** Dr. Kaempfer's *Curriculum Vitae*, appended hereto as Exhibit 2, details his qualifications and provides a list of publications authored in the last ten years.

- **Other Cases:** Appended hereto as Exhibit 3 is a list of all other cases in which Dr. Kaempfer has testified as an expert at trial or by deposition during the past four years.

- **Compensation:** Dr. Kaempfer is compensated at a rate of $300.00/hour to $500.00/hour for his services. His Fee Schedule is appended hereto as Exhibit 4.

Dr. Kaempfer reserves the right to supplement his report, and Plaintiff reserves her right to supplement this disclosure with respect to the expert reports pursuant to Fed. R. Civ. P. 26(e)(1).

Dated this 30th day of January 2019.

        KING & GREISEN, LLP

        *s/ Paula Greisen*

        Paula Greisen
        Julie K. Bisbee
        1670 York St.
        Denver, Colorado 80206
        (303) 298-9878 telephone

**EXHIBIT 10**

        (303) 298find9879 facsimile
        greisen@kinggreisen.com
        bisbee@kinggreisen.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January 2019, I served the foregoing **PLAINTIFF'S EXPERT DISCLOSURE PURSUANT TO FED. R. CIV. P. 26(a)(2)** on the following e-mail addresses:

Michael Santo
Alicia Severn
Bechtel Santo & Severn
205 N. 4th Street, Suite 300
Grand Junction, CO 81501
santo@bechtelsanto.com
severn@bechtelsanto.com

*Attorneys for Defendant Mesa County*

        *s/ Laurie A. Mool*
        Laurie A. Mool, Paralegal

**EXHIBIT 10**

# EXHIBIT 1

**EXHIBIT 10**

# PRELIMINARY EVALUATION OF ECONOMIC LOSS DUE TO AGE DISCRIMINATION

## *Ms. Debra Bouricius*

Prepared for:

Paula Greisen
King and Greisen, LLP
1670 York St.
Denver CO 80206

January 25, 2019

Prepared by:

William H. Kaempfer, Ph.D. /s/
Consulting Economist

**EXHIBIT 10**

**REDACTED**

**I.** **Background Information**

Ms. Debra Bouricius is a 59 year-old woman currently residing in Boulder County, Colorado with her husband. She was employed for 26 years by Mesa County in Colorado as a Business Systems Analysist and then Senior Business Systems Analysist before she was suddenly terminated in October 2016. It is Ms. Bouricius's claim that her termination was an unlawful act of age discrimination by Mesa County.

Ms. Bouricius holds two Bachelor of Science degrees from Colorado State University. Prior to her termination, she was recognized by Mesa County as a valued and high-quality employee. Following her termination, Ms. Bouricius was without income or benefits. She engaged in a job search and after about two months found similar employment, but that new position required her to relocate to Boulder County, Colorado. While her current position pays more than what she was earning in Mesa County, Ms. Bouricius now faces higher living costs, especially in regards to housing and commuting.

Because of her termination Ms. Bouricius has suffered a loss of income and benefits as well as higher costs associated with her mitigation of losses. In this report I present an analysis of the economic losses she has suffered stemming from her termination by Mesa County and based upon reasonable economic probabilities.

**II.** **Basis of Economic Evaluation**

The following documents were reviewed in this case while preparing an evaluation of Ms. Bouricius's probable economic losses:

- The Complaint in this matter;
- Ms. Bouricius's resume;
- W-2 statements from 2015 to 2018;
- Items from Ms. Bouricius's employment file with Mesa County;
- The Mesa County Employment Policy Handbook; and
- Other pleadings in this case.

2

**EXHIBIT 10**

In addition to this specific information relating to the case, I also relied on general economic data including current and historical relationships between interest rates, inflation, and wage growth in order to establish a net discount rate. This data is available from the Federal Reserve of St. Louis at FRED: https://research.stlouisfed.org/fred2/ . Information on housing costs comes from the website, Zillow. Finally, I interviewed Ms. Bouricius by telephone and by email.

**III.  Evaluation of Economic Loss**

Probable economic losses are reported for past and future periods.  Past losses are those already incurred in the period from the time of termination in October 2016 until the start of 2019.  It is understood that the Court will apply statutory interest to past losses.  Future losses are those beginning in 2019 until the end of Ms. Bouricius's expected work life.  In this report, future losses are discounted to net present value and set forth in today's dollars. The discounting process involves a simultaneous consideration of inflation of wages and prices over time, as well as the probable interest returns on a lump-sum, current period valuation. An appropriate "net" discount rate of 0.8 percent is based on current, continuous maturity interest rates on Treasury Inflation Protected Securities (TIPS) as recorded on FRED, the economic data site of the Federal Reserve Bank of St. Louis.

Based on the information and facts reviewed in this matter, the following assumptions have been made in order to reach my opinions as to Ms. Bouricius's probable past and future economic losses:

- Ms. Bouricius earned about $6,075 per month when terminated by Mesa County in October 2016 (about $73,000 per year).  I assume that her benefits including insurance and retirement were worth at least 20 percent of her salary.  She was given one month's termination pay.
- Ms. Bouricius was re-employed by the Office of the District Attorney in Boulder County in December earning $81,000 per year, or about $8,000 more than in Mesa County.  In 2018, her salary was increased to $89,000 per year or about $16,000 more than in Mesa County.

3

**EXHIBIT 10**

- I assume that benefits, except for vesting provisions to her retirement and vacation accrual, are similar. In order to be vested in the Boulder County retirement plan, Ms. Bouricius must work several more years. Vacation time accrued in Boulder is much lower than in Mesa County because of her short tenure. Over nine years of expected employment, she will be penalized by about 45 days of vacation.
- Although her paychecks are higher in Boulder County than in Mesa County, Ms. Bouricius is forced to absorb significantly higher commuting costs and reside in a much inferior home in her post-termination circumstances. This leads to a significant loss in net earnings.
- Ms. Bouricius now has a commute of at least 47 miles per day longer that when employed by Mesa County. At current IRS mileage rates of $0.58 per mile, this creates and additional employment expense of $6,815 per year.
- In addition, Ms. Bouricius spends at least one hour per day more in commuting to work in Boulder County relative to her commute in Mesa County. Valuing this time at her hourly-pay equivalent in Mesa County, the commute costs Ms. Bouricius $9,569 per year.
- Taxes in Boulder County are higher than in Mesa County, including a higher sales tax rate of about 0.8 percent.
- Living in rural mountain conditions about 30 miles west of Boulder imposes significant additional living costs on the Bouricius household including the need for a higher clearance, more winter ready vehicle, higher utilities, a 20 mile commute to do laundry, and more burdensome utilities. In addition, they lack storage space in their current home which has no garage. I assume that these factors add $8,184 per year above the normal costs they faced in Mesa County.
- The Bouricius household currently resides in a primitive dwelling on property they own in the community of ▉▉▉▉▉▉▉▉▉▉. In addition to the costs enumerated in the bullet above, they are sacrificing a great deal relative to the home they had in the Grand Junction area. In order to rent a property close to Boulder and of roughly similar size (but not with anything close to the same aesthetic values) as the Grand Junction home they had to vacate, they would face a rental cost in Boulder ranging from at least $3,000 to $4,000 per month, or more. By renting a more comparable home in Boulder,

4

**EXHIBIT 10**

**REDACTED**

Ms. Bouricius would avoid some of the costs she currently bears by living in ███████, such as the cost of her commute, renting a storage shed, having to drive to do laundry, and so forth. However, the higher tax rates of Boulder County would still be present as a cost of living difference between Boulder and Grand Junction.

**Economic Losses**

Past and future economic losses are described in three scenarios. The first assumes that the Bouricius household continues to live in their current, sub-standard cabin in ███████, Boulder County, and Ms. Bouricius continues in the long commute to her mitigating employment in Boulder at considerable expense. In this scenario, the loss suffered by Ms. Bouricius is calculated as $110,240 of which $44,202 is past loss and $66,038 is future loss.

The second scenario is based on the assumption that in order to mitigate her income loss, Ms. Bouricius moved to Boulder and rented a home at $3,000 per month inclusive of utilities. By doing so, she would no longer bear the expenses of commuting and making up for smaller living spaces. In this scenario, the loss suffered by Ms. Bouricius is calculated as $216,880 of which $68,490 is past loss and $148,390 is future loss.

The third scenario is also based on the assumption that in order to mitigate her income loss, Ms. Bouricius moved to Boulder and rented a home but at a $4,000 per month cost inclusive of utilities in order to better approximate what the household sacrificed by moving from Grand Junction. In this scenario, the loss suffered by Ms. Bouricius is calculated as $322,255 of which $92,490 is past loss and $229,765 is future loss.

**IV.    Summary**

Based on this analysis and reasonable economic probabilities, an aggregate fund of between $110,240 and $322,255 will serve as a substitute for probable past and future losses suffered by Ms. Bouricius stemming from her termination by Mesa County in October 2016.

In calculating losses probable growth in wages and price inflation has been incorporated so that the compensation in future years does not fall below the real economic loss. The probable

REDACTED

interest returns on funds available today are also considered, in that this interest can be used to help finance future payments. Thus, the calculations represented here are designed so that at the end of the probable future loss period, the fund balance has been drawn down to zero.

*s/ William H. Kaempfer*

William H. Kaempfer, Ph.D.

6

**EXHIBIT 10**