## Alicia Severn

| | |
|---|---|
| **From:** | Julie Bisbee <bisbee@kinggreisen.com> |
| **Sent:** | Monday, February 25, 2019 4:12 PM |
| **To:** | Alicia Severn; Paula Greisen |
| **Cc:** | Michael Santo |
| **Subject:** | RE: Bouricius v. Mesa County: expert report exhibits and extension of time request |

Alicia:  I'll review below in the next day or so and get back to you.

Thank you, julie

*Julie K. Bisbee*
*Attorney*
*Pronouns: she, her, hers*



1670 York St. | Denver | Colorado | 80206 | 303.298.9878 p | 303.298.9879 f
www.kinggreisen.com

CONFIDENTIALITY NOTICE - This e-mail transmission, and any documents, files or previous e-mail messages attached to it, may contain information that is confidential or legally privileged.  If you are not the intended recipient, or a person responsible for delivering it to the intended recipient, you are hereby notified that you must not read or play this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED.  If you have received this transmission in error, please immediately notify the sender by telephone or return e-mail and delete the original transmission and its attachments without reading or saving in any manner.  Thank you.

 **Please consider the environment before printing this email.**

---

**From:** Alicia Severn <Severn@bechtelsanto.com>
**Sent:** Monday, February 25, 2019 12:04 PM
**To:** Julie Bisbee <bisbee@kinggreisen.com>; Paula Greisen <greisen@kinggreisen.com>
**Cc:** Michael Santo <santo@bechtelsanto.com>
**Subject:** Bouricius v. Mesa County: expert report exhibits and extension of time request

Julie and Paula,

As we discussed last week, Julie, I put together a list concerning supporting exhibits that we would like to see regarding Mr. Kaempfer's expert witness report. That is, references, statements, etc. in the report clearly refer to information provided to Mr. Kaempfer and/or that Mr. Kaempfer found and relied on in preparing the report, and, accordingly, we are entitled to review such documents pursuant to F.R.C.P. 26(a)(2)(B)(iii) and because they are relevant documents. If Mr. Kaempfer referred to any other document(s)/information in preparing the expert report that is not identified in the list below, we request that information, too. Please let me know when we can expect to receive this information. Along with that, we request an extension of time to produce any rebuttal expert report, setting the deadline two weeks after we receive exhibits, documents, and information relied on by Mr. Kaempfer in preparing his report. Please let me know if this extension of time is agreeable.

Thank you,

**EXHIBIT 12**

Alicia

1. Document(s) to support the statement "Prior to her termination, she was recognized by Mesa County as a valued and high-quality employee." See page 2 of the report.

2. Further, along those lines, which "items from Ms. Bouricius's employment file with Mesa County" were reviewed? See page 2.

3. Which "other pleadings in this case" were reviewed? See page 2.

4. In the report it states, "general economic data including current and historical relationships between interest rates, inflation, and wage growth in order to establish a net discount rate." See page 3. The problem is that the website, https://research.stlouisfed.org/fred2/, links to a home page that does not contain information about the current or historical relationships between interest rates, inflation, and wage growth.

5. In the report it also states, "information on housing costs comes from the website, Zillow." See page 3. Where within the Zillow website is this information found?

6. The report states, "…I interviewed Ms. Bouricius by telephone and by email." See page 3. If information was learned that supported any opinions in this report, what was that information? What information was contained in the emails?

7. "An appropriate 'net' discount rate of 0.8 percent is based on current, continuous maturity interest rates on Treasury Inflation Protected Securities (TIPS) as recorded on FRED, the economic data site of the Federal Reserve Bank of St. Louis." See page 3. Where on the FRED website can this information be found?

8. On what information is the assumption "I assume that her benefits including insurance and retirement were worth at least 20 percent of her salary" based? See page 3. If benefits information and/or W-2 information was reviewed, please produce it.

9. On what information, document, plan, etc. is the statement "In order to be vested in the Boulder County retirement plan, Ms. Bouricius must work several more years" based? See page 4.

10. On what information are the statements "Vacation time accrued in Boulder is much lower than in Mesa County because of her short tenure. Over nine years of expected employment, she will be penalized by about 45 days of vacation" based? See page 4.

11. On what information is the statement, "Ms. Bouricius is forced to…reside in a much inferior home in her post-termination circumstances" based? See page 4.

12. On what information is the statement, "Ms. Bouricius now has a commute of at least 47 miles per day longer that when employed by Mesa County" based? See page 4.

13. On what information is the statement, "Ms. Bouricius spends at least one hour per day more in commuting to work in Boulder County relative to her commute in Mesa County" based? See page 4.

14. On what information is the statement, "Taxes in Boulder County are higher than in Mesa County, including a higher sales tax rate of about 0.8 percent" based? See page 4. In addition to sales tax, which other kind(s) of taxes are addressed here? How were the tax amounts determined?

**EXHIBIT 12**

15. On what information are the conclusions, "Living in rural mountain conditions about 30 miles west of Boulder imposes significant additional living costs on the Bouricius household including the need for a higher clearance, more winter ready vehicle, higher utilities, a 20 mile commute to do laundry, and more burdensome utilities" based, along with the calculation of $8,184? See page 4.

16. On what information is the statement, "In order to rent a property close to Boulder and of roughly similar size (but not with anything close to the same aesthetic values) as the Grand Junction home they had to vacate, they would face a rental cost in Boulder ranging from at least $3,000 to $4,000 per month, or more" based?  See page 4.

17. On what information is the reference to "renting a storage shed" and "having to drive to do laundry" based? See page 5.

18. On what information is the statement, "The second scenario is based on the assumption that in order to mitigate her income loss, Ms. Bouricius moved to Boulder and rented a home at $3,000 per month inclusive of utilities" based?  See page 5.

19. How is the number $2,430 calculated in the charts on p. 7, under the heading "Benefits"?

20. How is the number $712 calculated in the bottom two charts on p. 7, under the headings "Adjustments"?

21. What future raise/promotion information was used to develop the salary and benefits information in the three charts on page 7?


Alicia Williams Severn
Bechtel Santo & Severn
205 N. 4th Street, Suite 300
Grand Junction, CO 81501
Telephone: 970.683.5888
Facsimile: 970.683.5887

*Our annual employment-law conference with WCHRA is scheduled for April 17, 2019.  Look for more information in future issues of the firm's* Employer's Advisory *newsletter, or check the event page of our website at* www.bechtelsanto.com.

CONFIDENTIALITY NOTICE:  This electronic mail transmission and any accompanying documents contain information belonging to the sender which may be confidential and legally privileged.  This information is intended only for the use of the individual or entity to whom this electronic mail transmission was sent as indicated above.  If you are not the intended recipient, any disclosure, copying, distribution, or action taken in reliance on the contents of the information contained in this transmission is strictly prohibited.  If you have received this transmission in error, please call collect at 970-683-5888 and delete this transmission.  Thank you.

SECURITY NOTICE:
Bechtel Santo & Severn cannot assure that email messages are secure or will be delivered via the Internet. If you are transmitting information to Bechtel Santo & Severn that you consider urgent and are uncertain whether it has been received, or if you are expecting an email response that you have not received, please call 970.683.5888 to confirm the status. If you are uncomfortable using email to communicate with Bechtel Santo & Severn, please call and specify another method of communication.

**EXHIBIT 12**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01144-WYD-STV

DEBRA BOURICIUS,

     Plaintiff,

v.

MESA COUNTY, by and through the Mesa County Board of County Commissioners,

     Defendant.

---

## PLAINTIFF'S EXPERT DISCLOSURE PURSUANT TO FED. R. CIV. P. 26(a)(2)

---

Plaintiff, pursuant to Fed. R. Civ. P. 26(a)(2), hereby submits the following Expert Disclosure:

### Retained Experts

1. William H. Kaempfer, Ph.D., ███████████████████████████ ██████. Dr. Kaempfer may be called to provide expert testimony consistent with his expert report. Dr. Kaempfer may be called to provide expert testimony in the field of economics and to testify as to the Plaintiff's economic damages. A summary of his expert testimony is as follows:

- **Opinions and Bases Therefor:** This information is set forth in the narrative report appended hereto as Exhibit 1. In addition, Dr. Kaempfer may be called to rebut the opinions of Defendant's expert(s).

**EXHIBIT 12**

**REDACTED**

- **Data or Other Information Considered:** This information is described in the narrative report appended hereto as Exhibit 1.

- **Exhibits to be Used:** Exhibits which may be used at trial have yet to be determined.

- **Qualifications of Witness:** Dr. Kaempfer's *Curriculum Vitae*, appended hereto as Exhibit 2, details his qualifications and provides a list of publications authored in the last ten years.

- **Other Cases:** Appended hereto as Exhibit 3 is a list of all other cases in which Dr. Kaempfer has testified as an expert at trial or by deposition during the past four years.

- **Compensation:** Dr. Kaempfer is compensated at a rate of $300.00/hour to $500.00/hour for his services. His Fee Schedule is appended hereto as Exhibit 4.

Dr. Kaempfer reserves the right to supplement his report, and Plaintiff reserves her right to supplement this disclosure with respect to the expert reports pursuant to Fed. R. Civ. P. 26(e)(1).

Dated this 30th day of January 2019.

KING & GREISEN, LLP

*s/ Paula Greisen*
_____
Paula Greisen
Julie K. Bisbee
1670 York St.
Denver, Colorado 80206
(303) 298-9878 telephone

**EXHIBIT 12**

(303) 298find9879 facsimile
greisen@kinggreisen.com
bisbee@kinggreisen.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 30th day of January 2019, I served the foregoing **PLAINTIFF'S EXPERT DISCLOSURE PURSUANT TO FED. R. CIV. P. 26(a)(2)** on the following e-mail addresses:

Michael Santo
Alicia Severn
Bechtel Santo & Severn
205 N. 4th Street, Suite 300
Grand Junction, CO 81501
santo@bechtelsanto.com
severn@bechtelsanto.com

*Attorneys for Defendant Mesa County*

<u>s/ Laurie A. Mool</u>
Laurie A. Mool, Paralegal

**EXHIBIT 12**

# EXHIBIT 1

**EXHIBIT 12**

# PRELIMINARY EVALUATION OF ECONOMIC LOSS DUE TO AGE DISCRIMINATION

# *Ms. Debra Bouricius*

Prepared for:


Paula Greisen
King and Greisen, LLP
1670 York St.
Denver CO 80206


January 25, 2019


Prepared by:

William H. Kaempfer, Ph.D. /s/
Consulting Economist

**EXHIBIT 12**

**REDACTED**

## I.  Background Information

Ms. Debra Bouricius is a 59 year-old woman currently residing in Boulder County, Colorado with her husband.  She was employed for 26 years by Mesa County in Colorado as a Business Systems Analysist and then Senior Business Systems Analysist before she was suddenly terminated in October 2016.  It is Ms. Bouricius's claim that her termination was an unlawful act of age discrimination by Mesa County.

Ms. Bouricius holds two Bachelor of Science degrees from Colorado State University.  Prior to her termination, she was recognized by Mesa County as a valued and high-quality employee. Following her termination, Ms. Bouricius was without income or benefits.  She engaged in a job search and after about two months found similar employment, but that new position required her to relocate to Boulder County, Colorado.  While her current position pays more than what she was earning in Mesa County, Ms. Bouricius now faces higher living costs, especially in regards to housing and commuting.

Because of her termination Ms. Bouricius has suffered a loss of income and benefits as well as higher costs associated with her mitigation of losses.  In this report I present an analysis of the economic losses she has suffered stemming from her termination by Mesa County and based upon reasonable economic probabilities.

## II.  Basis of Economic Evaluation

The following documents were reviewed in this case while preparing an evaluation of Ms. Bouricius's probable economic losses:

- The Complaint in this matter;
- Ms. Bouricius's resume;
- W-2 statements from 2015 to 2018;
- Items from Ms. Bouricius's employment file with Mesa County;
- The Mesa County Employment Policy Handbook; and
- Other pleadings in this case.

2

**EXHIBIT 12**

In addition to this specific information relating to the case, I also relied on general economic data including current and historical relationships between interest rates, inflation, and wage growth in order to establish a net discount rate. This data is available from the Federal Reserve of St. Louis at FRED:   https://research.stlouisfed.org/fred2/ . Information on housing costs comes from the website, Zillow. Finally, I interviewed Ms. Bouricius by telephone and by email.

### III.    <u>Evaluation of Economic Loss</u>

Probable economic losses are reported for past and future periods. Past losses are those already incurred in the period from the time of termination in October 2016 until the start of 2019. It is understood that the Court will apply statutory interest to past losses. Future losses are those beginning in 2019 until the end of Ms. Bouricius's expected work life. In this report, future losses are discounted to net present value and set forth in today's dollars. The discounting process involves a simultaneous consideration of inflation of wages and prices over time, as well as the probable interest returns on a lump-sum, current period valuation. An appropriate "net" discount rate of 0.8 percent is based on current, continuous maturity interest rates on Treasury Inflation Protected Securities (TIPS) as recorded on FRED, the economic data site of the Federal Reserve Bank of St. Louis.

Based on the information and facts reviewed in this matter, the following assumptions have been made in order to reach my opinions as to Ms. Bouricius's probable past and future economic losses:

- Ms. Bouricius earned about $6,075 per month when terminated by Mesa County in October 2016 (about $73,000 per year). I assume that her benefits including insurance and retirement were worth at least 20 percent of her salary. She was given one month's termination pay.
- Ms. Bouricius was re-employed by the Office of the District Attorney in Boulder County in December earning $81,000 per year, or about $8,000 more than in Mesa County. In 2018, her salary was increased to $89,000 per year or about $16,000 more than in Mesa County.

**EXHIBIT 12**

- I assume that benefits, except for vesting provisions to her retirement and vacation accrual, are similar.  In order to be vested in the Boulder County retirement plan, Ms. Bouricius must work several more years.  Vacation time accrued in Boulder is much lower than in Mesa County because of her short tenure.  Over nine years of expected employment, she will be penalized by about 45 days of vacation.

- Although her paychecks are higher in Boulder County than in Mesa County, Ms. Bouricius is forced to absorb significantly higher commuting costs and reside in a much inferior home in her post-termination circumstances.  This leads to a significant loss in net earnings.

- Ms. Bouricius now has a commute of at least 47 miles per day longer that when employed by Mesa County.  At current IRS mileage rates of $0.58 per mile, this creates and additional employment expense of $6,815 per year.

- In addition, Ms. Bouricius spends at least one hour per day more in commuting to work in Boulder County relative to her commute in Mesa County.  Valuing this time at her hourly-pay equivalent in Mesa County, the commute costs Ms. Bouricius $9,569 per year.

- Taxes in Boulder County are higher than in Mesa County, including a higher sales tax rate of about 0.8 percent.

- Living in rural mountain conditions about 30 miles west of Boulder imposes significant additional living costs on the Bouricius household including the need for a higher clearance, more winter ready vehicle, higher utilities, a 20 mile commute to do laundry, and more burdensome utilities.  In addition, they lack storage space in their current home which has no garage.  I assume that these factors add $8,184 per year above the normal costs they faced in Mesa County.

- The Bouricius household currently resides in a primitive dwelling on property they own in the community of ███████████████.  In addition to the costs enumerated in the bullet above, they are sacrificing a great deal relative to the home they had in the Grand Junction area.  In order to rent a property close to Boulder and of roughly similar size (but not with anything close to the same aesthetic values) as the Grand Junction home they had to vacate, they would face a rental cost in Boulder ranging from at least $3,000 to $4,000 per month, or more.  By renting a more comparable home in Boulder,

4

**EXHIBIT 12**

**REDACTED**

Ms. Bouricius would avoid some of the costs she currently bears by living in ██████ ████, such as the cost of her commute, renting a storage shed, having to drive to do laundry, and so forth.  However, the higher tax rates of Boulder County would still be present as a cost of living difference between Boulder and Grand Junction.

**Economic Losses**

Past and future economic losses are described in three scenarios.  The first assumes that the Bouricius household continues to live in their current, sub-standard cabin in ████████ ██████████, and Ms. Bouricius continues in the long commute to her mitigating employment in Boulder at considerable expense. In this scenario, the loss suffered by Ms. Bouricius is calculated as $110,240 of which $44,202 is past loss and $66,038 is future loss.

The second scenario is based on the assumption that in order to mitigate her income loss, Ms. Bouricius moved to Boulder and rented a home at $3,000 per month inclusive of utilities.  By doing so, she would no longer bear the expenses of commuting and making up for smaller living spaces.  In this scenario, the loss suffered by Ms. Bouricius is calculated as $216,880 of which $68,490 is past loss and $148,390 is future loss.

The third scenario is also based on the assumption that in order to mitigate her income loss, Ms. Bouricius moved to Boulder and rented a home but at a $4,000 per month cost inclusive of utilities in order to better approximate what the household sacrificed by moving from Grand Junction.  In this scenario, the loss suffered by Ms. Bouricius is calculated as $322,255 of which $92,490 is past loss and $229,765 is future loss.

IV.   **<u>Summary</u>**

Based on this analysis and reasonable economic probabilities, an aggregate fund of between $110,240 and $322,255 will serve as a substitute for probable past and future losses suffered by Ms. Bouricius stemming from her termination by Mesa County in October 2016.

In calculating losses probable growth in wages and price inflation has been incorporated so that the compensation in future years does not fall below the real economic loss.  The probable

**EXHIBIT 12**

REDACTED

interest returns on funds available today are also considered, in that this interest can be used to help finance future payments. Thus, the calculations represented here are designed so that at the end of the probable future loss period, the fund balance has been drawn down to zero.

*s/ William H. Kaempfer*

William H. Kaempfer, Ph.D.

**EXHIBIT 12**

**Alicia Severn**

---

| | |
|---|---|
| **From:** | Deb Bouricius <bouricii@gmail.com> |
| **Sent:** | Thursday, January 24, 2019 11:35 AM |
| **To:** | William H Kaempfer |
| **Cc:** | Steve Bouricius; Paula Greisen; Julie Bisbee |
| **Subject:** | Re: Bouricius Information |
| **Attachments:** | 2018 w2.pdf; Debra A. Bouricius.docx |

Hi Bill, attached are my resume, 2018 W2 and a few pictures of our Palisade Home.  I also have BS in Animal Science from CSU, May 1984 not noted on my resume.

The prices for renting a townhome are good prices and I appreciate and I understand your justification for using a rental.  However, please understand that Steve and I would never choose to rent a two bedroom townhome in Boulder.  And that's part of the reason I am so angry at Mesa County.  They took from us the enjoyment of living on our family farm in the comfortable home we built ourselves.  They took from us the ability to enjoy and pursue our hobbies, our gardening, my pottery studio and our home winery.  Our seventeen-acre property outside ███████ includes an 800 foot wildlife shelter belt that spanned from our house to the orchard.  My parents started the shelterbelt in the 1970's and Steve and I continued to plant hundreds of trees and shrubs over the 26 years we lived there.  It is rich with birds and other wildlife like nesting falcons, Saw-whet and Western Screech-Owls.  Our gardens have been visited by countless groups including birders from all over the world.  The Daily Sentinel has featured our work in seven full page articles.  Our forced move put a stop to our 17 continuous years of bird banding there.
How do you put a price on that?  If only we could ask Thompson Marsh.

I gave 26 years of excellent service to Mesa County.  During the last eight years of working for them, and despite excellent reviews, I did not receive a raise or cost of living increase. Still, I gave them my loyalty because I enjoyed my job and I loved where we lived and our lifestyle.  They took that away from me unjustly and I want them to pay.

My job and experience as a Business Systems Analyst is pretty specific to government and big business operations and there weren't comparable jobs available in the Grand Valley.  I chose the job I have today because it closely matched my experience but more importantly, we could live economically in our family cabin.  Steve and I took the least expensive housing option in Boulder County and that was to move into our very tiny unfinished cabin.  We would like to continue to live here and make improvements to bring it closer to the level of comfort, space and functionality of our home in Palisade.  I don't believe it will cost a million dollars but it will cost us two to three hundred thousand.

The loss of income or differences in income or value of lost vacation are really minor issues to us.  It's more the loss of our comfortable home encircled by rich wildlife habitat and plenty of room to enjoy our hobbies.  We hired one of the top attorneys in Colorado to relay to the jury our true loss caused by Mesa County's unlawful actions.  And we are glad she hired the best expert economic advisor to identify our loss.  I'm sure being a birder and enjoying wildlife, you can appreciate our position and can understand why we would not choose to convey our loss by using examples of the cost of rent for a two bedroom townhome in Boulder.  It simply isn't comparable.

You asked what the rental would be on the cabin.  The truth is it's not rentable.  It was built as a summer getaway in the 1960's.  The walls and roof are unfinished and uninsulated.  There's no finished flooring, no kitchen cabinet doors or drawers, no washer/dryer or space for them, only a 3' closet in the bedroom, single pain windows, no stair rails, no garage and there is no central furnace that could function to heat the entire house.  At this time of year,  often we get up in the morning after having the wall heater on all night but no fire in the fireplace and the living room and upstairs rooms will  be 51- 63 degrees.  It would be unsafe to rent without major improvements.

REDACTED

**EXHIBIT 12**

Below are three Boulder area homes for sale on Zillow that would be comparable to our ████ home in acreage and square footage.  Perhaps it would be possible to calculate the Gross Rental Multiplier to put a value on the rental of equivalent properties in Boulder County worth over a million dollars with a monthly mortgage rate of between $5931 to $9899/month to see if it would be an equivalent or higher value than renting a townhome.  I believe giving examples of the cost of renting a property comparable to our Palisade home would more accurately convey our loss than presenting the cost of renting a townhome.

## 7097 Jay Rd, Boulder, CO 80301, 3 beds 1 bath 1,632 sqft

https://www.zillow.com/homes/for_sale/house,mobile,land,townhouse_type/13198427_zpid/3-_beds/435600-_lot/40.263022,-104.942093,39.822512,-105.680237_rect/10_zm/

**Areas of levels in sq. ft.**
FIRST FLOOR (ABOVE GROUND) FINISHED AREA 1632

*The two homes below on Zillow claim to have 3150 and 4236 sqft but in looking at the Assessor records they are including the garage, deck and patio area,etc.  If you compare our Palisade home in the same way, we have 3860 sqft and 16.87 acres.  We also have a room above our kitchen that is not considered a bedroom because it does not have a closet and is unheated but is used for storage. The house interior can easily be converted to add two more spacious bedrooms.*

## 8171 N 41st St, Longmont, CO 80503, 4 beds 3 baths 3,150 sqft

https://www.zillow.com/homedetails/8171-N-41st-St-Longmont-CO-80503/147262475_zpid/

| Areas of levels in sq. ft. | |
| --- | --- |
| FIRST FLOOR (ABOVE GROUND) FINISHED AREA | 1575 |
| ATTACHED GARAGE AREA | 528 |
| DETACHED GARAGE | 598 |
| LOWER LVL GARDEN FINISHED (BI-SPLIT LVL) | 1400 |
| DECK AREA | 200 |
| PATIO AREA | 480 |

## 5775 Jay Rd, Boulder, CO 80301, 5 beds 5 baths 4,236 sqft

https://www.zillow.com/homes/for_sale/house,mobile,land,townhouse_type/13215347_zpid/3-_beds/435600-_lot/40.263022,-104.942093,39.822512,-105.680237_rect/10_zm/

**EXHIBIT 12**

REDACTED

**Areas of levels in sq. ft.**

| | |
|---|---|
| FIRST FLOOR (ABOVE GROUND) FINISHED AREA | 1782 |
| 2ND FLOOR AND HIGHER FINISHED AREA | 1872 |
| SUBTERRANEAN BASEMENT UNFINISHED AREA | 582 |
| ATTACHED GARAGE AREA | 748 |
| DECK AREA | 475 |
| GREENHOUSE (RESIDENTIAL) AREA | 460 |
| PATIO AREA | 535 |

Attached are a few photos of our house on ███████████████.  It has a three-car garage, an office and guest bedroom in the
east loft, substantial storage and work space, and a great room that is 65 ft. long with a 22 ft. ceiling.  It is on a hill where it commands an
expansive view from the Uncompaghre Plateau to the west, Mt. Garfield and the Bookcliffs to the north, and the Grand Mesa to the east.



**EXHIBIT 12**

**REDACTED**



4

**EXHIBIT 12**



**EXHIBIT 12**



On Wed, Jan 23, 2019 at 11:14 AM William H Kaempfer <William.Kaempfer@colorado.edu> wrote:

Deb,

Again, thanks for this.  As I said, I would probably have additional questions for you; here are some:

Can you give me you educational background—what degrees you have from which institutions and when?  I like to include that background information.

**EXHIBIT 12**

My information shows that a 2 bedroom townhome with garage in Boulder will run $2,500 to $3,000/month, minimum.  To use this cost figure, however, I will need to make some sort of offset for what you might get if you rented your current place in ▮▮▮▮▮▮▮.  Since I think you rent out your other Peaceful Valley spot, you might have a good idea.

Bill

**From:** Deb Bouricius <bouricii@gmail.com>
**Sent:** Tuesday, January 22, 2019 1:30 PM
**To:** William H Kaempfer <William.Kaempfer@Colorado.EDU>
**Cc:** Steve Bouricius <bouricii@earthlink.net>
**Subject:** Bouricius Information

Hi Bill, it was nice talking to you.  Here is some additional information.

At mesa county I accrued vacation at 13.33 hours / month.

Boulder County

- For the first 3 years – 8 hours/month
- After 3 years – 10 hours/month
- After 5 years – 12 hours/month
- After 10 years – 14 hours/month
- After 15 years and beyond – 16 hours/month

------------------------------------------------------------
*Grand Junction/Mesa County Sales tax.*
*Starting in 2018, the sales tax rate within Mesa County has changed. The City of Grand Junction's portion has not changed and from 4.9% to 5.27%. The new sales tax rate for sales within the City is 8.02%.*

7

**EXHIBIT 12**

REDACTED

## Grand Junction, Colorado Sales Tax Rate

Combined Sales Tax Rate

**8.02%**

Sales Tax Jurisdiction Breakdown

| | |
|---|---|
| Colorado: | 2.9% |
| Mesa County: | 2% |
| Grand Junction: | 2.75% |
| Special: | 0.37% |

## Boulder, Colorado Sales Tax Rate

Combined Sales Tax Rate

**8.845%**

Sales Tax Jurisdiction Breakdown

| | |
|---|---|
| Colorado: | 2.9% |
| Boulder County: | 0.985% |
| Boulder: | 3.86% |
| Special: | 1.1% |

---------------------------------------------------

House in ▮▮▮▮▮▮: 2174 Heated + 1126 garage

http://emap.mesacounty.us/assessor_lookup/Assessor_Parcel_Report.aspx?Account=R026442

Cabin in ▮▮▮▮▮▮▮▮▮▮: 1144 heated + no garage + no washer/dryer + heat with wood stove.

https://maps.boco.solutions/propertysearch/   *(Enter 50152 in search).*

If you do a rental example in Boulder Area be sure to include utility expenses.

I was curious why you wouldn't choose an example of purchasing a home

rather than renting to estimate the costs.  We will probably be taking out a loan to make

improvements on our cabin which would be more synonyms to purchase a home.

I found these articles recently concerning the difference in housing costs.

https://www.gjsentinel.com/news/western_colorado/economic-bright-spot-mesa-county/article_9a01e33e

**REDACTED**

**EXHIBIT 12**

http://kekbfm.com/comparing-the-cost-of-living-denver-vs-grand-junction/

Let me know if you have questions.

Sincerely, Deb

 ReplyForward

**EXHIBIT 12**

# Debra A. Bouricius

**QUALIFICATIONS**

Twenty-five years Project Management experience working with every department in Mesa County from small process improvement projects such implementing a process to execute after hour warrants using DocuSign to implementing New World Law Enforcement software in a Multi-Agency environment.

Software implementation resource coordination of everyone involved in projects including Project Sponsors, IT PC Hardware Team, IT Network Team, IT Web Team, IT Help Desk Team, Department Heads, SME's, staff and vendors .

Experience developing requirements for RFP's and selecting vendors for software implementation including performing staff interviews, documenting application functionality requirements, developing workflow diagrams, developing system integration requirements, developing successful project implementation requirements, developing vendor selection criteria,  coordinating vendor interviews and demonstrations,  analyzing and summarizing justification for vendor selection.

Software acquisition, implementation and maintenance including data conversation, software testing, user training, user documentation development, software upgrades and maintenance, system backup coordination with Network Team, user support and  vendor liaison.

**EDUCATION**

Bachelor of Science in Business Administration with a concentration in Computer Information System, May 1984.  College of Business, Colorado State University, Fort Collins, Colorado

**EMPLOYMENT HISTORY**

**1985-1987 Computer Technician, Fletemeyer & Lee Assoc., Boulder CO**

Designed and implemented financial, budgeting, accounts receivable, project cost estimating and proposal specification systems for a landscape and architectural firm.

**1987-1988 System Analyst, University of Colorado Foundation, Boulder, CO**

Provided support and training on IBM Mainframe and PC LAN's for 100 employees.  Installed, customized and maintained PC LAN.  Documented system features and technical specification for system programmers and non-technical users.

**1989-1990 Quality Assurance Technician, SouthWind Software, Estes Park, CO**

Tested UNIX based office automation, graphics and spreadsheet software.  Defined and documented software features and technical specifications for system developers. Edited and validated end-user documentation.

**1990-2014 Business Systems Analyst /2014-2016 Sr. Business System Analyst, Mesa County, Grand Junction, CO**

Project management, business process improvement, system implementation and integration, system support and maintenance, user support and assistance.

**EXHIBIT 12**

1. Document(s) to support the statement "Prior to her termination, she was recognized by Mesa County as a valued and high-quality employee." See page 2 of the report.
   a. Complaint
   b. Oct. 7, 2016 letter
   c. Merit increases during 90s and 00s when she was a younger employee documented in file

2. Further, along those lines, which "items from Ms. Bouricius's employment file with Mesa County" were reviewed? See page 2.
   a. Jan. 10 dropbox

3. Which "other pleadings in this case" were reviewed? See page 2.
   a. Jan. 2 email attachments

4. In the report it states, "general economic data including current and historical relationships between interest rates, inflation, and wage growth in order to establish a net discount rate." See page 3. The problem is that the website, https://research.stlouisfed.org/fred2/, links to a home page that does not contain information about the current or historical relationships between interest rates, inflation, and wage growth.
   a. Go to that website and the first thing you encounter is a question that ask you what are you searching for.

5. In the report it also states, "information on housing costs comes from the website, Zillow." See page 3. Where within the Zillow website is this information found?
   a. Houses for rent in Boulder Colorado

6. The report states, "…I interviewed Ms. Bouricius by telephone and by email." See page 3. If information was learned that supported any opinions in this report, what was that information? What information was contained in the emails?

   
   Bouricius          Re Bouricius
   Information.msg    Information.msg
   a.
   b. Information acquired from Ms. Bouricius also helped me to form my opinions with respect to 9, 10, 11, 14, 15, 16, 17, 18 along with appropriate google searches (e.g., "storage units near ████████████")

7. "An appropriate 'net' discount rate of 0.8 percent is based on current, continuous maturity interest rates on Treasury Inflation Protected Securities (TIPS) as recorded on FRED, the economic data site of the Federal Reserve Bank of St. Louis." See page 3. Where on the FRED website can this information be found?
   a. Enter Treasury Inflation Protected Securities on FRED

8. On what information is the assumption "I assume that her benefits including insurance and retirement were worth at least 20 percent of her salary" based? See page 3. If benefits information and/or W-2 information was reviewed, please produce it.

**EXHIBIT 12**

**REDACTED**

     a.  My experience with benefits packages both over 20+ years as a senior officer of a major state agency and 30 years as an economic loss expert.

9. On what information, document, plan, etc. is the statement "In order to be vested in the Boulder County retirement plan, Ms. Bouricius must work several more years" based?  See page 4.

10. On what information are the statements "Vacation time accrued in Boulder is much lower than in Mesa County because of her short tenure. Over nine years of expected employment, she will be penalized by about 45 days of vacation" based?  See page 4.

11. On what information is the statement, "Ms. Bouricius is forced to…reside in a much inferior home in her post-termination circumstances" based?   See page 4.

12. On what information is the statement, "Ms. Bouricius now has a commute of at least 47 miles per day longer that when employed by Mesa County" based?   See page 4.
        Google Maps

13. On what information is the statement, "Ms. Bouricius spends at least one hour per day more in commuting to work in Boulder County relative to her commute in Mesa County" based?   See page 4.
        Google Maps

14. On what information is the statement, "Taxes in Boulder County are higher than in Mesa County, including a higher sales tax rate of about 0.8 percent" based? See page 4. In addition to sales tax, which other kind(s) of taxes are addressed here? How were the tax amounts determined?
        .008 used see attached excel spreadsheet

15. On what information are the conclusions, "Living in rural mountain conditions about 30 miles west of Boulder imposes significant additional living costs on the Bouricius household including the need for a higher clearance, more winter ready vehicle, higher utilities, a 20 mile commute to do laundry, and more burdensome utilities" based, along with the calculation of $8,184? See page 4.

16. On what information is the statement, "In order to rent a property close to Boulder and of roughly similar size (but not with anything close to the same aesthetic values) as the Grand Junction home they had to vacate, they would face a rental cost in Boulder ranging from at least $3,000 to $4,000 per month, or more" based?  See page 4.

17. On what information is the reference to "renting a storage shed" and "having to drive to do laundry" based? See page 5.

18. On what information is the statement, "The second scenario is based on the assumption that in order to mitigate her income loss, Ms. Bouricius moved to Boulder and rented a home at $3,000 per month inclusive of utilities" based?  See page 5.

**EXHIBIT 12**

19. How is the number $2,430 calculated in the charts on p. 7, under the heading "Benefits"?

    $12,150 X 0.2

20. How is the number $712 calculated in the bottom two charts on p. 7, under the headings "Adjustments"?

    $89,000 X 0.008

21. What future raise/promotion information was used to develop the salary and benefits information in the three charts on page 7?

    Salary difference is held constant in real terms and reduced to net present value by use of an inflation adjusted discount rate.

**EXHIBIT 12**