**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 18-CV-01144-DDD-STV

DEBRA BOURICIUS,
        Plaintiff,

v.

MESA COUNTY, by and through the Mesa County Board of County Commissioners,
        Defendant.

---

**MESA COUNTY'S MOTION FOR SUMMARY JUDGMENT**

---

        Mesa County, by and through the Mesa County Board of County Commissioners, moves for summary judgment on the Plaintiff's sole claim and requests for damages, pursuant to F.R.C.P. 56, D.C.COLO.LCivR 56.1, and Judge Domenico's Practice Standards. In support of this Motion, Mesa County states as follows.

### Summary of Defendant's Positions

        In her Complaint, Plaintiff Debra Bouricius asserts one claim for relief against Mesa County based on age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") related to her layoff from employment in Mesa County's IT Department. There is no genuine dispute regarding the fact that Bouricius's separation was precipitated by significant financial shortfalls in Mesa County, leading to a layoff. Further, there is no genuine dispute regarding the fact that Frank Whidden chose Bouricius to be included in the layoffs in the IT Department based on Whidden's evaluation of her skills compared to other IT Department employees' skills and to Whidden's evaluation of the needs of the IT Department. In response,

1

Bouricius has provided only her own speculation, insufficient for summary judgment purposes, that the decision to include Bouricius in the layoff was based on her age.

Additionally, Bouricius seeks the recovery of compensatory and tax-related damages that are not recoverable under the ADEA or under tax law.

As a result, this Court should grant summary judgment in favor of Mesa County on these issues.

**Statement of Undisputed Facts**

Below is a statement of the facts in this case, which are undisputed by Mesa County for purposes of this Motion only. Mesa County does not admit that the facts as stated below are true, nor does it waive its right to dispute these facts at trial should Mesa County's Motion for Summary Judgment be unsuccessful in whole or in part.

**<u>Background and Bouricius's employment with Mesa County.</u>**

1.      Bouricius started working for Mesa County in 1990 as an Applications Analyst. Ex. 1 (DEF 222).

2.      Rick Corsi became a manager in Mesa County's Information Technology ("IT") Department in the mid-2000s. Ex. 2 (Rick Corsi Dep., 11:12-17).

3.      At least as of 2007, Rick Corsi was Bouricius's supervisor. Ex. 1 (DEF 754); *see also* Ex. 1 (DEF 753-754) for full Performance Appraisal.

4.      The other managers in the IT Department were Troy Flick and Lhana Jordan. Ex. 3 (Whidden Dep., 67:2-3).

5.      Jordan worked as a customer service manager. Ex. 1 (DEF 61).

2

6.      Flick worked as a manager in charge of network and database administrators. Ex. 1 (DEF 61); Ex. 4 (Bouricius Dep., 120:3-8).

7.      Mesa County hired Frank Whidden in 2011 as its IT Director. Ex. 3 (Whidden Dep., 23:14-15; 80:1-2). Whidden subsequently took on the role of Deputy Administrator and, in 2014, also took on the roles of County Administrator and Human Resources Director. (*Id*. at 34:24-35:3, 36:2-14). So, at the time Bouricius was laid off, Whidden worked as Mesa County's County Administrator, Human Resources Director, and IT Director. (*Id*.).

8.      As County Administrator, Whidden was required "to implement the policies that the board has given [him]…[and] to oversee the day-to-day affairs of the County." Ex. 3 (Whidden Dep., 37:15-20).

9.      Whidden was more involved in overseeing the IT Department than other departments because his background involved IT work. Ex. 3 (Whidden Dep., 38:10-16).

10.     After Whidden was hired, Rick Corsi reported to Whidden, and Bouricius continued reporting to Rick Corsi. Ex. 2 (Rick Corsi Dep., 14:2-4); Ex. 4 (Bouricius Dep., 108:21-24).

11.     During Bouricius's employment, Rick Corsi gave Bouricius an Improvement Action Plan in 2011 relating to a breach in security that affected the Sheriff's Office. Ex. 1 (DEF 735-736) (a two-page Improvement Action Plan document).

12.     At the time of her separation in 2016, Bouricius worked as a Senior Business Systems Analyst. Ex. 4 (Bouricius Dep., 182:2-8); Ex. 1 (DEF 588). In this role, Bouricius's duties included project management (Ex. 1 (DEF 119)), coordinating and managing applications (Ex. 1 (DEF 120)), implementing and managing new systems and applications (Ex. 1 (DEF 120)), and

3

providing training (Ex. 1 (DEF 120)), among other tasks. *See* Ex. 1 (DEF 119-121) Job Description.

13.     Bouricius also worked with larger systems at Mesa County, including upgrades and helping users (Ex. 4 (Bouricius Dep., 183:13, 184:2-6, 14)); working with users to determine what they needed from the systems, and then changing a system's process or obtaining a new system (*Id*. at 183:14-21); negotiating contracts with software vendors (*Id*. at 184:2-3); working with data conversions (*Id*. at 184:7-9); and managing system changes and conversions (*Id*. at 184:10-185:3).

14.     During Bouricius's employment, no one at Mesa County made any age-related remarks to Bouricius. Ex. 4 (Bouricius Dep., 198:24-199:2).

15.     Bouricius currently works for the Boulder County District Attorney's Office. Ex. 4 (Bouricius Dep., 53:11-12).

**Mesa County's decision to layoff employees in 2016.**

16.     In 2016, due to decreased revenue, Mesa County anticipated a budget deficit in 2017 of more than $1.7 million. Ex. 1 (DEF 117) ("The 2017 budget was crafted with the intent of providing $1.4 million in new spending for the sheriff and $400,000 for the DA."); *see also* Ex. 1 (DEF 117-118) for the full two-page media article; Ex. 1 (DEF 576) (showing the 2016 Proposed General Fund Budget at more than $1.7 million in projected decreased revenue).

17.     In light of this deficit, managers were asked to find ways to reduce costs to alleviate this deficit. Ex. 2 (Rick Corsi Dep., 62:1-5, 119:3-16).

18.     In fact, Bouricius acknowledged that Mesa County experienced budget deficits for multiple years prior to 2016. Ex. 4 (Bouricius Dep., 214:14-215:7).

19.     Bouricius also acknowledged that Mesa County's budgetary issues were real, legitimate concerns. Ex. 4 (Bouricius Dep., 215:8-10).

20.     Indeed, budgetary concerns always existed during Whidden's employment with Mesa County, and Mesa County's general fund continuously decreased from the time Whidden started working for Mesa County through the time Bouricius was laid off. Ex. 3 (Whidden Dep., 55:22-56:2, 59:25-60:13).

21.     Along with projected revenue deficits, Mesa County also decided to allocate additional funds to the Sheriff's and District Attorney's offices due to pressing public safety concerns. Ex. 1 (DEF 114-116) (a three-page media article regarding the needs of the Sheriff's Office); Ex. 1 (DEF 117) (stating, "The 2017 budget was crafted with the intent of providing $1.4 million in new spending for the sheriff and $400,000 for the DA."); *see also* Ex. 1 (DEF 117-118) for the full two-page media article.

22.     Shortly before the layoffs occurred, the Mesa County Commissioners instructed Whidden to reduce expenditures in the County by $1.4 million. Ex. 3 (Whidden Dep., 117:2-21).

23.     Whidden informed the Commissioners that laying off employees would be needed to achieve the identified expenditure reduction. Ex. 3 (Whidden Dep., 118:6-16).

24.     The Commissioners gave Whidden authority to implement layoffs. Ex. 3 (Whidden Dep., 347:20-24).

25.     So, on October 7, 2016, Mesa County implemented layoffs affecting its IT Department and Clerk and Recorder's Office. Ex. 1 (DEF 234) (showing October 7, 2016 date); Ex. 3 (Whidden Dep., 118:22-119:13) (identifying IT Department layoffs and employment effects

in the Clerk and Recorder's Office). In addition to these layoffs, Mesa County also reduced work hours for two employees in its Operations Division. Ex. 1 (DEF 122).

26.     As of the date of the layoff, Mesa County employed 24 employees in the IT Department. Ex. 1 (DEF 67-68) (a two-page employee list). Five of those employees worked as Senior Business Systems Analysts. Ex. 1 (DEF 588).

27.     Whidden decided to eliminate six positions:

      a.     Two Senior Business Systems Analysts: Bouricius, age 57, and David Barnett, age 47, both reporting to Rick Corsi (Ex. 1 (DEF 588) (showing employees' ages)); (Ex. 4 (Bouricius Dep., 108:21-24) (identifying Bouricius's supervisor)); (Ex. 5 (Janine Corsi Dep., 17:7-12) (identifying Barnett's supervisor));

      b.     Two Network Administrators: Janine Corsi, age 60, and Carey Stieb, age 50, both reporting to Troy Flick (Ex. 1 (DEF 67) (showing employees' ages)); (Ex. 5 (Janine Corsi Dep. 16:19-24) (identifying employees' supervisor));

      c.     One Technical Support Specialist: Crislynn Howerton, age 58, reporting to Troy Flick (Ex. 1 (DEF 67) (showing employee's age)); (Ex. 5 (Janine Corsi Dep. 16:19-17:4) (identifying employee's supervisor)); and

      d.     One IT Manager: Rick Corsi, age 59, reporting to Whidden (Ex. 1 (DEF 67) (showing employee's age)); (Ex. 2 (Rick Corsi Dep. 14:2-4) (identifying employees' supervisor)). Ex. 1 (DEF 67-68).

28.     Of the five Senior Business Systems Analysts employed at the time of the layoff, Bouricius and one other employee were 57 years old. Ex. 1 (DEF 123). The youngest Senior

Business Systems Analyst was David Barnett, who was 47 years old and whose position was eliminated. *Id.*

29.    The job duties of Network Administrators like Janine Corsi and Stieb were to "[c]oordinate, install, configure and maintain network communication devices and internal wiring infrastructure" (Ex. 1 (DEF 1661)); "[m]onitor and troubleshoot network traffic, performance and availability" (Ex. 1 (DEF 1661)); "[p]rovide backup and disaster recovery" (Ex. 1 (DEF 1662)); and "[i]nstall, configure and maintain highly available, redundant servers and make specific recommendations concerning hardware redundancy and software delivery," (Ex. 1 (DEF 1662)) among other tasks. *See* Ex. 1 (DEF 1661-1662) for full two-page Job Description.

30.    The job duties of Technical Support Specialists like Howerton were to "[p]rovide[] county computer users with a central point of contact to receive assistance and report computer issues to I.T. Manage requests for assistance…" (Ex. 1 (DEF 1666)); "[r]oute[] help desk requests to appropriate I.T. support personnel based on personal computer knowledge and experience, and familiarity with I.T. organizational structure…" (Ex. 1 (DEF 1666)); "[d]evelop[] or secure[] written guidelines for handling computer related problems or tasks," (Ex. 1 (DEF 1667)) among other tasks. *See* Ex. 1 (DEF 1666-1667) for full two-page Job Description.

31.    The job duties of Information and Communications Managers like Rick Corsi were to "[s]erve[] as department Public Information Officer…writing press releases, fielding and/or answering questions concerning specific situations, conducting media tours, or meeting with the press. Coordinate[] media press conferences and arrange[] interviews regarding agency issues and activities" (Ex. 1 (DEF 1670)); "[a]ttend[] Command Staff meetings with department executive staff, participate[] in planning, controlling, and directing department activities, functions and

obligations" (Ex. 1 (DEF 1670)); and "[r]espond[] to requests for assistance from citizens concerning administrative or public service matters…" (Ex. 1 (DEF 1670)), among other tasks. *See* Ex. 1 (DEF 1670-1672) for full three-page Job Description.

32.     Whidden decided who to lay off with input from Flick and Jordan about whether they agreed with his decisions. Ex. 3 (Whidden Dep., 126:4-14, 210:18-23, 283:10-15).

33.     Whidden evaluated his knowledge about employees' performances in deciding who to layoff. Ex. 3 (Whidden 114:18-22). Based on this evaluation, Whidden determined which employees were essential to the IT Department's operations and which employees would be laid off. (*Id*. at 116:9-17).

34.     Whidden chose Bouricius to be laid off because Bouricius's skills in customer service were weak, an evaluation with which Jordan agreed. Ex. 3 (Whidden Dep., 137:5-8, 137:19-21). Whidden was aware of customer service complaints about Bouricius that Mesa County had received. (*Id*. at 274:4-17).

35.     Whidden also believed that Jordan's customer service and hardware skills were stronger than Bouricius's skills. Ex. 3 (Whidden Dep., 339:15-23).

36.     Additionally, Bouricius's skills related to various computer systems used in Mesa County were not as strong as other employees' skills. Ex. 3 (Whidden Dep., 138:13-18).

37.     Specifically, Whidden determined that Kelly Leuallen, another Senior Business Systems Analyst, had greater knowledge about systems used in Mesa County compared to Bouricius (Ex. 3 (Whidden Dep., 215:21-216:8)); that Leuallen had more up-to-date information about systems, particularly in terms of being involved in and answering complex questions (*Id*. at

216:8-10, 216:17-217:2); and that Leuallen had stronger customer support and documentation skills compared to Bouricius (*Id*. at 216:10-16, 217:6-218:2, 218:8-13).

38.     Indeed, Bouricius's expertise was in supporting a system called Eden. Ex. 3 (Whidden Dep., 222:6-11). Whidden determined that Leuallen had stronger skills than Bouricius with respect to supporting a greater number of the 100-200 systems that Mesa County used. (*Id*. at 216:20-217:2).

39.     Further, employee Lori Marak, also a Senior Business Systems Analyst (Ex.1 (DEF 61)), was the lead employee on a program called New World. Ex. 3 (Whidden Dep., 70:12-13)

40.     New World is used by Mesa County's law enforcement. Ex. 3 (Whidden Dep., 69:14-15).

41.     Whidden directly supervised Marak and other employees who worked with New World, which Whidden considered a "critical" system for the IT Department. Ex. 3 (Whidden Dep., 69:13-21, 235:21-24). Whidden determined that Bouricius did not have the necessary knowledge or skills to work with this program. (*Id*. at 235:21-24, 243:19-22).

42.     Further, Whidden believed that employee Elizabeth McDowell, who worked in a hybrid Business Systems Analyst/GIS (government information systems) position (Ex. 3 (Whidden Dep., 340:20-21); Ex. 1 (DEF 61)), had skills that were more critical to the IT Department than Bouricius's skills because McDowell worked on the New World program and in GIS, whereas Bouricius did not work in either area. Ex. 3 (Whidden Dep., 243:19-22, 246:17-23). In addition, McDowell worked on tax revenue issues, which is another area in which Bouricius did not work. (*Id*. at 249:13-21, 250:2-8, Correction Sheet (Ex. 3, pp. 52-53)).

43. Similarly, Whidden believed that Chris Kadel's (Senior GIS Administrator (Ex. 1 (DEF 61)) expertise in GIS was stronger than Bouricius, who did not have skills in GIS. Ex. 3 (Whidden Dep., 340:14-341:3).

44. Further, Whidden believed that Terrie Hotary, another Senior Business Systems Analyst (Ex. 1 (DEF 61)), had stronger customer service skills than Bouricius (Ex. 3 (Whidden Dep., 241:23-25)) and was willing to learn new systems like New World (*Id*. at 238:15-239:17).

45. In addition, Whidden believed that Bouricius did not have the computer hardware skills that David Underwood, a Support Specialist (Ex. 1 (DEF 61)), had, and Underwood also had skills relating to end-user contracts, Microsoft Office, and other technical items that Bouricius lacked. Ex. 3 (Whidden Dep., 251:5-252:3). Indeed, Whidden's experience is that employees like Bouricius who work on software typically do not have similar expertise in computer hardware issues. (*Id*. at 252:10-15). Whidden also believed that Underwood had stronger customer service skills than Bouricius. (*Id*. at 339:17-340:3).

46. Moreover, Whidden believed that Eric Farslow's (Senior Support Specialist (Ex. 1 (DEF 61)) hardware and technical knowledge was more substantial than Bouricius's knowledge. Ex. 3 (Whidden Dep., 342:18-343:5).

47. Likewise, employee Joe Keene and employee Leilani Boyles, both of whom were Web Administrators (Ex. 1 (DEF 61)), had web administration skills, including HTML, Hypertext Markup Language, scripting, and programming, which are areas in which Bouricius did not work or have skills to Whidden's knowledge. Ex. 3 (Whidden Dep., 253:17-25, 254:10-23, 341:4-14).

48.     With respect to support specialists and technical support specialists, Whidden did not believe that Bouricius's customer service skills regarding software and hardware issues were as good as other employees' skills in these areas. Ex. 3 (Whidden Dep., 341:22-342:8).

49.     Further, while Whidden was aware that Rick Corsi believed Bouricius's skills as a project manager were good, in Whidden's experience, Whidden did not see Bouricius exhibit good project management work in terms of moving projects along and in meeting goals or deadlines. Ex. 3 (Whidden 234:9-18).

50.     Whidden also believed that Flick had stronger network administration skills and management skills compared to Bouricius. Ex. 3 (Whidden Dep., 340:4-6).

51.     Mesa County informed the six employees in the IT Department of the decision to lay them off during a meeting on October 7, 2016. Ex. 1 (DEF 234); Ex. 3 (Whidden Dep., 214:18-25). During the meeting, Whidden told the employees that their positions were eliminated due to budgetary reasons. Ex. 2 (Rick Corsi Dep., 85:5-10).

52.     After these layoffs, budget issues remained a concern. For example, on May 29, 2017, Bouricius sent an email to Janine Corsi in which she stated, "Lhana [Jordan] said if the vote doesn't pass this November [regarding a sales tax increase], they [Mesa County] will layoff 200 people." Ex. 6 (Bouricius 000602).

## Argument

### A.     Summary Judgment Standard.

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. 56(a). "A fact is material if, under the governing law, it could have an effect on the outcome of the lawsuit."

*Laul v. Los Alamos Nat. Labs.*, 765 Fed.Appx. 434, 440 (10th Cir. 2019) (internal citations and citation omitted). Further, a "material fact" is part of a "genuine dispute" only "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). Hence, summary judgment exists "to determine whether trial is necessary." *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Consequently, the moving party has the burden to establish that no genuine issue of material fact exists, thus entitling the movant to summary judgment on the nonmovant's claims. *Adler*, 144 F.3d at 670 (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). And where, as in this case, "a movant . . . will not bear the burden of persuasion at trial[,] . . . a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the…claim." *Id.* at 671 (*citing Celotex*, 477 U.S. at 325). The nonmoving party, then, "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Phillips v. The Pepsi Bottling Grp.*, 373 Fed.Appx. 896, 899 (10th Cir. 2010) (*citing McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998)).

**B.      Mesa County is entitled to summary judgment with respect to Bouricius's ADEA claim.**

Bouricius alleges Mesa County discriminated against her in violation of the ADEA. Thus, Bouricius has the burden to "introduce 'evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue.'" *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1166 (10th Cir. 1998) (*citing Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir. 1988)). Direct evidence is evidence that does

not "require[e] any inference to suggest age discrimination." *Roberts v. Int'l Bus. Machines Corp.*, 733 F.3d 1306, 1308 (10th Cir. 2013). With respect to layoffs, evidence of other employees' ages is not direct evidence of age discrimination. *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1455-1456 (10th Cir. 1994).

In claims when there is no direct evidence of age discrimination, as is the case here, the plaintiff must rely on circumstantial evidence. In such cases, courts "'apply the burden shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).'" *Laul*, 765 Fed.Appx. at 440 (citation omitted).

Under this framework, Bouricius must establish a prima facie case, which, with respect to a lay off, requires her to "prove: (1) that she is within the protected age group; (2) that she was doing satisfactory work; (3) that she was discharged despite the adequacy of her work; and (4) that there is some evidence the employer intended to discriminate against her in reaching its [lay off] decision." *Beaird*, 145 F.3d at 1165 (citations omitted). Further, "[Bouricius also] must show that age was a 'but-for' cause of her alleged adverse employment action[], which in the Tenth Circuit requires showing that 'age was the factor that made a difference' in the decision" at issue. *Oleynikova v. Beye*, 09-CV-01019-PAB-KMT, 2010 WL 5464151 at *8 (D.Colo., Dec. 29, 2010) (*citing Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1277 (10th Cir. 2010)). *See also Hay v. Family Tree, Inc.*, 16-CV-03143-CMA-KLM, 2019 WL 2137392, *3 (D.Colo., May 16, 2019) (explaining in the summary judgment context, "[A] plaintiff has a claim under the ADEA if she can prove that age was the determinative factor behind the employer's adverse action, even if other factors also motivated the employer to take the adverse action against the plaintiff.") (Citations omitted).

13

If Bouricius can establish a prima facie case that satisfies these elements, then Mesa County may "provide legitimate, nondiscriminatory reasons for [its] employment decisions." *Id*. (*citing Riggs v. AirTrain Airways, Inc.*, 497 F.3d 1108, 1114 (10th Cir. 2007)). Once Mesa County makes this showing, then Bouricius has the burden "to produce evidence creating a genuine factual dispute as to whether the proffered justification was a pretext for discrimination." *Id*. (*citing Riggs*, 497 F.3d at 1114-1115).

Here, Bouricius cannot establish a prima facie case of age discrimination because Bouricius has proffered no evidence that Mesa County intended to discriminate against her based on her age when it implemented the lay off that affected Bouricius's employment. Further, Bouricius cannot show that her age was the determinative factor in Mesa County's decision to terminate her employment. Moreover, even if Bouricius could establish a prima facie case of age discrimination, which Mesa County denies, Mesa County had legitimate, nondiscriminatory reasons for laying off Bouricius.

That is, undermining Bouricius's claim of age discrimination, Whidden testified that budget issues in Mesa County initiated his decision to layoff employees in the IT Department, which layoff was supported by the Board of Commissioners. Ex. 3 (Whidden Dep., 55:22-56:2, 59:25-60:13, 117:2-21, 118:6-16, 347:20-24). Indeed, Bouricius admitted that Mesa County's budgetary constraints precipitated her layoff. For example, in paragraph 26 of her Complaint (Doc 1), Ms. Bouricius states, "In 2016, Mesa County faced a budget deficit of almost $1.7 million for the coming year." In turn, Mesa County admitted in its Answer (Doc 9), paragraph 26, "In response to paragraph 26 of the Complaint, Mesa County admits that it faced a budget deficit of approximately $1.7 million and that layoffs were implemented." Moreover, Bouricius told the

Colorado Civil Rights Division that she did not dispute that Mesa County faced a budget deficit (Ex. 1 (DEF 929)), and thus CCRD did not investigate any allegation related to Mesa County's budgetary concerns (Ex. 1 (DEF 3)).

Based on these acknowledged financial shortfalls, Whidden made the final decision to layoff Bouricius after evaluating his knowledge of Bouricius's skills compared to other employees' skills and concluding that Bouricius's skills were not as strong as other employees' skills with respect to the IT Department's functional needs. *See* Statement of Undisputed Facts, Nos. 32-50, *supra*. Not only do Whidden's beliefs regarding Bouricius's skill sets reveal that Bouricius's age was not the factor that determined Whidden's decision to lay off Bouricius, they also demonstrate Mesa County's legitimate, non-discriminatory reasons for separating Bouricius from employment.

That is, in evaluating Mesa County's reasons for laying off Bouricius, "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999) (*overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). Here, Whidden testified regarding his honest beliefs, based on his own observations and evaluations, about Bouricius's skill sets compared to other employees' skill sets. *See* Statement of Undisputed Facts, Nos, 32-50, *supra*.

Consequently, Bouricius cannot establish that her age was the "but-for" cause of Mesa County's decision to terminate her employment and, moreover, Mesa County articulated its legitimate, non-discriminatory reasons for laying off Bouricius. It is improper to evaluate the

15

accuracy of Whidden's honest beliefs regarding his evaluation of Bouricius's skill sets. *Fischbach v. Dist. of Columbia Dept. of Corr.*, 86 F.3d 1180, 1183 (D.D.C. 1996). As a result, the Court must grant summary judgment in favor of Mesa County with respect to Bouricius's ADEA claim.

**C.      The Court must grant summary judgment in favor of Mesa County on portions of Bouricius's requests for damages.**

Similar to liability, Bouricius has the burden to prove entitlement to any damages under the ADEA. *Neyman v. United Telecomms., Inc.*, 1 F.3d 1249 (Table) (10th Cir. 1993). As part of Bouricius's requested relief, she seeks damages in the forms of: (1) amounts "adjusted for the increased taxes and cost of living between Mesa County…and Boulder County…"; (2) "moving expenses" and "lost economic value incurred by Ms. Bouricius and her family in connection with their relocation from Western Colorado to Lyons, Colorado"; (3) "the lost value of Plaintiff's family farm...[based on] remov[ing] approximately one-thousand six-hundred apple trees from her family apple orchard in Mesa County and ceas[ing] operations of her apple farming business…"; (4) the difference in value between Bouricius's home in Mesa County and a comparable home in Boulder County; (5) the difference in taxes between Boulder and Mesa counties as well as "tax liability on any award of damages"; (6) living in "a much inferior home"; (7) the difference in commuting time between her commute in Mesa County versus her commute in Boulder County; (8) "the need for a higher clearance, more winter ready vehicle, higher utilities, a 20 mile *[sic]* commute to do laundry, and more burdensome utilities" plus the "lack of storage space in their current home" and "the value of Mr. Bouricius' labor to produce" firewood; and (9) emotional and psychological distress, including mental damages and loss of enjoyment of life. Scheduling Order (Doc 24), p. 6; Ex. 7 (Pl.'s Am. and Fourth Suppl. Resps. to Def.'s First Set of Combined Disc.

16

Reqs. to Pl., Resp. to Interrog. 7 and Resp. to Req. for Prod. 8); Ex. 8 (Pl.'s Expert Disclosure Pursuant to Fed. R. Civ. P. 26(a)(2), Ex. 1, pp. 4-5); Ex. 9 (Pl.'s Revised Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), pp. 2-3). Because these nine damages requests are compensatory or tax-related damages that are not recoverable under the ADEA or tax law, Mesa County is entitled to summary judgment with respect to Bouricius's requests for these damages.

The ADEA limits the types of damages available to a plaintiff, permitting legal and equitable damages but prohibiting compensatory damages. *Ridgell-Boltz v. Colvin*, 565 Fed.Appx. 680, 683 (10th Cir. 2014) (explaining, "the ADEA provides for legal and equitable relief, including reinstatement, back-pay, and other pecuniary benefits associated with the job, but it does not permit the recovery of compensatory damages."). Indeed, under 29 U.S.C. § 626(b), damages of "unpaid minimum wages or unpaid overtime compensation" are authorized, and courts have authority "to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including…employment, reinstatement or promotion, or…unpaid minimum wages or unpaid overtime compensation..." Further, the *Ridgell-Boltz* court cited with approval *Collazo v. Nicholson*, 535 F.3d 41, 44-45 (1st Cir. 2008), which held that only "those pecuniary benefits connected to the job relation" were available and recoverable under the ADEA. (Citations in *Collazo* omitted). *See also Comm'r of Internal Revenue v. Schleier*, 515 U.S. 323, 326 (1995) (explaining, "the Courts of Appeals have unanimously held…that the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress."). Indeed, emotional distress and cost-of-living amounts are clearly prohibited compensatory damages under the ADEA. *Schleier*, 515 U.S. at 326, as stated *supra*; *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, case no. 1:02-CV-887, 2007 WL 5662411, *3-4 (N.D.N.Y., Nov. 30, 2007) (holding that

17

testimony regarding a cost of living differential "must be precluded" as part of a compensatory damages consideration).

In contrast to these prohibitions, Bouricius seeks to recover the following damages:

- damages that are "adjusted for the increased taxes and cost of living between Mesa County…and Boulder County…" (#1, p. 16);

- the difference in value between Bouricius's home in Mesa County and a comparable home in Boulder County (#4, p. 16);

- the difference in taxes between Boulder County and Mesa County (part of #5, p. 16);

- living in "a much inferior home" (#6, p. 16); and

- emotional and psychological distress, including mental damages and loss of enjoyment of life (#9, p. 16).

These requests all relate to cost-of-living differentials or emotional distress damages, which are prohibited compensatory damages. Because these damages not recoverable under the ADEA, Mesa County is entitled to summary judgment with respect to these damages requests.

Bouricius also requests damages attributable to alleged "moving expenses" and an unspecified "lost economic value incurred by Ms. Bouricius and her family in connection with their relocation from Western Colorado to Lyons, Colorado." (#2, p. 16) (emphasis added). Moving expenses and a general familial loss of an unspecific economic value are not related to Bouricius's job in Mesa County nor to her current job in Boulder County. Thus, these are compensatory damages that are not job-related and not recoverable under the ADEA, thereby entitling Mesa County to summary judgment with respect to this damages request.

So, too, Bouricius's claims for damages relating to "the lost value of Plaintiff's family farm...[based on Bouricius] remov[ing] approximately one-thousand six-hundred apple trees from her family apple orchard in Mesa County and cease operations of her apple farming business…," which removal Bouricius planned to undertake regardless whether her employment ended with Mesa County (#3, p. 16; Ex. 4 (Bouricius Dep., 45:2-13)); the difference in commuting time between her commute in Mesa County compared to her commute in Boulder County (#7, p. 16); and "the need for a higher clearance, more winter ready vehicle, higher utilities, a 20 mile *[sic]* commute to do laundry, and more burdensome utilities" plus the "lack of storage space in their current home" and "the value of Mr. Bouricius' labor to produce" firewood (#8, p. 16) are compensatory in nature and unrelated to compensation Bouricius received from her previous or current jobs, thereby entitling Mesa County to summary judgment with respect these damages requests.

Finally, Mesa County is entitled to summary judgment with respect to Bouricius's claim of entitlement to damages in the form of "tax liability on any award of damages" (part of #5, p. 16) because Bouricius's allegation attempts to avoid the applicable tax code. After all, the Internal Revenue Service opined that plaintiffs must report amounts received as part of "a settlement in an employment-related lawsuit." Internal Revenue Serv. Publication 4345 (Rev. 12-2016), p. 2. The 10th Circuit also opined that because a jury verdict in an ADEA case "was not based upon tort or tort-type rights, and neither was the award received on account of personal injuries or sickness," the amount of the verdict was therefore included in a plaintiff's taxable income. *Dewey v. U.S., I.R.S.*, 173 F.3d 863 (Table), 1 (10th Cir. 1999). Thus, Bouricius cannot recover as a matter of law any of her personal tax liability on any possible future damages because this scenario runs afoul

19

of tax requirements. Therefore, Mesa County is entitled to summary judgment on this damages request.

In sum, Mesa County is entitled to summary judgment on Bouricius's requests to recover a variety of compensatory and emotional distress damages because these forms of damages are not recoverable under the ADEA. Further, Mesa County is entitled to summary judgment on Bouricius's request to have Mesa County pay her personal tax liability on any future damages award, if any, because such an award violates tax law. Thus, Mesa County is entitled to summary judgment on Bouricius's identified damages set forth on page 16 of this Motion.

**D.     Conclusion.**

Bouricius produced no evidence that Mesa County intended to discriminate against her based on her age by including her in a layoff, and, further, Bouricius cannot establish that her age was the determinative factor leading to Mesa County's decision to terminate her employment. After all, the parties agree that financial concerns initiated the layoff. And Bouricius was selected to be laid off because Whidden's personal evaluation of Bouricius's skills compared to other employees' skills revealed to him that her skills were not as strong as other employees' skills nor as imperative to the IT Department. These legitimate, non-discriminatory reasons for Bouricius's separation demonstrate that Bouricius cannot set forth any facts showing that age was the "but-for" cause of Mesa County's decision to terminate her employment.

Further, Mesa County is entitled to summary judgment with respect to Bouricius's requests for compensatory and emotional distress damages and tax liability because such damages are not recoverable under the ADEA and the U.S. tax code. Because there are no set of facts under which

Bouricius is entitled to recover these amounts, summary judgment is thereby warranted in favor of Mesa County.

For the foregoing reasons, Mesa County respectfully requests this Court enter judgment in its favor with respect to Bouricius's ADEA cause of action and portions of Bouricius's requests for damages, as set forth herein.

Respectfully submitted this 30th day of August 2019.

BECHTEL SANTO & SEVERN

*s/ Alicia W. Severn*
Alicia W. Severn, #42432
Michael C. Santo, #24083
205 N. 4th Street, Suite 300
Grand Junction, CO  81501
Telephone:  (970) 683-5888
Facsimile:  (970) 683-5887
santo@bechtelsanto.com
severn@bechtelsanto.com
Attorneys for Defendant

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.2. This Motion for Summary Judgment contains 5,423 words.

*s/ Alicia W. Severn*
Alicia W. Severn, #42432
205 N. 4th Street, Suite 300
Grand Junction, CO  81501
Telephone:  (970) 683-5888
Facsimile:  (970) 683-5887
severn@bechtelsanto.com
Attorney for Defendant

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **MESA COUNTY'S MOTION FOR SUMMARY JUDGMENT** was served this 30th day of August 2019, via the CM/ECF electronic filing system, to the following:

Paula Greisen
Jennifer Bezoza
King & Greisen, LLP
1670 York Street
Denver, CO 80206
Telephone: (303) 298-9878
Fax: (303) 298-9879
greisen@kinggreisen.com
bezoza@kinggreisen.com
Attorneys for Plaintiff

*s/ Alicia W. Severn*
Alicia W. Severn, #42432
Attorney for Defendant