## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 18-cv-01144-DDD-STV**

DEBRA BOURICIUS,

      Plaintiff,

v.

MESA COUNTY, by and through the Mesa County Board of County Commissioners,

      Defendant.

---

## PLAINTIFF'S MOTION PURSUANT TO FED. R. EVID. 702 TO STRIKE FRANK WHIDDEN'S EXPERT DESIGNATION AND EXPERT WITNESS OPINIONS

---

Plaintiff, by and through her counsel, Paula Greisen and Jennifer Weiser Bezoza of KING & GREISEN, LLP, and pursuant to Fed. R. Evid. 702, moves the Court to preclude any "expert" testimony by Defendant Mesa County's designated non-retained expert witness, Frank Whidden. In support thereof, Plaintiff states as follows:

**Certification of Compliance with D.C.COLO.L.Civ.R 7.1(A):** The undersigned has conferred with counsel for Defendant, and Defendant opposes the relief requested herein.

### INTRODUCTION

This is an age discrimination suit brought by Plaintiff Debra Bouricius, who worked for Mesa County in its Information Technology ("IT") Department for twenty-six years, from 1990 until 2016. Ms. Bouricius earned successive raises over her decades-long career and had attained the position of Senior Business Analyst before her unlawful termination on October 7, 2016. At

the time Ms. Bouricius was fired, she was fifty-six years old and was the longest-serving employee in the IT Department.

Ms. Bouricius was terminated as part of a layoff in 2016 that exclusively targeted IT Department employees over the age of forty because of age, in violation of the Age Discrimination in Employment Act (ADEA). Though employees younger than forty comprised approximately 30% of the IT Department, not a single employee younger than forty was chosen to be included in the layoff; as a result of the layoff, the proportion of workers younger than forty in the IT Department increased by approximately 10%.

Mesa County's written policies required it to base its layoff termination decisions upon the job performance, special skills, and seniority of individual employees. Frank Whidden, who was, until recently, the County Administrator, Information Technology Director, and Human Resources Director for Mesa County and *the sole decision maker* regarding the layoff, admits that he did not consider Ms. Bouricius's performance, her performance reviews, or any other documentation. Instead, he based his termination decision solely on his own personal assessment of the needs of the IT Department and who had the skill set to meet those needs.

Mesa County seeks to certify Mr. Whidden, the *only* witness designated by Defendant in this case and its *only* 30(b)(6) witness, as a non-retained "expert" to give an expert opinion that his decision to layoff Ms. Bouricius was correct and legal. In other words, Defendant is attempting to bolster the credibility of its sole witness by labeling him an "expert." Mr. Whidden admits, however, that he based the layoff decision – and his expert opinion about that decision – exclusively on his impressions and personal observations rather than any facts, data, process, or methodology. His opinions on the ultimate factual and legal issues in the case must be excluded

2

under Federal Rule of Evidence 702 because they are highly unreliable and usurp the role of the jury as the evaluator of evidence for the reasons set forth below.

## PROCEDURAL HISTORY

On July 30, 2018, Defendant disclosed, pursuant to Fed. R. Civ. P. 26(a)(1), Frank Whidden as the only individual, other than Plaintiff, that is likely to have discoverable information that Defendant may use to support its defenses. Ex. 1, Defendant's Initial Disclosures. Defendant's three subsequent supplements to its initial disclosures did not identify any additional witnesses. Ex. 2, Defendant's Supplemental Disclosures.

In November 2018, Plaintiff served a notice, which was subsequently revised, identifying thirty topics to be covered during a 30(b)(6) deposition. In January 2019, Defendant designated Mr. Whidden as its only witness to address the matters in Plaintiff's 30(b)(6) notice. Ex. 3, 1/18/19 Email from Severn to Bisbee and Santo.

On April 5, 2019, Defendant disclosed Frank Whidden as a non-retained expert. Ex. 4, Defendant's Rebuttal Expert Witness Disclosure. Defendant claims that Mr. Whidden is an expert in managing information technology departments based on his many years of working in and managing, overseeing, and operating technology departments in different industries. *Id.* In its disclosure, Defendant stated that Mr. Whidden is expected to testify on the skills sets and positions needed in information technology departments, including Mesa County's information technology department. *Id.* As a non-retained expert, Mr. Whidden was not required to and did not prepare an expert report. F.R.C.P. 26(a)(2)(B)&(C).

Mr. Whidden was deposed on July 11, 2019, as a fact witness, expert witness, and 30(b)(6) designee for Mesa County, during which he clarified the expert opinions he intends to

3

render in this case and the bases for those opinions. On August 5, 2019, Plaintiff moved for an extension of the time to move to exclude Mr. Whidden's expert testimony, which was granted. [ECF. No. 70].

## MR. WHIDDEN'S EXPERT OPINION

In his deposition, Mr. Whidden testified that he is an expert on the skills necessary to run an IT Department and who should have been chosen for the October 2016 layoff. Ex. 5, 7/11/19 Deposition of Frank Whidden (Whidden Dep.) 145:1-4; 147:5-13; 147:20-23; 148:6-10; 171:22-172:4.[1] Mr. Whidden additionally testified that he expects to provide two closely related expert opinions at trial:

1) He correctly chose the people who were laid off in October 2016, *id.* 148:11-14, 310:3-9; and

2) Nobody was discriminated against based on age in the October 2016 layoff, *id.* 173:13-21.

In other words, Mr. Whidden's expert opinion is that he made the right decision to lay off the people he did in October 2016, and there was nothing illegal about that decision.  *Id.* 174:1-7.

## <u>RELEVANT LAW</u>

Federal Rule of Evidence 702 provides basic guidelines for determining the admissibility of expert testimony: (1) is the testimony based upon sufficient facts or data; (2) is the testimony the product of reliable principles and methods; and (3) has the expert applied those principles and methods reliably to the facts of the case. *United States v. Muldrow,* 19 F.3d 1332, 1337 (10th Cir. 1994).  An expert is "required to possess 'such skill, experience or knowledge in that

---

[1] All testimony from Mr. Whidden's deposition cited in this brief is included in Ex. 5.

particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for the truth.'" *LifeWise Master Funding v. Telebank,* 374 F.3d 917, 928 (10th Cir. 2004).

In construing Fed. R. Evid. 702, the United States Supreme Court requires that trial courts act as gatekeepers by excluding unreliable expert testimony. *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). In their role as gatekeepers, trial courts must determine whether the proffered scientific testimony is both reliable and relevant. *Daubert,* 509 U.S. at 598. This requires a two-part inquiry: First, to assess reliability, the court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid." *Bitler v. A.O. Smith Cor*p., 391 F.3d 1114, 1120 (10th Cir. 2004) (quoting *Daubert*, 509 U.S. at 592-93). The Court must then determine whether the testimony is sufficiently relevant to the case, *i.e.*, whether it is helpful to the trier of fact. *Daubert*, 509 U.S at 591-93.

In reviewing whether an expert's testimony is reliable, the trial court must "assess the reasoning and methodology underlying the expert's opinion." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003) (quoting *Daubert,* 509 U.S. at 592-93). The Supreme Court in *Daubert* identified certain non-exclusive factors that may be considered: "(1) whether the opinion at issue…has been…test[ed]; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community." *Dodge*, 328 F.3d at 1221-23 (10th Cir. 2003)

(quoting *Daubert*, 509 U.S. at 593-94). Although the court should focus on an expert's

methodology rather than the conclusions generated, the experts' conclusions are not immune

from scrutiny if the court determines that "there is simply too great an analytical gap between the

data and the opinion offered." *Id.*, 328 F.3d at 1222 (quoting *General Elec. Co. v. Joiner*, 522

U.S. 136, 146, 139 L. Ed. 2d 508, 118 S. Ct. 512 (1997)).

In determining whether the testimony will assist the trier of fact, the court should consider

such factors as whether the expert's testimony is relevant and whether it may usurp the jury's

primary role as the evaluator of the evidence. *U.S. v. Rodriguez-Feliz*, 450 F.3d 1117, 1123

(10th Cir. 2006); *U.S. v. Richter*, 796 F.3d 1173, 1195-96 (10th Cir. 2015).

The proponent of the evidence has the burden of proving that the expert has sufficient

expertise, *see LifeWise*, 374 F.3d at 928, and that the methodology used is reliable and the expert

opinion will aid the trier of fact. *See Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 883-84

(10th Cir. 2005).

## ARGUMENT

I.   **MR. WHIDDEN'S EXPERT OPINIONS THAT HIS OCTOBER 2016 LAYOFF DECISION WAS CORRECT AND NON-DISCRIMINATORY IS NOT RELIABLE UNDER *DAUBERT*.**

   A.   **Mr. Whidden's First "Expert" Opinion Regarding the Validity of His Selection of Employees for Layoff is Based on His Personal Impressions and Observations Rather than Any Facts, Data, Process, or Methodology.**

It is clear from Mr. Whidden's deposition testimony that he did not use any objective

measures or process to select employees for the October 2016 layoff. In describing the factors

that he used, Mr. Whidden testified, "I went through, in my mind, the people that I felt like we

needed to keep, the people that I felt like we absolutely could not do without, and that was the

6

list to keep, and then that, therefore vets out the ones that didn't make the list." Ex. 5, Whidden Dep. 116:9-17. *See also id.* 154:21-155:7, 212:2-6. In other words, Mr. Whidden used the process of elimination to "g[e]t rid of the people that [he] didn't think were essential." *Id.* 121:21-122:1. To determine who was "essential," Mr. Whidden relied exclusively on his own personal observations about each employee's skill sets and his/her ability to support all of Mesa County's hardware and software systems and his memory of prior, general feedback from managers and clients. *Id.* 154:21-156:4, 236:16-21, 238:24-239:5, 239:18-20, 241:16-18, 265:20-266:5, 268:7-18, 273:20-25, 341:1-3. *See also id.* 221:20-223:23 (testifying he relied on his observations of Ms. Bouricius over the years they worked together although he had not worked directly with her or had daily interaction with her for two years prior to the layoff).

In making the list of employees to lay off, Mr. Whidden did not:

- Discuss the details regarding who he was selecting with anyone, *id.* 153:13-20;

- Document his decision to terminate specific employees, *id.* 153:21-24;

- Look at job descriptions to determine employee's skill sets, *id.* 156:5-7;

- Look at employees' performance reviews or disciplinary records, *id.* 156:8-10, 219:12-15, 235:9-13;

- Look at employees' years of seniority, *id.* 192:6-15;

- Look at employees' personnel files or historical records or talk to anyone to determine employees' skills or experience at the County before his tenure, *id.* 236:8-21, 253:3-16, 342:9-13;

- Look to see whether the County's policies or procedures were followed, *id.* 161:13-19;

- Consider whether experienced employees could be moved into different IT roles, *id.* 255:9-24;

- Consider employees' level of education or degrees in computer science, *id.* 260:21-261:1;

- Look at the County's salary compensation table, *id.* 271:4-18;

- Talk to the Commissioners about who he was intending to lay off, *id.* 117:2-118:16; 129:21-24;

- Consult with counsel regarding the specific individuals selected for the layoff, *id.* 164:12-165:12;

- Consult with Ms. Bouricius's direct supervisor regarding her skill set although he was the person most knowledgeable about her skills, *id.* 219:19-220:7, 221:12-19;

- Inquire about Ms. Bouricius's ability to work with different software systems or her experience at the County with hardware, desktop user support, or network/server administration. *Id.* 240:21-24, 247:17-20, 254:3-23, 273:9-14. *See also* 252:4-15 (testifying that he made assumptions about Ms. Bouricius's skill set because she was "on the software side of the house" and is "not a hardware person").

Once Mr. Whidden finalized his list of employees to lay off, he ran it by two of the three managers in the IT Department, asking them whether there was anyone on the list that the County "couldn't live without." *Id.* 126:4-14. He did not tell those managers why he selected the people on the list, *id.* 139:23-140:6, nor did he include in the meeting the third IT manger, who was Ms. Bouricius's direct supervisor, because he was also on the layoff list. *Id.* 220:5-221:11. Mr. Whidden's list was not subject to any further review. Despite County policy which requires the Board of Commissioners to be the final decision-makers regarding layoffs, Ex. 6, Layoff Policy (8.03), the Board did not vote on the employees selected for layoff nor discuss the selection of those individuals at any time. Ex. 5, Whidden Dep. 129:18-20; 130:2-4.

Mr. Whidden did not do any additional investigation or analysis in rendering his "expert" opinion that he correctly chose the people who were laid off in October 2016, using the above-described "process." He testified that this opinion is based exclusively on his "knowledge of the

staff and their performance up to that point of time" and "the experience and the interaction that [he has] had with the IT staff." *Id.* 148:15-149:20. He did not look at any documents, talk to anyone, or consider any performance-related information. *Id.* 149:21-150:3, 154:4-10.

Mr. Whidden further testified that the only pre-layoff facts he considered in rendering his expert opinion were that the County was facing budgetary issues and had to make 1.4 million dollars in cuts. *Id.* 150:22-151:3; 152:10-17. The only post-layoff fact that informed his opinion was that the IT Department has operated successfully since the layoff. *Id.* 174:9-14. He did not:

- Conduct or direct anyone at the County to conduct an internal investigation of Ms. Bouricius's complaint of age discrimination, *id.* 177:18-178:2;

- Consider the results of the investigation of Ms. Bouricius's charge of discrimination conducted by the Colorado Civil Rights Division (CCRD), *id.* 179:13-18;

- Know or believe it important to know that the CCRD determined there was probable cause to believe that Ms. Bouricius was discriminated against by Mesa County based on her age, *id.* 182:25-183:4;

- Discuss the CCRD's probable cause determination with anyone, *id.* 189:9-15.

Based on Mr. Whidden's testimony, it is clear that he did not employ *any type of objective process or standards* in determining who to select for layoff and later opining that he was correct in his selection, let alone a scientific methodology that has been tested, published, and/or peer reviewed, rendering his opinion inherently unreliable. *See, e.g., U.S. v. Crabbe*, 556 F.Supp.2d 1217, 1231 (D. Colo. 2008) (expert's methodology cannot be held reliable "without a description of the objective framework that [the expert] applied and the manner in which it was applied"). Since Mr. Whidden's expert opinion regarding the validity of his decision-making

does not satisfy *any* of the four *Daubert* reliability factors, it must be precluded on this basis alone.

> **B.  Mr. Whidden's Second "Expert" Opinion that the Layoff Was Not Tainted by Age Discrimination is Also Unreliable Because It Is Not Based on Any Legal or Human Resources Expertise, Standards, Process, or Methodology.**

Mr. Whidden's second expert opinion that all the October 2016 terminations were legal and that no employees were discriminated against based on age, Ex. 5, Whidden Dep. 173:13-21, 196:15-19, 201:15-20, 210:24-211:19, is also highly unreliable because Mr. Whidden lacks the requisite credentials to opine on the legality of his actions and did not use any standards, process, or methodology to make such a determination.

> **1.  Mr. Whidden Has No Experience or Expertise in Investigating or Evaluating Claims of Discrimination.**

Under *Daubert*, an expert's testimony must be based on scientific knowledge, which "'implies a grounding in the methods and procedures of science' based on actual knowledge, not subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 599. The expert must "employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of any expert in the relevant field." *Kumho Tire Co*., 526 U.S. at 152. The expert testimony "must be excluded if the expert is unqualified to render an opinion of the type proffered . . .." *Bullock v. Daimler Trucks N. Am., LLC,* No. 08-CV-00491, 2010 U.S. Dist. LEXIS 108708, at *5 (D. Colo. Sept. 30, 2010).

Mr. Whidden's proffered expertise lies only in managing IT departments. Ex. 5, Whidden Dep. 144:24-145:4; *see also id.* 38:10-16.  Although he was also the Director of Human Resources for Mesa County for approximately five years, he does not have any HR credentials, certification, or training or experience in anti-discrimination law, *id.* 49:13-21, and was not

designated as an expert in Human Resources. Ex. 4, Defendant's Rebuttal Expert Witness Disclosure.

As the Director of the HR and the IT Departments, Mr. Whidden has not provided any trainings to employees on discrimination or personally investigated any complaints of discrimination. Ex. 5, Whidden Dep. 100:5-8, 207:8-15. He testified that, throughout his career, he has not been made aware of *any* complaints of illegal discrimination made by an employee that he manages although at least five such complaints (sex and/or age discrimination) have been made against him. *Id.* 207:4-7, 311:24-312:1. *See also* Ex. 7, 4/22/19 Deposition of Janine Corsi 14:1-23 (describing sex harassment complaint against Whidden); Ex. 8, "Mesa County Hired Outside Investigator for Allegation," *The Grand Junction Daily Sentinel* (discussing sexual harassment allegations against Whidden). He additionally testified that he is unaware of a former Mesa County employee's age discrimination lawsuit in 2013, and as the Director of HR, has never tried to ascertain whether the "age spreadsheet" identifying County employees over age fifty, which was addressed in that case, actually exists. Ex. 5a, Whidden Dep. (restricted) 304:15-305:22. Furthermore, when former employee Janine Corsi, who was also laid off in October 2016, pointed out at the joint termination meeting that only the most senior employees were being laid off, Mr. Whidden did not construe her statement as a complaint of age discrimination, document it in writing, initiate an investigation, or report it to anyone, including counsel. Ex. 5, Whidden Dep. 288:1-8, 289:25-291:25. Thus, Mr. Whidden, who admitted that he is not "not a legal expert," *id.* 198:11-18, and was not designated as an HR expert, is not qualified to opine on whether his decision was discriminatory based on age.

   **2. Mr. Whidden Did Not Do Any Independent Investigation or Analysis of Facts or Data or Utilize any Type of Standards, Process, or Methodology to Render His Opinion About the Legality of the Layoff.**

In rendering his "expert" opinion about the legality of the layoff, Mr. Whidden relied exclusively on the advice of counsel. *See id.* 173:13-21, 176:5-13. He did not base his opinion on *any* independent investigation or analysis of the facts. Mr. Whidden testified that, in forming this opinion, he did not look at whether the policies and procedures of the County for layoffs were followed. *Id.* 176:5-13. He did not review any investigations conducted by the County into allegations of discrimination. *Id.* 202:12-16. Nor did he review the findings of the CCRD with respect to the claims of age discrimination by Ms. Bouricius and two of the other employees laid off in October 2016 (Rick and Janine Corsi). *Id.* 203:1-205:2; *see also id.* 213:4-7. Moreover, he does not believe that the CCRD's findings of probable cause in all three cases is important to his expert opinion on the legality of his decision. *Id.* 187:3-13; 204:17-205:2. Given Mr. Whidden admitted that he did not base his second "expert" opinion on the legality of the layoff on any facts, data, standards, process, or methodology, but rather what he was told by counsel – although he never informed counsel whom he intended to terminate, *id.* 164:3-165:7, his opinion does not satisfy any of the *Daubert* reliability factors and should be precluded as well.

**II. MR. WHIDDEN'S EXPERT OPINIONS ABOUT THE VAILIDITY AND LEGALITY OF HIS LAYOFF DECISION WILL NOT ASSIST THE TRIER OF FACT.**

Even if this Court were to determine that Mr. Whidden's expert opinions regarding the validity and legality of his layoff decision are reliable, it should nevertheless strike the opinions because they usurp the role of the jury and are simply an attempt to bolster the credibility of Defendant's only witness. Throughout his deposition, Mr. Whidden offered opinions about the

12

central facts in the case and how the jury should interpret those facts to conclude that the County did not engage in age discrimination. In fact, there was no distinction between his expert opinions and his fact and 30(b)(6) testimony; on the contrary, Mr. Whidden testified that there was no additional information that he could provide regarding the matters identified in the 30(b)(6) designation that he had not already shared with his expert opinion. *Id.* 337:7-22; *see also id.* 337:24-343:22. Thus, Mr. Whidden is attempting to use his status as an "expert" in this case to bolster his fact testimony about the decision he made, which makes his expert opinion inherently unreliable and unhelpful. *See, e.g., Chen-Oster v. Goldman, Sachs & Co.,* 114 F. Supp. 3d 110, 124 (S.D.N.Y. 2015) (finding expert witness testimony unreliable because there was a significant danger of bias because managers were asked to justify their own compensation decisions).

Moreover, a jury does not need an IT expert to tell them how to apply the law. All Mr. Whidden seeks to convey through his "expert" opinion that his layoff decision was not based on age is his counsel's legal position on the evidence, which is the job of the jury to assess. An expert witness *may not* offer an opinion that states a legal conclusion. "In no instance can a witness be permitted to define the law of the case" or "direct the jury's understanding of the legal standards upon which their verdict must be based." *Specht v. Jensen,* 853 F.2d 805, 810 (10th Cir. 1988).

By rendering an expert opinion on the ultimate factual and legal issues in the case, Mr. Whidden is impermissibly usurping the jury's role to determine what the evidence means in this case. "[A]n expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can

exercise independent judgment." *Richter*, 796 F.3d at 1195-96 (quotation omitted). Expert testimony on ultimate issues is only permissible when it "provides the jury with the tools to evaluate [the] expert's ultimate conclusions and focuses on questions of fact that are amenable to the … specialized knowledge within the expert's field." *Id.* Mr. Whidden's testimony fails to provide the jury with such tools because, as discussed *supra*, he formed his opinions based on subjective observations and impressions rather than any objectively verifiable facts or methodology. The jury is fully capable of applying the law, as instructed by the Court, to the facts and nothing Mr. Whidden, the County's sole decision-maker and primary fact witness, intends to proffer can aid in that endeavor.

WHEREFORE, Plaintiff respectfully requests that this Court preclude any expert witness testimony by Frank Whidden.

Respectfully submitted this 4th day of September 2019.

KING & GREISEN, LLP

*s/ Jennifer W. Bezoza*
Paula Greisen
Jennifer Weiser Bezoza
King & Greisen, LLP
1670 York Street
Denver, CO 80206
(303) 298-9878 (voice)
(303) 298-9879 (fax)
greisen@kinggreisen.com
bezoza@kinggreisen.com

*Attorneys for Plaintiff*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of September 2019, the foregoing **PLAINTIFF'S MOTION PURSUANT TO FED. R. EVID. 702 TO STRIKE FRANK WHIDDEN'S EXPERT DESIGNATION AND EXPERT WITNESS OPINIONS** was filed electronically using the U.S. Court's CM/ECF, which caused a copy of the same to be served electronically to the following:

Michael Santo
Alicia Severn
Bechtel Santo & Severn
205 N. 4th Street, Suite 300
Grand Junction, CO 81501
santo@bechtelsanto.com
severn@bechtelsanto.com

*Attorneys for Defendant Mesa County*

*s/ Laurie A. Mool*
Laurie A. Mool, Paralegal
