**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 18-CV-01144-DDD-STV

DEBRA BOURICIUS,
        Plaintiff,

v.

MESA COUNTY, by and through the Mesa County Board of County Commissioners,
        Defendant.

---

**MESA COUNTY'S RESPONSE TO PLAINTIFF'S MOTION PURSUANT TO FED. R. EVID. 702 TO STRIKE FRANK WHIDDEN'S EXPERT DESIGNATION AND EXPERT WITNESS OPINIONS (CM/ECF DOCUMENTS 75-77, FILED ON SEPTEMBER 4, 2019)**

---

Mesa County, by and through the Mesa County Board of County Commissioners, responds to Plaintiff Debra Bouricius's Motion Pursuant to Fed. R. Evid. 702 to Strike Frank Whidden's Expert Designation and Expert Witness Opinions ("Motion") as follows.

### I. Background

1.      Bouricius filed a complaint on May 11, 2018, alleging Mesa County discriminated against her based on her age, thus violating the Age Discrimination in Employment Act ("ADEA"), when it laid off Bouricius and other employees from the IT Department. *See* Compl. and Jury Demand (Doc 1), ¶¶2-3, 41-46.

2.      Mesa County denies Bouricius's allegations. Ans. to Compl. and Jury Demand (Doc 9) ¶¶2-3, 41-46.

3.      At the time of her separation, Bouricius worked as a Senior Business Systems Analyst. Ex. A (Bouricius Dep., 182:2-8).

1

4.     Frank Whidden, Mesa County's former IT Director, County Administrator, and Human Resources Director, decided who to layoff in the IT Department after receiving authority from the Board of Commissioners ("Board") to implement layoffs. Ex. B (Whidden Dep., 114:18-22, 347:20-24).

5.     Whidden's job duties as the IT Director included: (1) "implement[ing] the policies that the [B]oard has given to [Whidden]" (Ex. B, Whidden Dep., 37:15-19); (2) "oversee[ing] the day-to-day affairs of the County" (*Id.* at 37:19-20); (Ex. 5, Whidden Dep., 38:2-3); (3) "involve[ment in IT] because … [Whidden's] expertise really lies [in IT]…and what's happening, the systems and how they run, and what [the IT Department is] going to do, how [the IT Department is] going to do it…" (Ex. 5, Whidden Dep., 38:10-16); and (4) "the overall function of IT…[including] talk[ing] to the managers and sometimes the staff that were [in the IT Department] about various projects, what was happening…" (Ex. B, Whidden Dep., 66:10-14).

6.     Contrary to Bouricius's assertions in her Motion, Whidden was not required to follow any policy with respect to implementing the layoffs after he received authority from the Board. Ex. B (Whidden Dep., 347:16-24); Ex. C (Justman Dep., 88:24-89:3).

7.     Instead, Whidden decided which employees in the IT Department to layoff based on his evaluation of employees' performances and determination of which employees were essential to the IT Department's operations. Ex. B (Whidden Dep., 114:18-22); Ex. 5 (Whidden Dep., 116:9-17).

8.     Whidden had the experience, training, and education to determine "what it takes to run an IT department, the skills that are necessary to run that IT department, and what the

likelihood of success is in an IT department, so issues surrounding IT and how IT should be run." Ex. 5 (Whidden Dep., 147:7-13).

9.      On April 5, 2019, Mesa County identified that Whidden would testify as a non-retained expert witness (Ex. 4, Def.'s Rebuttal Expert Witness Disclosure, with an update provided on July 8, 2019 (Ex. D, Def.'s Amend. Rebuttal Expert Witness Disclosure)). Mesa County's non-retained expert witness designation stated that Whidden would testify:

> regarding his experience and expertise, based on his knowledge gained over years of experience, education, and training, regarding managing information technology departments, including Mesa County's information technology department; the positions in information technology departments, including Mesa County's information technology department; the skill sets needed in information technology departments, including Mesa County's information technology department; and Mesa County's needs in its information technology department.

Ex. 4 (Def.'s Rebuttal Expert Witness Disclosure, p. 3).

10.     These topic designations were based on the facts that Whidden holds three degrees related to management and/or computer science and that Whidden has worked in multiple areas of information technology for approximately 27 years. *See* Ex. 4 (Def.'s Rebuttal Expert Witness Disclosure, pp. 2-3).

11.     Bouricius deposed Whidden on July 11, 2019. Ex. 5 (Whidden Dep., 1).

12.     On September 4, 2019, Bouricius moved to strike Whidden's designation as an expert witness along with Whidden's expert witness opinions. *See* Mot. (Doc 75).

## II. Argument

### A.      Applicable Legal Standards.

F.R.C.P. 26(a)(2) provides for the designation of two types of expert witnesses: retained and non-retained expert witnesses. Under this Rule, "[t]he proponent of the evidence bears the burden of establishing that its proffered expert's testimony is admissible." *Gallegos v. Swift & Co.*, 237 F.R.D. 633, 638 (D.Colo. 2006) (citation omitted). Here, in her Motion, Bouricius does not substantively challenge Mesa County's designation of Whidden as a non-retained expert witness. Rather, Bouricius challenges the reliability and assistive value to a jury of topics on which Bouricius questioned Whidden during his deposition that were outside Mesa County's non-retained expert witness designation regarding Whidden. Mot., pp. 4, 6-14.

That is, in this case, Mesa County designated Whidden as a non-retained expert witness regarding the performance of his job duties. Ex. 4 (Def.'s Rebuttal Expert Witness Disclosure, pp. 2-3). Such designation did not require Mesa County to prepare and submit a written report, as opposed to a retained expert witness. F.R.C.P. 26(a)(2)(B), (C); Ex. 4 (Def.'s Rebuttal Expert Witness Disclosure, pp. 2-3). So, while Bouricius claims in her Motion that non-retained expert testimony must be based on scientific methods, her assertion is misplaced because courts instead evaluate whether non-retained expert witnesses are properly identified by examining whether the proffered non-retained expert's testimony is reliable, relevant, and assistive to the jury.

For example, in *Guara v. City of Trinidad*, No. 10-CV-02529-WJM-KMT, 2012 WL 4464052, *1-2 (D.Colo., Sept. 27, 2012), the defendants proffered two non-retained expert witnesses, Timothy Leary and Judge John Garcia, to provide "testimony in the fields of employee complaints and investigations." Mr. Leary based his expert opinions on his work as a private

investigator and police investigator who handled personnel matters. *Id*. at *2. Similarly, Judge Garcia based his expert opinions on his work as a municipal judge and supervisor. *Id*. at *3.

Finding Mr. Leary and Judge Garcia to be qualified witnesses, the court then examined whether their testimonies were: (1) reliable; (2) relevant; and (3) not in circumvention of the jury's role. *Id*. at *2-*4. The court relied on *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999), and held that Mr. Leary's and Judge Garcia's testimonies were reliable opinions even though they were not subject to scientific methodology under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 582 (1993). *Id*. at *3. While the relevance of Judge Garcia's testimony was not at issue, the court held Mr. Leary's testimony was relevant because Mr. Leary's investigation contradicted the plaintiff's claims underlying the litigation. *Id*. Finally, with respect to the assistive value Mr. Leary's and Judge Garcia's testimonies provided to the jury, the court held that "Fed.R.Evid. 704(a) provides that opinion testimony that otherwise is admissible 'is not objectionable because it embraces an ultimate issue to be decided by the trier of fact,'" but the trial judge would be required to decide if one of the non-retained expert witnesses testified regarding legal conclusions, which "likely would not be allowed under [F.R.E.] 702." *Id*. at *4. Thus, Mr. Leary's and Judge Garcia's non-retained expert testimony satisfied F.R.E. 702 and was permitted to be presented at trial. *Id*. at *1, *4.

Other courts also examined whether non-retained expert witness testimony was proper when the testimony was based on the individual's percipient knowledge. *See*, *e.g.*, *Ark. River Power Auth. v. The Babcock & Wilcox Co.*, No. 14-cv-00638-CMA-NYW, 2016 WL 192269, *6 (D.Colo., Jan. 15, 2016) (non-retained expert witness testimony was limited to the "percipient knowledge and opinions arising from the performance of their normal, professional duties"); *U.S.*

*v. Sierra Pacific Indus.*, No. CIV S-09-2445 KJM EFB, 2011 WL 2119078, *4 (E.D.Ca., May 26, 2011) (explaining non-retained expert witnesses as those for whom their "opinion is based on information the expert witness acquired through percipient observations").

Here, Whidden's testimony as a non-retained expert witness satisfies the reliability, relevancy, and assistive value to the jury standards, and his proffered testimony is based on Whidden's own percipient knowledge.

**B.     Bouricius does not dispute that Whidden is qualified to provide testimony on all topics identified in Mesa County's Rebuttal Expert Witness Disclosure.**

In her Motion, Bouricius alleges that Whidden's opinions about two issues are unreliable. First, Bouricius alleges that Whidden offers an expert opinion regarding the validity of his selection of employees to be laid off in Mesa County's IT Department, which selection, Bouricius argues, is unreliable because Whidden did not consider particular factors. Mot., pp. 6-9. Second, Bouricius alleges that Whidden also offers an expert opinion that his layoff selections were not discriminatory, which opinion, Bouricius argues, is unreliable because Whidden's background and experience do not include legal matters. *Id*. at pp. 10-12. Thus, Bouricius alleges, Whidden's alleged expert opinions on these topics would not assist a jury in reaching conclusions about factual issues in this case. *Id*. at pp. 12-14. Mesa County addresses these allegations in Parts II.B.1-2, *infra* at pp. 7-15.

Critically, neither topic addressed in Bouricius's Motion (i.e., the validity of Whidden's selections of employees to be laid off and Whidden's alleged opinion regarding the legality of the layoff) is identified in Mesa County's non-retained expert witness designation. Instead, Mesa County's designation of topics includes Whidden's:

- "experience and expertise, based on his knowledge gained over years of experience, education, and training, regarding managing information technology departments, including Mesa County's information technology department" (Ex. 4, Def.'s Rebuttal Expert Witness Disclosure, p. 3);

- "the positions in information technology departments, including Mesa County's information technology department" (Ex. 4, Def.'s Rebuttal Expert Witness Disclosure, p. 3);

- "the skill sets needed in information technology departments, including Mesa County's information technology department" (Ex. 4, Def.'s Rebuttal Expert Witness Disclosure, p. 3); and

-  "Mesa County's needs in its information technology department" (*see* Part II.C, *infra*) (Ex. 4, Def.'s Rebuttal Expert Witness Disclosure, p. 3).

Because Bouricius has not challenged these designated topics, and instead focuses only on Whidden's deposition testimony in response to her counsel's deposition questions, Whidden must be permitted to provide non-retained expert witness testimony on the topics identified in Mesa County's designation notice.

    1.    *Whidden has not been designated as a retained expert witness nor to testify about whether Mesa County's 2016 layoff complied with legal requirements.*

Bouricius contends that Whidden should be precluded from opining on whether the October 2016 layoffs in the IT Department were lawful.[1] Mot., pp. 10-12. But Bouricius's

---

[1] Bouricius never conferred with counsel regarding the substance of her Motion filed with the Court on September 4, 2019. Rather, Bouricius simply indicated that she intended to file "a

argument misconstrues Whidden's designation as a non-retained expert witness and attempts to impermissibly graft Whidden's deposition testimony onto Mesa County's designation notice. That is, as set forth in Ex. 4, Mesa County did not designate Whidden to testify about the legality of any issue. And it is well settled that a non-retained expert witness cannot provide testimony outside the scope of the witness's designation. *See*, *e.g.*, *Beal v. Allard*, No. 17-2112-DDC-GEB, 2018 WL 5884541, *4 (D.Kan., Nov. 9, 2018). Simply because Bouricius asked questions about legal matters during Whidden's deposition does not mean that Whidden was designated by Mesa County as a non-retained expert witness to testify to such topics, particularly when Mesa County's counsel objected to such inquiries. Ex. B (Whidden Dep., 158:3-161:4).

Indeed, Whidden testified that he relied on counsel's advice regarding the legality of his layoff decisions, so legal issues were not "part of [his non-retained] expert opinion." Ex. B (Whidden Dep., 186:21-187:2[2]); *see also* Ex. 5 (Whidden Dep., 201:6-7) (testifying, "I [Whidden] do not have an expert opinion as an expert about legal compliance.").

The fact that Whidden was designated as a non-retained expert witness and also as a fact witness and a 30(b)(6) witness does not change this analysis. After all, even though Whidden is not designated as a non-retained expert to testify about legal compliance, as a corporate representative for purposes of Mesa County's 30(b)(6) deposition, Whidden was required to obtain the knowledge of Mesa County with respect to the reasons why Mesa County asserted that

---

Daubert Motion to strike Frank Whidden's expert designation and expert witness opinions." Ex. F (Emails between counsel, August and September 2017). No substantive information was provided, so Mesa County's counsel could not identify whether "any disputed matter" was at issue nor attempt to resolve it. D.C.COLO.LCivR 7.1(a).

[2] Mesa County specifically does not waive any attorney-client privilege claim it may have by citing herein Whidden's deposition testimony related to this topic.

Bouricius was not fired because of her age (Ex. G, Second Revised Notice of 30(b)(6) Deposition, Matter 8 (referring to Compl. and Jury Demand (Doc 1), ¶3 and Ans. to Compl. and Jury Demand (Doc 9), ¶3)); and "[t]he factual basis for the following defense…: 'Mesa County undertook actions in good faith that were based on legitimate, lawful, justified, and nondiscriminatory reasons and were based on reasonable factors other than Ms. Bouricius's age.'" (Ex. G, Second Revised Notice of 30(b)(6) Deposition, Matter 24[3]). *U.S. v. Taylor*, 166 F.R.D. 356, 362 (M.D.N.C. 1996) (explaining that organizational parties "must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits."). Indeed, Bouricius's counsel stated she intended to ask Whidden questions in all capacities, stating, "I may come in and out, depending on my question." Ex. 5 (Whidden Dep., 156:19-20).

Thus, the information on which Whidden bases his non-retained expert opinions may or may not be the same as the information on which he bases an opinion provided as a 30(b)(6) witness, and this fact does not discredit either Whidden's expert testimony nor his 30(b)(6) or fact witness testimony, as Bouricius alleges. *See*, *e.g.*, *U.S. v. Alamos-Delgado*, No. 10-CR-00327-MSK, 2015 WL 8479687, *4 (D.Colo., Dec. 10, 2015) (finding, "The Court had no difficulty in finding that FBI agent's testimony about 'narcotics code words' derived from the agent's experience was expert testimony, while on the other hand, the agent's testimony about conclusions the Government reached as its investigation progressed was lay testimony from a fact witness.");

---

[3] Contrary to Bouricius's assertion, Whidden was not designated to testify regarding all topics set forth in Bouricius's Second Revised Notice of 30(b)(6) Deposition. Rather, Mesa County and responded to 30(b)(6) Deposition Topics 7, 12-14, 21-23, 26, and 30 as though these topics were submitted as written discovery requests. Ex. H (Def.'s Responses to Pl.'s Deposition Topics 7, 12-14, 21-23, 26, 30).

*Garcia v. Patton*, No. 14-CV-01568-RM-MJW, 2015 WL 13613521, *4 (D.Colo., July 9, 2015). (noting that a non-retained expert witness was also designated as a fact witness). So, while Whidden may provide deposition testimony as a 30(b)(6) or a fact witness about the reasons why Mesa County's layoff decisions were lawful, Whidden did not provide that information in his capacity as a non-retained expert witness and, similarly, Mesa County did not designate Whidden to testify about legal compliance in its designation notice.

Consequently, since Whidden was not designated to testify as a non-retained expert witness about the legality of any decision or action, there is no non-retained expert witness designation at issue with respect to this matter for this Court to strike. Further, Whidden may properly provide a 30(b)(6) or lay witness opinion regarding the legality of Mesa County's actions or other topics, as provided in F.R.E. 701.

2.  *Whidden's experience, training, and education supported his decision regarding which employees to layoff, thus making the process by which he made those decisions reliable.*

Second, Bouricius claims that Whidden's non-retained expert witness testimony related to the selection of individuals to be laid off and the validity of those selections is unreliable because he "did not use any objective measures or process to select employees[4] for the October 2016 layoff" nor any "scientific methodology that has been tested, published, and/or peer reviewed…" Mot., pp. 7, 9. But Bouricius's assertion that Whidden's non-retained expert witness testimony regarding his layoff selections must rely on a scientific basis misstates Mesa County's designation of Whidden as a non-retained expert witness and attempts to apply inapplicable legal requirements

---

[4] Bouricius brought her complaint on her own behalf and not as a class action. Compl. (Doc 1). Thus, decisions affecting other employees is not relevant to Bouricius's claim.

10

to Whidden. After all, as recognized in *Kumho Tire Co.*, 526 U.S. at 141, "[T]he test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." Also, as *Guara*, No. 10-CV-02529-WJM-KMT, 2012 WL 4464052, at *2-*3 and *Ark. River Power Auth.*, No. 14-cv-00638-CMA-NYW, 2016 WL 192269, at *6, pointed out, individuals may be identified as non-retained expert witnesses in their own jobs and on non-scientific topics. Thus, there is no requirement that non-retained expert witnesses' testimonies be based on scientific methodology, as Bouricius alleges. *See* Mot., pp. 4-10, 12.

Here, Whidden testified regarding the reasons he chose to lay off employees in the IT Department. Indeed, Whidden explained why, based on his education, training, and experience in operating IT departments and Mesa County's needs, he made decisions to retain some employees but not others. Ex. 5 (Whidden Dep., 147:7-13, 149:18-20, 155:1-12, 173:9-12, 182:11-15); Ex. B (Whidden Dep., 215:21-216:3). Specifically, Whidden provided testimony with respect to how his education, training, and experience led him to decide to layoff Bouricius but not other employees, including:

- Kelly Leuallen (Ex. B, Whidden Dep., 216:4-218:13, 242:7-18; Ex. 5, Whidden Dep., 340:11-13) (Mr. Leuallen was "more knowledgeable about more systems," stayed current on industry changes, and had stronger customer service and documentation skills.);

- Terrie Hotary (Ex. 5, Whidden Dep., 238:15-239:20, 240:12-20; Ex. B, Whidden Dep., 241:5-242:3) (Ms. Hotary had stronger customer service skills and learned new systems, including New World, a system Whidden determined to be "critical" to Mesa County.);

- Lori Marak (Ex. B, Whidden Dep., 242:19-243:3, 243:9-245:6; Ex. 5, Whidden Dep., 340:7-10) (Ms. Marak was the lead on critical system New World and had institutional knowledge about systems.);

- Elizabeth McDowell (Ex. B, Whidden Dep., 246:17-247:1, 247:22-249:1, 249:12-21, 250:2-8; Ex. 5, Whidden Dep., 341:17-21) (Ms. McDowell worked on New World and in GIS and tax whereas Bouricius did not work in these areas.);

- David Underwood (Ex. B, Whidden Dep., 251:5-15; Ex. 5, Whidden Dep., 339:24-340:3) (Mr. Underwood had strong customer service skills and experience working with hardware, whereas Bouricius worked on software.);

- Andrew Wetzel (Ex. 5, Whidden Dep., 252:16-253:2) (Mr. Wetzel had experience working with hardware and in networking whereas Bouricius did not work in these areas.);

- Joseph Keene and Leilani Boyles (*Id*. at 253:17-255:8, 341:4-16) (These employees worked in web administration and Bouricius did not work in this area.);

- Lhana Jordan (Ex. B, Whidden Dep., 273:15-275:15; Ex. 5, Whidden Dep., 339:15-23) (Ms. Jordan had experience working with hardware and had strong customer service skills.);

- Troy Flick (Ex. 5, Whidden Dep., 340:4-6) (Mr. Flick had hardware and management experience.);

- Chris Kadel (*Id*. at 340:14-341:3) (Mr. Kadel worked in GIS and mapping, and Bouricius did not work in these areas.);

- Eric Farslow (*Id*. at 342:18-343:5) (Mr. Farslow had experience working with hardware.); and

- Other employees (Ex. B, Whidden Dep., 218:22-25, 251:16-252:3; Ex. 5, Whidden Dep., 341:22-342:8) (Other employees worked on systems and on hardware that Whidden believed were important and required coverage, and at least one employee, Paul, had what Whidden believed to be "tremendous" customer service and help desk skills.).

Whidden also testified about how Bouricius's skills and performance affected his decision to include her in the layoff. Ex. B (Whidden Dep., 234:1-18, 236:16-237:3, 237:16-238:6, 247:17-20); Ex. 5 (Whidden Dep., 235:14-24).

Further, Whidden described how he used his experience, training, and education to decide to layoff Rick Corsi, explaining Rick Corsi did not have the skills to do Mr. Flick's or Ms. Jordan's job, which required expertise in areas such as hardware, networking, servers, and other areas and in which Rick Corsi did not have experience. Ex. B (Whidden Dep., 224:3-225:1, 225:13-16, 225:23-226:7, 226:17-227:18, 267:17-268:18, 272:17-273:14). Similarly, Whidden also described how he used his experience, training, and education to decide to layoff Janine Corsi, deciding that Janine Corsi did not perform well in replacing Mesa County's email system and had weaker networking, security, and database administration skills compared to other employees. Ex. B (Whidden Dep., 227:21-230:20, 233:3-11, 259:20-261:18, 262:2-20, 264:23-266:5). Thus, Whidden spent considerable time explaining how his background and percipient knowledge led him to decide to layoff certain individuals in the IT Department, making his opinions reliable. All of these decisions were based on Whidden's percipient knowledge.

Moreover, Bouricius cites no source for her argument that Whidden was either required to evaluate, or should have evaluated, the factors identified by bullet points in her Motion at pages 7-9.[5] In short, Bouricius's argument attempts to impermissibly apply legal standards applicable to <u>retained</u> expert witnesses to a <u>non-retained</u> expert witness. That is, non-retained expert witnesses, particularly those who are or were employees of the defendant organization, are properly designated as non-retained expert witnesses based on their percipient knowledge. *Garcia*, 2015 WL 13613521 at *4. Thus, non-retained expert witnesses, such as Whidden, glean their expert opinions from performing the duties of their jobs which, in this case, included the way in which Mesa County's IT Department functioned and needed to function after a layoff was implemented. *See* Part I, ¶6, *supra*. So, because these are the topics Mesa County designated in its notice, Whidden's non-retained expert testimony is reliable, as explained by the *Guara* court and other courts.

While undisputed, Whidden's evaluations relating to the reasons why he chose to lay off Bouricius, and the validity of those choices with respect to Mesa County's IT Department's needs are relevant because these issues are central to her case. That is, Bouricius alleges that Mesa County chose to include her in the layoff because of her age, which Mesa County denies. Compl. and Jury Demand (Doc 1), ¶3; Ans. to Compl. and Jury Demand (Doc 9), ¶3. As a result, since Whidden was the sole decisionmaker with respect to which employees to include in the layoff (Ex.

---

[5] It is not clear how Bouricius's assertion that Whidden should have "[c]onduct[ed] or direct[ed] [some]one at the County to conduct an internal investigation of Ms. Bouricius's complaint of age discrimination [i.e., the Charge of Discrimination Bouricius filed with the CCRD]" (Mot., p. 9) could have had any effect on Whidden's decision to layoff employees in October 2016 (Ex. E, DEF 234) because Bouricius did not file her Charge until January 2017, approximately three months after the layoff. (Ex. E, DEF 22).

5, Whidden Dep., 210:18-23), information about the reasons why he chose to include Bouricius in the layoff rather than other employees, based on his assessment of Mesa County's IT Department, is relevant and also will assist a jury in determining whether the reason for Bouricius's layoff was her age, as Bouricius contends, or factors other than age, as Mesa County contends.

**C.      Conclusion.**

There is no dispute that Whidden was properly designated as a non-retained expert witness with respect to the topics set forth in Mesa County's Rebuttal Expert Witness Disclosure, Ex. 4, and Bouricius makes no assertion to the contrary in her Motion. Because Whidden's opinions with respect to these topics are reliable, undisputedly relevant, and helpful to a jury, Whidden may testify as a non-retained expert witness with respect to these topics.

Further, Whidden was never designated as a non-retained or retained expert witness to testify regarding the legality of any layoff conduct or decision. Rather, it is permissible for Whidden to testify regarding issues identified in the notice as a 30(b)(6) or as a lay fact witness, and such a distinction is easily identifiable. Thus, there is no non-retained expert witness designation at issue for the Court to strike on this topic.

Finally, as part of Whidden's non-retained expert witness testimony about the needs of Mesa County's IT Department, his analyses about which employees to retain and which employees to layoff were based on his prior education, training, and experience in performing his job duties, as Whidden explained in great detail during his deposition. Since these opinions are reliable, relevant, and helpful to a jury, the Court must deny Bouricius's Motion to Strike Whidden's testimony about these decisions.

Respectfully submitted this 25th day of September 2019.

BECHTEL SANTO & SEVERN

*s/ Alicia W. Severn*
Alicia W. Severn, #42432
Michael C. Santo, #24083
205 N. 4th Street, Suite 300
Grand Junction, CO  81501
Telephone:  (970) 683-5888
Facsimile:  (970) 683-5887
santo@bechtelsanto.com
severn@bechtelsanto.com
Attorneys for Defendant


I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1. This Response brief contains 3,973 words.

*s/ Alicia W. Severn*
Alicia W. Severn, #42432
205 N. 4th Street, Suite 300
Grand Junction, CO  81501
Telephone:  (970) 683-5888
Facsimile:  (970) 683-5887
severn@bechtelsanto.com
Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing **MESA COUNTY'S RESPONSE TO PLAINTIFF'S MOTION PURSUANT TO FED. R. EVID. 702 TO STRIKE FRANK WHIDDEN'S EXPERT DESIGNATION AND EXPERT WITNESS OPINIONS (CM/ECF DOCUMENTS 75-77, FILED ON SEPTEMBER 4, 2019)** was served this 25th day of September 2019, via the CM/ECF electronic filing system, to the following:

Paula Greisen
Jennifer Bezoza
King & Greisen, LLP
1670 York Street
Denver, CO 80206
Telephone: (303) 298-9878
Fax: (303) 298-9879
greisen@kinggreisen.com
bezoza@kinggreisen.com
Attorneys for Plaintiff

<u>*s/ Alicia W. Severn*</u>
Alicia W. Severn, #42432
Attorney for Defendant