**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 18-cv-01144-DDD-STV

DEBRA BOURICIUS,

      Plaintiff,

v.

MESA COUNTY, by and through the Mesa County Board of County Commissioners,

      Defendant.

---

**PLAINTIFF'S RESPONSE TO MESA COUNTY'S**
**MOTION FOR SUMMARY JUDGMENT**

---

      Plaintiff Debra Bouricius, through her counsel, Jennifer W. Bezoza and Paula Greisen, of the law firm KING & GREISEN, LLP, for her Response to Defendant's Motion for Summary Judgment ("MSJ") [Doc. 73] states as follows:

**INTRODUCTION**

      This is a fact-driven employment age discrimination case. At the time of her termination, Ms. Debra Bouricius had worked in Mesa County's Information Technology (IT) Department for twenty-six years, was the oldest in her job category, and had a stellar record of performance. Nevertheless, she and five other employees over the age of forty were selected by Mesa County Administrator Frank Whidden to be laid off in October 2016 while employees with inferior qualifications under age forty were retained.

There is substantial evidence that Whidden's reason for selecting Bouricius for the layoff is pre-textual. First and foremost, Whidden, who is Defendant's *only* witness and sole decision-maker, is not credible. He has been called "less than honest" by the Mesa County Commissioners for using taxpayer money for personal gain, evaded paying income taxes, accused of sexual harassment by several employees, and found by the State of Colorado to likely have engaged in age discrimination.

In addition, Whidden's selection of Bouricius for the layoff was dishonest and made in bad faith. He did not gather any facts or data, consider any objective criteria, document his decision, provide consistent explanations, or follow the County's layoff policy. All this evidence, taken together, is sufficient for a jury to conclude that Mesa County unlawfully discriminated against Plaintiff on the basis of her age and accordingly requires that summary judgment be denied.

## PLAINTIFF'S STATEMENT OF ADDITIONAL DISPUTED FACTS

### *Bouricius's Long and Successful Career with Mesa County*

P1.     Bouricius worked in Mesa County's IT Department for twenty-six years and was the longest-serving employee in the department when she was terminated in 2016. Ex. A at 1, DEF 2144.

P2.     Throughout her employment, Bouricius earned raises and promotions. Her job title was Senior Business Systems Analyst (BSA) when she was terminated. Scheduling Order [Doc. 24] at Undisputed Facts ¶¶ 4b, 4l.

P3.     Bouricius was a consistently high-performing employee whose job performance was always satisfactory throughout her employment. Ex. B, Deposition of Frank Whidden ("F.W.Dep.") 344:21-345:2; Ex. C.

P4.     In 2014, Bouricius received a total performance rating of 9.4 out of 10, which was higher than the other Senior BSAs' ratings that year. *Compare* Ex. C, DEF 716-17 *with* Ex. D, DEF 4139, 4721, 4916, 5041.

P5.     In 2015, Bouricius again received a positive performance review, which stated "[s]he has supported countywide and core department specific applications for many years and has an extensive knowledge of their business processes and needs" and excels at customer service. Ex. C, DEF 714.

P6.     Colleagues who worked with Bouricius for over sixteen years describe her as very meticulous, organized, and hard-working with excellent communication and interpersonal skills. Ex. E, Deposition of Lori Marak ("L.M.Dep.") 30:25-31:13, 35:19-23; Ex. F, Deposition of Janine Corsi ("J.C.Dep.") 36:1-7, 38:13-15.

P7.     Bouricius "worked on everything" in the IT Department; she supported all the County's databases and departments and almost all the applications. No other employee supported as many IT applications or departments as Bouricius. Ex. E, L.M.Dep. 34:3-5, 36:2-10; Ex. G, Deposition of Debra Bouricius ("D.B.Dep.") 195:20-196:3, 230:19-21.

P8.     Bouricius was the "go to" person for the finance system and had the most skills and knowledge in the Department regarding the Eden and assessor systems, both of which she implemented. She was also experienced with law enforcement applications and all the systems

3

used by the Sheriff's Office. Ex. F, J.C.Dep. 36:10-20; Ex. E, L.M.Dep. 33:9-34:5; Ex. H, Deposition of Rick Corsi ("R.C.Dep.") 49:4-50:5, 134:25-135:24.

P9.      Her supervisor, Rick Corsi, had no complaints about Bouricius's performance during the nine years that he was her direct supervisor. Ex. H, R.C.Dep. 58:10-16.

*Composition of IT Department*

P10.     In 2016, the IT Department was comprised of six teams: network and database (supervised by Troy Flick); business systems, web, and GIS (supervised by Rick Corsi); and technical support and support (supervised by Lhana Jordan). Ex. A, Corsi 000981.

*Whidden's Many County Leadership Positions*

P11.     Whidden began working for Mesa County in 2011 as the IT Director. Ex. I, Bouricius 001123.

P12.     In April 2014, Whidden became the Deputy Administrator for Resource Management, as well as the Director of IT, Finance, Facilities, Fairgrounds, and Human Resources, although he has no HR credentials. Ex. B, F.W.Dep. 25:18-23, 33:23-34:11, 49:13-21.

P13.     As Deputy Administrator, Whidden spent much of his time on budgetary and health insurance issues. Mesa County became self-insured up to a specific loss point in 2008 or 2009 and was re-negotiating contracts with the reinsurer and third-party administrator in 2014. *Id.* 50:9-51:23, 54:21-55:21; Ex. J, Deposition of John Justman ("J.J.Dep.") 192:13-15.

P14.     In January 2015, Whidden became the County Administrator and continued to also serve as the Director of IT and HR. Ex. B, F.W.Dep. 33:18-22, 36:11-14.

P15.     As County Administrator, Whidden oversaw all core functions of the County, including HR, IT, finance, facilities, parks, fairgrounds, public works, criminal justice, and animal services and was responsible for approximately 1,050 employees. *Id.* 38:18-39:1; Ex. J, J.J.Dep. 76:21-77:11.

P16.     As County Administrator, Whidden was not involved in the daily operations of the IT Department and did not assign BSAs work. His office was on a different floor than the IT Department, and IT staff sometimes went weeks without seeing him. Ex. B, F.W.Dep. 44:25-45:3, 223:2-20; Ex. J, J.C.Dep. 17:18-18:14, 19:4-7, 28:15-17; Ex. G, D.B.Dep. 168:25-169:2, 188:25-189:3; Ex. H, R.C.Dep. 36:7-17; Ex. E, L.M.Dep. 20:5-21, 22:11-18, 24:18-20.

P17.     Whidden had minimal knowledge of Bouricius's performance. He did not work with her and never talked to her or her supervisor about her performance nor complained about her performance, as he sometimes did with other employees. Ex. G, D.B.Dep. 188:15-189:11; Ex. H, R.C.Dep. 30:8-25, 31:9-19, 64:22-25, 66:15-25, 94:1-8; Ex. B, F.W.Dep. 235:2-8.

***Significant Changes to Performance Reviews Prior to the Layoff***

P18.     Several years before the layoff, Whidden removed the objective, numerical scoring for IT employees' performance reviews, leaving only subjective assessments of performance. Ex. B, F.W.Dep. 77:19-78:7, 80:1-20, 83:1-23.

P19.     Troy Flick did not review his team members for approximately two years prior to the layoff despite County policy requiring annual reviews. Ex. H, R.C.Dep. 71:14-18; Ex. K, DEF 1356; Ex. 1, DEF 67-68.

*Whidden's Unilateral Decision to Lay Off IT Personnel*

P20.   In Summer 2016, the Mesa County Commissioners told Whidden that the County anticipated a budget shortfall for 2017, and that he should "do what [he] could" to reduce the County's budget. Ex. B, F.W.Dep. 117:2-118:5, 133:22-134:8.

P21.   The County almost always predicts a high budget deficit, but it is generally never as bad as projected. Ex. J, J.J.Dep. 104:22-105:7.

P22.   In August 2016, Whidden implemented a hiring freeze and instructed department heads and IT managers to "find savings and efficiency in every possible way." *Id.* 98:11-21; Ex. L, Corsi 000892; Ex. H, R.C.Dep. 63:12-17. Nothing was said about cutting staff. Ex. H, R.C.Dep. 158:25-159:7.

P23.   Corsi planned to reduce his budget without reducing staff because the IT Department was already understaffed. *Id.* 119:1-16.

P24.   Whidden claims that layoffs were necessary and that he informally told the Commissioners his plan. Ex. B, F.W.Dep. 117:22-118:16, 131:5-8.

P25.   Whidden never submitted a written proposal to the Board analyzing IT staffing levels or alternative ways to cut costs, which is required by County policy when considering a layoff. Ex. J, J.J.Dep. 83:14-84:12, 102:4-15; Ex. K, DEF 1351.

P26.   The Board never discussed or approved the layoff nor instructed Whidden to lay off IT personnel. Ex. B, F.W.Dep. 128:21-24, 133:22-134:8; Ex. J, J.J.Dep. 101:20-102:3, 105:8-11.

P27.   One Commissioner stated publicly that she was "trying to save employees' jobs." Ex. 1, DEF 115-116.

***Whidden's Unilateral Selection of the Oldest and Most Experienced Employees for Layoff***

P28.    All the employees Whidden selected for termination were over age forty: Debra Bouricius (57); David Barnett (47); Janine Corsi (59); Carey Stieb (49); Crislynn Howerton (57); and Rick Corsi (59). Ex. A at 1.

P29.    Although employees under age forty comprised 25% of the IT Department in October 2016, no employees under forty were selected for termination. After the layoff, the percentage of employees under forty increased significantly. *Id.* at 1-2.

P30.    Mesa County terminated the oldest (or tied for oldest) employee in each job category affected by the layoff. *Id.* at 1.

P31.    Five of the six employees laid off had more than ten years of experience in the IT Department and three had more than twenty years. *Id.*

P32.    The Corsis were never told that Whidden had any issues with their performance. Ex. F, J.C.Dep. 28:18-29:3; Ex. H, R.C.Dep. 30:4-7.

P33.    During the last year of the Corsis' employment, there were many references to their age and when they would retire. On several occasions, Whidden asked Rick Corsi about his and other employees' age, length of service, and retirement plans. Ex. M, DEF 3579; Ex. H, R.C.Dep. 44:16-45:25, 133:1-22; Ex. F, J.C.Dep. 30:15-31:12.

***Whidden's Subjective Process for Selecting Employees to Terminate***

P34.    Whidden's selection of employees for termination was: "I went through, in my mind, the people that I felt we needed to keep, the people that we absolutely could not do without, and that was the list to keep, and then that, therefore vets out the ones that didn't make that list." Ex. B, F.W.Dep. 116:9-17.

P35.    Whidden did not base his selection of employees on any objective performance criteria, but rather on his subjective assessment of what skills the IT Department needed and on his "general knowledge" and "personal observations" about staff. *Id.* 149:2-20, 154:8-155:7, 212:2-6, 273:20-274:7, 341:1-3.

P36.    Whidden was the sole decision-maker; he decided who to lay off on his own without talking to anybody. *Id.* 153:18-20, 210:18-23, 313:2-11.

P37.    Whidden did not consult with Rick Corsi about the selection of Bouricius although Corsi was the most knowledgeable about her skills. *Id.* 219:19-220:7.

P38.    In making his selection, Whidden did not look at any documents, including performance reviews, disciplinary records, job descriptions, or historical records. *Id.* 149:21-23, 156:5-10, 253:6-12.

P39.    Whidden did not consider employees' level of education, degrees, seniority, or whether experienced employees could be moved into different roles. *Id.* 114:11-22, 255:14-19, 260:21-261:1.

P40.    Whidden did not know the extent of Bouricius's knowledge of the County's IT systems, including that she had implemented the New World system, set up the help desk, and been the County's web administrator. Instead, he made assumptions about her skills because she was "on the software side ..." *Id.* 236:8-15, 247:17-20, 252:4-15, 254:3-9, 342:9-13; Ex. G, D.B.Dep. 192:6-193:21.

P41.    Whidden did not document his selection of employees for termination, Ex. B, F.W.Dep. 153:21-24, nor did he tell the Commissioners or the County's legal counsel, Patrick Coleman, who he intended to lay off, *id.* 129:21-24, 164:12-165:12.

P42.    Commissioner Justman does not know what factors Whidden used to select employees to lay off and has no knowledge of the performance, skills, age, or seniority of the employees selected. Ex. J, J.J.Dep. 106:7-24, 112:14-113:11.

P43.    The Board did not vote on the employees selected for layoff nor discuss their selection. *Id.* 113:12-14; Ex. B, F.W.Dep. 129:18-20.

P44.    The October 2016 layoff did not comply with Mesa County's layoff policy: a) Whidden did not analyze personnel needs; b) he did not recommend personnel changes to the Commissioners for their approval and final decision; c) performance and seniority were not considered; and d) employees were not given 30 days-notice of the layoff. *See* Ex. K, DEF 1351, 1363. *See also* P25-26, P35, P39, P45; Ex. B, F.W.Dep. 278:24-279:2.

***Whidden's Explanation of His Selection of Employees***

P45.    On October 7, 2016, Whidden told the six employees that their positions were being eliminated and their selection had nothing to do with performance. Ex. F, J.C.Dep. 50:3-6; Ex. H, R.C.Dep. 84:22-85:10, 91:14-18; Ex. N, DEF 234.

P46.    During the meeting, Janine Corsi complained that Whidden was firing all the oldest and most experienced people. Whidden denied the accusation, to which Corsi responded, "Well, look around." Ex. F, J.C.Dep. 48:19-22, 49:14-18.

P47.    Whidden did not document or report Janine Corsi's complaint of age discrimination to anyone, including HR and the County's attorneys. Ex. B, F.W.Dep. 288:23-24, 291:23-25.

P48.    Approximately one month after the layoff, Director of Human Services Tracey Garchar told his staff that the County was targeting older, experienced employees. Ex. M, DEF 3579; Ex. H, R.C.Dep. 113:15-114:7.

***Superior Alternatives to Whidden's Selection of Employees***

P49.    Whidden's selection of employees to lay off left huge voids in support and security for major systems countywide. Ex. H, R.C.Dep. 104:19-105:4.

P50.    Three of the four BSAs retained had experience only in supporting law enforcement, which constituted about one third of the applications and workload of the BSAs. Ex. M, DEF 3585. They had to learn the applications that Bouricius and Barnett had supported and were not well situated to do so. Ex. E, L.M.Dep. 57:2-25. 62:23-63:6; Ex. H, R.C.Dep. 70:19-71:4.

P51.    There were alternative ways to accomplish the layoff that would have better met the needs of the IT Department (i.e., leave only two BSAs in public safety). Ex. E, L.M.Dep. 62:23-63:12. It also did not make sense to lay off two of four employees on the network team because that is where everyone went for help. Ex. F, J.C.Dep. 55:14-19.

P52.    Bouricius had better skills, knowledge, experience, and performance than younger, senior BSAs who were retained, including Terrie Hotary. Hotary had interpersonal problems with her co-workers and did not get work done, unlike Bouricius. *Id.* 55:1-7; Ex. E, L.M.Dep. 55:5-19, 58:16-60:12, 70:2-10; Ex. H, R.C.Dep. 69:22-70:5.

P53.    Bouricius's project management abilities were at the top of the BSA team and her skills on the Eden, Tyler, SQL, Sequel, assessor, and treasurer systems exceeded those of some of her team members. Ex. H, R.C.Dep. 49:20-50:5, 69:22-70:2; Ex. B, F.W.Dep. 245:7-19.

P54.    There were no complaints about Bouricius's performance, but other IT staff that were retained had performance issues, including abusing sick time and gambling during work hours, of which Whidden was informed. Ex. F, J.C.Dep. 39:8-11, 50:16-17, 57:6-11; Ex. H, R.C.Dep. 31:20-24, 32:13-17, 58:7-9, 79:10-80:11.

### History of Age Discrimination in Mesa County

P55.    A pattern of terminating older workers based on alleged budgetary issues has existed in Mesa County for many years. Ex. F, J.C.Dep. 64:10-13; Ex. H, R.C.Dep. 96:16-22; Ex. M, DEF 3579-80.

P56.    In 2008, when Mesa County was looking at the benefits and leave costs associated with an aging employee population, it created a spreadsheet identifying only the employees over age fifty. Ex. E, L.M.Dep. 28:14-30:12; Ex. O, DEF 2274-2275, 2281-2282.

P57.    Several employees over fifty brought age discrimination claims against Mesa County based, in part, on the spreadsheet. Ex. F, J.C.Dep. 60:7-61:15; Ex. H, R.C.Dep. 68:18-69:5.

P58.    In 2013, another employee brought an age discrimination claim against the County, which addressed the County's continued efforts to analyze the age of its workforce. Ex. O, DEF 2168, 2274-2282.

P59.    Long time Mesa County Commissioner Justman has not heard of the "age spreadsheet" and is not aware of claims of age discrimination against the County but would expect to be made aware of such claims. He has no understanding of the ADEA or knowledge of how the County ensures employees are not discriminated against. Ex. J, J.J.Dep. 95:13-96:6, 133:12-20, 134:12-17, 136:16-20.

P60.     Mesa County has no policy prohibiting age discrimination and no process for ensuring that the county attorney's office is sufficiently overseeing compliance with anti-discrimination laws in the workplace. *Id.* 49:2-12; Ex. H, R.Corsi Dep. 33:16-20.

***CCRD's Probable Cause Finding***

P61.     Three of the six IT employees terminated in October 2016 (Deb Bouricius, Janine Corsi, and Rick Corsi) filed charges of age discrimination with the Colorado Civil Rights Division (CCRD). Ex. M, Bouricius 000009, DEF 3233-3241, 3575-3587.

P62.     Mesa County did not do an internal investigation of any of these claims of age discrimination. Ex. B, F.W.Dep. 201:22-202:4.

P63.     The CCRD found there was probable cause to believe all three employees were discriminated against based on age. Ex. P, Bouricius 000001-000008, DEF 3552-3562, 3890-3904.

P64.     Whidden and Commissioner Justman claim that they were not aware of the CCRD's findings regarding these charges, yet Whidden personally signed the County's settlement agreements with the Corsis without a public discussion or vote. Ex. B, F.W.Dep. 182:25-183:4, 203:1-6, 300:11-23; Ex. J, J.J.Dep. 119:19-23, 126:22-127:1; Ex. Q, Bouricius 00385-00398.

***Increased Spending After the October 2016 Layoff***

P65.     In February 2017, four months after the layoff, the IT Department hired three temporary employees ages seventeen and eighteen. Ex. A at 3, DEF 2144.

P66.     In August 2017, the IT Department filled a Support Specialist position with someone under age forty. Ex. A at 3, DEF 2144.

P67.   Following the layoff, multiple employees, including Whidden, and elected officials received substantial raises, which were approved by the Commissioners without public comment or a vote. Ex. B, F.W.Dep. 269:1-11 (Jordan's raise), 326:19-24 (Whidden's raise: 38%); Ex. J, J.J.Dep. 156:25-157:2 (Commissioner Justman's raise: 20%), 158:6-160:25 (County Attorney Coleman's raise: 20%; Public Works Director Baier's raise: 16%; Human Services Director Garchar's raise: 21%); Ex. R, 11/3/18 Article (Commissioner Pugliese's raise: 20%).

P68.   From 2015-17, Whidden misused County funds to take classes, such as couples and sex therapy, to obtain a license to operate a private marriage and family counseling business. Whidden obtained approval for these expenses from the Commissioners by claiming the training was relevant to his job. Ex. B, F.W.Dep. 313:14-24, 315:1-9, 316:18-317:8; Ex. J, J.J.Dep. 165:21-166:24, 180:1-7; Ex. I, DEF 5711, Bouricius 001125-001129, Corsi 000367-000368, 000384-000387.

***Commissioners' Acknowledgment of Whidden's Lack of Credibility***

P69.   Commissioner Justman testified he was unaware and concerned that Whidden used taxpayer dollars to open a private therapy business, which he operated while working for the County. Ex. J, J.J.Dep. 174:22-175:7, 179:21-180:7.

P70.   Commissioner McInnes "felt personally deceived by [Whidden's] omission." He admitted publicly that Whidden was "less than honest" in not disclosing his private counseling business, and that the degree he obtained was not needed for his job and "seems like a gross abuse of discretion." Ex. R, Bouricius 001622-01623.

P71.    In May 2019, immediately after Commissioner Justman learned about Whidden's misuse of County funds, Whidden was placed on administrative leave for undisclosed reasons. *Id.* at Bouricius 001609, 001621.

P72.    In early August 2019, Whidden abruptly "resigned" his employment with Mesa County, where he was making $180,000 per year, effective immediately. *Id.* at Bouricius 001611, 001632.

P73.    Later in August, Mesa County hired an outside investigator to investigate allegations by two former employees of sexual harassment by Whidden. Another employee also made a sexual harassment complaint against Whidden years ago. Ex. F, J.C.Dep. 14:1-18; Ex. R, 9/1/19 Article.

P74.    The Colorado Department of Revenue obtained a judgment against Whidden in 2015 for failure to pay unpaid income taxes. Ex. R, Bouricius 001632.

**Response to Defendant's Statement of Facts**

D1.    Admit.

D2.    Admit.

D3.    Admit.

D4.    Admit but deny the implication that Jordan was in an equivalent position to Flick and Corsi prior to the layoff. Ex. B, F.W.Dep. 67:4-6; Ex. H, R.C.Dep. 13:14-14:21.

D5.    Admit.

D6.    Admit.

D7.    Admit Whidden held the identified positions but deny that those were the only roles he held during those years. *See* P12, P15.

D8.     Admit.

D9.     Admit that Whidden oversaw the IT Department but deny the implication that he was involved in the daily operations of the IT Department. *See* P16.

D10.    Admit.

D11.    Admit that Bouricius received an Improvement Action Plan in 2011 relating to a security breach but deny that it was given to her by Rick Corsi; the decision was made by others who "were covering themselves." Ex. H, R.C.Dep. 42:10-20.

D12.    Admit that Bouricius worked as a Senior BSA and that her job description includes the listed responsibilities but deny that they accurately describe her primary job duties. *See* D13.

D13.    Admit that Bouricius performed all the listed duties but deny that they accurately describe her primary duties as a Senior BSA. Among other things, she also evaluated, implemented, supported, and upgraded systems; documented user requirements and wrote RFPs; implemented and managed projects, which involved working with vendors, setting up servers, upgrading PCs, working with web people, testing systems, and scheduling training; took help desk calls; and programmed and wrote scripts/reports. Ex. G, D.B.Dep. 117:21-23, 183:11-187:10; Ex. S, DEF 584-586.

D14.    Admit that no one made any age-related remarks directly to Bouricius while she was employed but deny the implication that such comments were not made prior to the layoff. *See* P33.

D15.    Admit.

D16.    Admit that Mesa County anticipated a budget deficit for 2017 but deny that the shortfall reached the anticipated magnitude. Ex. B, F.W.Dep. 132:3-10; P65-68.

D17.    Admit that managers were asked to find ways to reduce costs in 2016 but deny the implication that 2016 was unique; such requests were also made in prior years. Ex. H, R.C.Dep. 59:21-63:25.

D18.    Admit.

D19.    Admit that Bouricius testified that Mesa County's budgetary deficit over the past nine years was legitimate but deny that her testimony pertained specifically to the anticipated deficit discussed in D16. Ex. G, D.B.Dep. 214:19-215:10.

D20.    Admit that budgetary concerns existed for *some* of Whidden's employment with Mesa County (from 2011 until 2018) but deny that the cited testimony indicates that Mesa County's general fund continuously decreased during the time frame discussed. Whidden's testimony addresses reserves. Ex. B, F.W.Dep. 55:22-60:19.

D21.    Admit.

D22.    Admit that the Commissioners instructed Whidden to reduce expenditures but deny the implication that they directed him to do so through a layoff. *See* P20, P26-P27.

D23.    Admit that Whidden so testified.

D24.    Denied. The Commissioners never authorized the layoff, as required by Mesa County's layoff policy. Ex. K, DEF 1351. *See* P26.

D25.    Admit that there were layoffs in other departments and reductions in work hours but deny that those layoffs occurred on October 7, 2016. Ex. 1, DEF 122.

D26.    Admit but note that the cited document incorrectly states Barnett's position. Ex. 1, DEF 67.

D27.    Admit that Whidden laid off the people listed but deny that all their positions were eliminated. *See* P65. Deny the employees' ages are correct. Ex. A at 1, DEF 2144. Admit all the supervisors listed except for Howerton, who reported to Jordan. *Id.* at Corsi 000981.

D28.    Admit.

D29.    Admit that the listed job responsibilities were among the duties of Network Administrators but deny that they accurately describe the primary job duties. Ex. 1, DEF 1661-1662; Ex. F, J.C.Dep. 11:16-21, 23:9-24:17.

D30.    Admit that the listed job responsibilities were among the duties of Technical Support Specialists but deny that they accurately describe the primary job duties. Ex. 1, DEF 1666-1667.

D31.    Denied. The cited job description sets forth the duties of an Information & Communications Manager in the Sheriff's Office, which was not Rick Corsi's position. *See* Ex. S, DEF 3607-3608 (correct job description).

D32.    Denied. Whidden made the decision who to lay off by himself. *See* P36.

D33.    Denied. Whidden did not base his decision regarding who to layoff on performance. *See* P45. Nor was Whidden's decision based on any evaluation or analysis of the IT Department's operations. Ex. B, F.W.Dep. 116:9-17; *see also* P25, P34.

D34.    Denied. Whidden's purported reason for choosing Bouricius for the layoff is pre-textual. *See infra* at 22-25. Bouricius's performance evaluations praise her strong customer service skills. Ex. C, DEF 721, 984. In 2014, Bouricius's customer service skills were rated

higher than those of the retained Senior BSAs. *Compare id.,* DEF 716 *with* Ex. D, DEF 4721, 5041, 4916.

Jordan has no basis for her evaluation of Bouricius's customer service skills; she was not her supervisor and never evaluated her performance. Ex. C.

Whidden's testimony about customer service complaints is not credible; he is not aware of the details or documentation of the complaints and never shared the alleged complaints with Bouricius's supervisor. Ex. B, F.W.Dep. 137:17-23, 138:11-12, 138:21-139:7, 237:11-12, 274:21-275:1; Ex. H, R.C.Dep. 32:13-17.

D35.    Denied. Bouricius's customer service skills were stronger than Jordan's. She set up the first Help Desk, trained others to work there, and supported it for years. Ex. C, DEF 1155, 402-403, 1006, 1022, 1027-1028; Ex. G, D.B.Dep. 192:20-25; *see also* D34. Bouricius's performance evaluations also acknowledge and praise her hardware skills (i.e., PC support and installation). Ex. C, DEF 1075, 1081; Ex. G, D.B.Dep. 192:6-9. In addition, Bouricius has a college degree, as well as project management, network/database administration, and SQL skills, unlike Jordan. Ex. C, DEF 905-06; Ex. D, DEF 4556; Ex. G, D.B.Dep. 120:22-25, 187:1-6.

D36.    Denied. Bouricius's project management abilities and skills on several systems are stronger than that of some of the retained Senior BSAs. *See* P52-53. Whidden admitted that Bouricius has stronger skills than Marak in Eden and Hotary in Eden, SQL, and Sequel. Ex. B, F.W.Dep. 245:7-19.

D37.    Denied. Bouricius has greater knowledge and information about systems than Leuallen. When terminated, she had worked for the County longer, trained Leuallen on all the systems he supported, scored higher than Leuallen on the 2014 evaluation, and was the "go to"

person on the finance system. Ex. A at 1, DEF 2144; Ex. C, DEF 716-17; Ex. D, DEF 4721-4722; Ex. F, J.C.Dep. 36:10-20; Ex. G, D.B.Dep. 228:20-25.

Bouricius also has stronger customer service and documentation skills and is better at answering complex questions than Leuallen, who "over-communicat[ed]" and had difficulty interacting with co-workers. *See* D34; Ex. C, DEF 288, 432, 986-87; Ex. D, 4722, 4727, 4734-4735.

D38.   Denied. During her twenty-six years in the IT Department, Bouricius supported every department and almost all applications. *See* P7. Her extensive knowledge of County systems, processes, projects, and applications is repeatedly recognized in her evaluations. Ex. C, DEF 714, 984, 987, 1013.

D39.   Denied. Bouricius was the Project Manager for New World implementation from 2009-11. Later, Marak became the technical lead supporting the program. Bouricius also supported the program. Ex. C, DEF 723-724, 730-732, 737-739; Ex. E, L.M.Dep. 31:6-13; Ex. G, D.B.Dep. 126:8-12.

D40.   Admit.

D41.   Denied. Whidden did not directly supervise Marak or any of the BSAs and was not involved in daily IT operations. *See* P16-P17. Bouricius had the necessary knowledge and skills to work with New World. *See* D39.

D42.   Admit that McDowell worked as a BSA/GIS Administrator on tax revenue issues but deny that her skills were more critical to the IT Department. At the time of the layoff, McDowell had four years of experience working in junior roles on only the public safety side of

IT whereas Bouricius had worked with all County departments for twenty-six years and held a senior position. Ex. E, L.M.Dep. 13:9-10; Ex. A, DEF 2144; *see also* D38-D39.

D43.    Admit that Kadel had more skills in GIS than Bouricius but deny that those skills were more critical to the IT Department. GIS used to be a separate department. In addition, Whidden originally planned to terminate Kadel because he believes GIS employees are "not technical." Ex. B, F.W.Dep. 108:17-24; 141:5-9.

D44.    Denied. Hotary's customer service and other skills were weaker than Bouricius's. *See* P52-P53; D34-D35. In 2013 and 2014, Hotary received lower ratings for customer service than Bouricius and was instructed to improve her customer service skills whereas Bouricius was praised for such work. Ex. C, DEF 716-719; Ex. D, DEF 4916-4920. *See also* D39.

D45.    Denied. Bouricius has skills and experience in computer hardware and strong customer service skills. *See* D34-D35. Underwood's performance in IT was not reviewed before the layoff. Ex. 1, DEF 68.

D46.    Denied. Whidden was unaware of Bouricius's technical knowledge and hardware experience and skills. Ex. B, F.W.Dep. 252:4-15; 253:6-12. *See also* D35. Bouricius's performance evaluations commend her technical knowledge. Ex. C, DEF 716-17, 1011, 1019.

D47.    Deny that Keene and Boyles had more web administration skills than Bouricius. Whidden was unaware that Bouricius was Mesa County's web administrator. Ex. B, F.W.Dep. 254:3-15; Ex. G, D.B.Dep. 193:20-21.

D48.    Denied. *See* D35, D45, D46. Whidden compared Paul Mitts' help desk skills to Bouricius's without knowing that Bouricius had worked extensively on the help desk. Ex. B, F.W.Dep. 341:22-342:13; Ex. G, D.B.Dep. 192:20-193:4.

D49.     Denied. Whidden was not fully aware of Corsi's opinions of Bouricius's skills because he did not consult with him prior to the layoff. *See* P37. Bouricius had very strong project management skills and was able to move projects along and meet deadlines. *See* D36; *see also* Ex. C, DEF 401, 716-17, 719, 721, 1029, 1092.

D50.     Admit that Flick had stronger network administration skills than Bouricius but deny that he had stronger management skills. Flick frequently gambled with his supervisees during business hours and allowed them to abuse sick leave, which affected productivity. Whidden was aware of these issues and transferred an employee to Flick's team because of Flick's lack of management skills. *See* P54; Ex. H, R.C.Dep. 118:2-13.

D51.     Admit that the layoff was announced on October 7, 2016 but deny that the only reason provided was budgetary. *See* Ex. N, DEF 234.

D52.     Admit that budget issues continued into the first half of 2017, but dispute that they required a layoff; budget issues improved after the County increased sales tax. Ex. B, F.W.Dep. 56:21-57:16, 58:4-10. *See also* D16, P65-P67.

## LEGAL ARGUMENT

The evidence in this case is clear that Defendant terminated the oldest employees in the IT Department based on stereotypical assumptions that the older employees did not have the needed skills – an assumption that is belied by the objective facts. This is the essence of age discrimination.

I.      **There is Sufficient Evidence to Permit a Jury to Conclude that Mesa County Unlawfully Discriminated Against Bouricius Based on Age.**

A.      **Bouricius Has Established a *Prima Facie* Case of Age Discrimination.**

Defendant's argument that Plaintiff cannot establish a *prima facie* case, MSJ at 14, holds Plaintiff to a significantly higher legal standard than the one enunciated in *Beaird v. Seagate Tech.,* 145 F.3d 1159, 1166 (10th Cir. 1998), upon which Defendant relies. MSJ at 12. *Beaird* clearly held that the *McDonnell Douglas* framework "allows victims of age discrimination to prevail without presenting <u>any</u> evidence that age was a determining factor in the employer's motivation." 145 F.3d at 1166 (emphasis in original) (internal quotation marks and citation omitted). "Evidence that an employer fired qualified older employees but retained younger ones in similar positions is sufficient to create a rebuttable presumption of discriminatory intent. . . ," *id.* (citing *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir. 1988)). There can be no question that Plaintiff has established a *prima facie* case by proffering uncontroverted evidence that Defendant terminated qualified, older employees while retaining less experienced, younger ones in similar positions. *See* P28-P31, P52-53.

B.      **Mesa County's Proffered Reason for Selecting Bouricius for the Layoff Is Clearly Pre-textual Because it is False and Dishonest.**

Defendant proffers two reasons for Bouricius's termination that it claims are legitimate and non-discriminatory: 1) budget issues necessitated a layoff; and 2) Whidden believed Plaintiff's skills were not as strong as those of her colleagues. MSJ at 14-15. Even if Defendant anticipated a budget deficit for 2017, Plaintiff disputes that the layoff was necessary to address this shortfall. *See* P21, P23, P25, D16, D52. However, for purposes of this motion, Plaintiff

assumes the layoff was necessary, but contends that Defendant's alleged reason for selecting Bouricius for the layoff is pre-textual.

Pretext may be shown by challenging the credibility of the movant's witness or by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence . . . ." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation marks and citation omitted); 10A Wright, Miller & Kane, *Federal Practice & Procedures* § 2726 (3d ed. 1998). A jury may "reasonably infer from the falsity of [an] explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147 (2000). The Court must consider the totality of all the circumstantial evidence of pretext. *Beaird,* 145 F.3d at 1174 (citations omitted). "A showing that the employer's justifications for its behavior are pretextual permits a finding of intentional discrimination." *Exum v. U.S. Olympic Comm.,* 389 F.3d 1130, 1135 (10th Cir. 2004) (citations omitted).

Defendant bases its summary judgment motion entirely on the testimony of Frank Whidden – its sole decision maker – despite Commissioner McInnes's admission that Whidden is "less than honest." P70. There are a multitude of reasons to question Whidden's credibility, including he lied to the Mesa County Commissioners about using taxpayer dollars to finance his personal business, was abruptly fired after his lies were revealed, evaded paying income taxes, and is currently under investigation for sexual misconduct while in office. *See* P68-P74. Significant issues regarding Whidden's credibility raise a genuine issue of material fact as to

pretext. Wright, Miller, & Kane, *Federal Practice & Procedure* § 2726 ("[I]f the credibility of

the movant's witness is challenged . . . , summary judgment should be denied . . .").

In addition to the above, there is an abundance of evidence that Whidden's layoff

decision is specious:

- Whidden admitted his layoff decision was based *exclusively* on subjective criteria; he used no objective criteria to evaluate or compare Plaintiff's skills to those of her colleagues. *See* P34-P35, P38-P39; *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002) (subjectivity by decision-maker is relevant evidence of pretext) (collecting cases).

- Whidden lied about Bouricius's skills, claiming she did not have the necessary skills, which is contradicted by her breadth of experience, performance reviews, and supervisor's and colleagues' testimony. *See* P1-P9, P16-P17, P34-40, P52-P54; D34-D39, D41-50; *Greene v Safeway Stores, Inc.,* 98 F.3d 554, 564 (10th Cir. 1996) (summary judgment can be defeated where an evaluation offered to justify termination conflicts with other assessments of performance); *Fischbach v. Dist. of Columbia Dep't of Corr.,* 86 F.3d 1180, 1183 (D.D.C. 1996) (internal citation omitted) ("Evidence indicating that an employer misjudged an employee's performance or qualifications is . . . relevant to . . . pretext . . .").

- There is no documentation to support Bouricius's alleged deficiencies or Whidden's layoff decision. *See* P3-P5, P9, P35, P37-P38, P40-P41, P51-P54, D34-D39, D41-50; *Mickelson v. New York Life Ins. Co.,* 460 F.3d 1304, 1312 (10th Cir. 2006) (lack of contemporaneous documentation is evidence of pretext).

- Whidden offered inconsistent and shifting explanations for Bouricius's selection – originally stating his decision was not based on performance but later claiming vague and undocumented performance deficiencies that were not corroborated by Plaintiff's direct supervisor. *See* P45, D34, D49; *Whittington v. Nordam Group Inc.,* 429 F.3d 986, 994 (10th Cir. 2005) (inconsistent reasons for termination indicates pretext).

- Whidden did not follow Mesa County's written layoff policy in multiple significant respects. *See* P44; *Doebele v. Sprint/United Mgmt. Co.,* 342 F.3d 1117, 1138 n.11 (10th Cir. 2003) ("[D]eviations from normal company procedure[] provide support for a plaintiff's assertion of pretext.") (internal quotation marks and citations omitted); *Kendrick v. Penske Transp. Servs.,* 220 F.3d 1220, 1230 (10th Cir. 2000) (pretext may be shown "with evidence

that the defendant acted contrary to a written company policy . . .") (citation omitted).

- Within months of the layoff, Whidden hired three temporary employees under the age of nineteen, undercutting his claim that the people who remained could meet the IT Department's needs. *See* P34, P65; *Beaird,* 145 F.3d at 1168 (pretext may be established by showing employer replaced RIF-terminated employees with new hires).

- Mesa County has a history of age discrimination. *See* P55-P60.

- After claiming a layoff was necessary for budget reasons, Whidden misappropriated taxpayer dollars for his own enrichment. *See* P68-P71.

- The CCRD found probable cause to believe that three of the employees Whidden terminated in 2016 were discriminated against based on age. *See* P61-P64; *Cervantes v. Wal-Mart Stores, Inc.,* 1 Fed. Appx. 762, 765-66 (10th Cir. 2001) (CCRD probable cause finding is highly probative of ultimate discrimination issues and should be considered on summary judgment).

All these issues raise a genuine doubt about Whidden's motivation and honesty, which provides strong evidence of age discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.").

Defendant implicitly acknowledges that Whidden's evaluation of Plaintiff's skills was false by citing cases stating his proffered reasons do not need to be "wise, fair, or correct." MSJ at 15. However, the employer's description for its reasons must be honest and in good faith, which is not the case here. *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1318 (10th Cir. 1999) (citations omitted); *see also Reeves,* 530 U.S. at 147 ("[T]he factfinder is entitled to consider a party's dishonesty about a material fact as affirmative evidence of guilt.") (internal quotation marks and citations omitted).

## II.     The Availability of Certain Categories of Plaintiff's Damages Cannot Be Determined on Summary Judgment.

Defendant's motion for summary judgment on *some* of the damages Plaintiff has suffered is procedurally improper under Fed.R.Civ.P. Rule 56. "[W]hen damages are not an element of the claim, a motion for summary judgment solely based on damages is not the appropriate procedural vehicle." *Sonrisa Holding, LLC v. Circle K Stores, Inc.*, No. 17-CV-29-STV, 2019 U.S. Dist. LEXIS 99867, at *13, n.5 (D. Colo. June 12, 2019). Rule 56(a) permits adjudication of "each claim or defense – or the part of each claim or defense – on which summary judgment is sought," but a request for damages is "neither a claim nor a defense. It is, instead, a remedy which only arises once liability is determined." *EEOC v. Columbine Health Sys.*, No. 15-CV-01597, 2017 U.S. Dist. LEXIS 152986, at *15 (D. Colo. Sept. 19, 2017). Summary judgment is improper here because proof of actual damages is not an element of Plaintiff's ADEA claim. *See* MSJ at 13-14 (listing ADEA elements).

Moreover, "it is well-settled that summary judgment is not appropriate if the judgment would not be dispositive of [a] claim." *Asher Assocs., L.L.C. v. Baker Hughes Oilfield Ops., Inc.*, No. 07-CV-01379, 2009 U.S. Dist. LEXIS 42895, at *6 (D. Colo. May 20, 2009) (internal quotation marks and citations omitted). Thus, the Court should reject Defendant's damages argument because a ruling on the availability of *some* of Plaintiff's damages will not resolve her claims and is therefore procedurally improper under Rule 56.[1]

---

[1] Indeed, the procedural posture of the primary, non-ADEA, out-of-Circuit case upon which Defendant relies, *see* MSJ at 17-18 (*citing Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 1:02-CV-887, 2007 U.S. Dist. LEXIS 97816 (N.D.N.Y. Nov. 30, 2007)), was a motion *in limine* under Fed.R.Evid. 702 – not a summary judgment motion.

Lastly, the availability of damages is purely speculative until liability has been established. *Asher Assocs.,* 2009 U.S. Dist. LEXIS 42895, at *6 (denying summary judgment on availability of damages because such an opinion would be advisory). The Court should therefore decline to issue an advisory opinion about the hypothetical damages Plaintiff may recover if the jury finds for her on the disputed questions of fact that predicate liability.

### III.     Plaintiff's Cost-of-Living and Tax-penalty Damages are "Make Whole" Damages Recoverable under the ADEA.

Even if the Court were to now consider the availability of certain categories of damages, it must find that Plaintiff's economic losses from her post-termination relocation are recoverable under the ADEA as make-whole damages. In an ADEA case, a plaintiff is entitled to a "broad spectrum of legal and equitable relief" sufficient "to make [her] whole" by "returning [her] as nearly as possible to the economic situation [she] would have enjoyed but for the defendant's illegal conduct." *Greene v. Safeway Stores, Inc.*, 210 F.3d 1237, 1244 (10th Cir. 2000) (citations and internal quotation marks omitted); *Beberman v. U.S. Dep't of State,* No. 2014-0020, 2016 U.S. Dist. LEXIS 45141, at *9 (D.V.I. Apr. 4, 2016). When determining ADEA damages, courts "have broad authority to construct appropriate equitable relief and a duty to render a decree that will eliminate the discriminatory effects of past actions and prevent future discrimination." *Villescas v. Abraham*, 285 F.Supp.2d 1248, 1255 (D. Colo. 2003).

Defendant's attempt to liken the damages that Plaintiff seeks to compensatory damages, which Plaintiff concedes are not available under the ADEA, is unavailing. Defendant cites no binding authority for its contention that cost-of-living expenses constitute "compensatory damages" under the ADEA. Indeed, the single case upon which Defendant relies, MSJ at 17-18, is an unpublished, *non-ADEA,* New York district court opinion to exclude expert cost of living

testimony because the expert's opinion was not based on sufficient data. *Cioffi,* 2007 U.S. Dist. LEXIS 97816, at *6-7. The court's *dicta* about the availability of cost of living damages in a different type of civil rights case, *id.* at *9, is certainly not binding on this Court. Moreover, the cost-of-living losses that Plaintiff seeks are not akin to compensatory damages for pain and suffering because they are economic and quantifiable. *See Comm'r v. Schleier,* 515 U.S. 323, 335-36 (1995) (compensatory damages excluded from ADEA because "traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages" are "intangible" and "not pecuniary" elements of injury).

Plaintiff's request for a tax-penalty offset, *see* Compl. [Doc. 1] at 8, VI.g., is also permissible make-whole damages in an ADEA case under settled Tenth Circuit law. *EEOC v. RadioShack Corp.*, No. 10-CV-02365, 2012 U.S. Dist. LEXIS 173856, at *12-15 (D. Colo. Dec. 6, 2012) (citing *Sears v. Achison, Topeka & Santa Fe Ry., Co.,* 749 F.2d 1451, 1456 (10th Cir. 1984)). Victorious ADEA plaintiffs receive their economic damages in a lump sum, and if that sum moves them to a higher income tax bracket, the extra taxation frustrates the ADEA's make-whole objective. *Id.* at *14-15.

## CONCLUSION

As demonstrated above, this case is rife with material factual disputes making summary judgment improper. Defendant's summary judgment motion should therefore be denied.

Respectfully submitted this 4th day of October 2019.

KING & GREISEN, LLP

*s/ Jennifer W. Bezoza*
Paula Greisen
Jennifer Weiser Bezoza
King & Greisen, LLP
1670 York Street
Denver, CO 80206
(303) 298-9878 (voice)
(303) 298-9879 (fax)
greisen@kinggreisen.com
bezoza@kinggreisen.com

*Attorneys for Plaintiff*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1, as modified by the Court's September 16, 2019 Order [Doc. 82].

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October 2019, the foregoing **PLAINTIFF'S RESPONSE TO MESA COUNTY'S MOTION FOR SUMMARY JUDGMENT** was filed electronically using the U.S. Court's CM/ECF, which caused a copy of the same to be served electronically to the following:

Michael Santo
Alicia Severn
Bechtel Santo & Severn
205 N. 4th Street, Suite 300
Grand Junction, CO 81501
santo@bechtelsanto.com
severn@bechtelsanto.com

*Attorneys for Defendant Mesa County*

*s/ Laurie A. Mool*
Laurie A. Mool, Paralegal