**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 18-CV-01144-DDD-STV

DEBRA BOURICIUS,
      Plaintiff,

v.

MESA COUNTY, by and through the Mesa County Board of County Commissioners,
      Defendant.

---

**MESA COUNTY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT (CM/ECF DOC 73, FILED AUGUST 30, 2019)**

---

Defendant Mesa County submits this Reply in support of its Motion for Summary Judgment ("Motion"), pursuant to F.R.C.P. 56 and D.C.COLO.LCivR 56.1(a).

**Mesa County's Response to Bouricius's Statement of Additional Disputed Facts**

As indicated below, the admitted facts herein are undisputed by Mesa County for purposes of this Reply. Mesa County does not waive its right to dispute these facts at trial should its Motion be unsuccessful in whole or in part.

P1.    Admit.

P2.    Admit and add that Bouricius's position, Senior Business Systems Analyst (Sr. BSA), was a different position than Business Systems Analyst positions. Ex. 3 (Bouricius Dep., 185:4-9).

1

P3.     Deny. Bouricius received an Improvement Action Plan. Ex. 1 (DEF 735-736); Ex. 10 (Bouricius Dep., 245:9-13). Further, only one Sr. BSA had a lower "technical knowledge" score than Bouricius in 2014. Ex. 11 (DEF 87); Ex. C (DEF 716); Ex. D (DEF 4139, 4721, 4916, 5041).

P4.     Deny. Employees' 2014 performance reviews did not utilize a 10-point scale. Ex. C (DEF 716-717). *See also* Response to P3, *supra*.

P5.     Deny. Bouricius's 2015 performance evaluation states that she "strives to meet customer expectations," not that she successfully did so. Ex. C (DEF 714).

P6.     Deny. Marak and Janine Corsi were not Bouricius's supervisors or responsible for Bouricius's performance reviews during Whidden's tenure. Ex. 12 (Marak Dep., 90:7-9); Ex. 17 (J. Corsi Dep., 66:12-14); Ex. C (DEF 714, 716-719, 721-724).

P7.     Deny. In 2015, Bouricius and other IT employees worked on different projects. Ex. C (DEF 714); Ex. 13 (DEF 4138, 4364, 4376, 4915, 5040).

P8.     Deny. Bouricius's work with the law enforcement system ended in 2011, two months after Whidden started working for Mesa County. Ex. C (DEF 724); Ex. 14 (R. Corsi Dep., 142:11-15); Ex. 3 (Whidden Dep., 23:14-15).

P9.     Deny. Rick Corsi signed and gave an improvement action plan to Bouricius. Ex. H (R. Corsi Dep., 58:10-16); Ex. 1 (DEF 735-736).

P10.    Deny. The organizational chart relied upon by Bouricius, identified as Ex. A (Corsi 000981), is dated 2014, not 2016.

P11.    Admit.

P12.    Deny. Whidden was not director of the finance, facilities, or parks and recreation departments. Ex. B (Whidden Dep., 33:23-34:8).

P13.   Deny. Whidden focused on IT matters plus budgetary and insurance matters. Ex. B (Whidden Dep., 38:10-16, 50:9-14).

P14.   Admit.

P15.   Admit.

P16.   Deny. Janine and Rick Corsi saw Whidden talk to employees and be involved in the IT Department. Ex. B (Whidden Dep., 38:10-16); Ex. F (J. Corsi Dep., 4-8). Bouricius speculated that Whidden was not involved due to her layoff. Ex. G (Bouricius Dep., 189:4-18).

P17.   Deny. *See* Response to P16, *supra*.

P18.   Deny. Employees' 2014 performance reviews utilized, in part, a numerical system. Ex. C (716-717).

P19.   Deny. Performance appraisals are "expected" but not required. Ex. K (DEF 1356).

P20.   Admit and add that the Commissioners told Whidden to find $1.4 million "over the whole County" due to the expected shortfall. Ex. B (Whidden Dep. 117:9-12).

P21.   Deny. Commissioner Justman explained there were times "when the deficit was more than the budget said." Ex. J (Justman Dep., 105:1-2). In 2016, "[p]eople weren't spending money in the county." *Id*. at 101:13-16.

P22.   Deny. Rick Corsi did not recall a discussion about reducing staff. Ex. H (R. Corsi Dep., 159:5-7). A "hiring freeze" was implemented in all departments "except public safety." Ex. 3 (Whidden Dep., 119:18-24).

P23.   Deny. Rick Corsi's reference to "studies" is hearsay.

P24.   Admit.

P25.    Deny. Mesa County's layoff policy states that a director must "conduct…an analysis of personnel needs." Ex. K (DEF 1351). Then, the County Administrator (i.e., Whidden) discusses his proposed recommendation with the Commissioners. *Id*. This policy does not require a written component. It is undisputed that Whidden discussed his recommendation to conduct layoffs with the Commissioners. *See* Response to P24, *supra*.

P26.    Deny. The Commissioners approved Whidden's decision to layoff employees. Ex. J (Justman Dep., 113:21-114:4); Ex. 3 (Whidden Dep., 347:20-24).

P27.    Deny. Commissioners disagreed on whether Mesa County's fund balance should be used to pay employees' wages. Ex. 1 (DEF 115-116).

P28.    Admit.

P29.    Deny. No statistical analysis supports this statement.

P30.    Deny. Two employees, both age 57, worked in the help desk. Ex. A, p. 1. The oldest and youngest Sr. BSAs were laid off. Ex. A (DEF 2144). *See also* Argument part A, *infra*.

P31.    Admit.

P32.    Deny. Janine Corsi was instructed to improve work with network performance problems. Ex. 13 (DEF 4215). Rick Corsi was instructed to improve communications with employees. *Id*. at DEF 4297, 4300.

P33.    Deny. Bouricius's age and retirement was never discussed. Ex. M (DEF 3579); Ex. H (R. Corsi, 44:16-24, 133:6-9, 19-22).

P34.    Admit.

P35.    Deny. Objective performance criteria is not required. Ex. K (DEF 1351).

P36.    Deny. Whidden consulted with Flick and Jordan regarding his decisions before the layoffs. Ex. 3 (Whidden Dep., 126:4-25). *See also* Response to P35, *supra*.

P37.    Admit.

P38.    Admit.

P39.    Admit.

P40.    Deny. *See* Response to P8, *supra*. Bouricius worked as a web administrator prior to December 2011, and other employees operated the help desk. Ex. 10 (Bouricius Dep., 192:20-193:7, 193:18-194:1); Ex. 11 (DEF 993).

P41.    Deny. Whidden did not remember if he told the Commissioners or Mesa County's Attorney the names of employees who were laid off. Ex. B (Whidden Dep., 129:21-24, 164:19-22).

P42.    Admit.

P43.    Admit.

P44.    Deny. *See* Response to P25-P26, *supra*. Imprecise use of "performance" versus "evaluation of skills" may have been used in this case. *See* Mot., Statement of Undisputed Facts, 33-50. Bouricius received 30 days of compensation in lieu of notice. Ex. 15 (Whidden Dep., 278:24-280:9). Whidden was not required to follow any layoff policy. Ex. 3 (Whidden Dep., 347:16-24); Ex. 16 (Justman Dep., 88:24-89:3).

P45.    Deny. Whidden evaluated employees' IT skills performance to determine who to layoff. *See* Mot., Statement of Undisputed Facts, 33-50; Ex. B (Whidden Dep., 155:1-7).

P46.    Admit.

P47.    Deny. Whidden understood Janine Corsi's comment to be that the most senior employees were laid off. Ex. 15 (Whidden Dep., 289:2-14).

P48.    Deny. This assertion is hearsay. Ex. M (DEF 3579); Ex. H (R. Corsi Dep., 113:15-114:7).

P49.    Deny. This statement hearsay. Ex. H (R. Corsi Dep., 104:19-105:4).

P50.    Deny. *See* Response to P2, *supra*; Ex. 11 (DEF 61-63: Sr. BSAs are Marak, Leuallen, Hotary, Bouricius, and Barnett). Marak and Hotary worked on law enforcement applications, considered to be "critical" for the IT Department. Ex. D (DEF 4918-4919); Ex. 13 (DEF 5043-5044); Ex. 3 (Whidden Dep., 243:19-25); Ex. 12 (Marak Dep., 56:2-8). The IT Department ran successfully after the October 2016 layoffs. Ex. 15 (Whidden Dep., 174:9-14).

P51.    Deny. Neither Marak nor Janine Corsi were IT Department managers nor layoff decision-makers. Ex. 12 (Marak Dep., 54:4-15, 73:16-18, 90:7-17); Ex. 17 (J. Corsi Dep., 83:3-9).

P52.    Deny. *See* Responses to P50-P51, *supra*; Ex. H (R. Corsi Dep., 69:22-70:13).

P53.    Admit and add that Leuallen was proficient with Eden. Ex. 17 (J. Corsi, 77:22-78:2).

P54.    Deny. *See* Response to P3, *supra*. Whidden testified he received complaints about Bouricius's customer service skills. Ex. 3 (Whidden Dep., 138:21-25). There is no indication Whidden failed to handle Rick Corsi's concerns about other employees. Ex. H (R. Corsi Dep., 79:10-80:19).

P55.    Deny. These assertions are speculation.

P56.    Deny. Marak speculated about the use of an "age spreadsheet." Ex. E (Marak Dep., 28:17-30:12). Whidden never saw an "age spreadsheet" and only heard rumors about it. Ex. 15 (Whidden Dep., 304:20-305:11).

P57.    Deny. Mesa County was never found liable for age discrimination. Ex. 20 (Docket, case no. 10-cv-00033-WJM-DW, Enos-Martinez v. Mesa County at 21); Ex. 21 (Ms. A. settlement agreement).

P58.    Deny. *See* Response to P57, *supra*.

P59.    Admit.

P60.    Deny. Mesa County prohibits age discrimination. Ex. 11 (DEF 1303, 1315).

P61.    Admit.

P62.    Deny. Charges of Discrimination relating to the October 2016 layoffs were filed after the employees' employments ended. Ex. M (Bouricius 000009, DEF 3233-3234, DEF 3575).

P63.    Admit.

P64.    Deny. Whidden recalled the settlement agreements after reviewing them. Ex. 15 (Whidden Dep., 302:10-304:14); Ex. 3 at p. 1.

P65.    Admit and state the temporary employees were high school or college students who worked from home. They converted PDF files during a website conversion, and another temporary employee organized Mesa County's server room and vault. Ex. A (DEF 2144); Ex. 23 (Boyles Aff. at 3-12).

P66.    Admit and state the support specialist employee filled this role 10 months after Bouricius, who had been a Sr. BSA, was laid off. Ex. A (DEF 2144).

P67.    Deny. Whidden, Coleman, and Baier received raises in 2018, more than a year after Bouricius was laid off. Ex. 15 (Whidden Dep., 326:19-327:16); Ex. 18 (DEF 5695-5699). The Colorado legislature provided Commissioner Pugliese's raise. Ex. R, p. 4.

P68.    Deny. The Commissioners and Whidden entered into an unrestricted tuition and training reimbursement agreement. Ex. 19 (DEF 5712); Ex. B (Whidden Dep., 315:10-317:25).

P69.    Deny. Commissioner Justman did not know all available information. Ex. J. (Justman Dep., 175:8-24).

P70.    Deny. Commissioner Pugliese thought Whidden's actions were job-related. Ex. R (Bouricius 0001623).

P71.    Deny. This statement is speculation. *See* Response to P68-P69, *supra*.

P72.    Admit.

P73.    Deny. This statement is hearsay, and no evidence exists that Mesa County's human resources department received a complaint. Ex. F (J. Corsi Dep., 14:9-18).

P74.    Admit.

### Reply to Mesa County's Statement of Undisputed Facts

D4.[1]    Rick Corsi, Flick, and Jordan reported to Whidden. Ex. H (R. Corsi, 14:2-4); Ex. A (Corsi 00981).

D7.    *See* Response to P12, *supra*.

---

[1] Mesa County notes that these paragraph numbers match those in the Bouricius's Response, which paragraph numbers correlate to paragraphs in Mesa County's Motion.

D13.    *See* Response to P40, *supra*. Bouricius did not regularly work on PCs. Ex. 10 (Bouricius Dep., 192:6-194:1).

D14.    *See* Response to P33, *supra*.

D17.    Whidden testified that reserve and general fund revenue decreased between 2011 and 2017. Ex. B (Whidden Dep., 57:25-58:3, 60:7-13).

D26.    Barnett worked as a Sr. BSA when he was laid off. Ex. 1 (DEF 588); Ex. 11 (DEF 37).

D27.    *See* Response to P65, *supra*. One of the Sr. BSAs' ages in Ex. 1 (DEF 588) should read 51 instead of 52, but all other Sr. BSA's ages are accurate.

D31.    Admit; Mesa County mistakenly referred to the incorrect job description.

D32.    *See* Response to P36, *supra*.

D33.    *See* Responses to P25, P45, *supra*.

D34.    *See* Responses to P35, P54, *supra*.

D35.    Bouricius relies on performance reviews from 1991-1992, 1996-1998, 2006-2007, and 2010, before Whidden was hired. Ex. C (DEF 402-403, 1006, 1022, 1027-1028, 1075, 1081, 1155); Ex. 3 (Whidden Dep. 23:14-15). *See* Reply to D13, *supra*.

D36.    *See* Reply to D35, *supra*. In 2013, all Sr. BSAs except Hotary and Leuallen were rated "above" with respect to project management skills. Ex. C (DEF 718); Ex. D (4918); Ex. 13 (DEF 4141, 4723, 5043). Marak was the "go-to" person for sheriff's office IT matters. Ex. 13 (DEF 5044).

D37.    Bouricius relies on 1992 and 2007-2008 performance reviews, before Whidden's employment. Ex. C (DEF 288, 432, 986-987); Ex. 3 (Whidden Dep. 23:14-15). In 2012-2014,

9

Leuallen had equivalent or higher scores than Bouricius in the categories of innovation and initiative, technical knowledge, project management, communication skills, and service passion. Ex. C (DEF 716, 718, 722); Ex. D (DEF 4721, 4723, 4727-4728). Bouricius was instructed to improve communication and hardware/infrastructure skills whereas Leuallen's technical and customer service skills were "excellent." Ex. C (DEF 719); Ex. 13 (DEF 4724).

D38.    *See* Reply to D13, *supra*. In 2015, Bouricius worked on "electronic signature, Traffic, Recording, Assessor, Treasurer, Administration, HR and Finance applications," whereas Marak and Hotary worked on "critical" sheriff's office applications. Ex. C (DEF 714); Ex. 13 (DEF 4915, 5040); Ex. 3 (Whidden Dep., 235:14-24; 239:1-12; 243:19-25).

D39.    *See* Response to P8, *supra*.

D41.    *See* Responses to P16-P17 and Reply to D39, *supra*.

D42.    Bouricius had no GIS experience. Ex. G (Bouricius Dep., 193:18-19).

D43.    Whidden did not consider laying off Kadel. Ex. B (Whidden Dep., 108:12-18). There is no evidence that Whidden believed GIS skills were not critical.

D44.    In 2013, Bouricius's and Hotary's communication skills were rated "successful," and both were instructed to improve their skills. Ex. C (DEF 718, 719); Ex. D (DEF 4913 4919). Hotary, but not Bouricius, worked with sheriff's office ("SO") applications. Ex. C (DEF 714); Ex. D (DEF 4919); Ex. 13 (DEF 4915); Ex. 3 (Whidden Dep., 239:1-12). *See also* Response to P52, *supra*.

D45.    *See* Reply to D35, *supra*. Underwood's performance was reviewed in CJSD. Ex. 13 (DEF 4934-4944).

D46.    *See* Reply to D35, *supra*. Bouricius relies upon performance evaluations in 2007-2009, prior to Whidden's employment. *See* Reply to D36, *supra*. In 2014, Barnett, Boyles, Davison, Kadel, Keene, Leuallen, and Marak had equivalent or higher ratings in technical knowledge compared to Bouricius. Ex. C (DEF 716); Ex. D (DEF 4139, 4721, 5041); Ex. 13 (DEF 4377, 4491, 4600, 4657).

D47.    *See* Reply to D13, *supra*.

D48.    Bouricius did not work on help desk calls. Ex. G (Bouricius Dep., 192:16-193:7).

D49.    *See* Reply to D36, *supra*. Bouricius was instructed to improve her project management skills. *See* Ex. C (DEF 719, 730).

D50.    *See* Response to P54, *supra*. Rick Corsi speculated about Whidden's knowledge. Ex. H (R. Corsi Dep., 118:2-13). Bouricius had no supervisory experience. Ex. G (Bouricius Dep., 196:4-5).

D52.    *See* Response to P67, *supra*.

## Argument

### A.    Bouricius relies on inadmissible, inaccurate, and irrelevant evidence, which must be stricken or disregarded.

In her Response, Bouricius relies on inadmissible, inaccurate, and irrelevant evidence. "[I]n this jurisdiction…only admissible evidence may be considered when ruling on a summary judgment motion." *Honeycutt v. Safeway, Inc.*, 475 F.Supp.2d 1063, 1071 (D.Colo. 2007). Thus, Bouricius's improper evidence must be stricken or disregarded.

First, Bouricius relies on inadmissible character and wrongdoing evidence. In general, "[e]vidence of a person's character or character trait" or a "crime, wrong, or other act" "is not

admissible to prove that on a particular occasion the person acted in accordance with the character or trait" or that "on a particular occasion the person acted in accordance with the character." F.R.E. 404(a)(1), (b)(1). *See*, *e.g.*, *Evans v. City of San Diego*, 913 F.Supp.2d 986, 993-994 (S.D.Cal. 2012).

Here, Bouricius cites the following facts purporting to show that Mesa County's reasons for laying off Bouricius are pretextual:

- Commissioner McInnis made a statement nearly three years after Bouricius was laid off regarding Whidden's alleged operation of a personal business (*see* Response, p. 23);

- An unsubstantiated allegation that Whidden used "taxpayer dollars to finance his personal business" (*Id.* and p. 25);

- An allegation that Whidden "was abruptly fired after his lies were revealed," even though Whidden resigned (*see* Response, p. 23; Ex. I, p. 8);

- An allegation that Whidden "failed to pay income taxes" (*see* Response, p. 23); and

- An allegation that Whidden is the subject of a sexual harassment investigation nearly three years after Bouricius was laid off (*Id.*).

All of these allegations are inadmissible under F.R.E. 404(a)(1) and (b)(1) because they are intended to show that since Whidden was the subject of, or alleged perpetrator of, these acts, he also must have acted in a discriminatory manner by laying off Bouricius. Thus, Bouricius cannot rely on these allegations to support her pretext argument.

Further, none of these allegations relate to age discrimination. So, these arguments are irrelevant and must be disregarded. *Martin v. AT&T Corp.*, 331 F.Supp.2d 1274, 1296 (D.Colo. 2004) (holding irrelevant an argument that a witness was "not credible…[because the statements

at issue] were unrelated to defendant's reasons for discharging plaintiff."); *Nat. Am. Ins. Co. v. Am. Re-Ins. Co.*, 358 F.3d 736, 742 (10th Cir. 2004) (holding that without "presenting contradictory evidence…[s]tanding alone, attacks on the credibility of evidence offered by a summary judgment movant do not warrant denial of a summary judgment motion.").

Second, Bouricius alleges that "Mesa County has a history of age discrimination" because two employees brought claims related to age discrimination, both of which settled. Response, p. 25, citing P55-60; Ex. 20 (Docket of case no. 10-cv-00033-WJM-DW, Enos-Martinez v. Mesa County at 21); Ex. 21 (Ms. A. settlement agreement). But evidence of a settlement cannot be used to "prove…the validity…of a disputed claim." F.R.E. 408(a). Thus, settled claims cannot be used to prove that Mesa County engaged in age discrimination.

Third, "speculation, opinion, or hearsay testimony" is inadmissible for summary judgment purposes. *Honeycutt*, 475 F.Supp.2d at 1071. Mesa County identified these inadmissible statements in its Responses to P16, P23, P48, P49, P55, P56, P71, and P73, and Reply to D50, *supra*.

Finally, Bouricius relies on Exhibit A, which was created by counsel and which show Business Systems Analysts classified together. Pl.'s Mot. to File Ex. Under Seal (Doc 94); Ex. A, pp. 2-4. Bouricius explained the Sr. BSA position was different than the BSA position. Ex. 3 (Bouricius Dep., 185:4-9). Thus, information in the first three pages in Ex. A is inaccurate because not all BSA positions were similar. *Hinds v. Sprint/United Mgt. Co.*, 523 F.3d 1187, 1196 (10th Cir. 2008).

**B.    Bouricius has not set forth specific evidence demonstrating that age was the determinative factor resulting in her layoff.**

    **1.    Bouricius failed to set forth specific facts establishing a prima facie case of age discrimination.**

While Bouricius argues that an undefined lower standard than the "determinative factor" standard applies to age discrimination cases, Bouricius acknowledges that the Tenth Circuit set out in *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1176 (10th Cir. 1998) that age must have been a determinative factor causing the employment action at issue. *See* Response, p. 22. *See also Gross v. FBL Financial Svcs., Inc.*, 557 U.S. 167, 177 (2009).

Under the applicable legal standard, set forth in Mesa County's Motion at 13-14, Bouricius proffers no specific facts demonstrating that Bouricius's age was the determinative factor that resulted in her layoff. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted). Rather, Bouricius relies on improper evidence (*see* Argument part A, *supra*) and refers, without argument, to statistical evidence. *See* Response, p. 22, referring to P28-31. But statistical evidence is insufficient to create a genuine issue of material fact regarding the "but-for" reason Bouricius was laid off. That is, "[s]tatistical evidence that does not adjust 'for the various performance evaluations and departmental rankings of the employees included in the statistical pool' does not compare 'similarly situated' employees and therefore 'fails to eliminate nondiscriminatory explanations for disparate treatment,'" meaning no genuine issue of material fact exists. *Pippin v. Burlington Resources Oil and Gas Co.*, 440 F.3d 1186, 1198 (10th Cir. 2006) (citation omitted). As in *Pippin*, Bouricius's statistical evidence does not take into account these factors. *Id*. Indeed, substantial differences in employees' skills resulted in Bouricius's layoff. *See* Responses to P50-P53, *supra*;

14

Mot. and Reply to D13, D36-D39, D42-D50, *supra*. Thus, Bouricius cannot establish a prima facie case of age discrimination.

      **2.     Bouricius failed to set forth sufficient facts demonstrating pretext.**

Similarly, Bouricius's proffered evidence does not establish a genuine issue of material fact that Mesa County's legitimate, nondiscriminatory reason for laying off Bouricius is pretextual. Initially, as set forth in Argument part A, *supra*, reliance on inadmissible, inaccurate, and irrelevant evidence is insufficient to establish a genuine issue of material fact of pretext. Rather, evidence of pretext in a layoff case can include

> evidence that (1) h[er] own termination does not accord with the RIF criteria, (2) Defendant's RIF criteria were deliberately falsified or manipulated in order to terminate h[er], or (3) that the RIF generally was pretextual. This third approach is sometimes satisfied by a showing that the defendant actively sought to replace a number of RIF-terminated employees with new hires during the RIF general time frame.

*Pippin*, 440 F.3d at 1193.

Here, Bouricius alleges that Whidden used "subjective criteria" to find deficiencies in Bouricius's skills compared to other employees' skills. Response, p. 24. In general, "the use of subjective criteria does not suffice to prove intentional age discrimination." *Furr v. Seagate Tech., Inc.*, 82 F.3d 890, 987 (10th Cir. 1996) (citation omitted). Thus, this allegation does not establish pretext.

Further, Whidden's evaluation of Bouricius's skills matched Bouricius's skills noted in her performance reviews, which Rick Corsi prepared. Ex. 14 (R. Corsi Dep., 51:18-53:25). For example:

- In 2012, Bouricius's score in "ability to deal with customers" was equal to or lower than scores for Barnett, Boyles, Kadel, Keene, Leuallen, Marak, McDowell, Farslow, Mitts, Janine Corsi, Sage, Steib, Tarlton, Rick Corsi, Flick, and Jordan. Mot., Facts 34, 44, 48; Ex. C (DEF 721); Ex. D (DEF 4727); Ex. 13 (DEF 4049, 4144, 4218, 4299, 4370, 4382, 4503, 4512, 4562, 4605, 4663, 4714, 4727, 4895, 4927, 5046). The same was true in 2013, comparing Bouricius with Boyles, Davison, Kadel, Keene, McDowell, Farslow, Mitts, Janine Corsi, Howerton, Sage, and Steib. Ex. C (DEF 718); Ex. 13 (DEF 4043, 4214, 4358, 4367, 4381, 4493, 4499, 4558, 4602, 4659, 4710, 4890). Bouricius was advised to "be more outgoing to get points across" in 2013. Ex. C (DEF 719).

- In 2014, Bouricius's rating in "technical knowledge" was equal to or lower than ratings for Barnett, Boyles, Davison, Kadel, Keene, Leuallen, and Marak. Mot., Facts 36-38; Ex. C (DEF 716); Ex. D (4139, 4721, 5041); Ex. 13 (DEF 4377, 4491, 4600, 4657).

- In 2012, Bouricius was instructed to "develop PM [project management] skills." Ex. C (DEF 722). In 2013, Bouricius's rating with respect to "project management" was equivalent to or lower than ratings for Barnett, Leuallen, Marak, McDowell, Farslow, Mitts, Sage, Steib, Tarlton, Rick Corsi, and Flick. Mot., Fact 49; Ex. C (DEF 718); Ex. 13 (DEF 4043, 4141, 4296, 4367, 4499, 4508, 4710, 4723, 4890, 4922, 5043).

- Bouricius had no supervisory skills while in 2013, Flick's skills were praised. Mot., Fact 50; Reply to D50, supra; Ex. 13 (DEF 4509).

- In 2012 and 2013, Jordan scored higher than Bouricius in multiple areas, including customer service skills, attitude/cooperation, and technical knowledge. Ex. 13 (DEF 4557-4563); Ex. 22 (DEF 231-232, 252-256).

16

Thus, Whidden's good faith evaluation of Bouricius's skills compared to other employees' skills mirrored employees' performance reviews. *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir. 1999) (*overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)). As a result, Bouricius presented no specific facts showing pretext.

Further, Whidden followed Mesa County's layoff policy, thus negating pretext. Responses to P25, P44, *supra*. Moreover, temporary employees performed tasks related to PDF files and organization, not Sr. BSA duties. Response to P65, *supra*. And a support specialist was hired in August 2017 to replace an employee who was promoted due to an employee's resignation. *Id*. So, these facts do not support the existence of a genuine issue of material fact regarding pretext or that age was the reason Bouricius was laid off.

Finally, the CCRD's Determination of probable cause does not establish pretext when no other admissible evidence indicates that Mesa County's legitimate, nondiscriminatory reason for laying off Bouricius was pretextual. *Irving v. Chester Water Auth.*, No. 08-5156, 2010 WL 2512370, *7 (E.D.Penn., June 17, 2010).

## C.     Damages are properly included in motions for summary judgment, and cost-of-living and tax-related damages are not recoverable in this case.

In her Response, Bouricius argues that damages matters cannot be decided on summary judgment, but even if they could, according to Bouricius, her cost-of-living and tax damages[2] requests are proper. Response, pp. 26-28. These arguments are without merit.

---

[2] Bouricius apparently concedes that all other damages discussed in Mesa County's Motion, Argument part C, are not recoverable. Thus, Mesa County is entitled to summary judgment with respect to those damages.

17

Initially, Mesa County's Affirmative Defense N stated that compensatory damages are not recoverable under the ADEA. Ans. to Compl. and Jury Demand, Aff. Def. N; F.R.C.P. 56(a). Regardless, Bouricius has the burden "to produce evidence to support her damages claim." *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1494-1495 (10th Cir. 1994). And courts in this jurisdiction evaluate ADEA damages requests in motions for summary judgment. *See*, *e.g.*, *Donohue v. Unipac Svc. Corp.*, 847 F.Supp. 1530, 1538 (D.Colo. 1994). Thus, Mesa County's Motion regarding Bouricius's requested damages is proper.

Further, remedies under the ADEA are limited to "legal or equitable" relief. 29 U.S.C. § 626(b). While not decided in this Circuit, the EEOC takes the position that cost-of-living requests are compensatory damages. *Sundt v. Madigan*, Appeal No. 01920681, Agency No. 910820, 1992 WL 1370382, *4 (EEOC, June 22, 1992) (in a Title VII appeal, stating, "appellant argues…he would also be entitled to compensatory damages (i.e.,...cost-of-living expenses...)." Thus, since cost-of-living amounts are compensatory damages, Mesa County is entitled to summary judgment on this issue.

Finally, Bouricius attempts to limit her request for tax-related damages to "a tax-penalty offset." Response, p. 28. But Bouricius's damages claim is far broader, requesting "tax liability on any award of damages." Mot, p. 19. Bouricius does not allege that such broad tax-related damages are recoverable, indeed because the IRS's guidance precludes such recovery. *Id*. Moreover, Bouricius never asserted a claim to recover "a tax-penalty offset." Therefore, Mesa County is entitled to summary judgment on Bouricius's request for "tax liability on any award of damages."

For the foregoing reasons, Mesa County respectfully requests this Court enter judgment in its favor with respect to Bouricius's cause of action and requests for damages, as set forth herein and in its Motion.

Respectfully submitted this 31st day of October 2019.

BECHTEL SANTO & SEVERN

*s/ Alicia W. Severn*
Alicia W. Severn, #42432
Michael C. Santo, #24083
205 N. 4th Street, Suite 300
Grand Junction, CO  81501
Telephone:  (970) 683-5888
Facsimile:  (970) 683-5887
santo@bechtelsanto.com
severn@bechtelsanto.com
Attorneys for Defendant

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.2, as modified by Court Order (CM/ECF Doc 97 (October 10, 2019)). This Reply contains 4,196 words.

*s/ Alicia W. Severn*
Alicia W. Severn, #42432
205 N. 4th Street, Suite 300
Grand Junction, CO  81501
Telephone:  (970) 683-5888
Facsimile:  (970) 683-5887
severn@bechtelsanto.com
Attorney for Defendant

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing **MESA COUNTY'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT (CM/ECF DOC 73, FILED AUGUST 30, 2019)** was served this 31st day of October 2019, via the CM/ECF electronic filing system, to the following:

Paula Greisen
Jennifer Bezoza
King & Greisen, LLP
1670 York Street
Denver, CO 80206
Telephone: (303) 298-9878
Fax: (303) 298-9879
greisen@kinggreisen.com
bezoza@kinggreisen.com
Attorneys for Plaintiff

*s/ Alicia W. Severn*
Alicia W. Severn, attorney
