# EXHIBIT 2

https://www.gjsentinel.com/news/western_colorado/county-denies-that-layoffs-are-related-to-age/article_4f458e5c-b8d2-11e9-be7d-20677ce05640.html

Aug 7, 2019 6 hrs ago

# County denies that layoffs are related to age

By CHARLES ASHBY

Mesa County is denying that it engaged in any age discrimination layoffs, but it did reach settlements with two former county employees last year over discrimination claims, according to court documents in a lawsuit filed against the county.

In a federal lawsuit filed by a 26-year veteran of the county's information technology department, Debra Bouricius alleges that the county and its three commissioners tapped her and five other IT workers for layoffs in 2016 because of their ages, while retaining other department workers who were younger. The workers chosen to be laid off all were in their late 40s to late 50s.

Bouricius, who now lives in Lyons, was 57 years old at the time of her layoff.

"Mesa County chose to terminate the oldest person with each job title affected by the IT Department layoff," the lawsuit claims. "Though Mesa County's written policies require it to base layoff termination decisions upon the job performance and special skills of individual employees, Mesa County failed to consider any objective performance criteria in selecting employees to be laid off from the IT Department. Mesa County has not articulated any objective performance criteria that is used to select employees to be fired."

The suit points to two settlements the county reached with two other IT workers who were involved in the same layoff, Rick and Janine Corsi. Both were paid settlements of $62,500 each after they filed complaints with the Colorado Civil Rights Commission. In December 2017, that panel determined both had "probable cause" to proceed with their complaints.

In its response brief in the Bouricius lawsuit, the county said those two settlement agreements are "improperly referenced ... because Mesa County has not agreed to make any proceeding regarding any individual named Rick Corsi and/or Janine Corsi public matters."

The agreements, signed by Rick and Janine Corsi and then County Administrator Frank Whidden, call on the couple not to disclose the terms and conditions of the agreements, which "shall not be construed as an admission by the parties of any wrongdoing or violation of any applicable law."

Bouricius' lawyer, Denver civil rights attorney Paula Greisen, said she obtained the settlement agreements through a Colorado Open Records Act request.

"They tried to say some of the stuff was confidential," Greisen said. "There's no grounds for making them confidential."

In an email to the Daily Sentinel, County Attorney Patrick Coleman said he could not discuss the reason for the Corsi settlement but emphasized that "the settlement specifically states that the County does not admit to violating the law."

The settlement agreements call on Rick and Janine Corsi to release the county or any of its employees from numerous types of discrimination claims, from breach of contract to violations of any law related to their relationship as a married couple.

Of the 18 claim types cited in the settlement, only age discrimination was highlighted in bold lettering.

As for the Bouricius complaint, Coleman said an agreement regarding settlement was not reached and Bouricius chose to pursue remedies through the lawsuit.

Greisen said the other three people who were laid off — David Barnett (then 47 years old), Carey Stieb (49) and Crislynn Howerton (59) — did not file complaints with the commission or file lawsuits.

In a deposition taken last month, Whidden said he decided to lay off some workers because, at the time, the county was facing a $1.4 million budget deficit the following year (2017), and covering that shortfall could more easily be done though downsizing staff.

Whidden, who abruptly resigned his post last week after being on paid administrative leave for two months for undisclosed reasons, said he made a list of people the IT department "absolutely" could not do without. Anyone not on that list was let go.

"I didn't look at, OK, somebody's been here 20 years and they should stay and somebody else has been here 10 years and they should go," Whidden said in the deposition. "I did not use that as a basis of evaluation ... except for Rick (Corsi). As a longstanding manager, it did occur to me that he had been there a very long time, and you had a husband and wife situation."

Whidden said he didn't like the idea of having a married couple working in the same department, but that was something that occurred before he started working for the county.

He signed both settlement agreements, but said in the deposition that only the commissioners had the authority to approve the settlement amounts, something that was not discussed or voted on in a public meeting.

Whidden was first hired by the county to head its IT department in 2011, later going on to be deputy county administrator for resource management before becoming county administrator in 2014. He continued to serve as head of the IT department as well as the county's human resources director until resigning as chief administrator on Friday.

Whidden said he didn't feel comfortable laying off one Corsi without including the other, saying "it was too high of a security risk" to the county to allow one to stay.

The lawsuit also alleges that the county violated state law because the county commissioners didn't approve the layoffs in an open public session. Whidden, however, said he had blanket authority from the commissioners to do so, saying he obtained that permission after talking to each one individually outside of a public meeting.

"I had spoken to the commissioners, because they had tasked me with finding the budget shortfall that we were facing if we didn't make changes," Whidden said in the deposition. "My understanding was that when they told me that — and I told them that I was going to make layoffs, that they commissioned me to move forward, and that was my understanding of I had their approval to move forward."

Whidden said he did not reveal the names of those selected for layoff with the commissioners or Coleman, whom he asked beforehand to review the layoffs to be sure there wouldn't be any legal issues with them.

Whidden said the layoffs in the IT department were the only ones he approved. He said the remainder of the 2017 budget shortfall was made through other staffing reductions made by Public Works Director Pete Baier, who now is acting chief administrator, and then County Clerk Sheila Reiner, who helped the county meet its budget cutting goals by closing DMV offices in Clifton and Fruita.

Commissioner John Justman, who also was deposed as part of the lawsuit, said the commission did what it had to do to balance the county's budget.

"We had to cut back somewhere because of our budget situation," Justman said in the partially redacted deposition. "So I'm not saying I like it, but we had to do something, so — that's what we did."

https://www.gjsentinel.com/opinion/more-shenanigans-from-county-officials/article_45044a34-b9f2-11e9-be3e-b7e8d18e59b5.html

Aug 8, 2019 3 hrs ago

# More shenanigans from county officials

By THE DAILY SENTINEL

Once again, Mesa County officials make a mockery of the concept of open and transparent government.

But the problem is bigger than the arrogance they've shown by failing to keep the public informed of their decisions. They seem to have no qualms about letting taxpayers clean up a mess they created in the dark.

After going to great lengths to conceal layoffs within the county's information technology department in 2016, county officials are now defending the moves as necessary to balance the budget and insisting that age discrimination played no role.

But they've lost any credibility on that claim after reaching settlements with two former county IT workers last year over discrimination claims. The county paid $62,500 per settlement to workers who filed complaints with the Colorado Civil Rights Commission.

The two former workers who received the settlement signed an agreement, along with former County Administrator Frank Whidden, not to disclose the terms and conditions of the settlement. The county's position is that it had no legal obligation to inform the public of matters involving personnel — when disclosing its intention to lay off employees would have raised red flags about potential legal liabilities.

We know about the payout because a lawyer representing another laid-off IT worker — who did not reach a settlement with the county — obtained the settlement agreement through a Colorado Open Records Act request.

"They tried to say some of the stuff was confidential," Denver civil rights lawyer Paula Greisen told the Sentinel's Charles Ashby. "There's no grounds for making them confidential."

Details of the settlement are referenced in a federal lawsuit filed by a 26-year veteran of the IT department. The suit alleges that the county and its commissioners targeted the oldest six workers in the department for layoffs — in violation of policies requiring the county to establish objective performance criteria as the basis for layoffs.

Whidden was deposed last month and his deposition is part of the court record in the federal lawsuit. In it, he denies age being a basis for layoffs, which he says needed to be made to reduce a $1.4 million budget shortfall.

He signed both settlement agreements, but said in the deposition that only the commissioners had the authority to approve the settlement amounts — something that was not discussed or voted on in a public meeting.

The lawsuit alleges that the county violated state law because the county commissioners didn't approve the layoffs in an open public session. Whidden, however, said he had blanket authority from the commissioners to do so, saying he obtained that permission after talking to each one individually outside of a public meeting.

Whidden also said he did not reveal the names of those selected for layoffs with the commissioners or the county attorney. Why? Plausible deniability? He said he asked the county attorney to review the layoffs to be sure there wouldn't be any legal issues with them. Surprise! There were.

Let's review the abuse of the public's trust. The county uses a budget shortfall to justify laying off workers. Fine — if commissioners do it in open session, explain how the cuts are in the public's interest and insulate taxpayers from legal liability.

Instead of defending the cuts and approving them with a public vote, commissioners apparently agreed to let Whidden do whatever he saw fit behind the scenes.

But Whidden's actions (speaking to commissioners individually, then signing settlement agreements that had to be approved by commissioners but weren't — at least not publicly) only fuels speculation that this is all part of an elaborate conspiracy to avoid public scrutiny and to insulate commissioners from the ramifications of their illicit dealings.

Whatever savings were realized by those cuts was mitigated by the settlements and the legal costs to negotiate them and defend a federal lawsuit. Meanwhile, after the budget drama of 2016, commissioners saw fit to reward certain senior-level administrators, including Whidden and the county attorney, with hefty raises.

It all stinks, but commissioners are counting on the public to once again hold its nose.

ate, the right of the
bear arms shall not be

ond Amendment links the
intenance of a well-regu-
try, we do have well-reg-
services
re trained
t keeping the

ns very
formation
. Their vet-
rough an
mand, and
rmitted to
accordance

ities
arame-
o not. The
iscusses
ns,"
tomatic
eens.
"the

ene-
r those
van-
Guns
y
e they
hers
k to

ad
s

ng-
ip

h



dorse a level of gun control that would —for starters — prevent children from being shot in their schools, would protect churchgoers from indiscriminate slaughter, and would safeguard the "freedom from fear" that we all seek.

**LINDA JENKS**
*Grand Junction*

## County attorney's legal counsel should come under scrutiny

After reading the Thursday editorial concerning our county commissioners, former county administrator and county attorney, the first thing to come to my mind is, why doesn't their malpractice insurance pay this settlement?

I think its pretty obvious these parties conspired to violate the law. I think we need a new county attorney. One who doesn't advise clients to violate both the law and the public confidence. I also think all five of these conspirators need to hold their own noses. If our county attorney advised his clients to violate the law he needs to face disbarment!

**JOHN A. IJAMS**
*Grand Junction*

## Duplicity abounds among those making political points

I hear arguments from three differ-

And where is the tea pa
have a singular person d
where and how much ta
ing to be levied? Parliam
this kind of taxing powe
monarch hundreds of y
George III. Duplicity.

A repentant and lovi
Christian characteristi
First Corinthians (tha
Thirteenth ("Charity
and is kind; charity e
ity vaunteth not itsel
up, Doth not behave i
seeketh not her own,
voked, thinketh no e
in iniquity, but rejoi
(verses 4-6) against
Trump. More dupli

## Money to ov vote should a

I don't know ab
but I get very sus
money being pou
cause. I'm most
ple who have sp
the popular vote

I feel confide
the Legislature
for us Colorad
passed a bill to
popular vote c
like the rich, c

Aug 25, 2019

# They take us for suckers

- THE DAILY SENTINEL



Mesa County commissioners want their constituents to trust them — don't ask questions! — without doing anything to earn that trust.

They do some things in the dark, sidestepping those pesky laws requiring the people's business to be conducted in public. Then, when irregularities pop up as a direct result of their secretive ways, they're slow to explain or defend their actions.

To them, it seems, transparency is not the public's right to know what elected officials are up to, but a favor to extend to the public when it's convenient.

They act as if they're accountable to no one. Which is true — as long as taxpayers are willing to put up with the county continually thumbing its nose at the principles of open government.

The latest episode is the county's refusal to shed any light on why its top executive, County Administrator Frank Whidden, was placed on paid administrative leave in May and why he abruptly resigned two months later.

On today's front page, the Sentinel's Charles Ashby unpacked the circumstances leading up to Whidden's resignation — no easy feat given the county's inability — or refusal — to produce records related to requests made under the Colorado Open Records Act.

But here's what we know: Whidden was making $180,000 a year — a "bargain" according to Commissioner John Justman — for wearing three hats. He was the county administrator (working without a deputy administrator) but also acted as the county's human resources director and headed its information technology department.

Nevermind the wisdom of putting so much faith in a single person to do three complicated executive-level jobs. Commissioners also decided to make an exception to the county's policy on tuition reimbursement and authorized Whidden to receive up to $10,000 a year to pursue a master's degree in marriage and family counseling.

The county's highest-paid employee received taxpayer money in excess of the county's annual tuition reimbursement cap to earn that degree — which he then used to start a private counseling practice. Commissioners apparently didn't know about Whidden's taxpayer-funded side hustle.

We know that because Justman said so in a deposition related to an age-discrimination lawsuit filed against the county. A few days after that Justman deposition, Whidden was placed on paid administrative leave.

Commissioner Scott McInnis said he felt "personally deceived" by Whidden's actions. While we might give him credit for an honest reaction, it doesn't change the fact that he and the other commissioners should have known that Whidden's pursuit of a degree in family and marriage counseling served no useful purpose in his capacity as an administrator.

McInnis's statements in Ashby's story are just a small candle in a room otherwise shrouded in darkness. They don't give a complete picture of what happened. Why paid administrative leave? County officials are hiding behind tortured interpretations of open records law instead of taking responsibility for problems they created by giving one person too much responsibility and too little supervision.

The bigger issue is that things like this happen because commissioners think they don't owe the public a thing. And we keep letting them get away with it. If you don't like the way they're doing business, go to the county courthouse and give them an earful.