**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Case No. 1:18-cv-01144-DDD-STV

DEBRA BOURICIUS,

     Plaintiff,

v.

MESA COUNTY, by and through the
Mesa County Board of Commissioners,

     Defendant.

**ORDER GRANTING MOTION TO STRIKE AND
DENYING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Debra Bouricius, a twenty-six-year employee of Mesa County's Information Technology Department, was terminated along with several of her colleagues by County Administrator Frank Whidden in conjunction with an anticipated $1.7 million budget deficit. She alleges the County violated the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. §§ 621, et seq. Before the Court are (1) Ms. Bouricius's motion to strike the County's designation of Frank Whidden as an expert witness, which is **GRANTED**; and (2) the County's motion for summary judgment on liability and particular categories of damages, which is **DENIED**.

## BACKGROUND

The following facts are taken from the parties' briefing and supporting documentation on the County's motion for summary judgment.[1]

### A. Undisputed Facts

Plaintiff Debra Bouricius started working for the County in 1990 as an applications analyst in the Information Technology ("IT") Department. At the time of her termination in 2016, after receiving several promotions, she was a fifty-seven-year-old senior business systems analyst. Her wide-ranging duties included project management; implementing, coordinating, and managing new systems and applications; providing training; working and negotiating with vendors; managing system upgrades and changes; and testing. Throughout her tenure, she received positive performance reviews and praise from her colleagues, though on one occasion, she received an "improvement action plan" following a data breach.

From 2007 to her termination, Ms. Bouricius's supervisor was Rick Corsi. In 2011, the County hired Frank Whidden as its IT Director. By 2014, Mr. Whidden was IT Director, Human Resources Director, and County Administrator. In this last role, he implemented the policies given to him by the County commissioners and oversaw the day-to-day affairs of the County.[2] At the time of Ms. Bouricius's termination, she reported to Mr. Corsi, who in turn reported to Mr. Whidden.

---

[1] The Court has also reviewed the documents filed in support of Ms. Bouricius's motion to strike but has not considered them—to the extent they are not duplicative of documents filed elsewhere—in its order on summary judgment.

[2] Mr. Whidden oversaw all core functions of the County, including human resources, IT, finance, facilities, parks, fairgrounds, public

In 2016, the County anticipated a budget deficit of more than $1.7 million, which Ms. Bouricius acknowledges was a legitimate concern. The County commissioners instructed Mr. Whidden to reduce expenditures by $1.4 million, and he indicated that laying off employees would be necessary, though he never submitted a written proposal to that effect.[3] On October 7, 2016, the County implemented layoffs affecting the IT Department and Clerk and Recorder's Office. At the time of the layoff, the IT Department employed twenty-four people, five of whom were senior business systems analysts like Ms. Bouricius. Of the twenty-four, Mr. Whidden laid off six people: two senior business systems analysts (including Ms. Bouricius), two network administrators, one technical support specialist, and one IT manager (Mr. Corsi). These employees were fifty-seven, forty-seven, sixty, fifty, fifty-eight, and fifty-nine years old. Five of these employees had more than ten years of experience, and three of them had more than twenty years. No one at Mesa County made any age-related remarks to Ms. Bouricius during her employment,

---

works, criminal justice, and animal services. (Doc. 92, at 5; Doc. 109, at 3.)

[3]   The County's Human Resources Policies and Procedures Manual states: "If it becomes necessary to lay off employees due to lack of funds, reorganization, reduction in quantity of programs, or for any other reason, directors will first conduct or have conducted an analysis of personnel needs. From the analysis, each director will recommend quantity and types of proposed reductions. The County Administrator will review and comment on the proposals, recommending any changes felt necessary to the Board of County Commissioners, who will make the final decision (Health Department addendum and Human Services Department addendum). In determining the individual employees to be laid off, the following will apply: Among regular employees, the director will have the option to lay off employees as deemed necessary and appropriate. The following items must be considered, in light of the needs of the department. These factors shall be taken into account in the order indicated: A. Performance of the employee; B. Special abilities the employee may possess." (Doc. 92-9, at 7.)

though Mr. Whidden did make remarks about the age and retirement plans of two employees that were terminated.

It is undisputed that in making the layoff determination, Mr. Whidden did not consider the employees' level of education, degrees, seniority, or whether they could be moved into different roles. He did not look at any performance reviews, disciplinary records, job descriptions, or historical records. He did not document the basis for his decision. In choosing to terminate Ms. Bouricius, he did not consult with her supervisor, Mr. Corsi. At least one commissioner was unaware of what factors Mr. Whidden used to select employees to lay off, and the Board of Commissioners never voted to confirm the employees selected for layoff.

### B. Disputed Facts

The remaining facts surrounding the termination are disputed. The parties generally agree on the job duties of several roles in the IT Department—including network administrators, technical support specialists, and information and communications managers—though they disagree regarding the scope of those positions. Mr. Whidden also testified that Ms. Bouricius's skills were weaker than other employees' in specific areas and with respect to specific software programs, to which Ms. Bouricius responds with documentary and testamentary evidence supporting the opposite inference—that her abilities were stronger than those of non-terminated employees.[4] Ms. Bouricius has also provided ev-

---

[4] (*Compare* Doc. 73, at 8–11 (containing citations to Mr. Whidden's testimony that he believed Ms. Bouricius was weaker than certain employees) *with* Doc. 92, at 18–21 (citing evidence, such as better performance reviews and testimony, showing she was stronger or as strong as the other in her department).) For example, Mr. Whidden testified that he believed Mr. Kelly Leuallen, who was not terminated, was "more knowledgeable about more systems[,] . . . stays up to date better on the

idence that Mr. Whidden did not consider performance at all in his decision,[5] and that he really had no knowledge of Ms. Bouricius's experience and skills or what duties she performed.[6] The parties also disagree as to whether Mr. Whidden was required to follow the County's written layoff policy in making termination decisions (though it is undisputed that he did not do so).[7]

## MOTION TO STRIKE

The County disclosed Mr. Whidden as the only witness, other than Ms. Bouricius, likely to have discoverable information. (Doc. 75-1, at 3.) Mr. Whidden served as the County's Rule 30(b)(6) deponent (Doc. 75-3, at 2), and the County also designated him as a non-retained expert, expected to testify "regarding his experience and expertise" in "managing information technology departments, including Mesa County's information technology department; the positions in information technology departments, including Mesa County's information technology department; the skill sets needed in information technology departments, including Mesa County's information technology department; and Mesa County's needs in its information technology department." (Doc. 75-4, at 3–4.) In his deposition, Mr. Whidden proffered himself as an expert in

---

changes and things that are made[, and] . . . does a better job as far as customers are concerned." (Doc. 73-3, at 216:8–11.) Ms. Bouricius responds that with documents showing higher performance reviews that Mr. Leuallen in customer service (*compare* Doc. 92-2, at 14 *with* Doc. 93-2, at 5), that she trained Mr. Leuallen in all the systems he supported (Doc. 92-5, at 228:20–25), and she was the "go-to person" for certain projects (Doc. 92-4, at 36:10–11).

[5] (Doc. 92-4, at 50:3–6.)

[6] (*See, e.g.*, Doc. 92-1, at 252:4–15, 253:6–16.)

[7] (*Compare* Doc. 92-9, at 7 *and* Doc. 92-1, at 278:24–279:7 *with* Doc 73-3, at 347:16–24.)

"what it takes to run an IT department, the skills that are necessary to run that IT department, and what the likelihood of success is in an IT department, so issues surrounding IT and how IT should be run." (Doc. 75-5, at 147:7–13; *see also id.* at 145:1–4, 147:20–23, 148:6–14, 171:22–172:4.) At trial, he expects to opine that his decision to terminate Ms. Bouricius and other employees was "the correct decision from an IT perspective." (*Id.* at 310:8; *see also id.* at 148:11–14.)[8]

Ms. Bouricius moves to "preclude any expert witness testimony by Frank Whidden" (Doc. 75, at 14), arguing that his opinions are unreliable and would usurp the factfinding role of the jury. She sees Mr. Whidden's proffered "expert" status as a thinly veiled attempt to bolster his fact testimony about the termination decision he made. The County responds by asserting that Mr. Whidden is qualified to provide testimony on the identified topics, and that his education, training, and experience support his decision and render his conclusion reliable.

---

[8] Ms. Bouricius construed certain deposition testimony as Mr. Whidden attempting to provide a second opinion—that his determination was non-discriminatory. It is not clear from his deposition whether Mr. Whidden considers this second opinion an "expert" opinion. (*See* Doc. 75-5, at 123:8–21 ("Q: Okay. So is it fair to say that part of your expert opinion is that nobody was discriminated based on age in the 2016 layoffs? MR. SANTO: Object to form. A: I do believe that. Now, I don't know if you are trying to make a distinction between am I an expert on discrimination law or not, but I do believe that based on relying on counsel, that what we were doing was in compliance with the law."). In its response, the County clarifies that "Whidden was not designated to testify as a non-retained expert witness about the legality of any decision or action, [so] there is no non-retained expert witness designation at issue with respect to this matter for this Court to strike." (Doc. 88, at 10.) There is therefore no dispute. While he may testify, subject to cross examination, that he believed he was acting in accordance with the law, Mr. Whidden may not testify or opine pursuant to Rule 702, or under any other authority, that his decisions were legally permissible.

Mr. Whidden is a lay witness central to this case, and he will, of course, be permitted to give appropriate lay testimony about his involvement in this matter, the facts he observed, the decisions he made, and the reasons he made them—all subject to appropriate cross-examination. Ms. Bouricius doesn't dispute this. The real question is whether he may provide this testimony as an "expert," as that term is used in the Federal Rules of Evidence.

Pursuant to Federal Rule of Evidence 702:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 requires that an expert's testimony be both reliable, in that the witness is qualified to testify regarding the subject, and relevant, in that it will assist the trier in determining a fact in issue. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589–92 (1993); *Truck Insurance Exchange v. MagneTek, Inc.*, 360 F .3d 1206, 1210 (10th Cir. 2004). A district court's role in weighing expert opinions against these standards is that of a "gatekeeper." *See Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

In resolving this motion, the Court assumes that Mr. Whidden's knowledge, skill, experience, training, and education in the IT field are

thorough. But the testimony he plans to offer is not that of a Rule 702 expert. The reasons for the decisions he made, and his views about how to run the IT department and the County are relevant—not because he is an expert—but because his reasoning is the central fact question in this case. His testimony about these things is not an expert opinion, but factual assertions about why he made the decisions he did. He may therefore testify about his background and his thinking on these subjects as a fact witness. To the extent he seeks to couch his choices as flowing from his "expert opinion," however, it is impermissible because doing so wouldn't "help the trier of fact to understand the evidence." Fed. R. Evid. 702(a); *see also, e.g.*, *Zottola v. Anesthesia Consultants of Savannah, P.C.*, 169 F. Supp. 3d 1348, 1358 (S.D. Ga. 2013) (finding portions of a declaration were not expert opinions where the witness "merely describe[d] the process he used" and that other portions of the declaration would have been lay testimony if he had "first-hand knowledge or observation of the operation" of the website at issue). The motion is granted.

## MOTION FOR SUMMARY JUDGMENT

The County moves for summary judgment as to its liability and concerning several categories of damages. The purpose of summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary judgment is appropriate if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if it could affect the outcome of the suit under the governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Id.* If a reasonable juror could not return a verdict for the nonmoving party, summary

judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the moving party bears the burden of demonstrating no genuine issue of material fact exists. *Adamson*, 514 F.3d at 1145.

In deciding whether the moving party has carried its burden, courts do not weigh the evidence and instead must view it and draw all reasonable inferences from it in the light most favorable to the nonmoving party. *Adamson*, 514 F.3d at 1145. But neither unsupported conclusory allegations nor mere scintillas of evidence are sufficient to demonstrate a genuine dispute of material fact on summary judgment. *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1291 (D. Colo. 2009). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, a court may . . . consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e)(2).

### A. Liability

There is no suggestion that anyone at the County acted in any openly discriminatory way regarding Ms. Bouricius's age.[9] So where, as here, a plaintiff seeks to prove age discrimination under the ADEA using circumstantial rather than direct evidence, courts evaluate the claim using the *McDonnell Douglas* burden-shifting approach: If a terminated employee can make a prima facie case of discrimination, the burden shifts to the employer to articulate a nondiscriminatory reason for firing the employee. If the employer can do that, the employee picks up the burden once more and can survive summary judgment by identifying

---

[9] Though, as noted above, Ms. Bouricius has provided evidence that Mr. Whidden did make comments about other terminated employees' age before he terminated them.

evidence that could support a reasonable jury's concluding that the employer's proffered rationale is a mere pretext for discrimination. *Roberts v. Int'l Bus. Machines Corp.*, 733 F.3d 1306, 1309 (10th Cir. 2013) (citing *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216–17 (10th Cir. 2013); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see also Murray v. City of Sapulpa*, 45 F.3d 1417, 1421 (10th Cir. 1995) (noting that the *McDonnell Douglas* burden-shifting analysis is a tool the courts use in analyzing summary judgment motions, which need not be strictly applied because the ultimate burden of persuasion rests upon the plaintiff).

To make out a prima facie case of discriminatory discharge under the ADEA, a claimant affected by a reduction-in-force ("RIF") must prove: (1) that she is within the protected age group; (2) that she was doing satisfactory work; (3) that she was discharged despite the adequacy of her work; and (4) that there is some evidence the employer intended to discriminate against her in reaching its RIF decision. *Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165 (10th Cir. 1998); *Ingels v. Thiokol Corp.*, 42 F.3d 616, 621 (10th Cir. 1994). The fourth element may be established "through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the [RIF]." *Ingels*, 42 F.3d at 621. The undisputed facts satisfy these elements. Ms. Bouricius was fifty-seven years old at the time of her termination, the County has never suggested her work was anything other than satisfactory,[10] and the County retained three younger employees in her position. The County has also offered the RIF as a legitimate, non-discriminatory reason for the termination. So, the only question is

---

[10] The single "improvement action plan" she once received does not suggest unsatisfactory work, nor is it argued that this singular demerit played any role in Mr. Whidden's decision to terminate Ms. Bouricius.

whether Ms. Bouricius has provided evidence that age motivated the County's choice of who to terminate in the RIF.

For summary judgment purposes, Ms. Bouricius meets the mark. In a RIF case, a plaintiff may demonstrate pretext by showing that her own termination does not accord with the RIF criteria supposedly employed. *Beaird*, 145 F.3d at 1168; *see also Christie v. Foremost Ins. Co.*, 785 F.2d 584, 586–87 (7th Cir. 1986) (holding that failure of defendant to comply with its own RIF policy allowed jury to conclude RIF was pretextual). Here, Mr. Whidden claims to have made his determination based on which persons and skills he believed were essential to the operation of the IT department, to which Ms. Bouricius has responded with admissible documentary and testamentary evidence indicating that she was as or more capable at the tasks and programs Mr. Whidden supposedly valued than employees who were retained.

The use of subjective criteria itself also may indicate pretext in certain circumstances. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002) ("Courts view with skepticism subjective evaluation methods such as the one here."); *see also Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Servs.*, 165 F.3d 1321, 1328 (10th Cir. 1999) ("Evidence of pretext may include . . . the use of subjective criteria."); *Bauer v. Bailar*, 647 F.2d 1037, 1046 (10th Cir. 1981) (Although subjective criteria is not wrongful per se, "[o]bvious subjective decision making provides an opportunity for unlawful discrimination."); *Bergene v. Salt River Project Agric. Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001) (subjective criteria evidence of pretext); *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 (5th Cir. 1993) (citing with approval *Burrus v. United Tele. Co. of Kansas, Inc.*, 683 F.2d 339, 342 (10th Cir. 1982)) (subjective employment criteria may provide opportunities for unlawful discrimination); *Bell v. Bolger*, 708 F.2d 1312,

1319–20 (8th Cir. 1983) ("[S]ubjective promotion procedures are to be closely scrutinized because of their susceptibility to discriminatory abuse.").

In this case, the facts, viewed in Ms. Bouricious's favor, cast a shadow over Mr. Whidden's selection process. It's undisputed that in making the layoff determination, Mr. Whidden did not consider any of the available objective data, including the employees' level of education, degrees, or seniority. He did not look at any performance reviews, disciplinary records, job descriptions, or historical records. Nor did he abide by the County's written layoff policy. Instead, he made the decision based on a subjective analysis he performed in his own head, without documenting his reasons. Ms. Bouricius has provided evidence that, construed in her favor, suggests his determinations were, at best, haphazard, at middle, entirely ignorant of the actual needs of the department, the inter-workings of which he didn't properly understand, and at worst, discriminatory.

In making force-reduction decisions, Mr. Whidden fired the oldest business systems analyst (Ms. Bouricius), oldest network administrator, oldest manager, and oldest help desk employee, among others. These circumstances and that result, taken together, are "sufficient to raise a genuine issue of material fact regarding the credibility of Defendant's proffered explanation." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1198 (10th Cir. 2000). For these reasons, the motion for summary judgment is denied as to the County's liability.[11]

---

[11] Ms. Bouricius also questions Mr. Whidden's credibility more directly by raising the specter of several prior bad acts by him, which the County views as an attempt to inject inadmissible character evidence into the case. It is correct that Federal Rules of Evidence 404 (a)(1) and (b)(1) generally prohibit such character evidence, so there may be some

**B. Damages**

In her Complaint, Ms. Bouricius seeks back pay, front pay, compensatory and consequential damages, liquidated damages, injunctive or declaratory relief, punitive damages, pre- and post-judgment interest; attorneys' fees and costs; and a gross up of any award as an allowance for taxing consequences. In the Scheduling Order, she elaborates that she was unemployed for two months; relocated to Lyons, Colorado, where there is a higher cost of living; was "forced" to remove approximately one-thousand six-hundred apple trees from her family apple orchard in Mesa County and cease operations of her apple farming business; and cannot afford to purchase or lease as nice of a house in Boulder County as she had in Mesa County.[12] In interrogatory responses, she claims to seek lost wages for her period of unemployment; the differential in her earnings from those that she would have earned by continuing to work for Mesa County, adjusted for the increased taxes and cost of living; lost benefits; moving costs; the need for a more winter-ready vehicle; difference in commute time; the value of her labor to produce firewood; emotional and psychological distress; the lost value of Plaintiffs family farm incurred as a direct result of her unlawful termination;

---

merit to the County's position, depending on how Ms. Bouricius seeks to use this evidence. Some of this evidence may be admissible. *See* Fed. R. Evid. 608 and 609; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination."). On this issue, the parties may file motions in limine at an appropriate time as set in the Court's forthcoming order setting trial dates and related deadlines.

[12] Because the parties' have not filed or directed the Court's attention to admissible evidence supporting or refuting these circumstances, they are of illustrative value only at this time. *See* Fed. R. Civ. P. 56(c).

other non-economic losses, including taxation gross-ups; and compensatory, consequential, and liquidated damages.

Despite all of these claimed damages items, the parties at this point both recognize that compensatory damages are not available under the ADEA. *See* 29 U.S.C. § 633a; *Commissioner of Internal Revenue v. Schleier*, 515 U.S. 323, 326 (1995) (The "ADEA provides no compensation for any of the other traditional harms associated with personal injury. Monetary remedies under the ADEA are limited to back wages, which are clearly of an "economic character," and liquidated damages, which we have already noted serve no compensatory function." (internal quotations omitted."); *Villescas v. Abraham*, 311 F.3d 1253, 1261 (10th Cir. 2002); *Ridgell-Boltz v. Colvin*, 565 F. App'x 680, 683 (10th Cir. 2014) (The "ADEA provides for legal and equitable relief, including reinstatement, back-pay, and other pecuniary benefits associated with the job, but it does not permit the recovery of compensatory damages."). Consequently, Ms. Bouricius would not be able to recover any damages associated with her relocation, new living conditions, or for emotional distress because these are non-job-related compensatory damages. *See, e.g.*, *Lyons v. Allendale Mut. Ins. Co.*, 484 F. Supp. 1343, 1344 (N.D. Ga. 1980).

Ms. Bouricius also notes that her request for a tax-penalty offset is permissible. In this circuit, it is not an abuse of discretion for a district court to include a tax component in a back-pay award to compensate a plaintiff for additional tax liability that may result from receiving damages in one lump sum. *Sears v. Atchison, Topeka & Santa Fe Ry., Co.*, 749 F.2d 1451, 1456 (10th Cir. 1984). But at this juncture—no liability, damages, or tax information having been proven—the Court will not determine whether Ms. Bouricius is so entitled and cannot say whether circumstances exist that would permit such a recovery.

Ultimately, however, the Court agrees with Ms. Bouricious that these issues are inappropriate to resolve now. *See, e.g.*, *Asher Assocs., L.L.C. v. Baker Hughes Oilfield Operations, Inc.*, No. 07-cv-01379-WYD, 2009 WL 1468709, at *2 (D. Colo. May 20, 2009). While the County may be largely correct on the substance, such issues can be better resolved through motions in limine and jury instructions.

## CONCLUSION

For the foregoing reasons, the motion to strike Frank Whidden's expert designation (Doc. 75) is **GRANTED**. Mesa County's motion for summary judgment (Doc. 73) is **DENIED**.

Dated: January 21, 2020.   BY THE COURT:

_____
Daniel D. Domenico
United States District Judge