IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 18-CV-01144-DDD-STV

DEBRA BOURICIUS,

    Plaintiff,

v.

MESA COUNTY, by and through the Mesa County Board of County Commissioners,

    Defendant.

_____

### MESA COUNTY'S MOTIONS IN LIMINE
_____

Mesa County, by and through the Mesa County Board of County Commissioners, ("Mesa County") respectfully submits its Motions in Limine. In support thereof, Mesa County states as follows.

**Conferral.** Pursuant to D.C.COLO.LCivR 7.1(a), counsel for the Defendant conferred with counsel for the Plaintiff regarding the relief sought in this Motion. Plaintiff's counsel opposes this Motion.

### A. Background

Debra Bouricius ("Bouricius") filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD") and Equal Employment Opportunity Commission ("EEOC") on January 24, 2017, alleging she experienced discrimination on the basis of her age when Mesa County laid off Bouricius from employment on October 7, 2016. Ex. 1 (DEF 22); Ex. 2 (DEF 245). Frank Whidden made the decision to layoff individuals in the IT

department, including Bouricius, after talking with two other IT managers and receiving approval from the Board of Commissioners to conduct layoffs. Ex. 3 (Whidden Dep. at 117:2-119:6, 313:4-11).

The CCRD issued a determination dated December 14, 2017, in which it found probable cause and determined that Mesa County "has violated C.R.S. 24-34-402, as re-enacted…" Ex. 4 (DEF 1-9 at DEF 1, 8). Thereafter, Bouricius filed this lawsuit pursuant to 29 U.S.C. §§ 621, *et seq.*, (*i.e.*, the Age Discrimination in Employment Act ("ADEA")) in which Bouricius asserted one cause of action in which she alleges Mesa County discriminated against Bouricius when it laid off Bouricius from employment. Compl. and Jury Demand (CM/ECF Doc 1) at ¶¶ 7, 42-46. So, Bouricius must prove at trial that "(1) that she is within the protected age…group; (2) that she was doing satisfactory work; (3) that she was discharged despite the adequacy of her work; and (4) that there is some evidence the employer intended to discriminate against her in reaching its RIF decision." *Eke v. CaridianBCT, Inc.*, 490 Fed.Appx. 156, 162-163 (10th Cir. 2012) (citations omitted). Bouricius "must show that her age was the but-for cause of her termination." *Id.* at fn 4. *Accord Steele v. Stallion Rockies Ltd.*, 106 F.Supp.3d 1205, 1210 (D.Colo. 2015). If such showing is made, Mesa County can then come "forward with a legitimate, nondiscriminatory reason for its employment decision," after which Bouricius can prove that this reason "is a pretext for age…discrimination." *Eke*, 490 Fed.Appx. at 164. Further, Bouricius also has the burden to prove her entitlement to damages, and Bouricius requests a variety of compensatory damages. Compl. and Jury Demand (CM/ECF Doc 1) at § IV.c; Mesa County's Mot. for Summ. J. (CM/ECF Doc 73) at 16-20.

Because certain evidence is not admissible to prove Bouricius's ADEA claim or must be precluded, and because compensatory damages are not recoverable in ADEA actions, the Court must prevent Bouricius from offering evidence or testimony regarding these topics at trial, as set forth more fully below.

## B. Argument

*<u>Motion in Limine No. 1: The Court must preclude Bouricius from offering evidence of or eliciting testimony regarding other employees' settlement agreements with Mesa County.</u>*

During discovery, the parties produced settlement agreements that Mesa County entered into with three third-party employees: Rick Corsi, Janine Corsi, and Ms. A. Ex. 5 (DEF 3916-3920, Bouricius 000385-000398); Ex. 6 (DEF 5258-5262). Further, these settlement agreements were addressed during multiple depositions in this case. *See*, *e.g.*, Ex. 3 (Whidden Dep. at 203:1-8, 206:14-24, 298:6-309:13); Ex. 7 (Janine Corsi Dep. at 6:9-17, 60:7-15); Ex. 8 (Rick Corsi Dep. at 5:25-6:7); Ex. 9 (Justman Dep. at 141:22-149:3). Evidence and testimony related to settlement agreements between Mesa County and third parties must be excluded in this case.

Generally, evidence relating to settlements is not admissible to prove liability or the amount of liability. That is, F.R.E. 408(a)(1) explains that "[e]vidence…of furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising…the claim…is not admissible…to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction." This Rule applies even when a party to a litigation intends to

3

introduce evidence of a third party's settlement agreement with another party to the litigation. *Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213 (9th Cir. 1990).

Indeed, in *Goussen v. Mendez Fuel Holdings, LLC*, No. 18-20012-Civ-COOKE/GOODMAN, 2018 WL 5831084, *2-3 (S.D.Fla., Nov. 7, 2018), a lawsuit seeking overtime compensation, the court held that evidence of prior wage cases filed against the defendant and evidence of wage-related settlement agreements in which the defendant was a party were precluded at trial because "raising ... prior employee lawsuit[s] would effectively create a 'mini-trial' about the merits of the previous case[s] and other 'collateral issues' that may not relate to the present case." (Internal citations omitted.)

In this case, Bouricius's use of evidence of and testimony about settlement agreements that Mesa County entered into with Mr. Corsi, Mrs. Corsi, and/or Ms. A. is expected to relate to whether Mesa County is liable to Bouricius and/or to the amount of damages to which Mesa County is liable to Bouricius. But whether Mesa County entered into settlement negotiations or agreements with third parties does not impact whether Bouricius's separation from employment was lawful or unlawful. F.R.E. 401. Further, there is real danger that admitting evidence and testimony relating to third parties' settlement agreements with Mesa County may confuse or mislead jurors into believing that Mesa County admitted liability, which unfairly prejudices Mesa County. F.R.E. 403. Indeed, admitting evidence and testimony of other settlement agreements requires Mesa County to address the reasons why it chose to enter into such agreements, thereby conducting "mini trials" related to these agreements, even though the propriety of Mesa County's

business decisions with respect to settlement agreements with third parties is not at issue in Bouricius's ADEA claim.

Consequently, this Court must exclude the introduction of evidence and testimony relating to settlement agreements with third parties in which Mesa County was a party.

### Motion in Limine No. 2: The Court must preclude Bouricius from offering evidence of determinations issued by the CCRD.

In this case, the CCRD issued determinations with respect to Bouricius's Charge of Discrimination and with respect to Mr. Corsi's and Mrs. Corsi's Charges of Discrimination. Ex. 4 (DEF 1-9); Ex. 10 (DEF 3552-3562, 3890-3904) (note that duplications of the pages in Exs. 4, 10 were also produced during discovery). Because of these Determinations' proclivity to confuse the issues while not providing probative information, these Determinations must be excluded from evidence at trial.

That is, in *Tuffa v. Flight Servs. And Sys., Inc.*, 644 Fed.Appx. 853 (10th Cir. 2016), the court evaluated whether the district court properly excluded from evidence the EEOC's determinations pursuant to F.R.E. 403. The Tenth Circuit explained that "if the district court allowed introduction of the EEOC letter, the jury may have felt the need to defer to the EEOC because of its perceived expertise." *Id.* at 856. *See also Waters v. Penn. Human Relations Comm'n*, No. 1:13-cv-2652, 2017 WL 24670, *3-4 (M.D.Penn., Jan. 3, 2017) (excluding evidence of the EEOC's Determination pursuant to F.R.E. 403 and explaining that, in part, "in conjunction with the potential that the EEOC Determination Letter has to mislead the jury and unfairly prejudice Defendant, the Court also finds that admission of this evidence will undoubtedly waste time.").

In this case, "[t]he findings and conclusions of one trier of fact in a nonjudicial administrative proceeding do not bind and must not be allowed to direct or influence the findings and conclusions that must be made by the trier of fact in this very different public, judicial proceeding…" *Arnold v. City and Cty. of Denver*, No. 14-cv-00290-REB-CBS, 2015 WL 509489, *1 (D.Colo., Feb. 4, 2015). Indeed, a jury trial would be meaningless if the CCRD's determinations regarding Bouricius's, Mr. Corsi's, and Mrs. Corsi's Charges guided the jury toward a certain verdict. This risk unfairly prejudices Mesa County and confuses the issues while misleading the jury regarding its duties.

For these reasons, Mesa County requests the Court exclude from evidence the CCRD determinations issued with respect to Bouricius, Mr. Corsi, and Mrs. Corsi.

*<u>Motion in Limine No. 3: The Court must preclude Bouricius from offering evidence of Mr. Whidden's counseling business, tax-related issues, and reason for his resignation from employment with Mesa County.</u>*

Generally, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." F.R.E. 404(a)(1). Even if evidence of a person's character or character trait is admissible, "the evidence of prior bad acts is admissible only if it is relevant under Rule 401, the probative value is not substantially outweighed by the potential for undue prejudice under Rule 403, and the jury is instructed to consider the evidence only for the purpose for which it was admitted." *Perkins v. Fed. Fruit & Produce Co., Inc.*, No. 11-cv-00542-REB-KLM, 2012 WL 1658871, *3 (D.Colo., May 3, 2012) (citation omitted).

In this case, evidence relating to Mr. Whidden's operation of a counseling business; a personal tax judgment; and the reason Mr. Whidden resigned from

6

employment with Mesa County relate to Mr. Whidden's character or character traits and not to Bouricius's ADEA claims. That is, during Mr. Whidden's deposition, Bouricius's counsel inquired into Mr. Whidden's marriage and family therapy business, for which Mesa County paid for Mr. Whidden's training. Ex. 3 (Whidden Dep. at 313:14-320:17). *See also* Ex. 9 (Justman Dep. at 169:17-176:21) (addressing the same topic). Bouricius also produced evidence relating to a tax-related judgment issued against Mr. Whidden and to Mr. Whidden's resignation from employment with Mesa County in 2019. Ex. 11 (Bouricius 001611-001612, 001632). None of these issues relates to Bouricius's claim of age-related discrimination.

Neither Mr. Whidden's therapy business, tax judgment, or resignation have any bearing on the elements of proof under an ADEA discrimination claim. F.R.E. 402. Rather, all three topics relate to Mr. Whidden's character or character traits, which Bouricius intends to use to show that Mr. Whidden is untrustworthy. This is precisely the type of character evidence that must be excluded. F.R.E. 404. Indeed, it is prejudicial to Mesa County and confusing and misleading to the jury to admit evidence of Mr. Whidden's character or character traits for the purpose of showing that Mr. Whidden is untrustworthy. It is the jury's purview to decide issues of credibility. *Osman v. Bimbo Bakeries USA, Inc.*, No. 14-cv-03281-MEH-CBS, 2016 WL 192275, *13 (D.Colo., Jan. 15, 2016) (*citing Gossett v. Okla. ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1175 (10th Cir. 2001)).

Further, as a public employer, Mesa County must adhere to the Colorado Open Records Act, which precludes the disclosure of records in employees' personnel files,

including employees' resignations. C.R.S. § 24-72-202(2) (definition of "official custodian"); C.R.S. § 24-72-204(3)(II)(A) (relating to personnel records).

For these reasons, Mesa County requests the Court exclude the introduction of evidence relating to these topics at trial.

*Motion in Limine No. 4: The Court must exclude Bouricius from offering evidence of an "age spreadsheet."*

During his deposition, Bouricius's counsel asked Mr. Whidden if he was aware of an "age spreadsheet. Ex. 3 (Whidden Dep. at 304:20-23). Mr. Whidden heard about an age spreadsheet but did not know if it actually existed and never saw it. *Id.* at 304:24-305:11. Mr. Justman also never saw and did not have information about an "age spreadsheet." Ex. 9 (Justman Dep. at 136:16-23). As a result, any testimony or evidence related to an "age spreadsheet" must be excluded pursuant to F.R.E. 401.

That is, if Mr. Whidden, who is the individual who made the decision to layoff Bouricius, never saw a document, then that document could not possibly have informed Mr. Whidden's decision to layoff Bouricius. Consequently, an age spreadsheet could not make Bouricius's layoff more or less related to her age.

Indeed, in *Young v. Smith*, No. 3:07-cv-00854, 2016 WL 3522965, *3-4 (M.D.Penn., June 28, 2016), the court examined whether to exclude documents that a party had never seen. The court excluded documents that a party to the lawsuit never read, explaining, "[b]ecause items that Plaintiff never saw could not causally contribute the subjective hostility of the educational environment she perceived, such evidence is properly excluded." *Id.* at *3.

So, too, in this case, Mesa County requests the Court exclude the introduction of evidence related to an "age spreadsheet" because neither Mr. Whidden nor Mr. Justman ever saw such a document.

*Motion in Limine No. 5: The Court must preclude Bouricius from offering evidence of news and media articles during trial.*

During discovery, Bouricius produced several news and media articles from 2019 relating to the 2016 layoffs, which involved Bouricius. Ex. 12 (Bouricius 001607-001633). These media articles contain hearsay for which there is no exception. F.R.E. 801, 803.

That is, in *Wilbur v. Cty. of Waukesha*, No. 14-CV-0046-PP, 2017 WL 1102724, *10 (E.D.Wis., March 23, 2017), the court explained that newspaper articles addressing the topic of police corruption "constitute inadmissible hearsay under Fed. R. Evid. 803 if—as it appears he does—the plaintiff provides them to prove the truth of the matter they assert."

So, too, in this case, the media articles that Bouricius produced address settlement agreements with other employees (*see* Motion in Limine No. 1, *supra*) (Ex. 12 (Bouricius 001607-001609, 001616-001618)); statements from Bouricius's counsel, Paula Greisen, regarding Ms. Greisen's personal interpretations and opinions about Bouricius's case and evidence produced therein (Ex. 12 (Bouricius 001608, 001616-001617)); Mr. Whidden's resignation from employment with Mesa County and counseling services (*see* Motion in Limine No. 3, *supra*) (Ex. 12 (Bouricius 001611-001612, 001621-001624, 001628-001629, 001631-001633)); and opinion articles by individuals in the community who are not witnesses in this case (Ex. 12 (Bouricius 001619, 001625-001626)). All of these

articles contain hearsay statements and, having been written in 2019, none fall with the ancient documents exception to the hearsay rule. F.R.E. 801, 803(16). Further, the testimony of the parties and witnesses relating to Bouricius's allegations is more probative of the admissible claims addressed in these medial articles. F.R.E. 807(a).

As a result, Mesa County requests the Court exclude the introduction of these news and media articles at trial.

### *Motion in Limine No. 6: The Court must exclude Bouricius from offering evidence of compensatory and consequential damages during trial.*

In the Court's Order Denying Mesa County's Motion for Summary Judgment (CM/ECF Doc 134) at 14-15, the Court explained that while "compensatory damages are not available under the ADEA," and "Ms. Bouricius would not be able to recover any damages associated with her relocation, new living conditions, or for emotional distress because these are non-job-related compensatory damages," these damages issues were "better resolved through motions in limine and jury instructions." Accordingly, Mesa County requests the Court exclude Bouricius from offering evidence related to compensatory and other unrecoverable damages during trial.

As part of Bouricius's requested relief, she seeks damages in the forms of: (1) amounts "adjusted for the increased taxes and cost of living between Mesa County…and Boulder County…"; (2) "moving expenses" and "lost economic value incurred by Ms. Bouricius and her family in connection with their relocation from Western Colorado to Lyons, Colorado"; (3) "the lost value of Plaintiff's family farm...[based on] remov[ing] approximately one-thousand six-hundred apple trees from her family apple orchard in

Mesa County and ceas[ing] operations of her apple farming business…"; (4) the difference in value between Bouricius's home in Mesa County and a comparable home in Boulder County; (5) the difference in taxes between Boulder and Mesa counties; (6) living in "a much inferior home"; (7) the difference in commuting time between her commute in Mesa County versus her commute in Boulder County; (8) "the need for a higher clearance, more winter ready vehicle, higher utilities, a 20 mile [sic] commute to do laundry, and more burdensome utilities" plus the "lack of storage space in their current home" and "the value of Mr. Bouricius' labor to produce" firewood; and (9) emotional and psychological distress, including mental damages and loss of enjoyment of life. Scheduling Order (CM/ECF Doc 24), p. 6; Ex. 13 (Pl.'s Am. and Fourth Suppl. Resps. to Def.'s First Set of Combined Disc. Reqs. to Pl., Resp. to Interrog. 7 and Resp. to Req. for Prod. 8); Ex. 14 (Pl.'s Expert Disclosure Pursuant to Fed. R. Civ. P. 26(a)(2), Ex. 1, pp. 4-5); Ex. 15 (Pl.'s Revised Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a)(1), pp. 2-3). Because these nine damages requests are either compensatory or consequential damages that are not recoverable under the ADEA, Mesa County is entitled to summary judgment with respect to Bouricius's requests for these damages.

The ADEA limits the types of damages available to a plaintiff, permitting legal and equitable damages but prohibiting compensatory and consequential damages. *Ridgell-Boltz v. Colvin*, 565 Fed.Appx. 680, 683 (10th Cir. 2014) (explaining, "the ADEA provides for legal and equitable relief, including reinstatement, back-pay, and other pecuniary benefits associated with the job, but it does not permit the recovery of compensatory damages."); *Barton v. Zimmer, Inc.*, No. 1:06-CV-208-TS, 2010 WL 1780187, *5

(N.D.Ind., Apr. 30, 2010) ("Making otherwise unrecoverable wages recoverable merely because they can be traced, and relate, to an injury caused by the defendant, would transform such a damage award into compensatory or consequential damages, which are not available under the ADEA.") *Accord Greene v. Safeway Stores, Inc.*, 210 F.3d 1237, 1244 (10th Cir. 2000).

Indeed, under 29 U.S.C. § 626(b), damages of "unpaid minimum wages or unpaid overtime compensation" are authorized, and courts have authority "to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including…employment, reinstatement or promotion, or…unpaid minimum wages or unpaid overtime compensation..." *See also Schlicke v. Allen-Bradley Co.*, 448 F.Supp. 252, 243 (E.D.Wis. 1978) ("The 'without limitation' language in 29 U.S.C. § 626(b) applies to the types of relief set forth immediately thereafter."). Further, the *Ridgell-Boltz* court cited with approval *Collazo v. Nicholson*, 535 F.3d 41, 44-45 (1st Cir. 2008), which held that only "those pecuniary benefits connected to the job relation" were recoverable under the ADEA. (Citations in *Collazo* omitted). *See also Comm'r of Internal Revenue v. Schleier*, 515 U.S. 323, 326 (1995) (explaining, "the Courts of Appeals have unanimously held…that the ADEA does not permit a separate recovery of compensatory damages for pain and suffering or emotional distress."). As a result, damages under the ADEA relate "to amounts such as wages or benefits that the employer should have given the employee but did not because of the latter's age." *Moskowitz v. Trustee of Purdue Univ.*, 5 F.3d 279, 283 (7th Cir. 1993) (Posner, J.).

Consequently, emotional distress and cost-of-living damages are clearly prohibited compensatory damages under the ADEA. *Schleier*, 515 U.S. at 326, as stated *supra*; *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, case no. 1:02-CV-887, 2007 WL 5662411, *3-4 (N.D.N.Y., Nov. 30, 2007) (holding that testimony regarding a cost of living differential "must be precluded" as part of a compensatory damages consideration). Further, claims for moving expenses, commuting costs, higher mortgage expenses and interest rate, loss of use of property, "displacement costs," and similar types of damages also constitute unrecoverable "compensatory damages." *McGovern v. Gallegos*, Nos. 84–1534 SSH/AK, 87–2320 SSH/AK; 1994 WL 193926, *1 (D.D.C., May 4, 1994); *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, fn 5 (E.D.La. 2007); *Lyons v. Allendale Mut. Ins. Co.*, 484 F.Supp. 1343, 1344 (D.Ga. 1980).

Despite these damages limitations, Bouricius seeks to recover the following compensatory damages:

- damages that are "adjusted for the increased taxes and cost of living between Mesa County…and Boulder County…" (#1, p. 10, *supra*);
- the difference in value between Bouricius's home in Mesa County and a comparable home in Boulder County (#4, p. 10, *supra*);
- the difference in taxes between Boulder County and Mesa County (part of #5, p. 10, *supra*);
- living in "a much inferior home" (#6, p. 10, *supra*); and
- emotional and psychological distress, including mental damages and loss of enjoyment of life (#9, p. 10, *supra*).

These requests all relate to cost-of-living differentials or emotional distress damages, which are prohibited compensatory damages. Because these damages not recoverable under the ADEA, Mesa County requests the Court exclude evidence and testimony relating to these topics.

Bouricius also requests damages attributable to alleged "moving expenses" and an unspecified "lost economic value incurred by Ms. Bouricius and her family in connection with their relocation from Western Colorado to Lyons, Colorado." (#2, p. 10, *supra*) (emphasis added). Moving expenses and a general familial loss of an unspecific economic value are not related to Bouricius's job in Mesa County nor to her current job in Boulder County. Thus, these are compensatory damages that are neither job-related nor recoverable under the ADEA. *McGovern*, 1994 WL 193926 at *1; *Turner*, 472 F.Supp.2d at fn 5; *see also Tyson Foods, Inc. v. Stevens*, 783 So.2d 804, 807 (Ala. 2000) (classifying the value of devaluation as "compensatory damages"). As a result, Mesa County requests the Court exclude evidence and testimony relating to these topics.

So, too, Bouricius's claims for damages relating to "the lost value of Plaintiff's family farm...[based on Bouricius] remov[ing] approximately one-thousand six-hundred apple trees from her family apple orchard in Mesa County and cease operations of her apple farming business…," which removal Bouricius planned to undertake regardless whether her employment ended with Mesa County (#3, p. 10, *supra*; Ex. 16 (Bouricius Dep., 45:2-13)); the difference in commuting time between her commute in Mesa County compared to her commute in Boulder County (#7, p. 10, *supra*); and "the need for a higher clearance, more winter ready vehicle, higher utilities, a 20 mile *[sic]* commute to do

laundry, and more burdensome utilities" plus the "lack of storage space in their current home" and "the value of Mr. Bouricius' labor to produce" firewood (#8, p. 10, *supra*) are compensatory damages and unrelated to compensation Bouricius received from her previous job compared to her current job. *McGovern*, 1994 WL 193926 at *1; *Turner*, 472 F.Supp.2d at fn 5. As a result, Mesa County requests the Court exclude evidence and testimony relating to these topics.

WHEREFORE, for the reasons stated above, Mesa County moves the Court for orders in limine precluding Bouricius from introducing evidence or eliciting testimony regarding the topics addressed herein.

Respectfully submitted this 19th day of May 2020.

> */s/ L. Kathleen Chaney, Esq.*
> L. Kathleen Chaney, #29358
> LAMBDIN & CHANEY, LLP
> 4949 South Syracuse Street, Suite 600
> Denver, CO 80237
> (303) 799-8889
> (303) 799-3700 (facsimile)
> Email:  kchaney@lclaw.net;
> *Attorneys for Defendant Mesa County*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1. This Motion for Summary Judgment contains 3,683 words. (MAX 4,000 WORDS)

> */s/ L. Kathleen Chaney, Esq.*
> LAMBDIN & CHANEY, LLP
> 4949 South Syracuse Street, Suite 600
> Denver, CO 80237
> (303) 799-8889
> (303) 799-3700 (facsimile)
> Email:  kchaney@lclaw.net;
> *Attorneys for Defendant Mesa County*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing **MESA COUNTY'S MOTIONS IN LIMINE** was served this 19th day of May 2020, via the CM/ECF electronic filing system, to the following:

Paula Greisen
Jennifer Bezoza
Meredith A. Munro
King & Greisen, LLP
1670 York Street
Denver, CO 80206
Telephone: (303) 298-9878
Fax: (303) 298-9879
greisen@kinggreisen.com
bezoza@kinggreisen.com
munro@kinggreisen.com
Attorneys for Plaintiff

*/s/ L. Kathleen Chaney, Esq.*
L. Kathleen Chaney, #29358
LAMBDIN & CHANEY, LLP
4949 South Syracuse Street, Suite 600
Denver, CO 80237
(303) 799-8889
(303) 799-3700 (facsimile)
Email:  kchaney@lclaw.net;
*Attorneys for Defendant Mesa County*

16