

**COLORADO**

**Department of Regulatory Agencies**

Colorado Civil Rights Division

1560 Broadway Street, Suite 1050
Denver, CO 80202

Charge No. FE2017171785

Janine Corsi
3328 Northride Drive
Grand Junction, CO 81506                    Complainant

Mesa County
544 Rood Avenue
Grand Junction, CO 81501                    Respondent

## DETERMINATION

Under the authority vested in me by C.R.S. 24-34-306 (2), I conclude from our investigation that there is sufficient evidence to support the Complainant's claim of a discriminatory reduction in workforce based on age.  As such, a **Probable Cause** determination is hereby issued in relation to this claim. However, there is insufficient evidence to support the Complainant's claim of discriminatory reduction in workforce based on sex or marriage to a co-worker.   As such, a **No Probable Cause** determination is hereby issued in relation to that claim.

The Respondent is an employer within the meaning of C.R.S. 24-34-401 (3), as re-enacted, and the timeliness and all other jurisdictional requirements pursuant to Title 24, Article 34, Parts 3 and 4 have been met.

The Complainant alleges that on or about October 7, 2016, he was unlawfully laid off because of her marriage to a co-worker, age (59, DOB 02/15/1957) and\or sex (Female). The Respondent denies the allegations of discrimination and avers that its workforce was reduced due to budgetary concerns.

The legal framework under which civil rights matters are examined is as follows:  The Complainant bears the burden of proving that discrimination has occurred.  Each key or essential element ("prima facie") of the particular claim must be proven, through



DEF 3552

Exhibit 10
**CONFIDENTIAL**

a majority ("preponderance") of the evidence. If the Complainant meets this initial burden of proof, then the Respondent has the burden of explaining, with sufficient clarity, a non-discriminatory justification for the action taken. This is in response to the specifically alleged action named in the charge. In addition, the Respondent has the burden to produce documents and other information requested by the administrative agency during the civil rights investigation. If the Respondent offers a non-discriminatory reason, then the burden once again shifts back to the Complainant to prove that this proffered legitimate reason is merely a pretext for discrimination. At this stage, the Complainant must prove, again through sufficient evidence, that the true and primary motive for the Respondent's actions is unlawful discrimination.

"Unlawful discrimination" means treatment that is primarily based on the Complainant's asserted protected group or status. The Respondent's stated reasons for its actions are presumed to be true, unless and until the Complainant, again through a preponderance of the evidence in the record, adequately shows that the Respondent's reason is pretext (i.e., is not to be believed), and that the Complainant's protected status was the main reason for the adverse action taken. The Complainant does not need to submit additional evidence, in response to the Respondent's position, but the available evidence must be legally sufficient so that a reasonable person would find that the Respondent intended to discriminate against the Complainant because of his/her protected civil rights status. See Colorado Civil Rights Commission v. Big O Tires, Inc., 940 P.2d 397 (Colo. 1997); Ahmad Bodaghi and State Board of Personnel, State of Colorado v. Department of Natural Resources, 995 P.2d 288 (Colo. 2000).

The Respondent is political subdivision of the State of Colorado. It employs more than 15 persons.

The Complainant began her employment on or about March 20, 1993 and most recently held the position of Network Administrator. The Complainant was supervised by Troy Flick ("Flick")(age 40 or older; male; not married to a co-worker), IT Manager.

The Job Summary for a Network Administrator is as follows:

> Installs, maintains, and monitors the operation of the organization's local, storage and wide area networks (LAN/SAN/WAN). Evaluates vendor products in hardware, software, and connectivity equipment and recommends purchases consist with the organization's short and long term objectives. Recommends and implements LAN/SAN/WAN polices and standards and ensures adherence to security procedures. Performs troubleshooting, diagnosis, and repairs/fixes for network hardware and software related problems.

2

Exhibit 10
**CONFIDENTIAL**                                                           **DEF 3553**

The Complainant avers that she performed satisfactorily at all times. A review of the Complainant's performance evaluations demonstrates that she performed satisfactorily.

The Complainant argues Frank Whidden ("Whidden")(age 40 or older; male; not married to a co-worker), County Administrator, expressed concern to her husband Rick Corsi ("R. Corsi")(age 40 or older; male; married to a co-worker), Former IT Manager and the Complainant's husband, about the fact that they worked in the same Department. The Complainant alleges that since that discussion, Whidden expressed concerns about other individuals that are married to co-workers.

The Respondent agrees that four individuals who were married to a co-worker, the Complainant, R. Corsi, David Barnett ("Barnett")(age 40 or older; married to a co-worker; male), Network Administrator, and Carey Stieb ("Stieb")(age 40 or older; male; married to a co-worker), Network Administrator, were laid off. The Respondent reports that Barnett and Stieb's spouses were not laid off. The Respondent argues that if marriage was the sole basis for the discharge, it would follow that Barnett and Stieb's respective spouses would also have been separated from their employment with the Respondent. The Respondent contends that the fact that Barnett and Stieb's spouses were not laid off is evidence that marital status was not a factor.

The evidence demonstrates that the Complainant did not exercise supervisory, appointment, dismissal, or disciplinary authority over R. Corsi.

The Respondent maintains the following policy "6.25 Nepotism – Employment of Related Persons":

> In the interest of maintaining impartial employment practices [the Respondent] has an established policy regarding the employment of relatives. Relative is defined as any two people related by blood, adoption, or marriage as spouse, domestic partner, parent, child, grandparent, grandchild, brother or sisters, (including in-laws and step-relations).
>
> Relatives may be employed by [the Respondent] UNLESS:
>
> A. One directly or indirectly would exercise supervisory, appointment, or dismissal authority or disciplinary action over the other. This includes actions such as hiring, promoting, determining salary or in any other way influence the employment status of a related person. Relatives will not work for the same immediate supervisor not will they supervise each other; or

3

Exhibit 10
CONFIDENTIAL
DEF 3554

B. One would audit, verify, receive, or be entrusted with moneys received or handled by the other.

If employees become related and their employment violates this policy the affected employees will have three (3) months to comply with this policy.

This policy does not apply to situations existing prior to the effective date of this Manual.

The Complainant claims that on or about September 28, 2016, Flick inquired and joked about when she was going to retire.

The Respondent asserts that discussions of future retirement plans do not rise to the level of establishing a causal connection between being laid off and the Complainant's age. In a witness interview, Flick admitted that "casual conversations" were initiated by both himself and the Complainant regarding retirement. Flick insists that the Complainant and R. Corsi "spoke openly about [retirement] to everybody."

The Complainant argues that Flick treated similarly situated male employees more favorably than her by playing cards with male employees while on breaks and excluding the Complainant. The Complainant insists that the card games "frequently last[ed] two to three hours at a time." The Complainant contends that she was expected by the help desk and other IT staff to cover for the absence of Flick, Sage, Stieb, and Bill Tarlton ("Tarlton")(age 40 or older; male; not married to a co-worker), Network Administrator, while they were "holed up in the old jail or conference room playing cards." The Complainant avers that this was blatant favoritism towards the "guys in the group."

The Respondent argues that "when factoring in [the Complainant's] disapproval of this activity, it is reasonable that co-workers would not ask her to join in their social interaction." In a witness interview, Flick reported that the Complainant was never "explicitly invited but she was never not invited or disinvited." In a witness interview Farslow explained that the Networking Group was on call 24\7 and that they "take the time when they can."

The Complainant alleges that Flick excluded her from meetings with vendors and failed to include her on projects. The Complainant claims that when she expressed concern to Flick he told her "it's true I feel more comfortable with some people than others." The Complainant avers that Flick went out of his way to avoid speaking to her. The Complainant alleges that Whidden referred to the Network group as the "network guys" and if he had issues, he would seek help from Flick, Stieb, Sage, or Tarlton.

4

Exhibit 10
CONFIDENTIAL

In a witness interview, Flick denied that he said he felt more comfortable with some people than others. The Respondent asserts that Whidden's use of the word "guys" was in a generic sense as reference to a group of people and not specifically to a group of men.  The Respondent insists that Whidden sought assistance based on need. The Respondent insists that Whidden had "little, if any issues related to these specific services" referring to the Complainant's specific responsibilities for back-ups and assistance with Colorado Open Records Act ("CORA") requests.

The Complainant argues that the Respondent did not "put much time or effort into choosing those to be laid off" and that the Respondent "acted hastily and without proper study or documentation."   The Complainant argues that Tarlton is very difficult to work with, inexperienced, abrasive, and unwilling to help others. The Complainant alleges that Tarlton was "an abuser of sick leave." The Complainant argues that she has all of the skills necessary to perform the job and possesses a master's degree. The Complainant claims that Sage only has a high school diploma and that Tarlton just recently obtained his bachelor's degree online.   The Complainant asserts that Tarlton does not have any special abilities that she does not possess.

In a witness interview, Paul Mitts ("Mitts")(age 40 or older; not married to a co-worker; male), Support Specialist, admits that he would seek assistance from the Complainant more than anyone else because she was approachable and available. Mitts reported that the Complainant was his "go-to" person.

The Respondent argues that it looked at the skill sets between the two Network Administrator positions and determined that the Complainant lacked the strength in server operating systems and general network administration that Tarleton had. The Respondent admits that the Complainant was not given 30 days' notice but asserts that she was provided with 30 days' compensation. The Respondent alleges that the advanced notice was not provided because of security concerns due to the highly sensitive nature of the IT Department.

The Complainant alleges that Flick allowed Ronald Sage ("Sage")(age 40 or older; male; not married to a co-worker), Network Administrator, to take leave without applying for Family and Medical Leave Act ("FMLA") Leave, when she was required to use FMLA Leave.

The Respondent maintains that, due to confidentiality, the Complainant would not be entitled to any information about another employee's FMLA Leave. The Respondent argues that requiring the Complainant to submit paperwork is in accordance with the requirements of FMLA Leave.

In a witness interview, Flick reported that he does not recall a time when the Complainant required FMLA Leave. Flick explained that Sage used sick time that was

5

Exhibit 10
**CONFIDENTIAL**

DEF 3556

"fairly short in length [but] nothing that was an ongoing issue that required FMLA [leave.]"

The Respondent denies that the Complainant was treated less favorably than similarly situated employees not of her protected class.

The Respondent provided a copy of its Human Resources Policies and Procedures Manual ("Manual"). Section 8.03 of the Manual details the Respondent's layoff policy as follows:

> If it becomes necessary to lay off employees due to lack of funds, reorganization, reduction in quantity of programs, or for any other reason, directors will first conduct or have conducted an analysis of personnel needs. From the analysis, each director will recommend quantity and types of proposed reductions. The County Administrator will review and comment on the proposals, recommending any changes felt necessary to the Board of County Commissioners, who will make the final decisions (Health Department addendum and Human Services Department addendum).

> In determining the individual employees to be laid off, the following will apply:

> Among regular employees, the director will have the option to lay off employees as deemed necessary and appropriate. The following items must be considered, in light of the needs of the department. These factors shall be taken into account in the order indicated:

> A. Performance of the employee;
> B. Special abilities the employee may possess

> In the event that the selection cannot be made on the above basis, the determining factor will be time employed by the County in a given position and the demand for that position within the proposed division reorganization.

> A layoff is not considered to be a dismissal and not grounds for initiation of the problem solving process (See Section 7.11).

> Regular employees being laid off will receive notice of layoff at least thirty (30) days prior to the effective date of the layoff, unless the layoff is temporary in nature and not expected to exceed ten (10) working days.

6

Exhibit 10
CONFIDENTIAL

> If reinstated in county service following a layoff within one (1) year, regular employees will retain any unused sick leave hours. If an employee was previously eligible for insurance benefits, waiting periods will not apply. Unless reinstatement is within thirty (30) days of the layoff, the employee's anniversary date will be adjusted one (1) month for each month laid off. (See Sections 4.03.J.2 and 4.07).

The Complainant insists that the Respondent failed to follow its own policy regarding reduction in workforce.

The Respondent argues that it is reasonable for it to look at the skill set of its employees, their strengths and weaknesses, and which employee could absorb additional functions when a reduction in workforce is necessary. The Respondent asserts that the Complainant's primary function was handling "backups." The Respondent acknowledges that the Complainant was able to perform the other essential functions of a Network Administrator but argues that her performance was not as strong in these other functions, such as server operation systems and general network administration, especially when compared to Tarleton.

The Colorado Civil Rights Division requested contemporaneous documentation regarding the analysis regarding the layoff decisions performed by the Respondent and the Respondent admits that "[a]side from general budgetary information regarding the state of [the Respondent's] financial deficit, which precipitated the need for layoffs in the IT Dept[artment], there are no documents related to the decision to layoff [the] Complainant.

The Colorado Civil Rights Division requested an interview with Whidden; however, Whidden declined to participate in an interview. The Respondent elaborated and stated that "he declines to do an interview and believes his position/statements are represented within Mesa County's Response to the Request for Information." The Respondent confirmed that Whidden was responsible for the decision to layoff the Complainant.

Comparative data shows that the IT Department consisted of 24 employees. Comparative data demonstrates that of the entire IT Department, 18 (75%) of the employees were of the same protected class as the Complainant based on age (age 40 or older). Of the six employees that were laid off, 100% were age 40 or older.

Of the 24 employees in the IT Department, eight (33.3%) were members of the same protected class as the Complainant based on sex (female). Of the 24 employees in the IT Department, six employees were laid off. Of the six employees that were laid off, 4 (66.6%) were female and 100% were age 40 or older.

Exhibit 10
CONFIDENTIAL

DEF 3558

Comparative data demonstrates that of the 24 individuals in the IT Department, two, the Complainant and J. Corsi, are married to a co-worker within the IT Department. Comparative data shows that two other individuals within the IT Department, Stieb and D. Barnett, are married to a co-worker in another department. The Complainant, J. Corsi, Stieb, and D. Barnett were laid off, which consists of 66.6% of the layoffs within the IT department. Stieb and D. Barnett's spouses remain employed by the Respondent. The Respondent does not maintain data about its employees that are married to a co-worker.

Comparative data demonstrates that the Complainant's salary ($72,894.96) was tied as the fourth highest in the entire IT Department and tied as the second highest of those that were laid off. The evidence shows that Flick and Lhana Jordan ("Jordan")(Age 40 or older; female; Not Married to a Coworker), Customer Service Manager, are paid more than five of the six individuals that were laid off, including the Complainant. Flick and Jordan are members of the Complainant's protected class based on age.

Comparative data shows that the Complainant was the second longest serving (23.5 years) employee of those individuals that were laid off. Two currently employed individuals have served longer than the Complainant.

Marriage to a Co-Worker/Discharge:

To prevail on a claim of discriminatory discharge based on marriage to a co-worker, the evidence must show that: (1) the Complainant was married to, or was planning to marry, a co-worker; (2) neither spouse exercised supervisory, appointment, dismissal, or disciplinary authority over the other; (3) neither spouse audited, verified, received, or was entrusted with moneys received or handled by the other; (4) neither spouse had access to the employer's confidential information, including payroll or personnel records; (5) the Complainant was performing satisfactorily; (6) the Complainant was discharged; and (7) the circumstances give rise to an inference of discrimination based on the Complainant's marriage to a co-worker.

The Complainant was married to a coworker, R. Corsi. The Complainant and R. Corsi worked in the same department; however, the evidence shows that neither individual supervised or exercised authority over the other. Neither party audited, verified, received, or was entrusted with moneys received or handled by the other, other than paychecks. The evidence demonstrates that the Complainant was performing satisfactorily. The Complainant was laid off. Although the Complainant alleges that he was laid off due to her marriage to a co-worker, the Respondent denies that the Complainant was laid off because of her marriage to a co-worker. The Respondent asserts that the Complainant was laid off due to budgetary concerns and because his position could be absorbed by other individuals. Although the Complainant assert that the Complainant was discriminated against based on her marriage to a coworker, the

8

Exhibit 10
**CONFIDENTIAL**

**DEF 3559**

Respondent denies this, and demonstrated that other co-workers who were not married were also laid off and that co-workers who were laid off had spouses that were not laid off. The Complainant failed to provide any substantiating evidence to the contrary. Therefore, the circumstances do not give rise to an inference of discrimination based on the Complainant's marriage to co-worker.

Reduction in Workforce/Age/Sex:

To prevail on a claim of discriminatory layoff, the evidence must show that: (1) the Complainant is a member of a protected class; (2) the Complainant was laid off; (3) the Complainant was qualified for the position from which he had been laid off; and (4) the Complainant was treated less favorably than employees outside of his class during the reduction in force.

While the Complainant may hold a personal belief that the Respondent should have utilized other criteria in its reduction-in-workforce plan, Respondent is legally entitled to establish whatever non-discriminatory criteria it desires for its employment decisions. Civil rights statutes do not constitute a vehicle for administrative/judicial review of an employer's bona fide business decisions, however unreasonable they might appear to the Complainant. Furthermore, evidence of satisfactory work performance is not probative, because in a reduction in force case, "someone has to be let go." *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1456 (10th Cir. 1994).

The Complainant is a member of a protected class based on her sex (female). The Complainant was laid off. The evidence demonstrates that the Complainant's performance was satisfactory and that she was qualified for the position from which she was laid off. Six employees in the IT Department were laid off at or around the same time as the Complainant. Comparative data demonstrates that of the six employees that were laid off, four (66.6%) were female and two (33.3%) were male. Based on this data, the evidence does not show that the Complainant was treated less favorably than male employees during the reduction in workforce.

The Complainant is a member of a protected class based on her age (59, DOB 02/15/1957). The evidence demonstrates that the Complainant's performance was satisfactory and that she was qualified for the position from which she was laid off. The Respondent asserts that its reduction in workforce was not based on discriminatory criteria. The Respondent asserts that it considered the special skills of the Complainant in making its decision regarding the reduction in workforce. However, the Respondent was unable to provide any documentation that demonstrates how the special skills of the various employees were evaluated. Furthermore, all evidence demonstrates that the Complainant's performance was satisfactory. The Respondent's policy requires the Respondent to consider length of service if the other criteria are not decisive. The Complainant was employed with the

9

Exhibit 10
CONFIDENTIAL

DEF 3560

Respondent for approximately 23 years. Additionally, the Complainant alleges that the Respondent failed to follow its reduction in workforce policies when it failed to provide her with 30 days' notice or consider her performance and skills. The Respondent agrees that the Complainant was not provided with 30 days' notice as outlined in its policy; however, the Respondent reports that it provided the Complainant with a severance package. While the evidence shows that a reduction in workforce was necessary, the Respondent was unable to provide any documentation or evidence supporting their assertion that it followed its policies and made its layoff decision based on the special skills and abilities of its employees. There is probable cause to find that the reason offered by the Respondent, namely that the Complainant lacked certain skills that other employees possessed, is pretext. Therefore, the evidence demonstrates that the Complainant was treated less favorably than employees outside of her class (age) during the reduction in workforce.

Based on the evidence contained above, I determine that the Respondent has violated C.R.S. 24-34-402, as re-enacted in relation to the Complainant's claim of discriminatory reduction in workforce based on age. As such, the Parties hereby are ordered by the Director to proceed to attempt amicable resolution of these charges by conciliation. The Parties will be contacted by the agency to schedule this process.

Based on the evidence contained above, I determine that the Respondent has not violated C.R.S. 24-34-402, as re-enacted. In accordance with C.R.S. 24-34-306(2)(b)(I)(A) and Rule 10.6(A)(1) of the Commission's Rules of Practice and Procedure, the Complainant may appeal the dismissal of this claim to the Commission within ten (10) days, as set forth in the enclosed form.

If the Complainant wishes to file a civil action in a district court in this state, which action is based on the alleged discriminatory or unfair practice that was the subject of the charge filed with the Commission, such must be done:

a.   Within ninety days of the mailing of this notice if no appeal is filed with the Colorado Civil Rights Commission or

b.   Within ninety days of the mailing of the final notice of the Commission dismissing the appeal.

If Complainant does not file an action within the time limits specified above, such action will be barred and no State District Court shall have jurisdiction to hear such action [CRS 24-34-306(I)].

On Behalf of the Colorado Civil Rights Division

Exhibit 10
CONFIDENTIAL

DEF 3561

_Sarah R. Lyons_          _12·14·17_
Aubrey Elenis, Director          Date
Or Authorized Designee

11

Exhibit 10
CONFIDENTIAL

DEF 3562



**COLORADO**

Department of
Regulatory Agencies

Colorado Civil Rights Division

**1560** Broadway Street, Suite 1050
Denver, CO  80202

Charge No. FE2017188101

Rick Corsi
2131 Lawrence Street #627
Denver, CO 80205                    Complainant

Mesa County
544 Rood Avenue
Grand Junction, CO 81501           Respondent

## DETERMINATION

Under the authority vested in me by C.R.S. 24-34-306 (2), I conclude from our investigation that there is sufficient evidence to support the Complainant's claim of a discriminatory reduction in workforce based on age.  As such, a **Probable Cause** determination is hereby issued in relation to this claim. However, there is insufficient evidence to support the Complainant's claim of discriminatory reduction in workforce based on sex or marriage to a co-worker.   As such, a **No Probable Cause** determination is hereby issued in relation to that claim.

The Respondent is an employer within the meaning of C.R.S. 24-34-401 (3), as re-enacted, and the timeliness and all other jurisdictional requirements pursuant to Title 24, Article 34, Parts 3 and 4 have been met.

The Complainant alleges that on or about October 7, 2016, he was unlawfully laid off because of his marriage to a co-worker, age (59, DOB 10/5/1957), and\or sex (Male). The Respondent denies the allegations of discrimination and avers that its workforce was reduced due to budgetary concerns.

The legal framework under which civil rights matters are examined is as follows:  The Complainant bears the burden of proving that discrimination has occurred.  Each key or essential element ("prima facie") of the particular claim must be proven, through



Exhibit 10
**CONFIDENTIAL**

**DEF 3890**

a majority ("preponderance") of the evidence.  If the Complainant meets this initial burden of proof, then the Respondent has the burden of explaining, with sufficient clarity, a non-discriminatory justification for the action taken.  This is in response to the specifically alleged action named in the charge.  In addition, the Respondent has the burden to produce documents and other information requested by the administrative agency during the civil rights investigation.  If the Respondent offers a non-discriminatory reason, then the burden once again shifts back to the Complainant to prove that this proffered legitimate reason is merely a pretext for discrimination. At this stage, the Complainant must prove, again through sufficient evidence, that the true and primary motive for the Respondent's actions is unlawful discrimination.

"Unlawful discrimination" means treatment that is primarily based on the Complainant's asserted protected group or status.  The Respondent's stated reasons for its actions are presumed to be true, unless and until the Complainant, again through a preponderance of the evidence in the record, adequately shows that the Respondent's reason is pretext (i.e., is not to be believed), and that the Complainant's protected status was the main reason for the adverse action taken. The Complainant does not need to submit additional evidence, in response to the Respondent's position, but the available evidence must be legally sufficient so that a reasonable person would find that the Respondent intended to discriminate against the Complainant because of his/her protected civil rights status.  See Colorado Civil Rights Commission v. Big O Tires, Inc., 940 P.2d 397 (Colo. 1997); Ahmad Bodaghi and State Board of Personnel, State of Colorado v. Department of Natural Resources, 995 P.2d 288 (Colo. 2000).

The Respondent is political subdivision of the State of Colorado. It employs more than 15 persons.

The Complainant was hired in or about 1995 as an Applications Analyst I. The Complainant was working as an IT Manager, focused primarily on applications management and geographic information systems (GIS), when he was laid off. The Complainant was supervised by Frank Whidden ("Whidden")(Age 40 or older; Male; Not Married to a Coworker), Mesa County Administrator, IT Director, and Human Resources Director.

The March 2016 Job Description summarizes the IT Manager position as follows: "Manages IT systems including but not limited to: network, database, applications, helps desk operations, desktop hardware and software replacements, upgrades, GIS, web and analyze functions. Responsible for direct supervision of all IT staff."

The Complainant argues that Whidden had issues with the Complainant and his wife Janine Corsi ("J. Corsi")(Age 40 or Older, Female, Married to a Coworker), Complainant's wife and former co-worker, working in the same department. The Complainant asserts that in or about 2011, Whidden expressed concerned that the

2

Exhibit 10
**CONFIDENTIAL**

**DEF 3891**

Complainant's wife also worked in the IT Department under the direction of Troy Flick ("Flick")(Age 40 or older; male; not married to a coworker), IT Manager. Whidden asked the Complainant how this fit into county policy and how the Complainant and J. Corsi could work in the same department. The Complainant asserts that he told Whidden that J. Corsi initially worked in the IT department, and that at the time he was hired, there was no applicable policy in place. The Complainant alleges that he asked the then IT and HR Directors if this was an issue and was assured that there was no policy in place and that it was not an issue. The Complainant asserts that he explained to Whidden that he and J. Corsi worked together for many years and made extra efforts to not allow their relationship to affect any work decision. The Complainant contends that Whidden accepted the situation but made subtle comments throughout the years and "still seemed to have issues with it by the way he interacted with us and the way he excluded myself and [J. Corsi] from some conversations and projects."

The Complainant also alleges that Whidden "took exception" to another individual, David Barnett ("D. Barnett")(Age 40 or older; Male; Married to a Coworker), Business Systems Anaylst, who was married to a coworker, Judy Barnett ("J. Barnett")(Age 40 or older; Female; Married to Coworker), Accounts Payable Clerk. The Complainant asserts that Whidden expressed concerns with them being married and commented to him on the possibility of confidential information being compromised between the two departments.  The Complainant contends that himself, J. Corsi, D. Barnett, and another colleague that was married to a coworker, Carey Stieb ("Stieb")(Age 40 or older; Male; Married to a Coworker) were laid off.

In a witness interview, D. Barnett asserted that there was "friction" and "animosity" about the fact that the Complainant and J. Corsi worked together in a small department. D. Barnett claims that he overheard Flick and Whidden saying things but cannot recall the specific details because it was a long time ago.

The Respondent denies that the above named employees were laid off or otherwise separated from employment with the Respondent because of a discriminatory reason, including marriage to a co-worker.

The Respondent maintains the following policy "6.25 Nepotism – Employment of Related Persons":

> In the interest of maintaining impartial employment practices [the Respondent] has an established policy regarding the employment of relatives. Relative is defined as any two people related by blood, adoption, or marriage as spouse, domestic partner, parent, child, grandparent, grandchild, brother or sisters, (including in-laws and step-relations).

3

Exhibit 10

CONFIDENTIAL

DEF 3892

Relatives may be employed by [the Respondent] UNLESS:

A. One directly or indirectly would exercise supervisory, appointment, or dismissal authority or disciplinary action over the other. This includes actions such as hiring, promoting, determining salary or in any other way influence the employment status of a related person. Relatives will not work for the same immediate supervisor not will they supervise each other; or

B. One would audit, verify, receive, or be entrusted with moneys received or handled by the other.

If employees become related and their employment violates this policy the affected employees will have three (3) months to comply with this policy.

This policy does not apply to situations existing prior to the effective date of this Manual.

The Respondent alleges that J. Corsi granted the Complainant administrative level access to the email system. The Respondent asserts that this was not approved by Whidden. The Respondent contends that this gave the Complainant access to secured and confidential information that he was not permitted to have. The Respondent argues that this breach would have been grounds for immediate termination; however, the Respondent contends that this information was not a determining factor in the decision to layoff the Complainant. The Respondent asserts that "given the nature of the IT Department and its role in ensuring the efficient management of data and protection of confidential information both [the Complainant] and his wife had access to, questioning the effective control of confidential and secured information is reasonable."

The Complainant explained that one of his job responsibilities was Colorado Opens Records Act ("CORA") requests, which included testing the systems to ensure they were working correctly. The Complainant insists that Whidden and Flick knew he had access and were also informed about what was "going on about open records." The Complainant asserts that there was a legitimate reason for him to have access to the email containers and that Flick either gave him access or directed his staff to give the Complainant access to the email containers for better testing and improved methods for the County Attorney's office to access and review CORA email requests.

J. Corsi acknowledged that she gave the Complainant administrative access to an email system, but insists that Flick knew about it and that Lhana Jordan ("Jordan")(Age 40 or older; female; Not Married to a Coworker), Customer Service Manager, was also given access.

4

Exhibit 10
**CONFIDENTIAL**                                                        **DEF 3893**

In a witness interview, Jordan denied that she was given access to the email system.

J. Corsi denied that she exercised supervisory, appointment, dismissal, or disciplinary authority over the Complainant. J. Corsi asserts that she did not audit, verify, or receive moneys received or handled by the Complainant, other than receiving each other's paychecks. J. Corsi insists that she did not have access to the Complainant's confidential information, and asserts that, although he could have accessed her performance evaluations, she doesn't believe that he ever did.

The Complainant insists that he did not exercise supervisory, appointment, dismissal or disciplinary authority over J. Corsi, nor did he audit, verify, or receive moneys received or handled by J. Corsi. The Complainant maintains that he did not have access to J. Corsi's confidential information and explains that, although he was responsible for approving time for all other employees in the department, he was not assigned to approved J. Corsi's time.

In a witness interview, Flick denied that he directed Ms. Corsi to give the Complainant access to the email containers.

The Complainant contends that Flick harassed him about when he was planning to retire and stated that the Complainant's "goal for how much money [he] would need to retire was too high." The Complainant alleges that Whidden and Flick met to discuss the "retirement plans of my wife and I, made some assumptions as to when they believe our plans for retirement were and how much money we had, and decided we would be among those terminated." The Complainant alleges that numerous employees were discharged because of unlawful discrimination based on age.

In a witness interview, Flick reports that the Complainant's retirement plans may have come up casually. Flick asserted that the conversation was on a personal level and included questions such as, "what are you planning to do?" and "what are your interests?"

The Respondent asserts that at the time of the reduction in workforce, the IT Department had three managerial positions, which were held by the Complainant, Flick, and Jordan. The Respondent asserts that the Complainant, and five other IT employees, were laid off at or about the same time. The Respondent claims that "due to significant decreases in projected revenues [it] was projecting a $1.7 million budget deficit for 2017." The Respondent argues that the Board of County Commissions ("BOCC") determined that department cuts were needed and contends that "Whidden looked at departments within his control to find greater efficiencies to address these restrictive budgetary times." The Respondent provided copies of several newspaper articles highlighting the budget concerns.

5

Exhibit 10
CONFIDENTIAL

DEF 3894

The Complainant asserts that Jordan does not have the skills necessary to be an IT Manager. The Complainant admits that Jordan has the skills to perform as a Customer Service Manager.  The Complainant asserts that Jordan had less than two years of experience and was not as qualified for the position he was. The Complainant contends that he was laid off instead of Jordan because the Respondent did not want to be accused of overtly discriminating against Jordan, the only female IT Manager.

The Complainant argues that he possessed "the most versatile and highest level of experience in all IT functions including customer service and infrastructure." The Complainant asserts that he was responsible for "developing one of the most robust GIS systems in the country, which served both internal and external customers." The Complainant argues that customer service was a huge factor in the GIS system's continued success.

The Respondent argues that it determined that Jordan's skills were "more valuable to maintaining the operation of the IT Department than applications and GIS." The Respondent asserts that Jordan possessed specific skills related to technology and customer services; the Complainant had skills related to GIS and applications; and, Flick possessed special skills in network systems and the technical aspects of IT. The Respondent claims that the Complainant's position could be eliminated and the functions of his position could be internally absorbed, and therefore the Complainant was laid off.

The Complainant argues that at the time of his layoff, he was told the decision was not based on performance and contends that the Respondent is now asserting that skills and performance were a deciding factor.

The evidence demonstrates that the Complainant's performance was satisfactory and that in annual performance reviews he was often rated "above standards" or "far above standards." Multiple witness interviews corroborated the Complainant's satisfactory performance.

The Complainant argues that the Respondent's claim that it has and continues to deal with significant revenue shortages is not credible because in or about January 2017, it advertised for no less than 17 positions, including positions both in and outside of public safety. The Complainant contends that the Respondent began new and/or remodeling construction in or about April 2017. The Complainant asserts this is inconsistent with the claim that budget and revenue concerns were the reason for his layoff.

In a witness interview with Shelia Reiner ("Reiner")(Age 40 or older; Female; not married to a co-worker), elected Clerk and Recorder, Reiner explained that the Respondent has two funding sources, the General Fund and the Capital Fund. The Capital Fund is collected from taxes and is used on "infrastructure and the like."

6

Exhibit 10
CONFIDENTIAL

DEF 3895

Reiner conceded that she can see how it may be "misleading to the public who see a building go up and wonder why services have been cut back on."

The Complainant asserts that the decision regarding the layoff was made "abruptly and hastily" and without documentation or proper procedure. Specifically, the Complainant argues that he was not afforded 30 days' notice. The Complainant also alleges that he should not have been laid off if his skill set was considered. The Complainant contends that he was never provided with information to demonstrate that policies were followed and argues that this is evidence that policies were not followed.

In a witness interview, Lynn Zubek ("Zubek")(Age 40 or older; female; not married to a co-worker), Payroll Administrator, agreed that policies may not have been followed and explained that she "felt like there were a lot of people that had a lot less experience that had not been here as long and if they had followed the policy I would have thought some of those people would have been let go first." When asked, Zubek asserted that she "would either say age or pay, or both" as the reason the Complainant was laid off.

In a witness interview, D. Barnett alleged "[i]t definitely seemed to be some discrimination against older [employees], because we were topped out on [] [our] pay ranges, too. There was some discrimination against the people who had been there a long time and were at the top of their salary ranges."

In a witness interview, Lori Marak ("Marak")(female; not married to a co-worker), Senior Business Systems Analyst, reported "[A]ll I can say is my perception with the people that got laid off is that they were all, and I have no idea what their exact ages are, but there was an assumption that pretty much everybody was over 50. That's just a perception."

The Respondent provided a copy of its Human Resources Policies and Procedures Manual ("Manual"). Section 8.03 of the Manual details the Respondent's layoff policy as follows:

> If it becomes necessary to lay off employees due to lack of funds, reorganization, reduction in quantity of programs, or for any other reason, directors will first conduct or have conducted an analysis of personnel needs. From the analysis, each director will recommend quantity and types of proposed reductions. The County Administrator will review and comment on the proposals, recommending any changes felt necessary to the Board of County Commissioners, who will make the final decisions (Health Department addendum and Human Services Department addendum).

7

Exhibit 10
CONFIDENTIAL

In determining the individual employees to be laid off, the following will apply:

Among regular employees, the director will have the option to lay off employees as deemed necessary and appropriate. The following items must be considered, in light of the needs of the department. These factors shall be taken into account in the order indicated:

    A. Performance of the employee;
    B. Special abilities the employee may possess

In the event that the selection cannot be made on the above basis, the determining factor will be time employed by the County in a given position and the demand for that position within the proposed division reorganization.

A layoff is not considered to be a dismissal and not grounds for initiation of the problem solving process (See Section 7.11).

Regular employees being laid off will receive notice of layoff at least thirty (30) days prior to the effective date of the layoff, unless the layoff is temporary in nature and not expected to exceed ten (10) working days.

If reinstated in county service following a layoff within one (1) year, regular employees will retain any unused sick leave hours. If an employee was previously eligible for insurance benefits, waiting periods will not apply. Unless reinstatement is within thirty (30) days of the layoff, the employee's anniversary date will be adjusted one (1) month for each month laid off. (See Sections 4.03.J.2 and 4.07).

The Respondent acknowledges that there are no contemporaneous documents or emails that demonstrate that analysis that was undertaken in comparing the various IT employees' special abilities in determining who to layoff and who to retain.

In a witness interview, Krista Ubersox ("Ubersox")(Under 40; female; not married to a co-worker), Senior Human Resources Analyst, asserted that the policy regarding layoffs was followed.

The Respondent asserts that, although the Complainant was not given 30 days advance notice of the layoff, he was provided with 30 days compensation. The Respondent alleges that the advance days' notice was not provided as a security measure due to the highly sensitive nature of the IT Department.

8

Exhibit 10
CONFIDENTIAL
DEF 3897

The Complainant argues that "with 30 days' notice, health insurance and dental insurance would have been extended an additional month; vacation and sick leave would have continued to accrue and retirement contributions matches would have continued to the last 30 days of employment. One month's pay is not equal to one month's notice." The Complainant also submitted documentation that he requested from the Respondent titled "Budget Revisions 10-06-16" that includes a section listing the cost and funding source associated with providing the Complainant and J. Corsi with 90 days' notice versus 30 days' notice.

The Respondent asserts that Whidden "understood the impact to the Corsi family due to the layoff of both wage earners" but also "needed to balance fairness to the other IT employees subject to the layoff" and therefore, Whidden looked at giving the Complainant and J. Corsi a 90 day severance payout versus a 30 day severance payout. The Respondent asserts that the worksheet referenced by the payout is a draft of the calculations of the two scenarios. The Respondent maintains that a severance is not required for layoffs, rather, "30 days notification is required, so the 30 days severance pay was going to be provided to all employees who were laid off within the IT Department." The Respondent insists it was not financially feasible to give all six employees a 90 day severance; however, because the Complainant was in a managerial position, it was determined that his severance would be nearer to 90 days.

The Complainant raised other concerns, including but not limited to, Whidden inappropriately using the tuition reimbursement program for coursework unrelated to his position; the alleged unlawful termination of numerous employees, including cases that resulted in lawsuits; and complaints he raised with management concerning misuse of leave time, work ethics, card playing, and gambling. While these may be valid concerns, they are unrelated, and therefore irrelevant to the charge of unlawful discrimination based on age, sex, and marriage to a coworker.

In witnesses interviews with the Colorado Civil Rights Division, several witnesses acknowledged that other employees played cards during their lunch breaks and that sometimes the card playing extended past the lunch break.

The Respondent asserts that the Complainant was not laid off due to expressing concern over work ethics. The Respondent argues, with respect to the alleged unlawful termination of numerous employees, that the Complainant is not privileged to confidential employment information and "his information is purely speculative." The Respondent claims that it "has not been subject to any judgment finding [it] acted discriminatorily or illegally in the separation [of] employment.

The Respondent provided a copy of the letter dated on or about October 7, 2016, that it sent to the Complainant notifying him that he was laid off. The letter explains: "Due to the economic environment facing the Respondent and the opportunities to

9

Exhibit 10
CONFIDENTIAL
DEF 3898

streamline, consolidate functions, and find efficiencies, your position as IT Manager, has been eliminated. Budget constraints and new business practices have led to this decision. It is not reflective of your performance."

The Complainant argues that his position was not eliminated, but that, despite this, he was discharged.

The Respondent insists that the Complainant's position was permanently eliminated. The FTE for the position was given to the planning department. The Complainant's job functions were shared between Flick and Jordan, and the employees the Complainant supervised were also shared between Mr. Flick and Ms. Jordan.

In a witness interview, Eric Farslow ("Farslow")(Age 40 or older; Male; not married to a coworker), Senior Support Specialist, theorized that the Complainant was laid off for monetary reasons and asserts that the Respondent was "looking to save as much as [it] could and find the people who could keep the department running." Farslow admits that he was not involved in any decision-making.

In a witness interview, Greg Ginza ("Ginza")(age 40 or older; male; not married to a co-worker), Facilities and Parks Director, admitted that "years and years" ago an employee filed a case based on discrimination, but reports that he does not know the outcome of that case. Ginza asserted that he has "never heard of [the Respondent] firing people because of age and\or sex, or marriage to co-workers."

The Colorado Civil Rights Division requested an interview with Whidden; however, Whidden declined to participate in an interview. The Respondent elaborated and stated that "he declines to do an interview and believes his position/statements are represented within Mesa County's Response to the Request for Information." The Respondent confirmed that Whidden was responsible for the decision to layoff the Complainant.

Comparative data indicates 24 individuals, including the Complainant, worked in the Respondent's IT Department. Of those 24 employees, 18 (75%) were of the same protected class as the Complainant based on age (age 40 or older). Of the 24 employees in the IT Department, six employees were laid off. Of the six employees that were laid off, six (100%) were age 40 or older.

Of the 24 employees in the IT Department, 16 (66.6%) were of the same protected class as the Complainant based on sex (male). Comparative data indicates that six employees, including the Complainant, were laid off. Of the six employees that were laid off, two (33.3%) were male and six (100%) were age 40 or older.

10

Exhibit 10
CONFIDENTIAL

DEF 3899

Comparative data demonstrates that of the 24 individuals in the IT Department, two, the Complainant and J. Corsi, are married to a co-worker within the IT Department. Comparative data shows that two other individuals within the IT Department, Stieb and Barnett, are married to a co-worker in another department. The Complainant, J. Corsi, Stieb, and Barnett were laid off, which consists of 66.6% of the layoffs within the IT department. Stieb and D. Barnett's spouses remain employed by the Respondent. The Respondent does not maintain data about its employees that are married to a co-worker.

Comparative data shows that the Complainant was the highest paid ($91,292.52) employee in the entire IT Department, including those individuals that were laid off and those that remain employed by the Respondent. Comparative data demonstrates that the next two highest paid employees, Flick and Jordan, remain employed by the Respondent and earn more than five of the six individuals that were laid off. Flick and Jordan are members of the Complainant's protected class based on age.

The evidence shows that the Complainant was the third longest serving employee (21.4 years) of those individuals that were laid off. Comparative data demonstrates that the Complainant was the fifth longest serving employee of the entire IT Department, including those individuals that were laid off and those individuals that remain employed by the Respondent. Two currently employed individuals have served longer than the Complainant.

Marriage to a Co-Worker/Discharge:

To prevail on a claim of discriminatory discharge based on marriage to a co-worker, the evidence must show that: (1) the Complainant was married to, or was planning to marry, a co-worker; (2) neither spouse exercised supervisory, appointment, dismissal, or disciplinary authority over the other; (3) neither spouse audited, verified, received, or was entrusted with moneys received or handled by the other; (4) neither spouse had access to the employer's confidential information, including payroll or personnel records; (5) the Complainant was performing satisfactorily; (6) the Complainant was discharged; and (7) the circumstances give rise to an inference of discrimination based on the Complainant's marriage to a co-worker.

The Complainant was married to a coworker, J. Corsi. The Complainant and J. Corsi worked in the same department; however, neither individual supervised or exercised authority over the other. Neither party audited, verified, received, or was entrusted with moneys received or handled by the other, other than paychecks. The Complainant denies that he had access to J. Corsi's confidential information. The Respondent alleges that J. Corsi improperly granted the Complainant access to an email system; however, the Complainant and J. Corsi deny that it was improper and insist that it was authorized. The Respondent denies that this resulted in the Complainant's lay off. The evidence demonstrates that the Complainant was

11

Exhibit 10
CONFIDENTIAL

performing satisfactorily. The Complainant was laid off. Although the Complainant alleges that he was laid off due to his marriage to a co-worker, the Respondent denies that the Complainant was laid off because of his marriage to a co-worker. The Respondent asserts that the Complainant was laid off due to budgetary concerns and because his position could be absorbed by other individuals. Although the Complainant, J. Corsi, and D. Barnett assert that the Complainant was discriminated against based on his marriage to a coworker, the Respondent denies this, and the Complainant failed to provide any substantiating evidence to the contrary. Therefore, the circumstances do not give rise to an inference of discrimination based on the Complainant's marriage to co-worker.

<u>Reduction in Workforce/Age/Sex:</u>

To prevail on a claim of discriminatory layoff, the evidence must show that: (1) the Complainant is a member of a protected class; (2) the Complainant was laid off; (3) the Complainant was qualified for the position from which he had been laid off; and (4) the Complainant was treated less favorably than employees outside of his class during the reduction in force.

While the Complainant may hold a personal belief that the Respondent should have utilized other criteria in its reduction-in-workforce plan, Respondent is legally entitled to establish whatever non-discriminatory criteria it desires for its employment decisions. Civil rights statutes do not constitute a vehicle for administrative/judicial review of an employer's bona fide business decisions, however unreasonable they might appear to the Complainant. Furthermore, evidence of satisfactory work performance is not probative, because in a reduction in force case, "someone has to be let go." *Rea v. Martin Marietta Corp., 29 F.3d 1450, 1456 (10th Cir. 1994).*

The Complainant is a member of a protected class based on his sex (male). The Complainant was laid off. The evidence demonstrates that the Complainant's performance was satisfactory and that he was qualified for the position from which he was laid off. Six employees in the IT Department were laid off at or around the same time as the Complainant. Comparative data demonstrates that of the six employees that were laid off, four (83.3%) were female. Based on this data, the evidence does not show that the Complainant was treated less favorably than employees outside of his class during the reduction in workforce.

The Complainant is a member of a protected class based on his age (59, DOB 10/5/1957). The evidence demonstrates that the Complainant's performance was satisfactory and that he was qualified for the position from which he was laid off. Comparative data shows that of the six employees that were laid off, all six (100%) were 40 years or older. The Respondent asserts that its reduction in workforce was not based on discriminatory criteria. The Respondent asserts that it considered the

12

Exhibit 10
CONFIDENTIAL

special skills of the Complainant and other IT Managers in making its decision regarding the reduction in workforce. However, the Respondent was unable to provide any documentation that demonstrates how the special skills of the various employees were evaluated. Furthermore, all evidence demonstrates that the Complainant's performance was satisfactory. The Respondent's policy requires the Respondent to consider length of service if the other criteria are not decisive. The Complainant was employed with the Respondent for approximately 22 years. Additionally, the Complainant alleges that the Respondent failed to follow its reduction in workforce policies when it failed to provide him with 30 days' notice or consider his performance and skills. The Respondent agrees that the Complainant was not provided with 30 days' notice as outlined in its policy; however, the Respondent reports that it provided the Complainant with a severance package.   While the evidence shows that a reduction in workforce was necessary, the Respondent was unable to provide any documentation or evidence supporting their assertion that it followed its policies and made its layoff decision based on the special skills and abilities of its employees. There is probable cause to find that the reason offered by the Respondent, namely that the Complainant lacked certain skills that other employees possessed, is pretext. Additionally, the Respondent's layoff disproportionately affected employees age 40 or older. Therefore, the evidence demonstrates that the Complainant was treated less favorably than employees outside of his class (age) during the reduction in workforce.

Based on the evidence contained above, I determine that the Respondent has violated C.R.S. 24-34-402, as re-enacted in relation to the Complainant's claim of discriminatory reduction in workforce based on age.  As such, the Parties hereby are ordered by the Director to proceed to attempt amicable resolution of these charges by conciliation.  The Parties will be contacted by the agency to schedule this process.

Based on the evidence contained above, I determine that the Respondent has not violated C.R.S. 24-34-402, as re-enacted in relation to the Complainant's claim of discriminatory reduction in workforce based on sex or marriage to a co-worker. In accordance with C.R.S. 24-34-306(2)(b)(I)(A) and Rule 10.6(A)(1) of the Commission's Rules of Practice and Procedure, the Complainant may appeal the dismissal of this claim to the Commission within ten (10) days, as set forth in the enclosed form.

If the Complainant wishes to file a civil action in a district court in this state, which action is based on the alleged discriminatory or unfair practice that was the subject of the charge filed with the Commission, such must be done:

a.   Within ninety days of the mailing of this notice if no appeal is filed with the Colorado Civil Rights Commission or

b.   Within ninety days of the mailing of the final notice of the Commission dismissing the appeal.

13

Exhibit 10
CONFIDENTIAL

If Complainant does not file an action within the time limits specified above, such action will be barred and no State District Court shall have jurisdiction to hear such action [CRS 24-34-306(I)].

On Behalf of the Colorado Civil Rights Division

*Sarah R. Lyons*                    12·14·17

Aubrey Elenis, Director                    Date
Or Authorized Designee

14

Exhibit 10
CONFIDENTIAL

DEF 3903

## CERTIFICATE OF MAILING

This is to certify that on  **December 18, 2017**  a true and exact copy of the Closing Action of the above-referenced charge was deposited in the United States mail, postage prepaid, addressed to the parties and/or representatives listed below.

CCRD Case Number:
**FE2017188101**
EEOC Case Number:
**541-2017-00124**

Rick Corsi
2131 Lawrence Street, #627
Denver, CO 80205

Mesa County
Human Resources Department
544 Rood Avenue
Grand Junction, CO 81501

Nina Atencio
Chief Deputy County Attorney – Civil Division
PO Box 20,000-5004
Grand Junction, CO 81501

Carol Fernandes
Colorado Department of Regulatory Agencies
Division of Civil Rights
1560 Broadway, Suite 825
Denver, CO 80202

Exhibit 10
CONFIDENTIAL

DEF 3904