County denies that layoffs are related to age | Western Colorado | gjsentinel.com

https://www.gjsentinel.com/news/western_colorado/county-denies-that-layoffs-are-related-to-age/article_4f458e5c-b8d2-11e9-be7d-20677ce05640.html

Aug 7, 2019 6 hrs ago

**County denies that layoffs are related to age**

By CHARLES ASHBY

Mesa County is denying that it engaged in any age discrimination layoffs, but it did reach settlements with two former county employees last year over discrimination claims, according to court documents in a lawsuit filed against the county.

In a federal lawsuit filed by a 26-year veteran of the county's information technology department, Debra Bouricius alleges that the county and its three commissioners tapped her and five other IT workers for layoffs in 2016 because of their ages, while retaining other department workers who were younger. The workers chosen to be laid off all were in their late 40s to late 50s.

Bouricius, who now lives in Lyons, was 57 years old at the time of her layoff.

Exhibit 12

**Bouricius 001607**

"Mesa County chose to terminate the oldest person with each job title affected by the IT Department layoff," the lawsuit claims. "Though Mesa County's written policies require it to base layoff termination decisions upon the job performance and special skills of individual employees, Mesa County failed to consider any objective performance criteria in selecting employees to be laid off from the IT Department. Mesa County has not articulated any objective performance criteria that is used to select employees to be fired."

The suit points to two settlements the county reached with two other IT workers who were involved in the same layoff, Rick and Janine Corsi. Both were paid settlements of $62,500 each after they filed complaints with the Colorado Civil Rights Commission. In December 2017, that panel determined both had "probable cause" to proceed with their complaints.

In its response brief in the Bouricius lawsuit, the county said those two settlement agreements are "improperly referenced ... because Mesa County has not agreed to make any proceeding regarding any individual named Rick Corsi and/or Janine Corsi public matters."

The agreements, signed by Rick and Janine Corsi and then County Administrator Frank Whidden, call on the couple not to disclose the terms and conditions of the agreements, which "shall not be construed as an admission by the parties of any wrongdoing or violation of any applicable law."

Bouricius' lawyer, Denver civil rights attorney Paula Greisen, said she obtained the settlement agreements through a Colorado Open Records Act request.

"They tried to say some of the stuff was confidential," Greisen said. "There's no grounds for making them confidential."

In an email to the Daily Sentinel, County Attorney Patrick Coleman said he could not discuss the reason for the Corsi settlement but emphasized that "the settlement specifically states that the County does not admit to violating the law."

Exhibit 12

Bouricius 001608

The settlement agreements call on Rick and Janine Corsi to release the county or any of its employees from numerous types of discrimination claims, from breach of contract to violations of any law related to their relationship as a married couple.

Of the 18 claim types cited in the settlement, only age discrimination was highlighted in bold lettering.

As for the Bouricius complaint, Coleman said an agreement regarding settlement was not reached and Bouricius chose to pursue remedies through the lawsuit.

Greisen said the other three people who were laid off — David Barnett (then 47 years old), Carey Stieb (49) and Crislynn Howerton (59) — did not file complaints with the commission or file lawsuits.

In a deposition taken last month, Whidden said he decided to lay off some workers because, at the time, the county was facing a $1.4 million budget deficit the following year (2017), and covering that shortfall could more easily be done though downsizing staff.

Whidden, who abruptly resigned his post last week after being on paid administrative leave for two months for undisclosed reasons, said he made a list of people the IT department "absolutely" could not do without. Anyone not on that list was let go.

"I didn't look at, OK, somebody's been here 20 years and they should stay and somebody else has been here 10 years and they should go," Whidden said in the deposition. "I did not use that as a basis of evaluation ... except for Rick (Corsi). As a longstanding manager, it did occur to me that he had been there a very long time, and you had a husband and wife situation."

Whidden said he didn't like the idea of having a married couple working in the same department, but that was something that occurred before he started working for the county.

He signed both settlement agreements, but said in the deposition that only the commissioners had the authority to approve the settlement amounts, something that was not discussed or voted on in a public meeting.

Whidden was first hired by the county to head its IT department in 2011, later going on to be deputy county administrator for resource management before becoming county administrator in 2014. He continued to serve as head of the IT department as well as the county's human resources director until resigning as chief administrator on Friday.

Whidden said he didn't feel comfortable laying off one Corsi without including the other, saying "it was too high of a security risk" to the county to allow one to stay.

The lawsuit also alleges that the county violated state law because the county commissioners didn't approve the layoffs in an open public session. Whidden, however, said he had blanket authority from the commissioners to do so, saying he obtained that permission after talking to each one individually outside of a public meeting.

"I had spoken to the commissioners, because they had tasked me with finding the budget shortfall that we were facing if we didn't make changes," Whidden said in the deposition. "My understanding was that when they told me that — and I told them that I was going to make layoffs, that they commissioned me to move forward, and that was my understanding of I had their approval to move forward."

Whidden said he did not reveal the names of those selected for layoff with the commissioners or Coleman, whom he asked beforehand to review the layoffs to be sure there wouldn't be any legal issues with them.

Exhibit 12

Bouricius 001609

Whidden said the layoffs in the IT department were the only ones he approved. He said the remainder of the 2017 budget shortfall was made through other staffing reductions made by Public Works Director Pete Baier, who now is acting chief administrator, and then County Clerk Sheila Reiner, who helped the county meet its budget cutting goals by closing DMV offices in Clifton and Fruita.

Commissioner John Justman, who also was deposed as part of the lawsuit, said the commission did what it had to do to balance the county's budget.

"We had to cut back somewhere because of our budget situation," Justman said in the partially redacted deposition. "So I'm not saying I like it, but we had to do something, so — that's what we did."

Exhibit 12

Bouricius 001610

8/8/2019       Frank Whidden resignation: the motive remains unknown | KREX

**85°** ☁      Western Slope Now.COM      ☰

# Frank Whidden resignation: the motive remains unknown



GRAND JUNCTION, Colo. — One sentence is all former Mesa County Administrator, Frank Whidden left to explain his resignation.

The letter submitted Thursday afternoon simply reads: "In order to pursue other opportunities, I hereby resign as mesa county administrator effective immediately."

Whidden had worked for Mesa County since 2011, taking over as County Administrator in December of 2014.

Whidden was named in a lawsuit filed in federal court that claims he laid off six people in the county's IT department, leaving behind employees all under 40-years-old.

Mesa County says the motive behind his resignation after several months of paid leave is unknown to them.

Pete Baier, the Mesa County Deputy Administrator of Operations and Public Works will serve as acting county administrator, until the commissioners determine their plan to fill the position.

Exhibit 12      **Bouricius 001611**

8/8/2019                              Frank Whidden resignation: the motive remains unknown | KREX



Whidden will receive no severance pay after leaving his position that paid him a $180,000 salary.







Exhibit 12                              Bouricius 001612

8/8/2019                              Frank Whidden resignation: the motive remains unknown | KREX



© 1998 - 2019 Nexstar Broadcasting, Inc. | All Rights Reserved.

Exhibit 12                                    **Bouricius 001613**

More shenanigans from county officials | Opinion | gjsentinel.com

Exhibit 12

**Bouricius 001614**

8/9/2019                                    More shenanigans from county officials | Opinion | gjsentinel.com

Exhibit 12

**Bouricius 001615**

8/9/2019                        More shenanigans from county officials | Opinion | gjsentinel.com

https://www.gjsentinel.com/opinion/more-shenanigans-from-county-officials/article_45044a34-b9f2-11e9-be3e-b7e8d18e59b5.html

Aug 8, 2019 3 hrs ago

## More shenanigans from county officials

By THE DAILY SENTINEL

Once again, Mesa County officials make a mockery of the concept of open and transparent government.

But the problem is bigger than the arrogance they've shown by failing to keep the public informed of their decisions. They seem to have no qualms about letting taxpayers clean up a mess they created in the dark.

After going to great lengths to conceal layoffs within the county's information technology department in 2016, county officials are now defending the moves as necessary to balance the budget and insisting that age discrimination played no role.

But they've lost any credibility on that claim after reaching settlements with two former county IT workers last year over discrimination claims. The county paid $62,500 per settlement to workers who filed complaints with the Colorado Civil Rights Commission.

The two former workers who received the settlement signed an agreement, along with former County Administrator Frank Whidden, not to disclose the terms and conditions of the settlement. The county's position is that it had no legal obligation to inform the public of matters involving personnel — when disclosing its intention to lay off employees would have raised red flags about potential legal liabilities.

We know about the payout because a lawyer representing another laid-off IT worker — who did not reach a settlement with the county — obtained the settlement agreement through a Colorado Open Records Act request.

Exhibit 12

Bouricius 001616

"They tried to say some of the stuff was confidential," Denver civil rights lawyer Paula Greisen told the Sentinel's Charles Ashby. "There's no grounds for making them confidential."

Details of the settlement are referenced in a federal lawsuit filed by a 26-year veteran of the IT department. The suit alleges that the county and its commissioners targeted the oldest six workers in the department for layoffs — in violation of policies requiring the county to establish objective performance criteria as the basis for layoffs.

Whidden was deposed last month and his deposition is part of the court record in the federal lawsuit. In it, he denies age being a basis for layoffs, which he says needed to be made to reduce a $1.4 million budget shortfall.

He signed both settlement agreements, but said in the deposition that only the commissioners had the authority to approve the settlement amounts — something that was not discussed or voted on in a public meeting.

The lawsuit alleges that the county violated state law because the county commissioners didn't approve the layoffs in an open public session. Whidden, however, said he had blanket authority from the commissioners to do so, saying he obtained that permission after talking to each one individually outside of a public meeting.

Whidden also said he did not reveal the names of those selected for layoffs with the commissioners or the county attorney. Why? Plausible deniability? He said he asked the county attorney to review the layoffs to be sure there wouldn't be any legal issues with them. Surprise! There were.

Let's review the abuse of the public's trust. The county uses a budget shortfall to justify laying off workers. Fine — if commissioners do it in open session, explain how the cuts are in the public's interest and insulate taxpayers from legal liability.

Instead of defending the cuts and approving them with a public vote, commissioners apparently agreed to let Whidden do whatever he saw fit behind the scenes.

Exhibit 12

Bouricius 001617

But Whidden's actions (speaking to commissioners individually, then signing settlement agreements that had to be approved by commissioners but weren't — at least not publicly) only fuels speculation that this is all part of an elaborate conspiracy to avoid public scrutiny and to insulate commissioners from the ramifications of their illicit dealings.

Whatever savings were realized by those cuts was mitigated by the settlements and the legal costs to negotiate them and defend a federal lawsuit. Meanwhile, after the budget drama of 2016, commissioners saw fit to reward certain senior-level administrators, including Whidden and the county attorney, with hefty raises.

It all stinks, but commissioners are counting on the public to once again hold its nose.

Exhibit 12

Bouricius 001618

ate, the right of the
bear arms shall not be

cond Amendment links the
intenance of a well-regu-
try, we do have well-reg-
services
re trained
t keeping the

ons very
formation
. Their vet-
rough an
mand, and
rmitted to
ccordance

ities
arame-
o not.The
iscusses
ns,"
tomatic
eens.
"the

ene-
r those
van-
Guns
y
e they
hers
k to

ad
s

ng-
ip

h

dorse a level of gun control that would
—for starters — prevent children from
being shot in their schools, would pro-
tect churchgoers from indiscriminate
slaughter, and would safeguard the
"freedom from fear" that we all seek.

**LINDA JENKS**
*Grand Junction*

## County attorney's legal counsel should come under scrutiny

After reading the Thursday editorial
concerning our county commission-
ers, former county administrator
and county attorney, the first thing
to come to my mind is, why doesn't
their malpractice insurance pay this
settlement?

I think its pretty obvious these
parties conspired to violate the law. I
think we need a new county attorney.
One who doesn't advise clients to vi-
olate both the law and the public con-
fidence. I also think all five of these
conspirators need to hold their own
noses. If our county attorney advised
his clients to violate the law he needs
to face disbarment!

**JOHN A. IJAMS**
*Grand Junction*

## Duplicity abounds among those making political points

I hear arguments from three differ-

And where is the tea pa
have a singular person d
where and how much ta
ing to be levied? Parliam
this kind of taxing powe
monarch hundreds of y
George III. Duplicity.

A repentant and lovi
Christian characterist
First Corinthians (tha
Thirteenth ("Charity
and is kind; charity e
ity vaunteth not itsel
up, Doth not behave i
seeketh not her own,
voked, thinketh no e
in iniquity, but rejoi
(verses 4-6) against
Trump. More dupli

## Money to ov vote should a

I don't know ab
but I get very sus
money being pou
cause. I'm most
ple who have sp
the popular vot

I feel confide
the Legislature
for us Colorad
passed a bill to
popular vote c
like the rich, c
threatened by

Exhibit 12

Bouricius 001619

Aug 25, 2019 47 min ago

# Mesa County officials mum on Whiddens resignation



FRANK WHIDDEN Former county administrator

Exhibit 12

The silence from Mesa County officials is deafening as to why their top executive, County Administrator Frank Whidden, was placed on paid administrative leave in May and why he abruptly resigned two months later.

Despite numerous questions and three Colorado Open Records Act requests from The Daily Sentinel, the county is not disclosing why its highest paid employee, someone who received a 37% pay increase less than a year ago, was suddenly placed on paid leave for two months and then unexpectedly resigned.

County leaders said it was a "personnel matter," and they couldn't, by law, comment further.

The first CORA request made by the Sentinel resulted in two copies of Whidden's already released one- sentence resignation letter, which said he was resigning "in order to pursue other opportunities."

The Mesa County Attorney's Office said the newspaper's second open records request would cost about $50,000 to comply with, while the third request of all correspondence since May between Whidden and the three county commissioners — Rose Pugliese, Scott McInnis and John Justman — produced only three emails, all of which were news articles published by the Sentinel about Whidden's resignation and a federal age discrimination lawsuit filed against Whidden and the county.

Initially, county officials said Whidden, who could not be reached for comment, was out for medical reasons, but McInnis and Pugliese said that wasn't the case.

The attorney's office also said it couldn't review text messages on Whidden's county- issued cellphone "due to technical issues," but was trying to resolve that problem.

The attorney's office withheld three emails about Whidden on grounds that releasing them would violate its attorney-client privilege under CORA.

"We can confirm that the three messages were generated and sent by the county attorney or through persons working under his direction to his clients, or were responses of the clients to those messages. No third party received or otherwise was involved in the messages," Assistant County Attorney John R. Rhoads wrote in an email to the Sentinel.

"If is further the county's position that providing details you requested in your August 21, 2019, email would necessarily violate these privileges. The county therefore is unable to release this information."

Denver attorney Steven Zansberg, who specializes in media law, said that's not the case. He said such information as sender, recipient, date and time of an email doesn't violate attorney-client restrictions.

The discrimination lawsuit, filed last year by a longtime county Office of Information Technology worker, revealed that while Whidden was laying off IT employees and finding ways

Exhibit 12                                              Bouricius 001621

to cut the county budget by $1.4 million, he was simultaneously being reimbursed by the county to obtain a master's degree in marriage and family counseling.

He already has undergraduate and master's degrees in computer information systems and business management.

Whidden was reimbursed by the county over several years for courses he took through Northcentral University, a San Diego-based online school, according to Paula Greisen, the attorney who filed the case on behalf of Debra Bouricius, who worked for the county for about 26 years, before being laid off in 2016.

In a July deposition for the age discrimination lawsuit, Whidden said that reimbursement was not taxable, meaning he didn't have to declare it as income on his tax returns.

Whidden was earning $180,000 a year when he left county employment.

Since earning that Northcentral degree, Whidden has started a private business in family and marriage counseling. He got a temporary permit to work as a therapist from the State Board of Marriage and Family Therapist Examiners last year that is valid until July 2022.

In a Psychology Today website advertisement of Whidden's practice, in which he charges $50 to $100 per session, Whidden says he specializes in divorce, family conflict and depression, including 26 specific issues, such as peer relationships, narcissistic personalities, racial identity and infidelity.

While McInnis said the commissioners couldn't comment on why Whidden was placed on paid leave, he was not happy with the former administrator when he learned of that degree and private business.

"I knew about the training, but was surprised about the private business and felt personally deceived by omission," McInnis said. "He was less than honest in not disclosing that. I don't recall that we had an open meeting about it, but if I had known, I would have objected. If he were still a county employee, I would ask for the money back."

In the deposition, Whidden said he wanted to get educated on mental health issues because of a suicide problem in the county, and sought and received permission from commissioners to be reimbursed for the degree. He said that degree required 500 hours of clinical experience, which he said he fulfilled on weekends working at the local Mind Springs Health.

But a month before that, Justman said in a deposition for the same case that while he knew Whidden wanted to learn about such matters, he, too, didn't know Whidden had earned a master's degree and had opened his own practice.

"Do you have any opinion as to if that business, private business being conducted was paid for by taxpayer dollars, would that cause you any concern?" Greisen asked Justman in his May 3 deposition.

Exhibit 12                                                    Bouricius 001622

"Yes," Justman responded.

"And it's fair to say there's been no discussion, at least no public discussion, by the Board of County Commissioners about Mr. Whidden's private practice, whether it's appropriate or not; is that correct?" Greisen said.

"Yes," Justman replied.

On Nov. 17, 2015, Justman, Pugliese and McInnis all signed a training approval request by Whidden to be reimbursed for tuition charges of "up to $10,000 per year."

The county's policy on tuition reimbursement, however, has a $2,500 annual reimbursement cap for full-time employees and limits their lifetime reimbursement to no more than $10,000. That increases to $12,000 for employees with 15 or more years of employment with the county, which doesn't include Whidden. He first began working for the county in 2011, starting as head of its IT department.

A few days after that Justman deposition, Whidden was placed on paid administrative leave.

At the same time Whidden was employed as county administrator, he also acted as the county's human resources director and headed its information technology department.

Pugliese told The Daily Sentinel that she knew Whidden was getting training in such matters, but she said she was told by Whidden that it was needed for his duties as human resources director. Pugliese said there was nothing in his employment contract that barred him from starting his own business, as long as it didn't interfere with his duties as administrator.

"The reimbursement that we had authorized a couple of years ago was at least told to us to be in relation to human resource training," Pugliese said. "It made sense in relation to that position. I don't know what courses he took, but mental health issues are related to human resources issues affecting the county. It could be used internally as well as externally."

McInnis said that he, too, thought Whidden was getting specific training on human resources matters, not a full-blown master's degree.

He said training is crucial for certain county workers, such as sheriff's deputies, attorneys and human services experts. But there was no need for Whidden to get a degree in marriage and family counseling, McInnis said.

"That's not part of his job description as an administrator or a human resource director," he said. "It seems like a gross abuse of his discretion."

At the time the commissioners increased Whidden's annual pay from $131,000 to $180,000 last year, commissioners said it was justified because he was doing the job of three people, all while working without a deputy administrator.

Exhibit 12

Bouricius 001623

"We felt it was only fair to increase his compensation accordingly," Justman told the Sentinel at
the time. "Were he to leave, we would likely have to hire four people to replace him. I think
Mesa County is getting a bargain."

``

Exhibit 12

**Bouricius 001624**

Aug 25, 2019

# They take us for suckers

- THE DAILY SENTINEL



Mesa County commissioners want their constituents to trust them — don't ask questions! — without doing anything to earn that trust.

They do some things in the dark, sidestepping those pesky laws requiring the people's business to be conducted in public. Then, when irregularities pop up as a direct result of their secretive ways, they're slow to explain or defend their actions.

To them, it seems, transparency is not the public's right to know what elected officials are up to, but a favor to extend to the public when it's convenient. They act as if they're accountable to no one. Which is true — as long as taxpayers are willing to put up with the county continually thumbing its nose at the principles of open government.

The latest episode is the county's refusal to shed any light on why its top executive, County Administrator Frank Whidden, was placed on paid administrative leave in May and why he abruptly resigned two months later. On today's front page, the Sentinel's Charles Ashby unpacked the circumstances leading up to Whidden's resignation — no easy feat given the county's inability — or refusal — to produce records related to requests made under the Colorado Open Records Act.

But here's what we know: Whidden was making $180,000 a year — a "bargain" according to Commissioner John Justman — for wearing three hats. He was the county administrator (working without a deputy administrator) but also acted as the county's human resources director and headed its information technology department.

Nevermind the wisdom of putting so much faith in a single person to do three complicated executive-level jobs. Commissioners also decided to make an exception to the county's policy on tuition reimbursement and authorized Whidden to receive up to $10,000 a year to pursue a master's degree in marriage and family counseling.

Exhibit 12

Bouricius 001625

The county's highest-paid employee received taxpayer money in excess of the county's annual tuition reimbursement cap to earn that degree — which he then used to start a private counseling practice. Commissioners apparently didn't know about Whidden's taxpayer-funded side hustle.

We know that because Justman said so in a deposition related to an age-discrimination lawsuit filed against the county. A few days after that Justman deposition, Whidden was placed on paid administrative leave.

Commissioner Scott McInnis said he felt "personally deceived" by Whidden's actions. While we might give him credit for an honest reaction, it doesn't change the fact that he and the other commissioners should have known that Whidden's pursuit of a degree in family and marriage counseling served no useful purpose in his capacity as an administrator.

McInnis's statements in Ashby's story are just a small candle in a room otherwise shrouded in darkness. They don't give a complete picture of what happened. Why paid administrative leave? County officials are hiding behind tortured interpretations of open records law instead of taking responsibility for problems they created by giving one person too much responsibility and too little supervision.

The bigger issue is that things like this happen because commissioners think they don't owe the public a thing. And we keep letting them get away with it. If you don't like the way they're doing business, go to the county courthouse and give them an earful.

Exhibit 12

Bouricius 001626



https://www.gjsentinel.com/news/western_colorado/can-t-access-whidden-s-cellphone-county-says/article_e2da0cf0-c954-11e9-a899-20677ce05640.html

Aug 28, 2019 Aug 28, 2019

**Can't access Whidden's cellphone, county says**

By CHARLES ASHBY

Exhibit 12

Bouricius 001627



FRANK WHIDDEN Former county administrator

Mesa County officials say they can't access the county-issued cellphone used by former administrator Frank Whidden because they don't know his pin number or have his fingerprint.

Assistant County Attorney John Rhoads said in an email responding to multiple Colorado Open Records Act requests filed by The Daily Sentinel that the county's information technology office told him they need both to unlock Whidden's phone, even though most smart phones only require one or the other.

The Sentinel's CORA requests included any text messages that would help explain why Whidden abruptly resigned his $180,000-a-year job after being placed on paid administrative leave for about two months.

While county officials released no emails or other documents under those CORA requests that would offer an explanation, they hadn't checked his cellphone text messages, something that is subject to public view.

The Sentinel has been trying to uncover why Whidden was placed on paid administrative leave for two months starting in May and then abruptly resigned "to pursue other opportunities," but has been blocked by the county, which has cited attorney-client privileges for not disclosing any details.

The Sentinel filed three Colorado Open Records Act requests in the matter that produced nothing.

Then on Monday, the County Attorney's Office said the county's IT department couldn't review any text messages on Whidden's county-owned cellphone for "technical" reasons. Those reasons were that it requires a special passcode along with Whidden's fingerprint that they didn't possess.

Exhibit 12

"Without both, the county cannot unlock the phone," Rhoads wrote in the email.

But Grand Junction cellphone expert Jeremy Marshall, owner of GJ Smartphone & Electronics Repair and Service, 2470 Patterson Road, said that while there are security protocols that could require both a password and a fingerprint to unlock a phone, the need for both isn't likely.

"Typically, it is only one or the other," he said. "It's a possibility they have the dual protection, but my background with any of the phones is one or the other. It's possible that they could encrypt it and have a second-level security on there, but I don't think so. That doesn't even make sense. I've worked for companies and we just had a single password."

Marshall said there are other ways to bypass those security measures, but it takes special equipment to do so.

He said he was surprised to learn that the county's IT department doesn't routinely build in additional passwords to allow it to access county-issued cellphones. He said that's routine with private companies that issue laptop computers to their employees.

"If it can be built, it can be destroyed," he said. "There are hackers out there that get paid doing that, or they just do it for fun. There are ways to get around that kind of security, but it takes time. If they really wanted to get into it, they could."

Exhibit 12

**Bouricius 001629**

https://www.gjsentinel.com/news/western_colorado/county-manager-contract-includes-provisos/article_953f4734-c955-11e9-b8b4-20677ce85d90.html

Aug 28, 2019 Aug 28, 2019

## County manager contract includes provisos

By CHARLES ASHBY

Exhibit 12

Bouricius 001630



PETE BAIER He's a 23-year employee of county

The Mesa County commissioners characterized an employment contract with Pete Baier to be the newest county administrator as being the same as previous deals for that top job, but that's not exactly accurate.

There are clauses in Baier's contract that didn't appear in Frank Whidden's, who abruptly resigned earlier this month after being on paid administrative leave for two months.

While both employment contracts cite such standard issues and general duties, some items point to things Whidden was doing that county commissioners have said they didn't like.

One such item bars Baier from seeking outside employment without the express approval of the commission.

"The employee (Baier) shall devote his full time and best efforts to the affairs of the board and Mesa County, and except as expressly permitted by the board, the employee shall not accept any other employment during the term of this agreement," Baier's contract reads. "Nor shall the employee operate or own any business that requires the employee's time or participation beyond nominal participation in family businesses or similar activities."

Unbeknownst to the commissioners, Whidden had created his own marriage and family counseling practice on a master's degree he obtained with taxpayer money.

While the commissioners said they knew, and had approved, Whidden getting some training on mental health issues, they said Whidden told them it was in connection with his dual role as director of the county's human resources department.

They said Whidden never told them he was seeking a full-blown master's degree in marriage and family counseling, something that Commissioner Scott McInnis said in no way correlated to his county duties.

Exhibit 12 Bouricius 001631

The county had approved paying Whidden $10,000 in tax-free reimbursements for that degree.

"One of the most important things that a board can have is to surround themselves with trustworthy people who can help us achieve our goals and our strategic plan," Commissioner Rose Pugliese said when the board approved Baier's contract on Monday. "Pete is a 23-year employee with Mesa County. He's very familiar with the operations, especially on budget, which is going to be very important for us as we enter into the budget cycle."

Unlike Whidden's employment agreement, Baier's allows the county to fire him if he "is convicted of, or admits to, or enters a plea of nolo contendere to, any crime or offense that is classified as a felony or class one misdemeanor under Colorado law, or that involved fraud, theft, misuse of public property or moral turpitude."

While state court records list no pending civil or criminal cases against Whidden in any county of the state, the Colorado Department of Revenue did obtain a judgment against him in 2015 for failure to pay $2,751 in unpaid income taxes, according to the Mesa County District Court records.

The are no records filed with the court, the county or the state that would indicate those back taxes were ever paid.

The court describes the judgment against Whidden as a "distraint warrant," which allows a government agency to seize and sell property to collect delinquent taxes. But Daniel Carr, spokesman for the Colorado Department of Revenue, said it was more like a judgment against him.

Whidden was making $180,000 a year when he resigned his position.

In his resignation letter, Whidden said he wanted to pursue other opportunities. County officials won't explain any further, saying it was a personnel matter.

That leads to another clause that's in Baier's contract, but wasn't in Whidden's.

"The board may place the employee on administrative leave with pay pending any investigation of a personnel matter," Baier's contract reads.

Baier's salary is to be the same as Whidden's, $180,000 a year.

Also, unlike Whidden's contract, Baier's says he also can be fired if he violates:

■ Any written policy of the board that might result in significant liability to the county;

■ Anything that might result in the significant harm to the reputation of or dishonor to the county or the board;

■ The standards of conduct that are reasonably expected of a public official in an executive leadership position; or

Exhibit 12        **Bouricius 001632**

■ Any lawful, official order of, or failure to obey any lawful direction of the board "when such violation or failure to obey amounts to an act of insubordination that rises to the level of a serious breach of proper discipline ... (that) result in a loss or damage to Mesa County."

In addition to working as county administrator, Whidden also acted as head of the county's human resources and information technology offices.

Baier, likewise, is to act in a similar dual role. His contract calls for him to continue to be public works director while he holds the top job. He also is to oversee the human resources and IT offices as Whidden did, but only until he can delegate those positions to others.

Exhibit 12

Bouricius 001633