IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01144-DDD-STV

DEBRA BOURICIUS,

     Plaintiff,

v.

MESA COUNTY, by and through the Mesa County Board of County Commissioners,

     Defendant.

---

**PLAINTIFF'S RESPONSE TO DEFENDANT MESA COUNTY'S MOTIONS IN LIMINE [DOC. 154]**

---

     Plaintiff Debra Bouricius, by and through her counsel Paula Greisen and Meredith A. Munro of KING & GREISEN, LLP, for her Response to Defendant's Motions in Limine [Doc. 154], states as follows:

## I.    STATEMENT OF FACTS

     In October 2016, the Mesa County Administrator and Director of HR, Frank Whidden ("Whidden"), fired six employees in the IT Department, all of whom were over 40, and five of whom were the oldest employees in the department. Other than Plaintiff, Debra Bouricius ("Bouricius"), Whidden is the <u>only</u> person the County designated in its Rule 26 Disclosures as having relevant knowledge about the facts of this case. Ex. 1. The County and Whidden have repeatedly insisted that Whidden was the sole decisionmaker for these layoffs. F.W.Dep. 210:18-23, 313:10-11; Exs. 2, 3. At the meeting where Whidden informed the older employees of their termination, one of the employees, Janine Corsi, looked around the room and said, "Well it looks

like you are just firing all the oldest people." Ex. 4, J.C.Dep. 48:19-20. Whidden claimed the terminations were for budgetary reasons and assured them it had nothing to do with their performance. However, the County has predicted a high budget deficit every year, but generally the deficit never turns out to be as bad as expected. Ex. 5, J.J.Dep. 104:22-25.

Three of the laid-off employees, Janine and Rick Corsi (both age 59) and Bouricius (age 57), filed charges of age discrimination with the Colorado Civil Rights Division (CCRD). Mesa County defended the terminations, claiming that those laid off did not have as many strengths and skills as those retained. After a lengthy investigation, the CCRD issued detailed findings concluding that there was probable cause to believe that the terminations constituted age discrimination.

As this Court has previously found, it is undisputed that in making the layoff decisions, Whidden did not consider any objective data, including employee performance reviews and seniority levels. Summary Judgment Order, [Doc. 134 at 12]. Nor did Whidden follow the County's written layoff policy.

Commissioner Justman testified he did not know if the laws prohibiting age discrimination were followed in making the 2016 layoff decisions. J.J.Dep. at 45:5-50:20. Nor was he aware of any investigation into whether the County violated the ADEA, and he made no effort to know any of the details of this case. *Id.* at 92:22-95:3. He also testified that he did not know about the CCRD's findings, although he conceded that he should have been informed of them. *Id.* at 105:8-115:25, 119:19-120:20, 129:3-14, 133:12-20. Nor was Justman aware that that, during his tenure as Commissioner, the County had entered into settlement agreements with the Corsis. *Id.* at 134:12-136:14.

During his deposition, Justman was confronted with the evidence that Whidden had used taxpayer funds to obtain his marriage and family therapy degree and licensure, taking such classes as "couples and sex therapy," and then opened up his own private business without the Board's knowledge. J.J.Dep. at 164:18–180:13. Justman struggled to legitimize this conduct, suggesting that maybe classes such as "sex therapy" were legitimate coursework for the Administrator and that the citizens of the County did not have a right to know this information, but eventually conceded that it concerned him that taxpayer funds were used for this purpose. *Id.* at 169:17-180:7.

The County Commissioners are the CEOs of the County. J.J.Dep. at 13:12. The complete failure by the Board to monitor Whidden's conduct, to follow its own policies and procedures, and safeguard taxpayer funds was not an isolated incident – but rather was a pattern engaged in by the County for years. In 2014, Mesa County settled an age discrimination case filed by a former employee, Ms. A. Ex. 6. In her charge of discrimination (*see* Ex. 7), Ms. A included information regarding a 2009 age discrimination lawsuit filed by Cindy Enos-Martinez in which Ms. Enos-Martinez relied on an "Age Spreadsheet" as evidence of discrimination. *Id.* Justman testified that he did not know about Ms. A's charge, investigation and settlement, and was not even aware that significant taxpayer funds were spent to settle the case. J.J.Dep. 111:13, 134:12-136:14, 147:15-18. He also testified he didn't know about the "Age Spreadsheet," but conceded that it would not be appropriate for the County to have prepared such a document. *Id.* at 136:16-137:22. Despite this, the County took no steps to implement a policy prohibiting age discrimination, hired Whidden as the HR Director despite his complete lack of any credentials or knowledge about employment laws, and gave him unbridled discretion to make termination

decisions without any Board oversight. J.J.Dep. 69:24-71:2, 102:4-15, 106:10-107:2, 110:25; F.W.Dep. 26:1-3, 33:18-34:11, 49:13-21. This pattern by the Board of failing to take even basic remedial steps to ensure that discrimination did not re-occur was reckless, at best, and supports Plaintiff's claim for liquidated damages.

This case rises and falls on Whidden's credibility – why he unilaterally decided layoffs were necessary and why he picked the oldest people to terminate. Whether the jury believes Whidden acted in good faith is the focus of this case, making it critical for the jury to be fully informed about his character as the County's star witness.

Almost immediately after Justman's deposition, Whidden was placed on "administrative leave." Ex. 8, Bouricius 001620-1624. Then, within weeks after the close of discovery in this case, the public was informed that Whidden had abruptly "resigned" without explanation. Commissioner McInnis told a local newspaper that Whidden had been "less than honest" about his outside practice and tax-funded reimbursement, that he "felt personally deceived," and that Whidden's conduct "seems like a gross abuse of his discretion." *Id.*

## II.   ARGUMENT

### <u>*Motion in Limine No. 1*</u> *: Third Party Settlements are Relevant and Admissible.*

Mesa County seeks to exclude all "evidence and testimony relating to" the settlement agreements between the County and Rick Corsi, Janine Corsi, and Ms. A based on Rule 408. However, it is well-settled in the Tenth Circuit that Rule 408 "does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated." *Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997); *Broadcort Capital Corp. v. Summa Medical*

*Corp.,* 972 F.2d 1183, 1194 (10th Cir. 1992).[1] Accordingly, because the settlement agreements at issue are between Mesa County and third parties, Rule 408 does not apply.

Moreover, Rule 408 only applies to settlement agreements offered to prove the validity or amount of a claim. It expressly provides that such evidence may be admitted for other purposes. *See* F.R.E. 408(b) ("The court may admit this evidence for another purpose, *such as…*") (emphasis added). The Tenth Circuit has construed Rule 408 as permitting the admission of settlement agreements to establish an employer's pattern or practice of discrimination, intent, and willfulness.[2] In *Greene v. Safeway Stores, Inc.*, for example, the Tenth Circuit held that evidence that Safeway had entered into settlement agreements, containing releases of ADEA claims, with eight executives over the age of 40 who had resigned or retired, supported an inference by the jury of "a pattern of removals based on age." 98 F.3d 554, 560-61 n.3 (10th Cir. 1996). *See also, Hamilton v. Water Whole Intern. Corp.*, 302 F. App'x 789 (10th Cir. 2008)(settlements between employer and non-party employees admissible to prove willful pattern of conduct and alleged plan to induce employees to continue working without pay); *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1363-64 (10th Cir. 1987)(settlement agreements between defendant drilling company and other, non-party landowners not barred under Rule 408 where offered to show defendant "engaged in a pattern of conduct evincing conscious or reckless disregard for the

---

[1] In arguing the application of Rule 408, Mesa County relies on a case outside this jurisdiction (*Hudspeth v. C.I.R.*, 914 F.2d 1207 (1990)), and fails to cite controlling precedent.

[2] Because direct testimony as to an employer's mental processes seldom exists, evidence of the employer's general discriminatory propensities is relevant and admissible to prove discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-805 (1973); *Hirase-Doi v. US West Communications, Inc.*, 61 F. 3d 777, 782 (10th Cir. 1995) (evidence showing that "as many as eight to ten [female] employees" were being sexually harassed during one male employee's three-month tenure raised genuine factual dispute on constructive notice).

rights of private property owners" and "to support the plaintiffs' claims for outrageous conduct and for punitive damages"). Here, Ms. A settled her age discrimination claim with the County just prior to the 2016 layoffs, during the current Commissioner's terms, and at a time when Whidden served as Director of HR. The Corsi's claims and settlements, in turn, alleged and settled age discrimination claims that involve the same layoffs at issue here. The agreements are thus relevant to establish the County's pattern or practice of discrimination, intent, and willfulness.

The agreements are also relevant and admissible as impeachment and to show Whidden's lack of credibility as a witness. Whidden testified that he did not know of any discrimination complaint filed by any employee he had managed during his tenure as County Administrator. F.W.Dep. 207:4-7. He also disclaimed knowledge of the Cori's settlement agreements until shown his signatures on the agreements. F.W.Dep. 302:10-21; Ex. 13. Both of these settlement agreements contain the following clause:

> WHEREAS, in a Determination dated December 14, 2017, the CCRD made a probable cause finding with respect to [Rick and] Janine Corsi's Charge…

As the County Administrator, Head of HR, and the sole decision-maker of the layoff decision, it is incredible to believe that he was completely unaware of these claims of discrimination, Probable Cause findings, and settlements. Put simply, he lied under oath and the jury should be permitted to hear that he lied about these essential facts.

Finally, Mesa County briefly asserts that the evidence and testimony related to the settlement agreements should be excluded under Rules 401 and 403. However, in the employment law context, Rule 401 is to be read broadly – even a minimal degree of probability" is sufficient – and Rule 403 is to be applied narrowly. *Deters v. Equifax Credit Info. Serv.*, 202

6

F.3d 1262, 1274 (10th Cir. 2000); *Securities and Exchange Comm. v. Peters,* 978 F.2d 1162, 1171 (10th Cir. 1992) (exclusion of relevant evidence under Rule 403 is "an extraordinary remedy to be used sparingly"; reversible error to exclude evidence of prior lawsuits and charges against defendant). As to any purported jury confusion, the Court can add a limiting instruction if necessary.

      *<u>Motion in Limine No. 2</u>: Probable Cause Determinations are Relevant and Admissible.*

      As Mesa County implicitly concedes, administrative findings – like the CCRD's Probable Cause findings in favor of Bouricius and the Corsis – are relevant and may be admissible at trial: "Prior administrative findings made with respect to an employment discrimination claim may, of course, be admitted as evidence at a federal sector trial de novo." *Chandler v. Roudebush*, 425 U.S. 840, 863 n. 39 (1976). After all, the CCRD is an agency expressly tasked with investigating and making determinations as to the whether an employer violated civil rights and other employment laws and its expertise may be helpful to a jury. *Smith v. Universal Services, Inc.,* 454 F.2d 154, 157 (5th Cir.1972) ("to ignore the manpower and resources expended on the EEOC investigation and the expertise acquired by its field investigators in the area of discriminatory employment practices would be wasteful and unnecessary"); *Plummer v. Western Int'l Hotels Co.,* 656 F.2d 502, 505 (9th Cir.1981) ("An EEOC determination, prepared by professional investigators on behalf of an impartial agency, has been held to be a highly probative evaluation of an individual's discrimination complaint."). The fact that the CCRD found sufficient evidence to support the claims by Bouricius and the Corsis that the County unlawfully terminated their employment because of their ages makes it more probable than not

that the County unlawfully discriminated against Bouricius. The existence of the findings are also probative of Whidden's lack of credibility as a witness, as discussed above.

Accordingly, this Court has the discretion to admit the CCRD's findings into evidence. *Nulf v. Int'l Paper Co.*, 656 F.2d 553, 563 (10th Cir. 1981) (trial court did not abuse its discretion in admitting EEOC finding). Mesa County provides only conclusory statements that admission of the CCRD's findings would be unfairly prejudicial, relying on two cases that are distinguishable. In *Tuffa v. Flight Servs. & Sys.*, the Tenth Circuit agreed that the EEOC's expertise could have helped the jury in making its determination, but ultimately concluded that the district court did not abuse its discretion in excluding the evidence in part because the EEOC considered a different legal theory (disparate impact versus disparate treatment) and the jury could be confused. In *Arnold v. City & Cty. of Denver*, the trial court excluded an EEOC determination that consisted of one page and did "not summarize, describe, or discuss [the] evidence" and thus lacked sufficient probative value to outweigh its potential prejudice. Civ. No. 14-cv-00290-REB-CBS, 2015 U.S. Dist. LEXIS 17733, at *2 (D. Colo. Feb. 4, 2015).[3] Here, the CCRD's Probable Cause findings detail the witness statements, documents, and arguments submitted by both sides and considered by the agency in making its findings. To alleviate any possible confusion the jury may have, Bouricius agrees that a limiting instruction may be appropriate, including that the jury must make its own independent analysis as to whether the County violated the ADEA.

---

[3] The court agreed, however, that "[c]onceivably, evidence used in the EEOC investigation could be relevant and otherwise admissible in this case if that evidence differs from or contradicts evidence presented at trial" *Id.* at *2 n.3.

**_Motion in Limine No. 3_**_: Evidence Relating to Whidden's Outside, Tax-Payer Funded Counseling Business, Adverse Tax Judgment, and Reason for Resigning Is Relevant and Admissible under Rules 401, 608(a), 608(b), and 404(b)._

Mesa County argues that evidence regarding Whidden's private business, adverse tax judgment, and reason for resignation is not relevant and is inadmissible as Rule 404(a)(1) "character evidence." The general prohibition against character evidence under Rule 404(a)(1) only applies, however, if the evidence is offered to prove propensity or that the person acted in accordance with that character trait on a particular date and time. Rule 404(a)(3) provides that character evidence of a _witness_ – like Whidden – may be admitted under Rule 608(a) (permitting reputation or opinion evidence regarding truthfulness) and Rule 608(b) (permitting witness cross-examination on specific instances of conduct probative of truthfulness).

Mesa County's entire defense relies on the credibility of the only witness it has designated in this case – Frank Whidden. "[E]vidence concerning a witness's credibility is _always_ relevant, because credibility is _always_ at issue." _United States v. Green_, 617 F.3d 233, 251 (3d Cir. 2010)(emphasis added). Accordingly, Bouricius may ask other witnesses about Whidden's reputation in the community for honesty pursuant to Rule 608(a). _See e.g., Cooper v. Asplundh Tree Expert Co.,_ 836 F.2d 1544, 1552 (10th Cir. 1988) (testimony by employees about general foreman's reputation for veracity permissible under Rule 608(a)). Bouricius may also cross-examine Whidden about specific instances of his conduct that demonstrate lack of honesty pursuant to Rule 608(b).[4] Whidden's misappropriation of taxpayer funds for his own personal

---

[4] And, of course, nothing in Rule 608(b) prevents Bouricius from providing copies of relevant documents to Whidden during cross-examination and asking him about them. _U.S. v. Drake_, 932 F.2d 861, 867 (10th Cir.1991) (not error to allow questions regarding specific documents bearing

gain <u>at the same time</u> he was terminating older workers because of alleged budget cuts is directly relevant to the issue of pretext in this case and whether Whidden's explanation is worthy of belief. *See* Ex. 9. Mesa County cites several cases supporting the general proposition that it is up to the jury to make determinations of credibility. Bouricius agrees, and that is why the jury must be permitted to consider this evidence.

Similarly, the fact that the Board was giving Whidden unbridled discretion with the expenditures of tax payer funds while Whidden himself had a judgment against him for the failure to pay his taxes is relevant not only to his credibility, but also to whether the Board showed "reckless disregard" for the law sufficient to sustain a finding of willfulness. *See e.g., Hampton v. Dillard Dept. Stores, Inc.,* 247 F.3d 109, 1114 (10th Cir. 2001)(cross-exam of officer regarding his disciplinary proceeding and suspension for falsifying a report twenty years prior permitted under Rule 608(b)); *United States v. Girdner,* 773 F.2d 257, 261 (10th Cir. 1985) ("cross-examination of appellant's previous falsehoods and deceitful actions in the ballot fraud scheme [admissible] as being probative of appellant's truthfulness"); *Chnapkova v. Koh,* 985 F.2d 79, 82-83 (2nd Cir. 1993)(abuse of discretion to preclude cross-examination of failure to file tax returns, as "[e]vidence that a witness has made false statements in a tax return is obviously a matter which affects the witness's credibility," citing cases in accord). *See also Hazen Paper Co. v. Biggins,* 507 U.S. 604, 616 (1993) (evidence of "reckless disregard" of law sufficient for imposition of liquidated damages). Indeed, Whidden admitted during his deposition

---

on prior falsehoods, as "[c]ross-examination questions alone . . . cannot constitute extrinsic evidence").

that the County taxpayers had a right to know how their tax dollars were being spent and that the expenditures complied with the law. F.W.Dep. 94:2-13.

Mesa County has never disclosed why Whidden was summarily terminated almost immediately after the close of discovery in this case, nor does it explain in its Motion what facts surrounding Whidden's resignation it wants to exclude. The evidence strongly suggests that Whidden was forced to resign because he lied to the Board and misappropriated tax payer funds. For years, and to this day, Mesa County has relied exclusively on Whidden's word that he did not unlawfully discriminate in terminating employees – and it has spent thousands of taxpayer dollars defending him and attempting to shield the evidence in this case from public disclosure. The evidence will show this is not an isolated event – but rather during the relevant time period, the Board regularly failed to comply with the laws regarding the transparency required when spending taxpayer dollars. The jury is entitled to know if Whidden was forced to resign his position and why: The County cannot have it both ways – tell the jury they should trust his credibility at trial on the one hand, while firing him for being a liar. What the County knew and when it knew it, is relevant to the issues of discriminatory intent/pretext, whether there is a pattern of unlawful discrimination at the County, the credibility of the County witnesses, and liquidated damages. *See e.g.,* Rule 404(b)(2) (evidence of other acts admissible under FRE 404(b)(1) "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). Indeed, allowing a supervisor delegated with the power to hire and fire to remain ignorant of (let alone flout) discrimination laws is an "extraordinary mistake," supporting a jury finding of indifference to support an award of liquidated damages. *Price v. Marshall Erdman & Assoc., Inc.*, 966 F.2d 320, 323-24 (7th Cir.

1992). *See also Rademaker v. State of Neb.*, 906 F.2d 1309, 1312-1313 (8th Cir. 1990) (lack of in-depth investigation in making layoff decisions and disregard of warning that employee may sue supported jury finding of intent to discriminate and willfulness).

Finally, Mesa County does not explain how the jury would be confused or why the prejudice to it would be "unfair." Despite Defendant's argument, the Colorado Open Record Act has no bearing on the relevance or admissibility of this *testimonial* evidence at trial. Certainly, the policy behind the Act – transparency in government – weighs in favor of admissibility. And, in any event, a simple instruction would suffice to explain the purpose for Plaintiff's questions.

> ### Motion in Limine No. 4: *Evidence Relating to the "Age Spreadsheet" Is Relevant to Establish Intent and Willfulness.*

In 2008 and 2009, when Mesa County was examining costs, it created a spreadsheet listing the number of employees over the age of fifty in each department, including the IT department where Bouricius worked. Ex. 7 at 2176-77 (the Age Spreadsheet). Age was the only identifying factor on the Spreadsheet. *Id.* Numerous employees over the age of 50 were thereafter terminated, and several complained, filed charges of discrimination, and/or filed lawsuits against the County. *Id.*; J.C.Dep. 60:7-61:15; Ex. 10, R.C.Dep. 68:18-69:5. These individuals pointed to the Age Spreadsheet, which became a subject of concern amongst many employees. Ex. 11, L.M.Dep. 28:14-30:12; J.C.Dep. 64:10-13; R.C.Dep. 96:16-22.

Nevertheless, despite this history of perceived (if not actual) discrimination, Mesa County did little to ensure that future layoffs were conducted to ensure compliance with the ADEA. Justman testified that he had no understanding of the ADEA or knowledge of how the County ensures employees are not discriminated against. The County appointed Whidden Director of HR in December 2014 despite his complete lack of HR credentials.. Whidden

testified that he had heard "the scuttlebutt" about the Age Spreadsheet, but did not investigate, shrugging it off at his deposition as "ancient history." F.W.Dep. 304:20-305:15. And, again, despite his lack of training and the County's recent history of perceived (if not actual) age discrimination, the Board permitted Whidden unilaterally to make the decision regarding whom to lay off in 2016.

Mesa County argues that evidence of the Age Spreadsheet is inadmissible under Rule 401 because Whidden contends he never saw the Spreadsheet and thus could not have relied on it when he decided to lay off Bouricius. It points to *Young v. Smith*, No. 3:07-cv-00854, 2016 WL 3522965, *3-4 (M.D. Penn., June 28, 2016), where the district court held that a student could not introduce education material she had never seen in support of her claim that she was exposed to sexually inappropriate material at school. But the relevance of the Age Spreadsheet does not turn on whether Whidden (or Bouricius) actually saw it. Rather, evidence that the County and Whidden knew about a previous practice of age-related termination decisions and made no effort to ensure further age discrimination did not occur at the County, made no effort to enact any policies against such practices, and took no efforts to protect against age discrimination in the 2016 layoffs, is relevant to both intent to discriminate and willful violation supporting liquidated damages. *E.g., Price,* 966 F.2d at 323-24; *Rademaker,* 906 F.2d at 1312-1313.

### *Motion in Limine No. 5: Witness Statements in News Articles May be Used for Impeachment and as Party Admissions.*

Bouricius does not intend to seek the admission of the actual news articles as exhibits at trial.

Of course, Bouricius may cross examine witnesses at trial regarding party admissions made in those news articles. As stated above, the Mesa County Board members made several

statements regarding their belief that Whidden had deceived them regarding his tax-payer reimbursements for his private business. Ex. 8 at 001622-23. These out of court statements (as opposed to the news articles themselves) may be admissible for purposes of impeachment and as statements by party opponents. Fed.R.Civ.P. 801(c)(2) (evidence used for impeachment not hearsay); 801(d)(2) (statement by a party offered against that party not hearsay and admissible as substantive evidence). If the Commissioners deny making the statements, those statements can form the basis of impeachment questioning. Whether, and to what extent, these witnesses' statements will be admissible, however, is premature at this stage and should be resolved at trial.

**_Motion in Limine No. 6_**:  **_The Monetary Damages Sought by Ms. Bouricius Are Permitted Under the ADEA_**.

Bouricius seeks compensation for lost back pay, front pay, liquidated damages, pre- and post-judgment interest, a gross-up as an allowance for taxing consequences, and attorney fees and costs. Ex. 12 (Expert Report). She does not seek damages for emotional distress and/or pain and suffering. Mesa County contends that Bouricius' costs associated with her relocation and new living conditions are non-recoverable "compensatory" damages, relying primarily on cases that bar the recovery of emotional distress and other non-pecuniary damages. However, these costs are tangible, job-related costs that she necessarily incurred in mitigating her losses. They necessarily factor into the calculation of her back and front pay damages, are necessary to make her whole, and are thus recoverable under the ADEA.[5]

---

[5] Mesa County previously raised this issue in its Motion for Summary Judgment, Doc. 73. In its Order denying the Motion, the Court stated that "non-job-related compensatory damages" were not available under the ADEA, but declined to make a final decision. [Doc. 134, pp. 13-14]

The ADEA's remedies are broad. In addition to remedies available under the Fair Labor Standards Act, the courts have jurisdiction under the ADEA to grant:

> such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, ***including without limitation*** judgments compelling employment, reinstatement or promotion…

29 U.S.C. § 626(b) (emphasis added).

The courts' equitable powers, in particular, are significant: courts "have broad authority to construct appropriate equitable relief and a duty to render a decree that will eliminate the discriminatory effects of past actions and prevent future discrimination." *Villescas v. Abraham,* 285 F.Supp.2d 1248, 1255 (D. Colo. 2003). These powers are "without limitation" as long as "the relief is 'appropriate to effectuate the purposes of [the Act].'" *EEOC v. Prudential Fed. Sav & Loan Ass'n,* 763 F.2d 1166, 1173 (10th Cir.), *cert denied,* 474 U.S. 946 (1985) (quoting §626(b)); *see Blim v. Western Elec. Co.,* 731 F.2d 1473, 1478 (10th Cir. 1984) ("equitable remedies . . . which further the intent, purpose and language of the ADEA should be upheld").

Thus, equitable relief under the ADEA includes making the plaintiff "whole" by placing the plaintiff "as nearly as possible, into the position he or she would have been in absent the discriminatory conduct." *Greene,* 210 F.3d at 1237, 1244 (citations omitted). *See also Prudential Fed. Sav & Loan Ass'n,* 763 F.2d at 1173 (front pay "furthers the remedial purposes of the ADEA by assuring that the aggrieved party is returned as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct."); *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 637 (10th Cir.1988) (noting that making an ADEA plaintiff "whole" means "returning him as nearly as possible to the economic situation he would have enjoyed but for the defendant's illegal conduct").

The job-related, pecuniary damages sought by Bouricius, which Mesa County claims are not recoverable under the ADEA, fall squarely within the remedial provision of the ADEA for two reasons. First, the damages are relevant to determining the value of Bouricius' mitigation and, accordingly, her back pay and front pay. It is well-settled that when calculating economic damages, a plaintiff must calculate her lost wages, fringe, and other job-related benefits and then subtract post-termination economic benefits (aka mitigation). *E.g., Spulak v. K Mart Corp.,* 894 F.2d 1150, 1157-58 (10th Cir. 1990).

Bouricius' expert will opine that although she was able to find another job with a small increase in pay, the bulk of her economic damages are based on the difference between her working conditions after the discrimination occurred. In order to calculate Bouricius' post-termination economic benefits, it is necessary to consider the additional expenses she incurred working in Boulder County (*i.e.,* through higher taxes and a higher cost of living), for although her current salary slightly exceeds what she was making in Mesa County, her post-termination economic benefits are much *lower* than her income at Mesa County because she has significant additional costs and expenses (between $110,240 and $322,255). Ex. 12 at p. 5.

Second, the failure to account for Bouricius' increased expenses from her replacement employment would frustrate the ADEA's goals of remediating and discouraging discrimination. In other words, if the additional expenses Bouricius incurred to mitigate her damages were ignored, she would not be made whole. Moreover, if employers like Mesa County are not required to fully compensate plaintiffs for their economic losses flowing from discrimination, they will not be deterred from discriminating against other employees based on age or other protected categories.

Courts have relied on this broad "equitable relief" provision in the ADEA to reimburse plaintiffs for similar economic losses. For example, in *Greene v. Safeway Stores,* the court held that the plaintiff's unrealized stock option appreciation was properly awarded as damages under the ADEA. 210 F.3d at 1237, 1246. Rejecting the argument that the stock option appreciation constituted "consequential damages," the court held that the lost appreciation was a form of "front pay" which the court had discretion to award as "equitable relief." *Id.* at 1244-46. Similarly, courts have held that pension and other fringe benefits are generally available to prevailing plaintiffs under the ADEA's "make whole" doctrine. *See e.g., Blim.,* 731 F.2d at 1480 ("fringe benefits" such as a company savings plan and eligibility for social security benefits "are proper damages under the ADEA"); *Kelly v. Am. Standard, Inc.,* 640 F.2d 974, 986 n.20 (9th Cir. 1981) ("pension rights and fringe benefits are proper elements of damage under the ADEA"); *see also Thornton v. Kaplan*, 961 F. Supp. 1433, 1438 (D. Colo. 1996) (awarding out of pocket medical expenses as part of front pay award and Title VII's "make whole" provision, in addition to back pay awarded by the jury).

The Supreme Court's decision in *Commissioner of Internal Revenue v. Schleier,* 515 U.S. 323, 336-337 (1995), does not foreclose the monetary damages Bouricius seeks, as Mesa County contends. As an initial matter, the Court did not state (either in dicta or as a matter of law) that the ADEA precluded all forms of compensatory damages.[6] What the Court said was: "the Courts of Appeals have unanimously held, and respondent does not contest, that the ADEA does not permit a separate recovery of compensatory damages *for pain and suffering or emotional*

---

[6] The Supreme Court has not always ascribed the same meaning to the term "compensatory" damage. Indeed, in *Albemarle Paper Co. v. Moody*, the Supreme Court described back pay as a form of "compensatory" damages in the context of Title VII. 422 U.S. 405, 441 (1975).

*distress.*" *Id.* at 326 (emphasis added). Indeed, available remedies under the ADEA was not at issue in *Schleier*. Rather, the issue was whether back pay and liquidated damages are excluded from gross income under the Tax Code as "damages received . . . on account of personal injuries or sickness." *Id.* at 327. In concluding that back pay and liquidated damages must be treated as income, the Court distinguished these ADEA damages with "tort-like damages" available to compensate a victim of personal injury: "Although [tort-like] damages often are described in compensatory terms . . . , in many cases they are larger than the amount necessary to reimburse actual monetary loss sustained or even anticipated by the plaintiff, and thus redress intangible elements of injury that are deemed important, even though not pecuniary in [their] immediate consequence[s]." *Id.* at 335. The Court went on to explain that "the ADEA provides no compensation for any of the other traditional harms associated with personal injury." *Id.*  In short, the damages Mesa County seeks to exclude – Bouricius' relocation and cost of living adjustments – are tangible, economic benefits. They are not akin to the intangible, "tort-like" damages the Supreme Court described in *Schleier*.

Nor do the other cases Mesa County relies on preclude the type of work-related, pecuniary damages Bouricius seeks. Those cases hold that emotional distress damages are not

available under the ADEA (a fact we do not contest), involve other statutes with distinct remedy provisions,[7] or are otherwise distinguishable.[8]

For example, in *Villescas v. Abraham,* 311 F.3d 1253, 1258 (10th Cir. 2002), the Tenth Circuit analyzed damages available under the federal sector provision of the ADEA, Section 633a, which the court described as having "a distinct statutory scheme" from Section 626(b) of the ADEA. *Id.* at 1258. And, in any event, in describing Section 626(b), the court merely noted that "in general, separate damages for *emotional distress* are not available under identical 'legal or equitable relief' clauses in private sector ADEA cases." *Id.* at 1259 (emphasis added). The Tenth Circuit distinguished between damages for "noneconomic, intangible harms of emotional distress and humiliation" with damages for "job, pay, promotion prospects or other economic incidents of employment." *Id.* at 1256-57, 1261.

In *Ridgell-Boltz v. Colvin*, 565 F. App'x 680, 683 (10th Cir. 2014), the Tenth Circuit expressed the of-repeated phrase that "compensatory damages" are not available under the ADEA. The issue was extremely narrow: whether the plaintiff's claims for *legal* damages were moot because the plaintiff had been reinstated with back pay and associated benefits and had not sought equitable relief. *Id.* at p. 684, n. 3. The court did not address what it meant by the term "compensatory damages" (*i.e.,* just emotional distress damages or something else) or whether the

---

[7] *Turner v. Murphy Oil USA, Inc.*, 472 F.Supp.2d 830, n. 5 (E.D. La. 2007) (class action environmental waste); *McGovern v. Gallegos*, Nos. 84–1534 SSH/AK, 87–2320 SSH/AK; 1994 WL 193926, *1 (D.D.C., May 4, 1994) (Title VII claim); *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, case no. 1:02-CV-887, 2007 WL 5662411, *3-4 (N.D.N.Y., Nov. 30, 2007) (Section 1983).

[8] *Lyons v. Allendale Mut. Ins. Co.*, 484 F. Supp. 1343, 1344-45 (D. Ga. 1980) (while moving expenses, interest rate difference between old and new home, and commuting expenses are not available as damages, they may be "pertinent to the computation of back pay and set-off").

district court had the power to award equitable damages. The court also did not address the question we raise here – whether wage-based, pecuniary damages are permissible as a make-whole remedy under equity.

Because the costs Bouricius incurred in finding new employment are pecuniary damages that she necessarily incurred to mitigate her losses, they are recoverable under the ADEA's equitable make-whole provision.

## III.     CONCLUSION

Wherefore, Plaintiff respectfully requests the Court deny Defendant's Motions in Limine.

Respectfully submitted this 22nd day of September 2020.

KING & GREISEN, LLP

_s/ Meredith A. Munro_
Paula Greisen
Meredith A. Munro
1670 York St.
Denver, Colorado 80206
(303) 298-9878 telephone
(303) 298-9879 facsimile
greisen@kinggreisen.com
munro@kinggreisen.com

*Attorneys for Plaintiff*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1) as revised by the Court's Order at [Doc. 142].

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of September 2020, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANT MESA COUNTY'S MOTIONS IN LIMINE** with the Clerk of the Court using the CM/ECF system, and a copy was sent via electronic mail to the following:

L. Kathleen Chaney
LAMBDIN & CHANEY, LLP
4949 S. Syracuse Street, Suite 600
Denver, CO  80237
kchaney@lclaw.net

*Attorneys for Defendant Mesa County*

> *s/ Laurie A. Mool*
> Laurie A. Mool, Paralegal