# EXHIBIT 2



# MESA COUNTY ATTORNEY'S OFFICE

**Mailing Address:  P.O. Box 20,000, Dept. 5004, Grand Junction, Colorado 81502**
**Physical Address:  544 Rood Ave., 2nd Floor Annex, Grand Junction, Colorado 81501**
**Telephone: (970) 244-1612     Facsimile: (970) 255-7196**

March 29, 2017

Colorado Department of Regulatory Agencies
Colorado Division of Civil Rights
Attn: Teri Devlin
1560 Broadway Street, Suite 1050
Denver, CO 80202

via email: teresa.devlin@state.co.us

> Re:     Complaint #FE481263
>         Claimant:  Debra Bouricius
>         Response to Request for Information (RFI)

Dear Ms. Devlin:

We submit this response on behalf of Mesa County, a political subdivision of the State of Colorado ("Mesa County") in response to the Charge of Discrimination submitted by Ms. Debra Bouricius.  As an initial matter, Mesa County denies Ms. Bouricius' Charge that Mesa County discriminated against her based on her age.  Mesa County has been and continues to deal with significant revenue shortage as a result of a decreased tax base stemming from economic issues facing Mesa County. Ms. Bouricius' layoff was a result of the significant budgetary issues facing Mesa County.  Ms. Bouricius was one of five Sr. Business Systems Analysts (Sr. SBA) of the IT Department, and one of two Sr. SBAs who were laid off.  When weighing the skill sets of the Sr. SBAs, Ms. Bouricius' skills were not as strong as the other Sr. SBAs.  Ms Bouricius' layoff was the unfortunate result of the difficult budgetary shortfalls Mesa County has been and continues to face.  Thus, Mesa County requests the Colorado Civil Rights Division determine that Ms. Bouricius' Charge lacks probable cause.

## RESPONSE TO CHARGE

Mesa County responds to the information requested by the CCRD as follows:

1.     The full and correct name of the company if it is incorrect on the administrative complaint. Please specify your form of organization (e g. LLC, PC, Ltd). Identify any person who should be copied on the correspondence and provide their contact information (e.g. e-mail address, telephone number). In addition, if there is another company or entity who you believe may be jointly responsible for the alleged adverse action (e.g. a parent corporation, staffing agency, etc.) please provide identifying information.

Bouricius 000039

**RESPONSE:**   The correct name is:  Mesa County, a political subdivision of the State of Colorado. Mesa County requests that the CCRD direct all future correspondence and requests for information to the Mesa County Attorney's Office, attention Nina Atencio, P.O. Box 20,000-5004, Grand Junction, Colorado, 81501.

2.   Describe the nature of the business (type of goods or services it provides).

**RESPONSE:**   Mesa County is a statutorily created political subdivision of the State of Colorado.  By statute, Mesa County provides a variety of services to the citizens of Mesa County.  As it relates to Ms. Bouricius' Charge, Ms. Bouricius was employed in the IT Department which is responsible for providing IT related services to the employees, departments and offices of elected officials of Mesa County.

3.   Indicate if there are currently more or less than fifteen (15) employees. If there are less than fifteen (15), provide a list of all persons employed within the past two-year period. For each cited person, indicate his or her dates of employment. (For cases in which age is involved, indicate if there are more or less than twenty (20) employees.)

**RESPONSE:**   Mesa County currently employs more than 15 employees, and at no time during Ms Bouricius' employment did Mesa County employ less than 15 employees.

4.   A "position statement" which responds fully and specifically to all allegations of discrimination presented in the Charge of Discrimination. If possible, please provide the statement in chronological order. Include the following:

### Response to Information in Ms. Bouricius' Charge

Mesa County is a political subdivision of the State of Colorado, which provides a variety of services to the citizens of Mesa County.   Mesa County has 10 elected officials, 3 of whom serve as the Board of County Commissioners (BOCC).  Mesa County provides many services to its citizens by being stewards of the tax revenue it receives.  The functions the BOCC is statutorily charged with adopting an annual budget which includes anticipated revenues for the budget year, corresponding actual figures for the prior fiscal year and estimated figures projected through the end of the current fiscal year, which budget shall not allow for expenditures in excess of available revenues and beginning fund balances. C.R.S. §29-1-103.  The BOCC has "exclusive power to adopt the annual budget for the operation of the county government, including all offices, departments, boards, commissions, other spending agencies of the county government, and other agencies which are funded in whole or in part by county appropriations." C.R.S. §30-11-107(2).

Due to significant decreases in projected revenues, Mesa County was projecting a $1.7 million budget deficit for 2017.  *See Attachment 1.*  It is important to note that these budgetary issues were not unique to Mesa County.  The City of Grand Junction, too, was addressing a significant budgetary deficit. *See Attachment 2.*  Further, the County faced a significant hurdle with the increase need for funding for public safety.  Mesa County is experiencing significant increases in crime incidents and prosecutions related to those incidents, yet it lacks the staffing levels to address their increased needs.  *See Attachment 3.*  To address this need, coupled with the projected significant revenue loss, the BOCC determined that cuts were needed.  To this end, Frank Whidden, the Mesa County Administrator, looked at departments within his control to find greater efficiencies to address these restrictive budgetary times.  It should be noted that these budgetary issues remain today, with the most recent report being that all departments and elected official offices are to cut five percent (5%) from their current budgetary allotment due to continued decline in anticipated revenue.  *See Attachment 4.*

2

Bouricius 000040

Mr. Whidden was hired in 2011 as Mesa County's IT Director. Mr. Whidden continued to oversee the IT Department when he was promoted to Deputy Administrator for Resource Management, and later, when he was appointed Mesa County Administrator in December of 2014. In his role as County Administrator, Mr. Whidden also acts as the Human Resources Director.

Ms. Bouricius began her career with Mesa County in approximately 1990 as an Applications Analyst. She held the position of Sr. SBA when she was laid off. As a Sr. SBA, her essential job functions, in part, were to provide support to applications, act as liaison between the various user departments, performing project management duties, and ensure adherence to security policies. *See Attachment 5.*

At the time of the reduction in workforce, the IT Department had five Sr. SBAs. Three were women, two were men. The average age of the Sr. SBAs is 53. Two Sr. SBAs were laid off; Ms. Bouricius and Mr. David Barnett. Six employees were laid off from the IT Department. Also around this time, four employees from the Clerk and Recorder's Office were laid off, plus two employees from the Operations Division of Mesa County were reduced to .5 FTE. *See Attachment 6 .*

Of the six employees laid off in the IT Department, 3 were male, 3 were female. The average age of the six is 54. When looking at this data through the lens of the IT Department as a whole, at the time of the layoffs, the IT Department had 25 employees with an average age of 47 years old. Eight of the 25 employees were female. Of the 25 employees, 72% are in a protected category for age. The resulting reduction in workforce within the IT Department netted approximately $500,000 savings for the County.

Ms. Bouricius alleges that her lay-off was due to discrimination based on her age. Mesa County denies these allegations and responds more specifically as follows:

When a reduction in workforce is necessary in a department, it is reasonable for the employer to look at the skill sets of its employees, and where their strengths and weaknesses lie. It is also reasonable for an employer to consider, based upon these strengths and weakness, which employee could absorb additional functions which would result in a reduction in workforce. Ms. Bouricius' primary function as one of five Sr. BSAs was to provide support for the IT systems and applications, provide customer service through acting as a liaison, and project management. While able to perform the other essential functions of a Sr. BSA, her performance was not as strong in these other functions as were the remaining three Sr. BSAs. Thus, the determination to lay off Ms. Bouricius was based on the strengths and weaknesses of her skills.

Ms. Bouricius, however, alleges that she was discriminated against due to her age. She contends that she was the oldest and most senior Sr. BSA. Ms. Bouricius, however, is incorrect in this statement. Of the five Sr. BSAs, one other is 57 years old, the same age as Ms. Bouricius. Two of the Sr. BSAs are 52 years old, while the youngest, Mr. Barnett, is 47 years old. He, too, was laid off.

Ms. Bouricius further claims that because she had more seniority than the others, her lay off demonstrates age discrimination and is in violation of Mesa County's Personnel Policy and Procedure Manual. Section 8.03 of Mesa County's Human Resources Policies and Procedures Manual (Manual), as provided herein as Attachment 7, states, in relevant part:

> In determining the individual employees to be laid off, the following will apply:
>
> Among regular employees, the director will have the option to lay off employees as deemed necessary and appropriate. The following items must be considered,

3

Bouricius 000041

in light of the needs of the department. These factors shall be taken into account in the order indicated:

A. Performance of the employee;

B. *Special abilities the employee may possess*

In the event that the selection cannot be made on the above basis, the determining factor will be time employed by the County in a given position and the demand for that position within the proposed division reorganization. (Emphasis added).

Mesa County looked at the skill sets between the Sr. BSAs and determined that Ms. Bouricius lacked the strength of those Sr. BSAs who were not laid off. Specifically, she was not as proficient regarding systems Sr. BSAs support, customer service, or documentation skills. A review of her personnel file supports this. In her December of 2015 performance evaluation, a goal for 2016 was "to develop technical and organizational skills; develop positive working relationships with co-workers and customers." *See Attachment 8.* In her 2014 performance evaluation, it was noted that "[a]n area to continue to develop in would be technical and system knowledge " *See Attachment 9.* Age was not a factor in the decision that she be one of two Sr. SBAs to be laid off. Rather, an evaluation of her skills and proficiencies therein was the basis for the determination to lay her off. Lastly, while Ms. Bouricius was not given 30 days advance notice of the layoff, as she correctly states, she was given 30 days' pay.

To prevail on a discriminatory reduction in workforce claim, Ms. Bouricius bears the burden of establishing that she was a member of a protected class, that she was laid off, that she was qualified for the position from which she had been laid off, and that she was treated less favorably than employees outside her protected class during the reduction in workforce. Ms. Bouricius has failed to meet her burden to support her allegations. And, while it is very unfortunate that Ms. Bouricius was one of the six individuals subject to the reduction in workforce in the IT Department, and one of two Sr. SBAs, her lay off was based on weaknesses in her skill sets and not for any discriminatory reason. Therefore, Mesa County respectfully requests that the Colorado Civil Rights Division determine that Ms. Bouricius' Charge lacks probable cause.

5.  The job description for the position to which the Charging Party was employed, or for which the Charging Party applied and was allegedly not hired, promoted, etc.

**RESPONSE:**   Attached as Attachment 5 is a copy of Ms Bouricius' job description.

6.  A copy of the Charging Party's complete personnel records, including accolades, warnings, reprimands, and evaluations.

**RESPONSE:**   Attached as Attachment 10 is a copy of Ms. Bouricius' personnel records

7.  A copy of the Employee Handbook applicable during the Charging Party's employment. Please note if an Employee Handbook does not exist.

**RESPOSNE:**   Attached as Attachment 7 is a copy of Mesa County's Personnel Manual and Procedures Handbook

a.  Provide copies of all relevant policies. For example, if harassment is involved, provide a copy of the harassment policy. If discipline is involved, provide a copy

4

Bouricius 000042

of the progressive discipline policy. Please note if the requested policies are not in existence.

**RESPONSE:** Mesa County's policy regarding reductions in workforce can be found at section 8.03 in Attachment 7.

8. Provide copies of applications and/or resumes for either the person or person(s) who replaced the Charging Party or, if applicable, those who were promoted, hired or rehired instead of the Charging Party.

**RESPONSE:** Not applicable.

**For the following items, provide information for one (1) year preceding the date that the Charge of Discrimination was filed.**

9. Provide a list of all current employees, with relative protected class information, name, employment dates and job or position title.

**RESPONSE:** In response to this request, Mesa County produces a current list of employees within the IT Department as Attachment 11. This Attachment lists the employee, their title, the date of layoff, their gender, identified race, age, and position. Due to privacy concerns, Mesa County redacts the first and last name of each employee. Mesa County would be willing to provide each individual's full name upon the entry of an acceptable protective order with respect to this information.

10. If applicable, provide a list of all employees who were hired or rehired for the position sought by the Charging Party. Specify each employee's relative protected classes (for example, if the Charging Party has alleged discrimination based on age and race, provide age and race information for each person listed.). Also provide that person's name, dates of employment, and the job or position title.

**RESPONSE:** This request is not applicable.

11. If applicable, provide a list of all employees who were subject to similar disciplinary action or adverse employment action. Specify their relative protected classes, names, dates of employment, job or position titles and the type of adverse action taken.

**RESPONSE:** In response to this request, Mesa County produces a list of employees who have been laid off within the IT Department at the same time as Ms. Bouricius was laid off as Attachment 12. This Attachment lists the employee, their title, the date of layoff, their gender, identified race, age, and position within the IT Department. Due to privacy concerns, Mesa County redacts the first and last name of each employee. Mesa County would be willing to provide each individual's full name upon the entry of an acceptable protective order with respect to this information.

12. If applicable, provide a list of all employees who were subjected to similar adverse employment actions[s] as alleged by the Charging Party (suspension, demotion, discharge, etc.), whether or not such action was implemented for the same reason it was taken against the Charging Party. For each individual identified, specify, their relative protected class[s], names, dates of employment, job or position title, and reason for which the adverse action was taken. For example, if the

Bouricius 000043

Charging Party alleges suspension leading to discharge, provide a list of individuals who were also suspended and discharged during the relevant time period.

**RESPONSE:** See Attachment 10, which has also been provided in response to Question 11.

13.   [If harassment or a complaint of discrimination to management or a supervisor is involved:] Provide a list of all employees who complained of discrimination or harassment, the date of the complaint, the individuals involved, and the relative protected class information for the complaining employee and the persons of which he or she complained. Also, provide details regarding the resolution of the complaint.

**RESPONSE:**   This request is not applicable.

## CONCLUSION

Ms. Bouricius bears the burden of establishing her Charge against Mesa County. Ms. Bouricius has failed to meet her burden. Due to the significant budgetary deficiencies facing Mesa County, the unfortunate result was a reduction in workforce and the layoff of Ms. Bouricius. Mesa County did not discriminate against Ms. Bouricius based on her age or for any reason other than the weaknesses of her skills as a Sr. BSA.

Accordingly, for these reasons, Mesa County requests that the Colorado Civil Rights Division determine that Ms. Bouricius' Charge lacks probable cause.

Should you have any questions or concerns, please feel free to contact me at (970-255-7145) or at nina.atencio@mesacounty.us.

Sincerely,

Andrea Nina Atencio
Chief Deputy Mesa County Attorney

Attachments

cc: Frank Whidden, Mesa County Administrator

6

Bouricius 000044



**COLORADO**

Department of
Regulatory Agencies

Colorado Civil Rights Division

1560 Broadway Street, Suite 1050
Denver, CO 80202

## Charge No. FE2017481263

Debra Bouricius
50152 Highway 72
Lyons, CO 80540                            Complainant


Mesa County
544 Rood Avenue
Grand Junction, CO 81501                   Respondent

### DETERMINATION

Under the authority vested in me by C.R.S. 24-34-306 (2), I conclude from our investigation that there is sufficient evidence to support the Complainant's claim of a discriminatory reduction in workforce based on age.  As such, a **Probable Cause** determination is hereby issued.

The Respondent is an employer within the meaning of C.R.S. 24-34-401 (3), as re-enacted, and the timeliness and all other jurisdictional requirements pursuant to Title 24, Article 34, Parts 3 and 4 have been met.

The Complainant alleges that on or about October 7, 2016, she was unlawfully discharged based on her age (57, DOB 4/22/1959). The Respondent denies the allegations of discrimination and avers that it discharged the Complainant due to budgetary issues.

The legal framework under which civil rights matters are examined is as follows:  The Complainant bears the burden of proving that discrimination has occurred.  Each key or essential element ("prima facie") of the particular claim must be proven, through a majority ("preponderance") of the evidence.  If the Complainant meets this initial burden of proof, then the Respondent has the burden of explaining, with sufficient clarity, a non-discriminatory justification for the action taken.  This is in response to



1560 Broadway Street, Suite 1050, Denver, CO 80202   P 303.894.2997   F 303.894.7830
www.colorado.gov/pacific/dora/civil-rights

**DEF 1**

the specifically alleged action named in the charge. In addition, the Respondent has the burden to produce documents and other information requested by the administrative agency during the civil rights investigation. If the Respondent offers a non-discriminatory reason, then the burden once again shifts back to the Complainant to prove that this proffered legitimate reason is merely a pretext for discrimination. At this stage, the Complainant must prove, again through sufficient evidence, that the true and primary motive for the Respondent's actions is unlawful discrimination.

"Unlawful discrimination" means treatment that is primarily based on the Complainant's asserted protected group or status. The Respondent's stated reasons for its actions are presumed to be true, unless and until the Complainant, again through a preponderance of the evidence in the record, adequately shows that the Respondent's reason is pretext (i.e., is not to be believed), and that the Complainant's protected status was the main reason for the adverse action taken. The Complainant does not need to submit additional evidence, in response to the Respondent's position, but the available evidence must be legally sufficient so that a reasonable person would find that the Respondent intended to discriminate against the Complainant because of his/her protected civil rights status. See Colorado Civil Rights Commission v. Big O Tires, Inc., 940 P.2d 397 (Colo. 1997); Ahmad Bodaghi and State Board of Personnel, State of Colorado v. Department of Natural Resources, 995 P.2d 288 (Colo. 2000).

The Respondent is political subdivision of the State of Colorado. It employs more than 15 persons.

The Complainant began her employment with the Respondent in or about 1990 as an Applications Analyst. At the time of her layoff, the Complainant was employed as a Senior Business Systems Analyst in the IT Department. The Job Summary for a Senior Business Systems Analyst is as follows:

> Position supports department and county-wide vertical applications. Functions as the liaison between various user departments; Information Technology (IT) staff and management; contractors, and vendors. Investigates, analyzes, evaluates, and manages business processes and user requirements; administers and maintains assigned system applications; conducts or oversees programming, design and development activities and prospective solutions. Responsible for applications security; train users; administers documentation activities; conduct project management of contractor work and projects in area of assignment. Provides support for office applications, analyses, and evaluation for business processes.

The Respondent maintains that the reduction in workforce was based on budgetary issues and insists that the layoffs within the IT Department resulted in approximately

2

$500,000 savings for the Respondent. The Respondent provided copies of several newspaper articles highlighting the budget concerns. It is undisputed that the Respondent was facing budget deficits. The Respondent explained that Frank Whidden ("Whidden")(Over age 40), Mesa County Administrator, evaluated departments within his control "to find greater efficiencies to address these restrictive budgetary times."

The Complainant argues that the layoffs were based on age discrimination because "the 2016 layoff . . . . exclusively targeted the Information Technology Department ("IT Department") workers over age forty. Not a single one of those laid off was younger than forty, despite the fact that this group of younger workers comprised almost 30 percent of the department." The Complainant acknowledges that "there is no doubt that [the Respondent] was facing budget deficits and that it was entitled to lay off workers to free up funds . . . ."

The Respondent provided a copy of its Human Resources Policies and Procedures Manual ("Manual"). Section 8.03 of the Manual details the Respondent's layoff policy as follows:

> If it becomes necessary to lay off employees due to lack of funds, reorganization, reduction in quantity of programs, or for any other reason, directors will first conduct or have conducted an analysis of personnel needs. From the analysis, each director will recommend quantity and types of proposed reductions. The County Administrator will review and comment on the proposals, recommending any changes felt necessary to the Board of County Commissioners, who will make the final decisions (Health Department addendum and Human Services Department addendum).

> In determining the individual employees to be laid off, the following will apply:

> Among regular employees, the director will have the option to lay off employees as deemed necessary and appropriate. The following items must be considered, in light of the needs of the department. These factors shall be taken into account in the order indicated:

> A. Performance of the employee;
> B. Special abilities the employee may possess

> In the event that the selection cannot be made on the above basis, the determining factor will be time employed by the County in a given position and the demand for that position within the proposed division reorganization.

3

A layoff is not considered to be a dismissal and not grounds for initiation of the problem solving process (See Section 7.11).

Regular employees being laid off will receive notice of layoff at least thirty (3) days prior to the effective date of the layoff, unless the layoff is temporary in nature and not expected to exceed ten (10) working days.

If reinstated in county service following a layoff within one (1) year, regular employees will retain any unused sick leave hours. If an employee was previously eligible for insurance benefits, waiting periods will not apply. Unless reinstatement is within thirty (30) days of the layoff, the employee's anniversary date will be adjusted one (1) month for each month laid off. (See Sections 4.03.J.2 and 4.07).

The Colorado Civil Rights Division requested contemporaneous documentation regarding the analysis regarding the layoff decisions performed by the Respondent and the Respondent admits that "[a]side from general budgetary information regarding the state of [the Respondent's] financial deficit, which precipitated the need for layoffs in the IT Dept[artment], there are no documents related to the decision to layoff [the] Complainant.

The Complainant argues that the Respondent's manual provides no guidance as to what these vague terms ["performance" and "special abilities the employee may possess"] mean, and leaves their application in the hands of one individual, who has unfettered discretion to select employees to be fired for age-discriminatory reasons. "[The Respondent's] use of vague and subjective selection criteria to select objectively high-performing older workers for layoff is strong evidence that the layoff was motivated by unlawful age discrimination."

The Respondent asserts that the Complainant's primary function as one of five Senior Business Systems Analysts was to provide support for the IT systems and applications, provide customer service through acting as a liaison, and project management. The Respondent alleges that, while the Complainant was able to perform the essential functions of her position, her performance was not as strong as the remaining three Senior Business Systems Analysts and therefore, the decision to lay off the Complainant was based on the strengths and weaknesses of her skills. Specifically, the Respondent asserts that the Complainant was not as proficient regarding the systems that Senior Business Systems Analysts support, customer service, or documentation skills.

The Complainant insists that she was the strongest member of the IT Department due to her "institutional knowledge" and her knowledge of all systems. The Complainant asserts that other members of the IT Department supported specific departments,

4

such as the Sheriff's Department or the Department of Human Services, whereas she had the experience to support all of the Respondent's various departments.

The Respondent provided a copy of the Complainant December 2015 performance evaluation in support of its decision to layoff the Complainant. The Complainant's December 2015 performance evaluation has the following 2016 goals:

> Continue to: learn about ever changing business processes and requirements; develop technical and organization skills; develop position working relationships with co-workers and customers; strive to be a leader in the organization; and cross train and seek cross training in all areas working toward providing the strongest and seamless support possible for our IT team.

The Complainant argues that this is taken out of context.  The Complainant's overall appraisal reads as follows:

> Throughout the year [the Complainant] has led and been involved in a wide variety of projects including electronic signature, Traffic, Recording, Assessor, Treasurer, Administration, HR and Finance applications and has shown development in expanded support and overall technical support. She has supported countywide and core department specific applications for many years and has an extensive knowledge of their business processes and needs. [The Complainant] strives to meet customer expectations in a very challenging environment at times.

The Complainant's 2014 performance evaluation gives her an overall rating of "Exceeds" and "Far Exceeds." The Complainant's 2013 performance evaluation gives her an overall rating of "Above."

At the request of the Colorado Civil Rights Division, the Respondent provided copies of 2015 performance evaluations for those individuals in the IT Department that received evaluations.  Of the 24 individuals in the IT Department, 15 (62.5%) received performance evaluations. Of the six employees that were discharged as part of the IT Department's reduction in workforce, three (50%) received 2015 performance evaluations.  Of those employees that received performance evaluations, nine individuals (60%), including the Complainant, were given identical goals for 2016. Only five employees (20.8%), are under age 40. Of those, three (60%) received performance evaluations.  All three employees under the age of 40 that received performance evaluations received positive appraisals. One employee, "J.D.'s" evaluation noted that he "took on a busy site and has done a great job taking over." The evaluator explained that he "receive[d] much praise from both the Sheriff's office and the District Attorney's office" regarding this employee.  A second employee, "E.M." was

5

praised for "emerging as the 'go to, getter [sic] done leader' on many projects." The final employee, "A.W." was described as "thinking outside of the box" and it was noted that the evaluator received "several kudos from users regarding [A.W.'s] response times." In reviewing all of the performance evaluation, the Investigator determined that all of the evaluations, including those evaluations of the individuals that were laid off, were largely positive, and notes that no evaluations expressed the need for significant improvement.

The Complainant asserts that she was not given 30 days advance notice of the layoff, contrary to the Respondent's policies. The Complainant argues that this demonstrates that the Respondent did not follow its policies during the reduction in workforce.

In a witness interview, Lynn Zubek ("Zubek")(age 40 or older), former Payroll Administrator, theorized that the Respondent did not follow its policy, particularly because the Complainant was one of the longest employees with the Respondent. Zubek reported that when she needed assistance, she would ask the Complainant for assistance because "she seemed more knowledgeable over [the] issue that I had."

The Respondent asserts that, although the Complainant was not given 30 days advance notice of the layoff, he was provided with 30 days compensation. The Respondent alleges that the advance days' notice was not provided as a security measure due to the highly sensitive nature of the IT Department. The Respondent insists that the Complainant was laid off based on weakness in her skill sets and not for any discriminatory reason.

The Complainant insists that she was laid off based on age discrimination. The Complainant argues that the Respondent manipulated the data and failed to accurately report how many Senior Business Systems Analysts it employed. The Complainant alleges that Elizabeth McDowell ("McDowell")(Under age 40), Business Systems Analyst/GIS Administrator, is a Senior Business Systems Analyst, under the age of 40, that was not laid off, and that the Respondent failed to label her as such.

The Respondent insists that McDowell is a Business Systems Analyst and GIS Administrator and is not a Senior Business Systems Analyst. The Respondent provided a list of all individuals working in the IT Department and their respective positions. The Colorado Civil Rights Division confirmed McDowell's title as a Business Systems Analyst and GIS Administrator.

The Colorado Civil Rights Division requested an interview with Whidden; however, Whidden declined to participate in an interview. The Respondent elaborated and stated that "he declines to do an interview and believes his position/statements are represented within Mesa County's Response to the Request for Information." The Respondent confirmed that Whidden was responsible for the decision to layoff the Complainant.

6

The Respondent denies that anyone was hired or promoted for the Complainant's position.

Comparative data shows that the IT Department consisted of 24 employees. Comparative data demonstrates that of the entire IT Department, 18 (75%) of the employees were of the same protected class as the Complainant based on age (age 40 or older). Of the six employees that were laid off, 100% were age 40 or older. Comparative data demonstrates that all five (100%) Senior Business Systems Analysts employed by the Respondent are members of the same protected class as the Complainant. Of those five, two (40%), including the Complainant, were laid off. Both individuals that were laid off were members of a protected class based on age.

Comparative data shows that the Complainant was the longest serving individual in the entire IT Department (26.5 years), including those individuals that were laid off and those individuals that remain employed by the Respondent. The next longest serving employee remains employed by the Respondent.

Comparative data demonstrates that the Complainant's salary ($72,894.96) was tied as the fourth highest in the entire IT Department and tied as the second highest of those that were laid off. The evidence shows that Troy Flick ("Flick")(Age 40 or older; male; not married to a coworker), IT Manager and Lhana Jordan ("Jordan")(Age 40 or older; female; Not Married to a Coworker), Customer Service Manager, are paid more than five of the six individuals that were laid off, including the Complainant. Flick and Jordan are members of the Complainant's protected class based on age.

Reduction in Workforce/Age:

To prevail on a claim of discriminatory layoff, the evidence must show that: (1) the Complainant is a member of a protected class; (2) the Complainant was laid off; (3) the Complainant was qualified for the position from which she had been laid off; and (4) the Complainant was treated less favorably than employees outside of her class during the reduction in force.

While the Complainant may hold a personal belief that the Respondent should have utilized other criteria in its reduction-in-workforce plan, Respondent is legally entitled to establish whatever non-discriminatory criteria it desires for its employment decisions. Civil rights statutes do not constitute a vehicle for administrative/judicial review of an employer's bona fide business decisions, however unreasonable they might appear to the Complainant. Furthermore, evidence of satisfactory work performance is not probative, because in a reduction in force case, "someone has to be let go." *Rea v. Martin Marietta Corp., 29 F.3d 1450, 1456 (10th Cir. 1994).*

7

DEF 7

The Complainant is a member of a protected class based on her age (57, DOB 4/22/1959). The Complainant was laid off. The Complainant was qualified for the position from which she was laid off; however, the Respondent asserts that in assessing the Complainant's skill set, it determined that the Complainant's skill were not as strong as others in the IT Department. The Respondent asserts that its reduction in workforce was not based on discriminatory criteria. The Respondent asserts that it considered the special skills of the Complainant in making its decision regarding the reduction in workforce. However, the Respondent was unable to provide any documentation that demonstrates how the special skills of the various employees were evaluated. Furthermore, all evidence demonstrates that the Complainant's performance was satisfactory. The Respondent's policy requires the Respondent to consider length of service if the other criteria are not decisive. The Complainant was employed with the Respondent for approximately 26 years. While the evidence shows that a reduction in workforce was necessary, the Respondent was unable to provide any documentation or evidence supporting their assertion that it followed its policies and made its layoff decision based on the special skills and abilities of its employees. There is probable cause to find that the reason offered by the Respondent, namely that the Complainant lacked certain skills that other employees possessed, is pretext. Additionally, the evidence shows that the Respondent's layoff disproportionately affected employees age 40 or older. Therefore, the evidence demonstrates that the Complainant was treated less favorably than employees outside of her class (age) during the reduction in workforce.

Based on the evidence contained above, I determine that the Respondent has violated C.R.S. 24-34-402, as re-enacted in relation to the Complainant's claim of discriminatory reduction in workforce based on age. As such, the Parties hereby are ordered by the Director to proceed to attempt amicable resolution of these charges by conciliation. The Parties will be contacted by the agency to schedule this process.

On Behalf of the Colorado Civil Rights Division

_Sarah R. Lyons_                    12·14·17
Aubrey Elenis, Director             Date
Or Authorized Designee

8

DEF 8

## CERTIFICATE OF MAILING

This is to certify that on  December 18, 2017  a true and exact copy of the Closing Action of the above-referenced charge was deposited in the United States mail, postage prepaid, addressed to the parties and/or representatives listed below.

CCRD Case Number:
**FE2017481263**
EEOC Case Number:
**32A-2017-00175**

Debra Bouricius
50152 Highway 72
Lyons, CO 80540

Hunter Swain
King & Greisen, LLP
1670 York Street
Denver, CO 80206

Mesa County
Human Resources Department
544 Rood Avenue
Grand Junction, CO 81501

Nina Atencio
Chief Deputy County Attorney - Civil Division
PO Box 20,000-5004
Grand Junction, CO 81501


Carol Fernandes
Colorado Department of Regulatory Agencies
Division of Civil Rights
1560 Broadway, Suite 825
Denver, CO 80202

**DEF 9**