# EXHIBIT 3

# Deposition Excerpts from Frank Whidden

```
      IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF COLORADO
Civil Action No. 18-cv-01144-WYD-STV
_____
VIDEOTAPED DEPOSITION OF FRANK WHIDDEN

                                  July 11, 2019
_____
DEBRA BOURICIUS,

    Plaintiff,

vs.

MESA COUNTY, by and through the Mesa County Board
of County Commissioners,

    Defendant.

_____



        Pursuant to Notice and the Federal Rules
of Civil Procedure, the videotaped deposition of
FRANK WHIDDEN, called by Plaintiff, was taken on
Thursday, July 11, 2019, commencing at 9:07 a.m.,
at 205 North 4th Street, Grand Junction, Colorado,
before Candice F. Flowers, Certified Shorthand
Reporter and Notary Public within and for the State
of Colorado.
```

```
 1        A    April of 2014 to December of that same
 2   year, and then I was promoted to County
 3   Administrator.
 4        Q    Okay.  Any other -- I think that -- is
 5   that when they have you -- oh, never mind.  I'm
 6   sorry.
 7             That's when you were the Deputy
 8   Administrator?
 9        A    Uh-huh.
10        Q    Okay.  Any other jobs --
11                 MR. SANTO:  Yes?
12                 THE DEPONENT:  Sorry.  Yes.
13        Q    (By Ms. Greisen) Any other jobs on
14   here -- that are not on here?
15        A    There was a brief time in between the
16   Council on Foundations and -- let me get this
17   straight.  Between the Council on Foundations and
18   the University of West Alabama, American Business
19   Services.  I ran a small company for a time in
20   between the Council on Foundations and when I went
21   to the University of West Alabama that is not on
22   there.
23        Q    What was the time period that you ran
24   that business?
25        A    It was in between 2003 and 2004, that
```

1   business together to -- same type of business, but
2   we expanded it.  When I was doing it, I only had
3   one office.  And then we had the bright idea we'd
4   open offices around all the little towns around
5   Meridian, and that was part of the IT stuff and all
6   of that.  And at one time we had a payroll as high
7   as $50,000, but it just -- because of what the IRS
8   was doing, we just didn't think it was tenable to
9   continue that.
10          And I had the interest in Computers Mean
11  Business and he was Vision Software, and we both
12  decided we'd rather take our shot at the IT side of
13  things rather than staying in the income tax
14  business.
15       Q   Are you still in touch with Mr. Pugh?
16       A   I haven't talked to him in a number of
17  years, but yes, we're still good friends.
18       Q   So your current position right now is
19  County Administrator of Mesa County; is that
20  correct?
21       A   That is correct.  Also serve as the IT
22  director and the HR director.
23          And going back to when I was Deputy
24  Administrator for Resource Management, what
25  happened was, to explain that a bit, the former

1  County Administrator, Tom Fisher, decided to wipe
2  out a layer of directors, and that included HR, IT,
3  finance, facilities.  And it was regional services
4  grouped together like facilities, parks and rec,
5  and things like that.
6            He decided to wipe all of that out and
7  make me responsible for all of those, and that's
8  the responsibility I had there in '14.  And then he
9  left and the commissioners made me County
10 Administrator, so I had all of that responsibility
11 plus the County Administrator.
12           Since that time, I managed to hire --
13 well, I hired a chief financial officer, Scott
14 Stewart, who was with us for a year or two and then
15 he left, and I promoted from within a director of
16 finance.  I also -- in that time after I became
17 County Administrator, I created a facilities
18 director, so I have that now, and I combined parks
19 and all of that and the fairgrounds under the
20 director of facilities.
21      Q    Okay.  We're going to -- I'm going to ask
22 you some more specific questions about that, but
23 just so I understand.
24           When the previous County Administrator
25 left, you were doing the County Administrator's job

1  government accounting.  I think I had a knowledge
2  of it, but I was always concerned about that
3  particular issue.
4     Q   Well, other than Tom, did you express
5  your concern to anyone about being named the
6  director of finance when you didn't have any
7  financial credentials?
8     A   Like personal friends and things like
9  that, but not -- not at Mesa County.
10    Q   You didn't express it to the County
11 Commissioners?
12    A   No.
13    Q   Did you have any credentials in HR at
14 that time?
15    A   Not other than my BBA.
16    Q   Your business administration degree?
17    A   Correct.
18    Q   But I'm talking about any certifications,
19 training classes, education specifically training
20 you to be the director of HR?
21    A   No, ma'am.
22    Q   So in the Deputy Administrator's
23 position, can you give me an idea of what -- kind
24 of a day in the life of your life was like when you
25 were the Deputy Administrator?  You had, it looks

Frank Whidden   July 11, 2019

94

1     A    Through taxation, yes.
2     Q    So when citizens are footing the bill,
3  you would agree that they would have a right to see
4  how their government is operated?
5     A    Yes.
6     Q    And a right to know where their money is
7  going or not going.
8     A    Yes.
9     Q    And would you also agree that citizens
10  have the right to know that their taxpayer dollars
11  are being used in a manner that complies with the
12  law?
13     A    Yes.
14          MR. SANTO:  Object to form.  Sorry.
15  I was late on that one.
16     Q    (By Ms. Greisen) And as the County
17  Administrator, you're also required to follow the
18  rule and policies outlined in the manual, right?
19     A    Yes.
20          MR. SANTO:  Same objection.
21     Q    (By Ms. Greisen) Have you done that as
22  the County Administrator?  Have you followed the
23  policies and procedures in the Mesa County manual?
24     A    To the best of my knowledge, yes.
25     Q    Would you agree that as County

```
 1   listed a designation of you as an expert as having
 2   management experience over your career.
 3        A    Correct.
 4        Q    In your career, have you ever been made
 5   aware of any complaints of illegal discrimination
 6   brought by any employee that you've managed?
 7        A    Not that I recall, no.
 8        Q    In your career, whether it be HR or as a
 9   manager, have you ever investigated any complaints
10   of discrimination?
11                MR. SANTO:  Object to form.
12        A    I haven't conducted an investigation as
13   such.  I have certainly been aware of
14   investigations that have taken place, but I -- I
15   didn't conduct any investigations.
16        Q    (By Ms. Greisen) Did you oversee or
17   supervise?
18        A    In the sense that I'm the HR director,
19   yes.
20        Q    Okay.  What --
21        A    I mean I'm responsible --
22        Q    With that --
23        A    -- ultimately.
24        Q    You don't have to tell me the names, but
25   give me the types of discrimination investigations
```

```
 1   discrimination lawsuit.
 2              I'm saying:  In your career at Mesa
 3   County, have you ever -- are you aware of any
 4   situation in which Mesa County, in the HR
 5   department, substantiated a claim of illegal
 6   discrimination by an employee?
 7        A     Not --
 8              MR. SANTO:  Same objection.
 9        A     Not that I can recall.
10        Q     (By Ms. Greisen) Okay.  Let's take it
11   beyond Mesa County.
12              In your entire career, have you ever been
13   employed by an employer or been the boss yourself
14   where you have substantiated a claim of illegal
15   discrimination?
16              MR. SANTO:  Object to form.
17        A     Not that I can recall.
18        Q     (By Ms. Greisen) So it's my understanding
19   that in all three cases -- for Rick Corsi, Janine
20   Corsi, and Ms. Bouricius -- you were the sole
21   decision-maker regarding who would be laid off; is
22   that correct?
23        A     Yes.
24        Q     Okay.  So I'm still a little unclear
25   about exactly what your expert opinions are at
```

```
 1  obligation to report the fact of the settlements as
 2  well as the amounts of the settlements to the Board
 3  of County Commissioners as County Administrator?
 4       A    None.
 5                MR. SANTO:  Object to form.
 6       A    No, not to my knowledge.  It was -- I
 7  wasn't involved in the decision or the payments or
 8  those kinds of things.  I didn't have knowledge of
 9  it, other than what I was told later.
10       Q    (By Ms. Greisen) I'm going to put in
11  front of you Exhibit 31, previously marked in this
12  case.
13            Do you recognize that exhibit?
14       A    I don't.
15       Q    Can you turn to the last page of that
16  exhibit and tell me if that's your signature.
17       A    I did sign this, yes.
18       Q    And can you turn to Exhibit 33, and,
19  again, turn to the last page of Exhibit 33 and tell
20  me if that's your signature.
21       A    Yes, that's my signature.
22       Q    So in forming your expert opinion about
23  whether or not age discrimination occurred in this
24  case, are you aware of any other times at Mesa
25  County where there have been allegations of
```

1  A   Yeah.  But in our mind, that's the limit
2  that we have.  If it goes over 49.9, then it needs
3  to go to the board.  That's kind of a general rule
4  that we use.  But it's a procurement policy where
5  that's actually stated.
6  Q   Well, have there been other civil cases
7  settled by Mesa County that you're aware of in
8  which the authority has -- in which the settlement
9  exceeds the 49.9 number?
10  A   Not that I can recall that I knew about
11  during my time, no.
12  Q   Have you ever heard --
13  A   But I had forgotten -- I had forgotten I
14  signed that too, so...
15  Q   Have you heard of ■■■ ■■■■■■■■■■ charge
16  of discrimination?
17  A   I'm sorry.  Who?
18  Q   ■■■■■■■■.
19  A   That name -- I don't remember that name.
20  Q   Did -- are you aware of the -- what's
21  known as the age spreadsheet that was created --
22  A   I --
23  Q   -- in Mesa County?
24  A   I have heard that talked about but as --
25  as sort of urban legend.  But I have never seen

1  such spreadsheet nor have I heard any -- anything
2  that I could say that I felt was credible that that
3  existed, but there's definitely scuttlebutt around
4  the County that that occurred.
5       Q   Well, what investigation have you done to
6  determine whether or not that allegation is
7  credible?
8       A   None.  I did not -- that was -- happened,
9  my understanding was, before -- long before my time
10 at the County, and I certainly didn't go digging up
11 ancient history to see what happened.
12      Q   Do you know anything about the
13 settlements that Mesa County entered into in that
14 case?
15      A   No.
16      Q   And that is a settlement that was entered
17 into in 2014.  I'll put this exhibit in front of
18 you.  Do you see Exhibit 43, that that was a
19 settlement entered into during your tenure at Mesa
20 County?
21      A   I see that that was at that time, yeah,
22 that that's when the dates are, yes.
23      Q   And as director of HR, are you aware of
24 when complaints of discrimination are made against
25 Mesa County?

```
 1   just --
 2        A    Who else -- who else was involved in
 3   this.
 4        Q    In making the decision to terminate --
 5        A    Right.
 6        Q    -- these individuals.
 7        A    That was -- that was me, and then if
 8   you -- depending on how you want to count Troy and
 9   Lhana when I asked them to vet the list.
10        Q    But you were the sole decision-maker.
11        A    Yes.
12        Q    Okay.
13        A    I was.
14        Q    Do you still operate your outside
15   business of marriage and family therapy?
16        A    It exists.  I don't -- I'm not actively
17   doing anything right now.  I hurt my back back in
18   January, and I only ever had one set of clients, so
19   I don't think I can be said to be operating a
20   business.
21        Q    Well, you got a license to conduct this
22   business, right?
23        A    I have what's called a candidate's
24   license, yes.  And that was the point of trying to
25   set that business up, is because I have to amass
```

**Frank Whidden  July 11, 2019**

351

```
 1            I, FRANK WHIDDEN, do hereby certify that
 2   I have read the foregoing transcript and that the
 3   same and accompanying amendment sheets, if any,
 4   constitute a true and complete record of my
 5   testimony.
 6
 7
 8                           _____
                             Signature of Deponent
 9
                             (  ) No amendments
10                           (  ) Amendments attached
11
12            Acknowledged before me this _____ day of
13   _____, 2019.
14            Notary Public: _____
15            My commission expires _____
16            Seal:
17
18
19
20
21
22
23
24
25
```

1  STATE OF COLORADO)
2              )ss.    REPORTER'S CERTIFICATE
3  COUNTY OF MESA   )
4      I, Candice F. Flowers, do hereby certify that
5  I am a Certified Shorthand Reporter and Notary
6  Public within the State of Colorado; that previous
7  to the commencement of the examination, the
8  deponent was duly sworn to testify to the truth.
9      I further certify that this deposition was
10 taken in shorthand by me at the time and place
11 herein set forth, that it was thereafter reduced to
12 typewritten form, and that the foregoing
13 constitutes a true and correct transcript.
14     I further certify that I am not related to,
15 employed by, nor counsel for any of the parties or
16 attorneys herein, nor otherwise interested in the
17 result of the within action.
18     In witness whereof, I have affixed my
19 signature this 20th day of July, 2019.
20     My commission expires February 14, 2020.
21
22
23                    _____
                     Candice F. Flowers, CSR
24                   671 Alexia Court
                     Grand Junction, CO 81505
25