# EXHIBIT 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01144-WYD-STV
_____

DEBRA BOURICIUS,

    Plaintiff,

vs.

MESA COUNTY, by and through the Mesa County Board of
County Commissioners,

    Defendant.
_____

DEPOSITION OF JOHN JUSTMAN
_____

Friday, May 3, 2019

9:02 a.m.


PURSUANT TO NOTICE and the Federal Rules of Civil
Procedure, the above-entitled deposition was taken on
behalf of Plaintiff at 205 North 4th Street, Suite 300,
Grand Junction, Colorado, before K. Michelle Dittmer,
Registered Professional Reporter and Notary Public within
Colorado.

1   insufficient income or revenue, is it fair to say that

2   the Board's first priority is to find ways to save money

3   other than the termination of its employees?

4           MR. SANTO:  Object to form.

5       A.  Yes.

6       Q.  (By Ms. Greisen)  Okay.  And is it fair to

7   say that the Board has made clear to the managers at Mesa

8   County that laying off people is -- is a last resort when

9   there's a budget problem?

10      A.  I don't know that I agree with that.

11      Q.  Okay.  Well, what -- tell me where it is

12  on the priority.

13      A.  We do not have a priority list.

14      Q.  Okay.  Are there any factors that you do

15  look at to determine whether or not a layoff, versus some

16  other expenditure, cutting of expenditures should happen?

17      A.  It would be -- my opinion, it would be a

18  combination of things.  You'd have to look at where you

19  can cut costs and look at your staffing levels.  That --

20  those are the two items that you're going to have to

21  address.

22      Q.  And would these be -- would you ask the

23  department heads for proposals on those matters?

24      A.  Yes.

25      Q.  So was the policy that the Board would ask

1    the department heads and they would prepare written

2    proposals and present it to the Board?

3           A.   They --

4                MR. SANTO:   Object to form.

5                Sorry.

6           A.   They would present it to Frank and he --

7    and they -- we could be a -- it could be a combination,

8    Frank and/or them.

9           Q.   (By Ms. Greisen)  Okay.  And would Frank

10   and/or the department heads then put their proposals down

11   in writing and submit it to the Board?

12          A.   Correct.

13          Q.   And would the process be, then, the Board

14   would then vote on the right path to take to deal with

15   those decreased revenues?

16          A.   No.

17          Q.   So how would -- if the Board doesn't vote,

18   what happens?

19          A.   It's reflected in the final budget.

20          Q.   Okay.  So if, during a fiscal year, you

21   know, the Board has approved a budget and the Board

22   understands that, Hm, it may not generate as much in

23   revenues that it was projecting; does the Board have the

24   flexibility, then, to change the budget?

25               MR. SANTO:   Object to form.

```
 1            Q.   Okay.  Do you know when that hiring freeze
 2   was lifted?
 3            A.   No.
 4            Q.   Was there also a layoff in 2016 of Mesa
 5   County employees?
 6            A.   Yes.
 7            Q.   Okay.  And what was the reason for the
 8   layoff?
 9            A.   Lack of revenue.
10            Q.   So that was sales tax revenue, or was
11   it --
12            A.   I think it was primarily sales tax.
13            Q.   So why was there a deficit in -- in
14   revenue?  What happened with the forecasting?
15            A.   People weren't spending money in the
16   county.  I mean, that's where it all comes from.
17            Q.   Is that the biggest source of sales tax?
18            A.   You know, income?  You know, but it's a --
19   it's a -- it's a huge part of our revenue.
20            Q.   So did the board decide to implement
21   layoffs in 2016?
22                 MR. SANTO:  Object to form.
23            A.   I don't -- I don't think that's -- I don't
24   think that's correct.
25            Q.   (By Ms. Greisen)  Did the Board vote for
```

```
 1   layoffs in 2016?

 2              MR. SANTO:  Same objection.

 3        A.    I don't recall.

 4        Q.    (By Ms. Greisen)  And so how did the

 5   decision to lay off people in 2016, how did that come

 6   about?

 7        A.    I think it was part of Frank's

 8   recommendations as he worked with the department heads

 9   and probably polled us individually.

10        Q.    Did Frank -- and by "Frank," I mean

11   Mr. Whidden -- did he submit a written proposal to the

12   Board --

13        A.    No.

14        Q.    -- about the proposed layoffs?

15        A.    No.

16        Q.    So throughout your time as a board of

17   county commissioner, there have been, at least, between

18   $12 and $14 million in general fund reserves in the

19   county?

20        A.    Yes.

21        Q.    So why were layoffs deemed necessary?

22              MR. SANTO:  Object to form.

23        A.    Because we feel 12 million, or whatever

24   the number is, that's -- that's -- we don't want to go

25   lower than that.
```

 1   been years when it -- when the deficit was more than the

 2   budget said.  But generally speaking, the budget deficit

 3   is, for the most part, more years, it's not been quite as

 4   low as we stated.

 5           Q.   So you would agree that that is a

 6   statement you would have made?

 7           A.   Yes.

 8           Q.   Okay.  So did the Board -- well, I guess

 9   the Board never convened as a board to discuss the

10   layoff; is that correct?

11           A.   Correct.

12           Q.   And was there actually a document

13   presented to you as to how the layoffs would occur?

14           A.   No.

15           Q.   Have you ever seen any documentation about

16   how it was decided the layoffs would occur?

17           A.   No.

18           Q.   Would you agree that prior to making

19   layoffs of individual people, that it would be -- well,

20   let me restate that.

21                Before making any layoffs, the department

22   heads, the people who had the most knowledge about the

23   efficiencies of their staff, they would be consulted

24   about who should or should not be laid off; is that fair?

25           A.   Yes.

 1             Q.   And were there other cost-saving methods
 2     looked at, other than layoffs, at that time?
 3             A.   I believe -- I believe there was some job
 4     consolidations if someone left.
 5             Q.   Anything else?
 6             A.   I don't recall.
 7             Q.   Do you know what criteria was used for who
 8     was laid off?
 9             A.   No.
10             Q.   Do you know who made the decision as to
11     who would get laid off?
12             A.   No.
13             Q.   Did you speak to Frank Whidden about who
14     was going to be laid off before that decision was
15     finalized?
16             A.   No.
17             Q.   Did you speak to Frank Whidden about who
18     was going to be laid off after the decision was
19     finalized?
20             A.   No.
21             Q.   Do you know any of the factors used to
22     make decisions about who would be terminated during that
23     layoff?
24             A.   No.
25             Q.   Did Frank Whidden tell you -- discuss with

1  being laid off?

2          A.  No.

3          Q.  So you weren't present at any of the
4  meetings where people were told they were going to be
5  laid off?

6          A.  No.

7          Q.  Did you ever find out who was laid off?

8          A.  No.

9          Q.  Did you ever ask?

10         A.  No.

11         Q.  Was there ever a report given to the Board
12 about the layoffs and the impact of the layoffs?

13         A.  No.

14         Q.  Were you told any of the reasons why the
15 specific people who were laid off were chosen?

16         A.  No.

17         Q.  Do you have any knowledge about the work
18 performance or skill set of any of the people chosen for
19 the layoff?

20         A.  No.

21         Q.  At any time did you look to see who was
22 terminated --

23         A.  No.

24         Q.  -- in that layoff?

25             Did you look to see -- even if you didn't

1  look to see the names, did you look to see the years of

2  service that any of those employees had given to Mesa

3  County?

4         A.   No.

5         Q.   Are you aware that some of those people

6  laid off had been with the county for over two decades?

7         A.   No.

8         Q.   Were you aware that most of the people in

9  the IT department that were laid off were the older

10 employees?

11        A.   No.

12        Q.   Did you ever talk to the other board

13 members about who was being terminated?

14        A.   No.

15        Q.   Did you ever ask Whidden for any

16 documentation showing who he terminated?

17        A.   No.

18        Q.   Did you ever ask him for any documentation

19 showing the basis for his decision?

20        A.   No.

21        Q.   So fair to say, it was just kind of like

22 we're -- yeah, we'll -- that's fine or that you said it

23 was okay to do layoffs to Frank, but you really -- other

24 than that participation, you didn't have any further

25 conversations with the Board or with Frank about it?

# CORRECTION SHEET

Debra Bouricius v. Mesa County, by and through the Mesa County Board of County Commissioners.

    Case Number: 18-CV-01144-DDD-STV
    Deposition of: John Justman
    Date of Deposition: May 3, 2019

I, JOHN JUSTMAN, wish to make the following changes or corrections to my deposition:

| Page | Line | Should Read | Reason |
|---|---|---|---|
| 10 | 5 | Add: "in my personal capacity." | I understood this question at p. 10, lines 2-4 to ask about my personal involvement in any of the identified proceedings. I am clarifying my understanding of this question and my response. |

| 23 | 15 | Add: "In attendance at the weekly attorney meeting are Human Services, Public Works, Transportation, Planning, and the County Administrator, as they are needed. The weekly attorney meeting is a public meeting." | I understood this question at p. 23, line 14 to refer to the name of other meetings. This meeting is called "weekly attorney meeting" on my calendar. In my review of this transcript, I realized this question might refer to who attends the weekly attorney meeting, so I am providing this additional information for this purpose. |
|---|---|---|---|
| 25 | 5 | Add: "It is my understanding that if an individual department has an issue it wants to discuss with the Commissioners, they contact the County Attorney or my assistant to have the issue included on the agenda." | This change is to clarify the process that I explained during the deposition based on further information I recalled after reviewing this transcript. |
| 26 | 21 | Change "No" to "Land Use meetings are also recorded and have minutes prepared." | This is to reflect additional information I recalled after reviewing this transcript. |
| 26 | 24 | Change "No" to "The Clerk to the Board." | This is to reflect additional information I recalled after reviewing this transcript. |

| 29 | 21 | Add: "The three Commissioners, Clerk to the Board, County Administrator, and County Attorney are also present. Sometimes several County Attorneys are present at meetings." | I understood this question during the deposition to refer to who attended meetings as part of the audience. Upon reviewing this transcript, I realized that this question might also refer to who is present on the dais during meetings. This clarification is meant to address this additional understanding about the nature of the question. |
|----|----|---|---|
| 45 | 15 | Add: "And Brenda Moore in Human Resources, who may contact the County Attorney's Office." | On p. 46, lines 9, 11, I reference the HR department. After my review of this deposition transcript, I realized the HR department should also be identified on page 45, so this change is meant to make that clarification. |
| 46 | 18 | Change "McKay" to "Moore." | Brenda Moore changed her last name from McKay to Moore. |

| 98 | 19 | Change "state" to "statement." | If I did not finish saying the entire word "statement" during my testimony, I meant to do so. |
| --- | --- | --- | --- |
| 194 | 19 | Change "I don't think so" to "If the amount is $50,000 or under, the County Administrator has the authority to approve the amount." | During the deposition, I stated that I was not certain about the answer to this question. After reviewing this transcript, I recalled this information. |

_____    7-03-2019
John Justman                                     Date


STATE OF COLORADO   )
                                              ) ss.
COUNTY OF MESA       )

Subscribed and sworn before me this 3rd day of July 2019 by John Justman.

_____
Notary Public

My Commission Expires: 10-12-2022

RHONDA J. WITT
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID #19994025040
My Commission Expires October 12, 2022

4

REPORTER'S CERTIFICATE

I, K. MICHELLE DITTMER, Registered Professional Reporter and Notary Public, State of Colorado, do hereby certify that previous to the commencement of the examination, the deponent was duly sworn by me to testify to the truth in relation to the matters in controversy between the parties hereto; that the said deposition was taken in machine shorthand by me at the time and place aforesaid and was thereafter reduced to typewritten form; that the foregoing is a true transcript of the questions asked, testimony given, and proceedings had.  I further certify that I am not employed by, related to, nor counsel for any of the parties herein, nor otherwise interested in the outcome of this litigation.

IN WITNESS WHEREOF, I have affixed my signature this 5th day of June, 2019.

My commission expires April 13, 2020.

*K. Michelle Dittmer* (signature)
_____
K. MICHELLE DITTMER
Registered Professional Reporter
My commission expires April 13, 2020.