# EXHIBIT 7



Neutral
As of: September 22, 2021 2:20 AM Z

# First W. Capital Mgmt. Co. v. Malamed

United States District Court for the District of Colorado

October 2, 2017, Decided; October 2, 2017, Filed

Civil Action No. 16-cv-01961-WJM-MJW

**Reporter**
2017 U.S. Dist. LEXIS 228715 *

FIRST WESTERN CAPITAL MANAGEMENT COMPANY, Colorado corporation, and FIRST WESTERN FINANCIAL, INC., a Colorado corporation, Plaintiffs, v. KENNETH D. MALAMED, an individual, Defendant.

**Prior History:** *First W. Capital Mgmt. Co. v. Malamed, 2016 U.S. Dist. LEXIS 189782, 2016 WL 8358549 (D. Colo., Sept. 30, 2016)*

## Core Terms

disclosure, supplemental, discovery, initial disclosure, untimely, deposition, witnesses, harmless, parties, substantial justification, pretrial order, stricken

**Counsel:** [*1] For First Western Capital Management Company, a Colorado corporation, First Western Financial, Inc., a Colorado corporation, Plaintiffs: Timothy R. Beyer, LEAD ATTORNEY, Sarah Levine Hartley, Bryan Cave Leighton Paisner LLP-Denver, Denver, CO.

For Kenneth D. Malamed, an individual, Defendant: Bruce Jay Altshuler, Altshuler & Spiro, Beverly Hills, CA; Kent Brian Goss, Crowell & Moring LLP-Los Angeles, Los Angeles, CA; Paul Howard Schwartz, Vanya Putnam Akraboff, Shoemaker Ghiselli & Schwartz, LLC, Boulder, CO; Valerie Meiling Goo, Orrick Herrington & Sutcliffe LLP-Los Angeles, Los Angeles, CA.

**Judges:** Michael J. Watanabe, United States Magistrate Judge.

**Opinion by:** Michael J. Watanabe

## Opinion

ORDER ON PLAINTIFFS' MOTION TO STRIKE UNTIMELY SUPPLEMENTAL INITIAL DISCLOSURES SERVED BY DEFENDANT KENNETH D. MALAMED (DOCKET NO. 147)

Michael J. Watanabe

United States Magistrate Judge

This case is before the Court pursuant to an Order (Docket No. 148) referring the subject motion (Docket No. 148) issued by Judge William J. Martinez. Now before the Court is Plaintiffs' Motion to Strike Untimely Supplement Initial Disclosures Served by Defendant Kenneth D. Malamed. (Docket No. 147.) The Court has carefully considered the motion, [*2] Defendant's response (Docket No. 158), and Plaintiffs' reply. (Docket No. 173.)[1] The Court has taken judicial notice of the Court's file and has considered the applicable Federal Rules of Civil Procedure and case law. The Court now being fully informed makes the following findings of fact, conclusions of law, and order.

### I. BACKGROUND

---

[1] The docket for this case contains numerous documents filed under restriction. Throughout this Order, the Court will refer to the docket number that contains the restricted filings rather than the publicly available text entry.

Case No. 1:18-cv-01144-DDD-STV Document 177-7 filed 09/23/21 USDC Colorado pg 3 of 6

Page 2 of 5
2017 U.S. Dist. LEXIS 228715, *2

In this lawsuit, Plaintiffs First Western Capital Management Company and First Western Financial, Inc. (collectively "FWCM" or "Plaintiffs") sued Defendant Kenneth Malamed ("Defendant"), Plaintiffs' former Vice Chairman, Chief Investment Officer, Portfolio Manager, and Director, to prevent him from misappropriating trade secrets and soliciting away Plaintiffs' clients. The deadline for completing discovery was June 28, 2017. (Docket No. 136.) On June 8, 2017, Defendant served his First Supplemental Initial Disclosures Pursuant to *Fed. R. Civ. P. 26(a)(1)*. Plaintiffs argue that this supplemental disclosure identifies hundreds of new "individuals likely to have discoverable information" within the meaning of *Rule 26*, and requests that it be stricken. Defendant maintains that virtually all the individuals were identified in his initial disclosures or made known to Plaintiffs in the discovery **[*3]** process.

## II. APPLICABLE LAW

*Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure* provides that a party must disclose, without awaiting a formal discovery request, "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." See *Fed. R. Civ. P. 26(a)(1)(A)(I)*. The purpose of initial disclosures is to provide the parties "with information essential to the proper litigation of all relevant facts, to eliminate surprise, and to promote settlement." *Sender v. Mann, 225 F.R.D. 645, 650 (D. Colo. 2004)* (citations and alterations omitted). "To that end, initial disclosures should be 'complete and detailed,' and should 'give the opposing party information as to the identification and location of persons with knowledge so that they can be contacted in connection with the litigation.'" *Id.*

Once a party responds to discovery requests, the party is under a continuing obligation to "supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise **[*4]** been made known to the other parties during the discovery process or in writing." *Fed. R. Civ. P. 26(e)(1)*. "To satisfy the 'made known' requirement, a party's collateral disclosure of the information that would normally be contained in a supplemental discovery response must in such a form and of such specificity as to be the functional equivalent of a supplemental discovery response; merely pointing to places in the discovery where the information was mentioned in passing is not sufficient." *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc., 125 F. Supp. 3d 1155, 1168-69 (D. Colo. 2015)* (citing *Jama v. City and County of Denver, 304 F.R.D. 289, 298-99 (D. Colo. 2014))*.

In this case, it is undisputed that the supplemental disclosures were made prior to the discovery cut-off and therefore are not per se untimely. However, a disclosure of a "new" witness made near the end of the day on the discovery deadline "effectively forecloses the opposing party from conducting discovery on the supplemental disclosures" and thus is untimely under *Rule 26(e)*. *Johnson v. Sch. Dist. No. 1 in the Cty. of Denver, No. 12-CV-02950-MSK-MEH, 2014 U.S. Dist. LEXIS 32668, 2014 WL 983521, at *3 (D. Colo. Mar. 13, 2014)* (citations omitted). *See also Ortega v. City & Cty. of Denver, No. 11-CV-02394-WJM-CBS, 2013 U.S. Dist. LEXIS 57933, 2013 WL 1751944, at *2 (D. Colo. Apr. 23, 2013)* (recognizing that under some circumstances, the disclosure of numerous individuals with potential information about a case on the discovery deadline "may violate the spirit, if not the letter, of **[*5]** *Rule 26*").

*Rule 37(c)* provides that if "a party fails to provide information or identify a witness as required by *Rule 26(a)* or *(e)*, the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure

was substantially justified or is harmless." The determination of whether a *Rule 26(a)* violation is justified or harmless is entrusted to the broad discretion of the district court. *Woodworkers Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999)*. "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Id.* (citing *United States v. $9,041,598.68, 163 F.3d 238, 252 (5th Cir. 1998))*. However, the Tenth Circuit set has identified four factors for consideration in determining whether a *Rule 26(a)* violation is substantially justified or harmless: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.* (citations omitted). *See also Jacobsen v. Deseret Book Co., 287 F.3d 936, 953 (10th Cir. 2002)*. The non-moving party has the burden of showing that it was substantially justified in failing to comply with *Rule 26(a)* or that such failure was harmless. *See Sender, 225 F.R.D. at 655* (citation omitted). **[*6]** In analyzing these factors, the Tenth Circuit has admonished courts that "the decision to exclude evidence is a drastic sanction." *Summers v. Mo. Pac. R.R. Sys., 132 F.3d 599, 604 (10th Cir. 1997)*.

### III. ANALYSIS

In its motion, Plaintiffs identify ten categories of supplemental witnesses that they contend were untimely disclosed. However, on September 13, 2017, the parties submitted their proposed Final Pretrial Order (Docket No. 196), which contains a list of individuals who will or may be called by the parties. Plaintiffs' list contains several individuals that are the subject of the Motion before the Court, while Defendant's list does not contain numerous individuals that were allegedly untimely disclosed. The Court entered the Final Pretrial Order on September 20, 2017 (Docket No. 198). It is well established that unless the Court modifies its pretrial order, the parties are "bound to its contents and may not contradict its terms." *Prager v. Campbell Cnty. Mem'l Hosp., 731 F.3d 1046, 1056 (10th Cir. 2013)* (citing *Perry v. Winspur, 782 F.2d 893, 894 (10th Cir. 1986))*. "This rule, of course, applies to those portions of pretrial orders which list the witnesses and describe the testimony each party may use." *Id.*

The Court finds that Plaintiffs have waived any objections to the timeliness of the disclosure of individuals whom they have included in their list of proposed witnesses. **[*7]** Conversely, Defendant is precluded from calling any witnesses not listed in the Final Pretrial Order. Accordingly, the Court will only address those individuals that (1) were identified in the Supplemental Disclosure; (2) appear on Defendant's list of witnesses; and (3) do not appear on Plaintiffs' list of witnesses. As far as the Court can tell, that amounts to nine people: Thomas A. Gart, Philip Caper, Jerry (Gerald F.) Norman, Joshua Pianko, Peter Backus, Don Levy, Guy Holman, Stacey Perry, and Bradley Bergman.[2]

### Thomas Gart

FWCM requests that the Court strike Thomas Gart from Defendant's Supplemental Disclosures. Defendant's contention that Mr. Gart was referred to in depositions and pleadings is unavailing; merely pointing to places in the discovery where his (sometimes mispronounced) name is mentioned in passing is not sufficient. However, any prejudice to Plaintiffs by Mr. Gart's untimely disclosure is mitigated by the fact that he is a FWCM board member. Presumably, Plaintiffs have his contact information and will be able to informally discuss his knowledge of the subjects contained in the Supplemental Disclosures. Given that excluding evidence is a drastic sanction, under these **[*8]**

---

[2] Another individual, Marc Rapaport, is identified in Defendant's pretrial list of witnesses but does not appear to have been disclosed in any of the parties' disclosures, including Defendant's Supplemental Disclosure. Therefore, the propriety of his disclosure is not before the Court at this time.

circumstances, the Court declines to strike Thomas Gart.

## Philip Caper

Defendant's Supplemental Disclosures identify "[a]ll individuals, names, and/or representatives of entities listed on the documents filed in this litigation at ECF Nos. 54-1, 54-2, and 54-3." (Docket No. 158-4 at 5.) Defendant is referring to lists of accounts he wished to be exempted from the Court's Preliminary Injunction, which prohibited him from soliciting and/or accepting business from FWCM clients, other than certain excepted clients and "Other Intended Departures." Judge Martinez defined Other Intended Departures as follows:

> [A]ny FWCM Client that (1) is listed as assigned to "Ken" on Plaintiffs' Exhibit 13, exhibit page 119; and (2) between September 1, 2016 and the Effective Date and Time (inclusive), closed their FWCM account or expressed by word or action (such as a directive to halt trading) an intent to close their FWCM account or to otherwise withdraw FWCM's authority to administer their assets, under the belief that they could then appoint Kenneth Malamed to manage those assets through a different firm[.].

(*See* Docket No. 45 at 31.) Judge Martinez twice rejected Defendant's request to expand the definition **[*9]** of Other Intended Departures to include the accounts contained in Docket Nos. 54-1, 54-2, and 54-3. (*See* Docket Nos. 62, 75, & 89.) Philip Caper's name is on this expanded list.

In Plaintiffs' own Initial Disclosures, they identify "[a]ll individuals included in the lists of Other Intended Departures which Defendant's counsel provided to Plaintiffs' counsel on October 14, 2016 . . .." (Docket No. 158-3 ¶ 29.) These lists are presumably the ones filed by Plaintiff on October 21, 2016 (Docket No. 52) and refiled by Defendant at Docket No. 54, wherein Mr. Caper is identified. Thus, because Mr. Caper is referenced in Plaintiff's own Initial Disclosures, the Court finds that they will not be prejudiced if he is not stricken.

## Jerry (Gerald F.) Norman, Joshua Pianko, Peter Backus, & Don Levy

Mr. Norman, Mr. Pianko, and Mr. Levy are former FWCM clients. Defendant argues they fall within FWCM's "catch-all" portion of their Initial Disclosures as "various as-yet-identified FWCM clients whom Defendant has solicited" and "individuals disclosed or otherwise identified by any other party during the course of discovery." Ordinarily, this would not be persuasive, as a strict application of this type **[*10]** of "catch-all" provision would make supplemental disclosures unnecessary, which is obviously not in keeping with the letter or the spirit of *Rule 26*. However, in this case, Plaintiffs' Partial Motion for Summary Judgment (Docket No. 149) and it's supporting exhibits refer to emails between Defendant and Norman, Levy, and Pianko (Docket Nos. 149-13, 149-15 & 149-42) in support of their claim that Defendant was attempting to solicit FWCM's clients after this lawsuit was instigated. This is central to Plaintiffs' case, and the Court cannot see how they would be prejudiced if these individuals were permitted to testify.

Mr. Backus, on the other hand, appears to be a consultant who referred business to FWCM, rather than a client or former client. He is mentioned briefly in Defendant's deposition (*see* Docket No. 158-13 at p. 4) as someone who managed accounts of FWCM clients. However, in that deposition, Plaintiffs are informed for whom Mr. Backus works and which FWCM clients is he associated with. Under these circumstances, the Court finds that Mr. Backus was sufficiently "made known" to Plaintiffs as to make his untimely disclosure harmless.

## Guy Holman

Defendant's Supplemental Disclosures identify **[*11]** Guy Holman as a former FWCM employee with whom Defendant worked.

Defendant claims that because Mr. Holman's name was referenced in two depositions as a former FWCM employee, he was "made known" to Plaintiffs. This is wrong for two reasons. First, Mr. Holman was not even properly identified in one of the depositions. During the deposition of Scott Wylie, Plaintiffs' CEO, Mr. Wylie is asked whether he knows a " Guy **Holcomb**," and Mr. Wylie denies he knows this individual. (Docket No. 158-15 at 3-4.) Second, during Karen Garcia's deposition, she was asked five questions relating to Mr. Holman, and they only related in the most general way to his position at FWCM. These passing references are not the functional equivalent of a supplemental discovery response. Significantly, they barely hint at the content of Mr. Holman's possible testimony. Moreover, Defendant offers no justification, substantial or otherwise, for the late disclosure of this witness, and the Court finds that, after considering the appropriate factors, Mr. Holman should be stricken.

### Stacey Perry & Bradley Bergman

Ms. Perry and Mr. Bergman are third parties who are associated with MTC Holding Corporation, which was involved **[*12]** in the potential sale of FWCM. Defendant argues that Plaintiffs were "made known" of these witnesses because Mr. Wylie was questioned about them during his deposition. However, the individuals were only identified in an exhibit to that deposition; Mr. Wylie does not refer to them by name and he is not asked about them individually. Defendant offers no justification for the untimely disclosure of these witnesses, and Plaintiffs' mere "awareness" of them is insufficient under *Rule 26*. Accordingly, Stacey Perry & Bradley Bergman should be stricken.

### IV. CONCLUSION

WHEREFORE, for the foregoing reasons, it is hereby ORDERED that Plaintiffs' Motion to Strike Untimely Supplement Initial Disclosures Served by Defendant Kenneth D. Malamed (Docket No. 147) is GRANTED IN PART and DENIED IN PART. It is granted as follows. Plaintiff's failure to timely disclose Guy Holman, Stacey Perry, and Bradley Bergman was neither substantially justified or harmless. These witnesses are hereby STRICKEN. The remainder of the motion (Docket No. 147) is denied.

Date: October 2, 2017

Denver, Colorado

BY THE COURT

/s/ Michael J. Watanabe

Michael J. Watanabe

United States Magistrate Judge

---

**End of Document**