# EXHIBIT 13

The Respondent denies that anyone was hired or promoted for the Complainant's position.

Comparative data shows that the IT Department consisted of 24 employees. Comparative data demonstrates that of the entire IT Department, 18 (75%) of the employees were of the same protected class as the Complainant based on age (age 40 or older).  Of the six employees that were laid off, 100% were age 40 or older. Comparative data demonstrates that all five (100%) Senior Business Systems Analysts employed by the Respondent are members of the same protected class as the Complainant. Of those five, two (40%), including the Complainant, were laid off. Both individuals that were laid off were members of a protected class based on age.

Comparative data shows that the Complainant was the longest serving individual in the entire IT Department (26.5 years), including those individuals that were laid off and those individuals that remain employed by the Respondent.  The next longest serving employee remains employed by the Respondent.

Comparative data demonstrates that the Complainant's salary ($72,894.96) was tied as the fourth highest in the entire IT Department and tied as the second highest of those that were laid off. The evidence shows that Troy Flick ("Flick")(Age 40 or older; male; not married to a coworker), IT Manager and Lhana Jordan ("Jordan")(Age 40 or older; female; Not Married to a Coworker), Customer Service Manager, are paid more than five of the six individuals that were laid off, including the Complainant.  Flick and Jordan are members of the Complainant's protected class based on age.

### Reduction in Workforce/Age:

To prevail on a claim of discriminatory layoff, the evidence must show that: (1) the Complainant is a member of a protected class; (2) the Complainant was laid off; (3) the Complainant was qualified for the position from which she had been laid off; and (4) the Complainant was treated less favorably than employees outside of her class during the reduction in force.

While the Complainant may hold a personal belief that the Respondent should have utilized other criteria in its reduction-in-workforce plan, Respondent is legally entitled to establish whatever non-discriminatory criteria it desires for its employment decisions.  Civil rights statutes do not constitute a vehicle for administrative/judicial review of an employer's bona fide business decisions, however unreasonable they might appear to the Complainant. Furthermore, evidence of satisfactory work performance is not probative, because in a reduction in force case, "someone has to be let go." *Rea v. Martin Marietta Corp., 29 F.3d 1450, 1456 (10th Cir. 1994).*

7

Teresa Devlin, Compliance Investigator
Debra Bouricius v. Mesa County
May 22, 2017
Page 4 of 10

Five other older employees were laid off from the IT Department at the same time as Ms. Bouricius: Janine Corsi (age 59), Rick Corsi (age 59), David Barnett (age 47), Carey Stieb (49), and Crislynn Howerton (age 59). *See* Attachment A. We understand that Mesa County has made similarly vague and incorrect claims about the bases for firing Janine Corsi and Rick Corsi in response to their charges of age discrimination.

For instance, we understand that Mesa County claims Janine Corsi was selected to be fired because her job solely consisted of making network backups. That claim is untrue – she did the exact same work as all the other employees with her job title. Ms. Corsi had worked for Mesa County for 23 years at the time of her termination, and was the longest tenured employee with the Network Administrator job title. (Carey Stieb, a 49-year-old Network Administrator with 21 years of experience at Mesa County, was also laid off. We understand that Mesa County's position statement in response to Ms. Corsi's charge does not even mention Stieb.) The Network Administrators whom Mesa County chose not to fire, Bill Tarlton and Ron Sage,[1] were both 41 years old, and both had less than 10 years of experience at Mesa County. At the time of the layoff, Sage had been openly discussing moving to another city and leaving his job with Mesa County, yet was not selected to be laid off.

Further, we understand that Respondent also claims Rick Corsi, who had 21 years of experience at Mesa County, was fired because of his "skill sets," despite the fact that (like Ms. Bouricius and Janine Corsi) he had a documented history of consistently receiving strong performance reviews. Specifically, Mesa County claims Mr. Corsi had worse "customer service" skills than Lhana Jordan (age 32, with 10 years of experience), and was less knowledgeable about network processes than Troy Flick (age 46, with 12 years of experience). These claims are vague and subjective, and Mesa County has not provided any objective metrics by which their accuracy can be judged.

Taken together with the vague, inconsistent, and subjective reasons given for the termination of Rick Corsi and Janine Corsi, Ms. Bouricius's termination is part of a clear pattern of unlawful age discrimination in the selection of employees to be laid off.

## REBUTTAL

### A. Respondent's cherry-picked and misleading statistics cannot hide a clear pattern of targeting older workers for layoff.

Respondent presents several incorrect and cherry-picked statistics about the age of its workforce and the employees who were chosen to be fired. Mesa County does so in order to mislead the CCRD and present its layoff in the best possible light. However, a close look at

---

[1] We understand that Mesa County does not compare Ms. Corsi to Ron Sage because Sage had the technical job title of "Senior" Network Administrator. Sage is a proper comparator to Ms. Corsi because he had the exact same duties of the other Network Administrators, and his pay was identical to Bill Tarlton's pay.

1670 York Street • Denver, Colorado 80206 • p.303.298.9878 • f.303 298 9879 • www.KingGreisen com • greisen@kinggreisen com • swain@kinggreisen.com

## MESA COUNTY IT DEPARTMENT LAYOFFS -- OCTOBER 6, 2016

| BUSINESS SYSTEMS ANALYST | Approximate Age | Approximate Years of Service |
|---|---|---|
| Lori Marak | 52 | 15 |
| Elizabeth McDowell | 33 | 4 |
| Terrie Hotary | 51 | 3 |
| Kelly Leuallen | 57 | 23 |
| Deb Bouricius (laid off -- oldest BSA) | 57 | 26 |
| David Barnett (laid off) | 47 | 12 |

| NETWORK ADMINISTRATOR | | |
|---|---|---|
| Bill Tarlton | 41 | 5 |
| Janine Corsi (laid off -- oldest Network Admin) | 59 | 23 |
| Carey Stieb (laid off) | 49 | 21 |
| Ron Sage | 41 | 9 |

| IT MANAGER | | |
|---|---|---|
| Troy Flick | 46 | 12 |
| Lhana Jordan | '32  42 | 10 |
| Rick Corsi (laid off -- oldest IT Manager) | 59 | 21 |

| HELP DESK | | |
|---|---|---|
| Paul Mitts | 59 | 6 |
| Crislynn Howerton (laid off -- tied for oldest Help Desk) | 59 | 4 |

| PC SUPPORT | | |
|---|---|---|
| Josh Dallman | 34 | 2 |
| Dave Underwood | 37 | 15 |
| Eric Farslow | 59 | 5 |
| Derek Conlon | 37 | 4 |
| Andrew Wetzel | 31 | 2 |

| WEB ADMIN | | |
|---|---|---|
| Joe Keene | 48 | 12 |
| Leilani Boyles | 51 | 22 |

| GIS | | |
|---|---|---|
| Chris Kadel | 51 | 17 |
| Ryan Davidson | 39 | 4 |

| COUNTY ADMINISTRATOR / IT DIRECTOR | | |
|---|---|---|
| Frank Whidden | 55 | 5 |

Attachment A

DEF 45

| Full name | Home department | Years of service | Position Title | Annual Salary |
|---|---|---|---|---|
| JORDAN, LHANA M. | IT-IT | 15.9 | CUSTOMER SERVICE MANAGER | $80,000.04 |
| UNDERWOOD, DAVID E. | IT-IT | 16.2 | SUPPORT SPECIALIST | $51,874.20 |
| FLICK, TROY L | IT-IT | 17.4 | IT MANAGER | $83,965.44 |
| MARAK, LORI A | IT-IT | 17.4 | SR BUSINESS SYSTEMS ANALYST | $72,894.96 |
| LEUALLEN, KELLY T | IT-IT | 24.4 | SR BUSINESS SYSTEMS ANALYST | $72,894.96 |
| KADEL, CHRIS A | IT-IT | 18.1 | GIS ADMINISTRATOR-SR | $72,894.96 |
| BOYLES, LEILANI A. | IT-IT | 23.7 | WEB ADMINISTRATOR | $72,894.96 |
| KEENE, JOSEPH S. | IT-IT | 14 | WEB ADMINISTRATOR | $70,945.44 |
| MCDOWELL, ELIZABETH K | IT-IT | 5.5 | BUSINESS SYSTEMS ANALYST/GIS A | $59,878.20 |
| MITTS, PAUL JOSEPH | IT-IT | 7.4 | TECHNICAL SUPPORT SPEC II | $42,160.79 |
| FARSLOW, ERIC L | IT-IT | 6.7 | SR SUPPORT SPECIALIST | $53,558.97 |
| TARLTON, WILLIAM | IT-IT | 6.3 | SR NETWORK ADMINISTRATOR | $72,894.96 |
| HOTARY, TERRIE J | IT-IT | 4.8 | SR BUSINESS SYSTEMS ANALYST | $62,481.60 |

DEF 61

DocuSign Envelope ID: 8DBD3D10-18C1-49BD-82C6-8CCE1B920FB4



**MESA COUNTY**

December 24, 2015

Evaluation: Lhana Jordan
Period reviewed: January 1, 2015 through December 31, 2015
Position: Customer Service Manager, Resource Management/IT

**Overall Appraisal**
Lhana has performed exceptionally well as a manager. In the past year she has had to deal with difficult personnel issues which she has handled very well. She has also had to hire and train new staff which has enabled her to build a really strong team. Lhana is still highly informed technically but has become ever more important to me as County Administrator as an advisor and supporter. Not only does Lhana possess technical skills she also has the critical people skills that are so important in serving our customer base. Lhana is definitely a "franchise player" that I expect to continue to rise in this organization.

**2015 Goals**
I anticipate that Lhana will begin working on her professional development in working towards achieving a bachelor's degree in the next few years.

VDI deployment within the organization remains an important goal.

Lhana should continue to hone her management skills as she gains managerial experience.

Signature of Employee

*Lhana Jm*
DC677AF4E5464AA...

Signature of Department Head

*Frank Whidden*
772C531A88D94E1...

P.O. Box 20000 · Grand Junction, Colorado  81502-5037    •    Telephone: (970)-683-4200 · Fax (970) 244-1756

9

**DEF 77**

## IT POSITION AS FOR AUGUST – SEPTEMBER 2016

| | | | | |
|---|---|---|---|---|
| 00039-0001 | JORDAN, LHANA | IT-IT | CUSTOMER SERVICE MANAGER | 1 000 |
| 00182-0001 | DAWSON RYAN | IT-IT | GIS ADMINISTRATOR-SR | 1 000 |
| 20202-0002 | BOYLES, LEILANI | IT-IT | WEB ADMINISTRATOR | 1 000 |
| 20202-0003 | CORSI JANINE | IT-IT | NETWORK ADMINISTRATOR | 1 000 |
| 20202-0009 | KEENE, JOSEPH | IT-IT | WEB ADMINISTRATOR | 1 000 |
| 20202-0010 | KADEL, CHRIS | IT-IT | GIS ADMINISTRATOR-SR | 1 000 |
| 20202-0011 | BOURICIUS, DEBRA | IT-IT | SR BUSINESS SYSTEMS ANALYST | 1 000 |
| 20202-0012 | MARACLORI | IT-IT | SR BUSINESS SYSTEMS ANALYST | 1 000 |
| 20202-0013 | LEU, LEN KELLY | IT-IT | SR BUSINESS SYSTEMS ANALYST | 1 000 |
| 20202-0014 | HOTARY, TERRIE | IT-IT | SR BUSINESS SYSTEMS ANALYST | 1 000 |
| 20202-0016 | DALLMAN, JOSHUA | IT-IT | SUPPORT SPECIALIST | 1 000 |
| 20202-0020 | CONLON, DEREK | IT-IT | SUPPORT SPECIALIST | 1 000 |
| 20202-0021 | STIEB, CAREY | IT-IT | NETWORK ADMINISTRATOR | 1 000 |
| 20202-0022 | TARLTON, WILLIAM | IT-IT | NETWORK ADMINISTRATOR | 1 000 |
| 20202-0023 | MTTS, PAUL | IT-IT | TECHNICAL SUPPORT SPECII | 1 000 |
| 20202-0026 | WETZEL, ANDREW | IT-IT | SUPPORT SPECIALIST | 1 000 |
| 20202-0027 | MCDOWELL, ELIZABETH | IT-IT | BUSINESS SYSTEMS ANALYST/GIS ADMINI | 1 000 |
| 20202-0028 | UNDERWOOD, DAVID | IT-IT | SUPPORT SPECIALIST | 1 000 |
| 20202-0030 | EARSLOW, ERIC | IT-IT | SR SUPPORT SPECIALIST | 1 000 |
| 20202-0031 | BARNETT, DAVID | IT-IT | SR BUSINESS SYSTEMS ANALYST | 1 000 |
| 20202-0032 | SAGE, RONALD | IT-IT | SR NETWORK ADMINISTRATOR | 1 000 |
| 20460-0001 | CORSI, RICK | IT-IT | IT MANAGER | 1 000 |
| 22903-0001 | FLICK, TROY | IT-IT | IT MANAGER | 1 000 |
| 32803-0003 | HOWERTON, CRISLYNN | IT-IT | TECHNICAL SUPPORT SPECIALIST | 1 000 |
| | | | **Total Filled** | |

24.000

| | | | | |
|---|---|---|---|---|
| 20202-0008 | Thompson | IT-IT | BUSINESS SYSTEMS ANALYST | 1 000 |
| 20202-0024 | WERNER | IT-IT | LEAD SCANNING TECHNICIAN | 1 000 |

**DEF 87**

On October 7th, 2016, myself and 5 of my coworkers in the Mesa County Information Technology, (IT) department attended a mandatory meeting with Dr. Frank Whidden, County Administrator, along with Brenda McKay(HR), and a representative from EAP. We had received an email the night before that there were going to be 3 meetings with the various IT staff. My husband Rick and I were scheduled for the 9:00 meeting. The subject of the meetings was "HR".  We later learned the other 2 meetings were cancelled and were probably just a smokescreen to keep us in the dark.  Lhana Jordan was not at the meeting, even though she was on the list of attendees.I later realized she was handling the disabling of our login and passwords.  At about the same time as the meeting, an email was sent out county wide that the 6 of us had been terminated, listing our names. To my knowledge this is how David Barnett's and Carey Stieb's wives learned of their termination.

Frank stated "This will be a short meeting: the county needs to cut 3 to 4 million dollars with $500,000 coming from IT;  your jobs have been eliminated". He further stated that our termination was not based on performance. My husband Rick asked "Is this it from IT" to which Frank answered yes. Rick asked, "Will there be others, from other departments",  Frank replied yes. I told Frank, "It looks as if you're just getting rid of those with the most experience". Frank stated "No, that is not the case." I replied, "Look around you.." Frank did not respond. After Frank left, the representative from EAP stated "I have to tell you, this is a very strange way to do this". I felt terminating us as a group was cowardly and unnecessarily humiliating after over 2 decades of service to the county. Frank could not even allow us the courtesy of talking to us individually.

The 6 people terminated were as follows
Rick Corsi - IT Manager
Janine Corsi - Network Administrator
Carey Stieb - Network Administrator
Debra Bouricius - Sr. Business Systems Analyst
David Barnett - Sr. Business Systems Analyst
Crisalynn Howerton - Technical Specialist

Of the 6 people terminated on that day, 4 of us were married to coworkers. Myself, my husband Rick Corsi, Carey Stieb (whose wife Vicki Stieb works for CJSD/Animal Services), and David Barnett (whose wife Judy Barnett works for Finance). I believe this is a strong indicator that our being married to a coworker was cause for Frank selecting Rick and I.

To my knowledge, all of those terminated were over 50, Rick and I are 59. All of the others to my knowledge was over 50. I believe age may also be a factor in our selection.

I was the only woman in the network group. I believe gender may have been a factor in my selection to be terminated.

In the county's policy and procedures manual, it states that the three criteria for selection during a layoff are Performance, Special Skills, and Longevity with the county. I don't believe Frank

**DEF 3238**

**CONFIDENTIAL**

used any of these criteria, in fact he stated both verbally and in a letter that performance was not a factor. I never received a negative performance review in all my years at the county. My supervisor, Troy Flick, did not review any of the networking group last December, as was required by county policy, so even if they had used performance, they were lacking the data in my case to do so.

Although all of the networking group are well qualified to do the job, I believe I had some special skills that others did not possess, especially in the areas of Sql database management and management of the Commvault backup software.

I believe Rick, Carey, Debra and myself had the most seniority of all of those in IT, with the exception of Leilani Boyles.

There were 4 Network Administrators in IT. Of these, I was the only woman, the oldest, and had the most seniority and experience, also the highest level of education (Master's degree in Computer Science, University of Colorado). To my knowledge, Ron Sage's highest level of formal education was a high school diploma. I believe Carey Stieb has a college degree, possibly a master's degree. Bill Tarlton finished his bachelor's degree through the University of Phoenix recently after he was hired by the county.

On numerous occasions I was excluded from social activities offered to my 3 peers by my supervisor (Troy Flick, IT Manager) during working hours. Of these were almost daily card games. While my supervisor and my 3 coworkers (Ron Sage, Bill Tarlton, and Carey Stieb), played cards sequestered in a conference room for 2 hours or more, I was left to handle any work that came in. I complained of this to the other 2 IT managers, Lhana Jordan and Rick Corsi. I did not feel I could bring my complaint to Troy Flick because he was the one encouraging the behavior. Rick Corsi in turn brought the situation to the attention of Frank Whidden, who agreed it was not acceptable, but nothing was done. Lhana stated that I was in a "challenging situation with your workgroup". I don't know if she ever discussed the problem with Frank. Troy blocked out 2 hours for lunch so that meetings wouldn't be scheduled that might infringe on lunch. Several of my coworkers in IT complained it was difficult to schedule meetings around Troy's lunch schedule.

There were other occasions where I was excluded. Shortly before Christmas one year, Troy and my 3 coworkers disappeared at lunch for several hours. I later heard from Carey Stieb that they had been tablet shopping. I believe they each received an android tablet, and I was not offered one until sometime later when they got a deal on Dell tablets for cheap at which point Troy asked if I wanted one. I complained to Lhana Jordan at that time about the tablet shopping, and she was angry about it as well. Another regular occurrence around Christmas is all the network guys got new cell phones, whether they needed them or not.

I was also excluded from new projects and work assignments. Troy stopped assigning me new projects in the last couple of years of my employment. For example, when I volunteered to install new switches, he agreed at first and then reassigned the majority of the work to my 3

**DEF 3239**

The guys in the networking group also had a problem with abusing sick leave. The situation was well known and laughed about within IT.  Lhana Jordan stated several times that her workgroup wished "they had the networking group's schedule".  An example of where I felt I was treated unfairly was the enforcement of FMLA. When I told Troy I might be out 2 or 3 days for foot surgery, he immediately told me to fill out the FMLA paperwork. In contrast, Ron Sage was regularly allowed to stay home to take care of his sick father. I don't believe he was ever asked to go on FMLA. Bill Tarlton also stayed home frequently to help his wife when she was pregnant. To my knowledge he was not required to go on FMLA until after the baby was born. I don't begrudge them the time spent with their families and was willing to pitch in when they were out, but as I understand it, they should have been required to use their sick leave for a recurring condition. My coworkers in the network group used sick leave as extra time off, whether they were sick or not. This was counter to my understanding of the county's sick leave policy.

I believe Troy may have felt uncomfortable working with me because I was married to a coworker who was his peer. Carey Stieb once told me he thought Troy was afraid to say or do anything to offend me because it might offend Rick, and vice versa. Having an aversion to conflict, I believe it was easier for Troy to avoid me altogether. I also feel he didn't like dealing with any of my and Carey Stieb's  complaints about Ron. I feel his friendship with and obvious preference for Ron made him incapable of being impartial and objective.

On several occasions the subject of my and Rick's retirement came up, with Troy and others in the networking group. At my last networking group meeting the subject came up again. Troy asked me if Rick and I had reached the monetary amount we felt we needed to retire. I told him I didn't think we were going to make it anytime soon. Troy seemed surprised and replied "Really?".I got the feeling he thought we had enough money and didn't need to work. I believe this may have been a factor in our selection.

I believe Troy may have advised Frank on who to fire. I don't believe Frank had enough knowledge of the IT group to make that decision solely on his own.  Either way I feel the selection process was hasty and discriminatory and did not follow the criteria for selection laid out in the county's own policy and procedure manual.

**DEF 3241**

## Background

I was asked to attend a meeting concerning HR benefits scheduled for October 7, 2016 at 9:00 AM by Frank Whidden (via email the previous evening).  It was one of three meetings with IT employees scheduled that day.  There were seven IT employees listed to attend the 9:00 AM meeting: Janine Corsi, Lhana Jordan, David Barnett, Deb Bouricius, Carey Stieb, Crislynn Howerton, and myself.  Lhana Jordan was absent from the meeting.  Frank Whidden, Brenda McKay from HR, and another man came into the room.

Observation: Brenda appeared to be crying and was very emotional. Frank started the meeting by saying, "This is going to be a short meeting."

"The county is short of funds by three to four million dollars. IT has to come up with $500,000 of that. Your positions have been eliminated," Frank said.  He further stated our terminations had nothing to do with our work or performance and that Brenda had paperwork for us to sign.

Crislynn asked, "Will there be any severance?" Frank replied yes, it is in the letter Brenda is passing out.  Brenda passed out paper work to everyone.  He said the man in the room was from EAP. I asked, is this everyone from IT that will be terminated? Frank replied "Yes." I asked, will there be others terminated in other departments? Frank replied, "Yes," other departments will be going through the same thing and other county employees will also be terminated. Janine stated, it looks like you are terminating the oldest, most experienced staff.  Others in the room made gestures, agreeing with the statement.  Frank replied that was not the case (he looked chagrined).  Janine replied, look around you. Frank told us not try to login to anything: "Your logins are being disabled.  You guys know the routine better than I do. It's for your protection as well as ours. Give your equipment to Lhana." Frank exited the room. The man from EAP got up to talk. The first thing he said was that terminating people like this as a group was very strange, and he had never seen it done this way before.

## Summary

I believe the principal contributing factors in my termination were discrimination due to being married to a coworker and discrimination due to my age. Discrimination due to gender was also a factor.  Retaliation due to concerns and complaints expressed to management concerning work ethics within our department is likely to have played a part as well.  The true state of the county's budget seems to be unclear to senior management and elected officials. "Budget issues" has a history of being used as an excuse for unjustified terminations.

## Details of discrimination that resulted in my termination.

1.  Discrimination due to marriage to a coworker.

Approximately five years ago, Frank Whidden was hired as IT Director.  I was one of the two IT Managers at the time.  In one of my initial meetings with Frank, he was concerned that my wife also worked in the IT department under the direction of the other IT Manager, Troy Flick.  Frank asked how this fit into county policy and how we could

DEF 3576

work in the same department.  I explained to him that my wife initially worked in the IT department and at the time I was hired there was no applicable policy in place.  I went on to explain that at that time I asked the then IT and HR Directors if this was an issue and if there were any policies against it before accepting the position.  I was assured by both directors that there was no policy and that it was not an issue.

I also explained to Frank that we had worked together for many years and had never had any problems.  I further explained that when it came to work issues and classified information, we made extra efforts not to let our relationship affect any work decisions or talk about information that only one of us may be privy to.

After the meeting, Frank seemed to accept the situation, but over the years occasional subtle comments were made about being married to a coworker and Frank still seemed to have issues with it by the way he interacted with us and the way he excluded myself and my wife from some conversations and projects.

Frank also took exception to another individual in IT who was married to a county worker.  David Barnett was one of my Business System Analysts, his wife Judy was an Accounts Payable Clerk in Finance.  On multiple occasions Frank expressed to me concerns with them being married and commented on the possibility of confidential information being compromised between the two departments. I did not see any evidence of that going on. I tried to assure Frank that this was not an issue and if I did see or hear of any issues I would address them.  No issues were ever observed or reported.  In addition to David, my wife, and myself being terminated, Carey Stieb was also terminated.  Carey's wife worked for another county department. In short, four of the six IT workers terminated were married to coworkers. Troy Flick also made comments on several occasions and seemed to have an issue with coworkers being married.

2.   Discrimination due to age.

It is my belief that myself being the oldest of the IT Managers and one of the oldest in the IT department also played a large role in my selection to be terminated under the excused cause of "Budget." I am 59. My comanager Troy Flick is in his 40's, and Lhana Jordan is in her 40's.

For many years, I have been asked by Troy Flick when "we" were going to retire.  The frequency of his questions had increased during the last several weeks of my employment.  My answer was always meeting my goal for money would be the contributing factor, but probably not for many years and closer to retirement age.

The Tuesday prior to the week of termination Troy asked Lhana Jordan and I if we had a meeting on our calendar with Frank about titled "Budget" at 9:00 AM on Wednesday.  Neither of us did.  Troy was very concerned about the meeting.  After the meeting once again Troy asked me when we were planning on retiring: after my standard answer Troy commented that he thought my goal for how much money we would need to retire was too high.  He further commented that "all you do is go hiking anyway," so why did we need so much to retire.  I thought it was a bit strange at the time, but did not think much more about it.  I asked Troy what the meeting with Frank was about and he said just talk about reducing Microsoft licenses to reduce IT budget.

addressed the issues with Troy.  I also discussed his groups absenteeism with Troy and he acknowledged the problem and claimed he was working on it.

In addition, I discussed inconsistent standards within IT with the HR Rep, Krista Ubersox, to see if standards should be followed to create fairness in the work place.  I was told no countywide standards are used or currently in place.

The way Frank dealt with the problem was to tell me to take more comp time off when he knew I was putting extra time in on projects.

My attempt to try and build a fairer environment and improve work ethics within IT by addressing these issues with Frank and Troy resulted in retaliation by Frank and Troy, ultimately contributing to my wife and I's termination.

## Common Practices in Mesa County

I have observed and witnessed the following patterns for termination of County staff for many years.

In my tenure at the county, there has been a pattern of justifying terminations of many employees by citing budget or reorganization.  Many times I found out later that the actual reason was management had a bias against or had a dislike of something the terminated employee did. This was prevalent prior to Frank Whidden being hired as IT Director and continued under Frank Whidden's direction after the start of his employment and as he held positions as IT, Facilities, Finance, HR, Technical Services Director, and County Administrator.

In my opinion, and as I have observed for many years, these reasons for terminations were encouraged and condoned by County Administrators with the complete knowledge and approval of the Board of County Commissioners (BOCC) and County Attorney's Office to avoid the need to document and justify terminations for cause. I also witnessed profiling practices and terminations due to manager's bias against employees with extended length of service with the County.  An example of this profiling was a document that was discovered in a recent lawsuit where it listed all employees past a certain age. The reason given for this document's existence was "succession planning."

On more than one occasion Frank inquired about age and length of service with the county of myself and other IT staff, even asking on one occasion when I thought Kathy Guerrie would be retiring and stating that this person retiring sure would make a promotion of Lhana Jordan to manager much less controversial.

Over the years I have seen county staff with many years of service and in their 50's + be terminated for "budget" or "reorganization" as justification, only to be replaced with new, younger people.  The latest occurrence of this was with the administration support staff, and prior to that the Finance Director.

As recently as the week of November 7th, 2016 the DHS Director announced at a staff meeting that employees with more than five years of service are being targeted by Administration and the Board to be terminated, leaving the conclusion this is still a common practice at the county.

IT Director

## Policies that were not followed or were totally ignored.

Terminations due to budget require the following 3 criteria to be used:

Performance
Special Abilities
Longevity with the County

If these three mandatory criteria as outlined in the County's Policy and Procedure (P&P) manual were followed I strongly believe I would have ranked at the top of IT Managers.

Troy Flick was not performing his essential responsibilities as outlined in the P & P Manual and job description, such as performing annual reviews for his employees.  Troy had not completed an annual review for anyone in his group for 22 months (this is something he was proud of and bragged about getting away with).  Troy also ignored FMLA requirements for his Good Ole Boy group and allowed them to abused sick leave and work hours.  Troy did not meet his goals for the previous year, did not have project management experience, and refused to utilize project management practices for projects under his direction.

Lhana Jordan is a lower level manager overseeing the customer support group.  She did not have a college degree, which Frank stated would be required to move up, nor did she have project management experience.   She also did not have experience in contract negotiations or project and system implementation. I have excelled in these areas for many years.  Every one of my performance reviews for the last 20 plus years with the County will verify this.

The second criteria that must be followed is special abilities.  Managing projects and staff was an area that I by far excelled in more than managers that were retained.  Project Management was an area where I was always rated very high.  GIS is another area where I have extensive experience and knowledge, where other managers are without any experience.  Project Management was an area where Troy failed to meet the requirements according to Frank and was the very reason he created a Project Manager position and transferred Victoria into Troy's group.  Frank stated that Troy needed someone to manage infrastructure projects because they were not getting done under Troy's management.  Troy refused to utilize Victoria and eventually she was terminated.

With the IT terminations being described as for "Budget Reasons" and not for "Cause," Frank could use his personal biases to determine who would be terminated without any consequence or appealable action.  Any appeal would be a moot point since Frank Whidden holds all three positions that normally would be in place for the appeal of wrongful terminations.

### Terminations due to budget requires 30 days' notice

At the termination meeting we were told that we were receiving severance by Frank Whidden. A few days later I was told that what we received was separation pay by the HR Rep. Krista Ubersox, who then defined it as "pay in lieu of 30 days' notice."  (If that was the case we did not receive Vacation, Health Insurance, Dental Insurance, Sick Leave or Retirement Contributions for the 30 days to November 5th 2016.)  I also found that the Colorado Unemployment Division make no distinction between separation and severance pay.

From: **Janine Corsi** <thecorsis@yahoo.com>
Date: Wed, Oct 26, 2016 at 3:33 PM
Subject: Cell phones
To: "lhana.jordan@mesacounty.us" <lhana.jordan@mesacounty.us>

Hi Lhana,

We heard that Carey was able to keep his old cell phone. Rick and I were wondering if we could get our old cell phones(wiped of course), it would save us having to buy new phones.

Also could you forward me my resume and cv, I believe they were on the s: drive?

Thanks
Janine

**DEF 3962**

REDACTED

4.  I cannot locate exhibit 9, could you please resend it? If you could provide an un-redacted version of exhibit 9, I believe I could obtain the information requested in #5 and 6.

5.  I need comparative data (age; marriage to a coworker) for Mr. Flick and Mr. Whidden. Are Mr. Tarlton or Mr. Sage married to a co-worker? What is Mr. Sage's age?

6.  I want to confirm that the IT department consists of 24 and not 25 individuals?

7.  Please provide copies of the performance evaluations, including numerical or quantitative ratings, for the IT Department. If you could specifically note Mr. Tartlon and Mr. Sage's evaluations, I would appreciate it.

8.  Lastly, if there are any contemporaneous emails, notes, or documents related to the lay off decision, please provide that information.

Please provide this information, as well as your position on the request for an extension of time, and the scheduling of employee interviews on or before **September 29th**. If you need additional time, please let me know.

Regards,

Courtney

On Fri, Sep 15, 2017 at 1:34 PM, L - DORA, Courtney <courtney.longtin@state.co.us> wrote:

Nina,

I should also process an extension on this case. Would you request a 90-day extension of time?

Thank you,

Courtney

On Fri, Sep 15, 2017 at 1:33 PM, L - DORA, Courtney <courtney.longtin@state.co.us> wrote:

Good afternoon,

I am also the investigator assigned to the above referenced case. I would like to schedule witness interviews with the following individuals:

Eric Farslow
Lhana Jordan
Troy Flick
Paul Mitts

I anticipate these interviews will take approximately 10-15 minutes each and can be done by phone. My schedule is flexible and I will work with the witnesses.

Regards,

Courtney

--
Courtney Longtin, Esq.
Investigator
Colorado Civil Rights Division



P: 303.894.7804 | F: 303.869.0138
1560 Broadway, Suite 1050 Denver CO 80202
courtney.longtin@state.co.us | www.dora.colorado.gov/crd

--
Courtney Longtin, Esq.

**DEF 3965**



**Nina Atencio <nina.atencio@mesacounty.us>**

## Re: FE2017188101 Rick Corsi v. Mesa County - Witness Interviews
1 message

From: **L - DORA, Courtney** <courtney.longtin@state.co.us>
Date: Wed, Jul 12, 2017 at 12:55 PM
Subject: FE2017188101 Rick Corsi v. Mesa County - Witness Interviews
To: nina.atencio@mesacounty.us

Good afternoon,

I am the Investigator assigned to the above referenced case. I wanted to reach out to you regarding witness interviews. The Complainant listed a number of witness that I believe are current employees of the Respondent. Would you like to participate in these interviews and, if so, can you assist in facilitating the interviews? My schedule is flexible and will work with you and the witnesses in scheduling. If you do not wish to participate, please let me know and I will reach out to the witnesses directly.

The following individuals were listed as witnesses by the Complainant:

1. Carey Stieb
2. David Barnett
3. Crislynn Howerton
4. Deb Bouricious
5. Eric Farslow
6. Kelly Leuallen
7. Lori Marak
8. Lhana Jordan
9. Paul Mitts
10. Troy Flick
11. Sheila Reiner
12. Krister Ubersox

**DEF 3983**

**REDACTED**

Thank you,

Courtney

On Thu, Aug 24, 2017 at 4:27 PM, L - DORA, Courtney <courtney.longtin@state.co.us> wrote:
Nina,

You previously provided redacted information about employee's dates of birth, but for those employees that are referenced in the investigation, I need to list their relevant protected class (if you do not wish to provide their specific date of birth, please state whether they are age 40 or older or age 40 or younger). Those employees are:

Frank Whidden
David Barnett
Judy Barnett
Carey Stieb
Trock Flick
Lhana Jordan

Thank you,

Courtney

On Mon, Aug 21, 2017 at 3:46 PM, L - DORA, Courtney <courtney.longtin@state.co.us> wrote:
Thank you for your response.

Regards,

Courtney

On Mon, Aug 21, 2017 at 11:22 AM, Nina Atencio <nina.atencio@mesacounty.us> wrote:
Good Morning Courtney,

With regard to question #3 and the spreadsheet you provided, the following is our response:

The spreadsheet examines the financial impact to the County for giving both a 90 day severance payout versus a 30 day severance payout to both Mr. and Mrs. Corsi. While neither marriage to a co-worker, age, or gender was a determinative factor in Mr. Whidden's consideration regarding the layoffs within the IT Department, Mr. Whidden understood the impact to the Corsi family due to the layoff of both wage-earners. Mr. Whidden also needed to balance fairness to the other IT employees subject to the layoff. Thus, Mr. Whidden looked at giving Mr. Corsi and Mrs. Corsi a 90 day severance payout versus a 30 day severance payout. That is the purpose of this worksheet which worksheet is a draft of calculations of the two scenarios. It should be noted that per Mesa County policy, a severance is not required for layoffs. Rather, 30 day notification is required, so the 30 days severance pay was going to be provided to all employees who were laid off within the IT Department. Unfortunately, it was not financially feasible to give all six employees who were laid off a 90 day payment. However, because Mr. Corsi had a managerial position, it was determined that his severance would be nearer to 90 days, while Mrs. Corsi, and the other non-managerial employees, were given 30 days. Mesa County denies that either marriage to a co-worker or age was a determining factor in the decision to layoff Mr. and Mrs. Corsi.

Please let me know if I can provide any additional information or clarification on this.

Thank you,

Nina

**DEF 3986**

On Tue, Aug 15, 2017 at 9:39 AM, L - DORA, Courtney <courtney.longtin@state.co.us> wrote:
Good morning,

Thank you for your response. With respect to question #3, I apologize, I was referring the page 76 of the
Complainant's evidence. I have attached that document for your review and response.

Thank you,

Courtney

On Fri, Aug 11, 2017 at 9:31 AM, Nina Atencio < nina.atencio@mesacounty.us> wrote:
Hi Courtney,

The following is Mesa County's response to your questions:

1.    What is the Respondent's position regarding the concern that if Mr\Mrs. Corsi were
discharged but the other spouse was not, that there may have been safety and\or retaliation
concerns? **Mr. and Mrs. Corsi were two of six IT employees who were laid off due to
budgetary constraints.  The employees who were laid off, including both Mr. and Mrs.
Corsi, were chosen due to the overall needs of the IT Department and its ability to function
with such a reduction in workforce.  Mesa County acknowledges that a security breach
within the IT system could occur in this type of situation but that such concern was not
the basis for the decision to laid off Mr. and Mrs. Corsi.  Mesa County denies there were
safety concerns regarding retaining one spouse over the other.**

2.    Was the Complainant's discharge related to his proximity to retirement or presumed
proximity to retirement? **No.  Mr. Corsi was chosen as one of six to be laid off due to the
duties of his position and his area of specialty (GIS/mapping and Applications) being more
easily absorbed by the other IT Manager Troy Flick and the IT Customer Services Manager,
Lhana Jordan.  Because Mr. Flick's area of expertise is Network, which is crucial to an IT
department, Mr. Flick was not chosen to be laid off.  Ms. Jordan had greater technological
support, customer service and office administrative (budgeting) experience than Mr. Corsi
which is why she was not laid off.  Finally, other employees of the IT Department are of
similar age as Mr. Corsi and were not laid off.  If proximity or presumed proximity to
retirement were a considering factor, those other employees would likely have been laid
off, too.**

3.    On page 76 of the Respondent's position statement\request for information, there is a
document title "Budget Revisions 10-06-16" that includes a section listing the cost and funding
source associated with providing the Complainant and Ms. Corsi with 90 days versus 30 days.
What is the Respondent's explanation for this document? **I am not familiar with this
document.  I could not find it within Mesa County's Response to the RFI.  When we
submitted our response, we did not number pages but rather labeled exhibits referenced
in our Response.  Is there an exhibit number associated with it?  Perhaps this document
is from the Charging Party's submission of documents?  If you could please forward me a
copy of this document or direct me to the exhibit number, I may be able to provide a
response.**

4.    Was the decision to discharge the Complainant based in any way on his salary and the
potential cost saving?  **The decision to lay off six employees in the IT Department was
based on a need to reduce the IT budget.  From there, Mr. Whidden looked at the essential
needs of the IT Department and of the employees, who could best perform those
functions.  Mr. Corsi was one of 3 IT Managers, and Mr. Whidden determined that Mr.
Corsi's job functions and area of expertise (GIS and applications) could be absorbed by
the remaining managers, while the reverse was not true.**

5.    Can you clarify whether the Complainant's position was permanently eliminated or just
temporarily vacant?  Has the position been filed?  **Mr. Corsi's position was permanently
eliminated.  The FTE for the position was given to another department (planning, who was
able to increase revenue due to an increase in fees charged for their services to the public
(ie, building permits) )  Mr. Corsi's job functions (GIS and Applications) were shared
between Mr. Flick and Ms. Jordan, and the employees Mr. Corsi supervised were also
shared between Mr. Flick and Ms. Jordan.**

**DEF 3987**

On Mon, Jul 31, 2017 at 4:56 PM, L - DORA, Courtney <courtney.longtin@state.co.us> wrote:
  Nina,

  I apologize, but in looking at my calendar, I have interviews scheduled in another case for
  Friday, August 4th from 9-9:30. Is it possible to re-schedule Ms. Reiner's time?

  Thank you,

  Courtney

  On Mon, Jul 31, 2017 at 4:54 PM, L - DORA, Courtney <courtney.longtin@state.co.us>
  wrote:
    Nina,

    I don't know if you will be on-site with the employees during the interviews, or if you would
    prefer if I call you and then conference in the employee? Alternatively, you could call the
    employee and conference me in? My direct line is 303-894-7804. I do not have a
    preference as to logistics.

    Thank you for your assistance in scheduling these interviews! I'll look forward to speaking
    with you on Thursday.

    Courtney

    On Mon, Jul 31, 2017 at 3:39 PM, Nina Atencio <nina.atencio@mesacounty.us> wrote:
      Hi Courtney,

      I wanted to update you on where I'm at for scheduling the interviews:

      THURSDAY AUGUST 3RD

      9:30  Brenda McKay
      9:45  Lynn Zubek
      10:00 Lhana Jordan
      10:30 Eric Farslow
      10:45 Greg Linza (tentatively)
      11:00 Krista Ubersox
      11:30 Lori Marak  (tentatively)
      11:45 Kelly Leuallen  (tentatively)

      FRIDAY AUGUST 4TH

      9:00 Sheila Reiner
      9:30  Paul Mitts
      9:45  Troy Flick (tentatively)

      I am waiting on confirmation on Troy Flick and Greg Linza.  Lori Marak and Kelly
      Leuallen both expressed to me that each was not sure he/she wanted to participate.  I
      explained to each that his/her participation is voluntary and protected from retaliation
      and gave them time to consider whether or not to participate.  I will confirm with you
      regarding the four named once I can.

      If you need anything else at this time, please let me know.  Otherwise, I will be in touch
      as soon as I can confirm the four.

      Thank you,
      Nina

      On Fri, Jul 21, 2017 at 10:30 AM, L - DORA, Courtney <courtney.longtin@state.co.us>
      wrote:
        Hi Nina,

        I think scheduling the interviews in blocks of time makes the most sense. It does not
        matter to me if specific employees are scheduled for a specific time slot, or if the

**DEF 3989**

you do not wish to participate, please let me know and I will
reach out to the witnesses directly.

The following individuals were listed as witnesses by the
Complainant:

1. Carey Stieb
2. David Barnett
3. Crislynn Howerton
4. Deb Bouricious
5. Eric Farslow
6. Kelly Leuallen
7. Lori Marak
8. Lhana Jordan
9. Paul Mitts
10. Troy Flick
11. Sheila Reiner
12. Krister Ubersox
13. Lynn Zubeck
14. Brenda McKay
15. Greg Linza

Thank you,

Courtney

--
Courtney Longtin, Esq.
Investigator
Colorado Civil Rights Division



P: 303.894.7804 | F: 303.869.0138
1560 Broadway, Suite 1050 Denver CO 80202
courtney.longtin@state.co.us | www.dora.colorado.gov/crd

--
Nina Atencio
Chief Deputy County Attorney - Civil
Division
544 Rood Avenue
PO Box 20,000-5004
Grand Junction, CO 81501
970-244-1612
nina.atencio@mesacounty.us

**CONFIDENTIALITY NOTICE**: The contents of this
email message and any attachments are intended
solely for the addressee(s) and may contain

**DEF 3993**

 **Mesa County**
Google

**Nina Atencio <nina.atencio@mesacounty.us>**

---

## Re: FE2017188101 Rick Corsi v. Mesa County - Witness Interviews
1 message

---

From: **L - DORA, Courtney** <courtney.longtin@state.co.us>
Date: Wed, Jul 12, 2017 at 12:55 PM
Subject: FE2017188101 Rick Corsi v. Mesa County - Witness Interviews
To: nina.atencio@mesacounty.us

Good afternoon,

I am the Investigator assigned to the above referenced case. I wanted to reach out to you regarding witness interviews. The Complainant listed a number of witness that I believe are current employees of the Respondent. Would you like to participate in these interviews and, if so, can you assist in facilitating the interviews? My schedule is flexible and will work with you and the witnesses in scheduling. If you do not wish to participate, please let me know and I will reach out to the witnesses directly.

The following individuals were listed as witnesses by the Complainant:

1. Carey Stieb
2. David Barnett
3. Crislynn Howerton
4. Deb Bouricious
5. Eric Farslow
6. Kelly Leuallen
7. Lori Marak
8. Lhana Jordan
9. Paul Mitts
10. Troy Flick
11. Sheila Reiner
12. Krister Ubersox
13. Lynn Zubeck
14. Brenda McKay
15. Greg Linza

Thank you,

Courtney

--

**DEF 4003**

**REDACTED**

8/28/2018                          Mesa County Mail - Re: FE2017183101 Rick Corsi v. Mesa County - Witness Interviews

6. Kelly Leuallen
7. Lori Marak
8. Lhana Jordan
9. Paul Mitts
10. Troy Flick
11. Sheila Reiner
12. Krister Ubersox
13. Lynn Zubeck
14. Brenda McKay
15. Greg Linza

Thank you,

Courtney

--
Courtney Longtin, Esq.
Investigator
Colorado Civil Rights Division



P: 303.894.7804 | F: 303.869.0138
1560 Broadway, Suite 1050 Denver CO 80202
courtney.longtin@state.co.us | www.dora.colorado.gov/crd

--
Nina Atencio
Chief Deputy County Attorney - Civil Division
544 Rood Avenue
PO Box 20,000-5004
Grand Junction, CO 81501
970-244-1612
nina.atencio@mesacounty.us

*CONFIDENTIALITY NOTICE*: *The contents of this email message and any attachments are intended
solely for the addressee(s) and may contain confidential and/or privileged information and may be legally
protected from disclosure. If you are not the intended recipient of this message or their agent, or if this
message has been addressed to you in error, please immediately alert the sender by reply email and then
delete this message and any attachments. If you are not the intended recipient, you are hereby notified
that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

**DEF 4006**