# EXHIBIT 17

⚠️ Caution
As of: September 22, 2021 2:21 AM Z

# *Jama v. City & County of Denver*

United States District Court for the District of Colorado

June 6, 2014, Decided; June 6, 2014, Filed

Civil Action No. 08-cv-01693-MSK-KLM

**Reporter**
304 F.R.D. 289 *; 2014 U.S. Dist. LEXIS 81255 **; 2014 WL 2610015

MUSE JAMA, JOSE ERNESTO IBARRA, and DENNIS MICHAEL SMITH, Plaintiffs, ANTONIO CARLOS SANCHEZ, Plaintiff-Intervenor, v. CITY AND COUNTY OF DENVER, Defendant.

**Prior History:** *Jama v. City & County of Denver, 280 F.R.D. 581, 2012 U.S. Dist. LEXIS 14937 (D. Colo., 2012)*

## Core Terms

disclosures, Plaintiffs', discovery, Supplemental, documents, witnesses, arrest, records, summary judgment motion, mistaken identity, circumstances, requests, correspondence, arrestees, parties, cure, disclose, inmate, disruption, detention, untimely, letters, additional information, initial disclosure, prison official, bad faith, identification, proceedings, re-opening, obligated

## Case Summary

### Overview

HOLDINGS: [1]-In this *42 U.S.C.S. § 1983* action, the court reviewed the objected-to portions of the magistrate's order de novo; [2]-Disclosure was not sufficient where although the City and County of Denver were requested to identify individuals who may have been victims of mistaken arrest, such identification did not tell the City and County who plaintiffs thought might have useful information, what information that was or how to contact such person; [3]-Plaintiffs' correspondence, requesting additional information on hundreds of individuals, was akin to the "laundry list of undifferentiated witnesses" deemed insufficient to constitute a disclosure; [4]-The fact that plaintiffs had mentioned the names of the 100 individuals on the Fourth Supplemental Disclosures in prior discovery requests was not sufficient to satisfy *Fed. R. Civ. P. 26(e)*.

### Outcome

Plaintiffs' objections overruled. Order affirmed.

## LexisNexis® Headnotes

Civil Procedure > Judicial Officers > Magistrates > Pretrial Referrals

Civil Procedure > Judicial Officers > Magistrates > Standards of Review

### *HN1*[🔽]  Magistrates, Pretrial Referrals

*28 U.S.C.S. § 636(b)(1)(A)* authorizes a Magistrate Judge to hear and determine any pretrial matter, with certain specific exceptions. Rulings by Magistrate Judges that fall within this general grant of authority are reviewed under a clearly erroneous or contrary to law standard. Rulings by Magistrate Judges on any matters falling within one of the listed exceptions are reviewed de novo.

Civil Procedure > Judicial

Case No. 1:18-cv-01144-DDD-STV Document 177-17 filed 09/23/21 USDC Colorado pg 3 of 17

Page 2 of 16

304 F.R.D. 289, *289; 2014 U.S. Dist. LEXIS 81255, **81255

Officers > Magistrates > Pretrial Referrals

Civil Procedure > Judicial Officers > Magistrates > Standards of Review

### *HN2*[ ] Magistrates, Pretrial Referrals

*Fed. R. Civ. P. 72* categorizes Magistrate Judge rulings as either not dispositive of a party's claim or defense (and thus subject to clearly erroneous or contrary to law review), or matters dispositive of a claim or defense (subject to de novo review). *Fed. R. Civ. P. 72(a)*, *(b)*. Notwithstanding this difference in terminology, the Tenth Circuit treats the "dispositive/non-dispositive" distinction in *Rule 72* as conforming to the distinction between those motions falling within the general grant of authority in *28 U.S.C.S. § 636(a)(1)* and those motions specifically excepted by that section. The penalty actually imposed by the Magistrate Judge determines whether the ruling is dispositive in nature.

Civil Procedure > Judicial Officers > Magistrates > Standards of Review

### *HN3*[ ] Magistrates, Standards of Review

A handful of cases recognize that, in certain unusual circumstances, a ruling that would ordinarily be non-dispositive, may nevertheless be reviewed as a dispositive ruling.

Civil Procedure > Discovery & Disclosure > Disclosure > Mandatory Disclosures

### *HN4*[ ] Disclosure, Mandatory Disclosures

*Fed. R. Civ. P. 26(a)* requires plaintiffs to make initial disclosures of: (i) the name (and address and telephone number, if known) of each individual likely to have discoverable information that the plaintiffs may use to support their claims, along with a statement of the subjects of that information; and (ii) a copy of all documents in the plaintiffs' possession that the plaintiffs may use to support their claims. *Fed. R. Civ. P. 26(a)(1)(A)(i)*, *(ii)*. The mandatory disclosures serve several purposes, including eliminating surprise, promoting settlement, and giving the opposing party information about the identification and locations of persons with knowledge so as to assist that party in contacting the individual and determining which witnesses should be deposed.

Civil Procedure > Discovery & Disclosure > Disclosure > Mandatory Disclosures

### *HN5*[ ] Disclosure, Mandatory Disclosures

*Fed. R. Civ. P. 26(e)(1)(A)* requires that the plaintiffs supplement their *Fed. R. Civ. P. 26(a)* disclosures in a timely manner upon learning that their initial disclosures were incomplete, if the additional or corrective information has not otherwise been made known to the other parties during the discovery process.

Civil Procedure > Discovery & Disclosure > Disclosure > Mandatory Disclosures

### *HN6*[ ] Disclosure, Mandatory Disclosures

*Fed. R. Civ. P. 26(a)(1)(A)* requires each party to identify those persons who have information that the party "may use" in support of its claims. A *Rule 26* disclosure requires more than just the name of the person with such information; it also requires disclosure of the address and telephone number of the person and the information that such person has. The clear purpose of such disclosure is to permit the party receiving the disclosure to be able to understand what information the person has and to consider contacting the person in order to ascertain the significance of the individual's knowledge or to depose the individual.

Case No. 1:18-cv-01144-DDD-STV Document 177-17 filed 09/23/21 USDC Colorado pg 4 of 17

Page 3 of 16

304 F.R.D. 289, *289; 2014 U.S. Dist. LEXIS 81255, **81255

Civil Procedure > Discovery & Disclosure > Disclosure > Mandatory Disclosures

### *HN7*[ ] Disclosure, Mandatory Disclosures

*Fed. R. Civ. P. 26(g)* provides that any disclosures made by a party must be signed, with the signature certifying that to the best of the signer's knowledge, information, and belief formed after a reasonable inquiry, that the disclosure is complete. *Fed. R. Civ. P. 26 (g)(1)(A)*. A disclosure that is made in the midst of the discovery process, before the details of the individual's circumstances are known to the plaintiffs, cannot possibly satisfy the "after a reasonable inquiry" requirement of *Rule 26(g)*.

Civil Procedure > Discovery & Disclosure > Disclosure > Mandatory Disclosures

### *HN8*[ ] Disclosure, Mandatory Disclosures

If a party is unwilling to conduct a reasonable inquiry in advance of making *Fed. R. Civ. P. 26(a)(1)* disclosures, that party cannot defeat the purposes of *Rule 26(a)(1)* simply by providing a laundry list of undifferentiated witnesses.

Civil Procedure > Discovery & Disclosure > Disclosure > Mandatory Disclosures

### *HN9*[ ] Disclosure, Mandatory Disclosures

*Fed. R. Civ. P. 26(e)* directs that a party must supplement a disclosure when some material respect of the disclose is incomplete unless the additional information necessary to make the disclosure complete has been previously disclosed. *Fed. R. Civ. P. 26(e)(1)(A)*.

Civil Procedure > Discovery & Disclosure > Disclosure > General Overview

### *HN10*[ ] Discovery & Disclosure, Disclosure

*Fed. R. Civ. P. 26(e)* requires that any supplemental disclosures be made "timely." The obligation to supplement arises when the disclosing party reasonably should know that its prior discovery responses are incomplete, e.g. because the party has now obtained information it did not previously have. Thus, the timeliness question is driven largely by the question of when the plaintiffs came into possession of the documents that would lead them to identify the particular individuals they would make use of in proving their claims.

Civil Procedure > Sanctions > Misconduct & Unethical Behavior > General Overview

Civil Procedure > Discovery & Disclosure > Disclosure > Sanctions

Civil Procedure > Discovery & Disclosure > Discovery > Misconduct During Discovery

### *HN11*[ ] Sanctions, Misconduct & Unethical Behavior

A court must choose a sanction that is both just and related to the particular issue that was implicated by the discovery violation. Factors that a court should consider in imposing a sanction include: (i) the prejudice or surprise to the party entitled to receive the disclosures; (ii) the ability of that party to cure such prejudice; (iii) the extent to which allowing the undisclosed evidence would disrupt the trial; and (iv) the disclosing party's bad faith or willfulness.

**Counsel:** [**1] For Muse Jama, Jose Ernesto Ibarra, Dennis Michael Smith, Plaintiffs: Mark Silverstein, LEAD ATTORNEY, Rebecca Teitelbaum Wallace, American Civil Liberties Union-Denver, Denver, CO; Ty Cheung Gee,

Case No. 1:18-cv-01144-DDD-STV   Document 177-17   filed 09/23/21   USDC Colorado   pg 5 of 17

Page 4 of 16

304 F.R.D. 289, *289; 2014 U.S. Dist. LEXIS 81255, **1

LEAD ATTORNEY, Haddon, Morgan & Foreman, P.C., Denver, CO.

For Antonio Carlos Sanchez, Intervenor Plaintiff: Mark Silverstein, LEAD ATTORNEY, Rebecca Teitelbaum Wallace, American Civil Liberties Union-Denver, Denver, CO; Ty Cheung Gee, LEAD ATTORNEY, Haddon, Morgan & Foreman, P.C., Denver, CO.

For City and County of Denver, Defendant: Stuart L. Shapiro, Denver City Attorney's Office, Denver, CO.

**Judges:** Marcia S. Krieger, Chief United States District Judge.

**Opinion by:** Marcia S. Krieger

# Opinion

 **[*291]  OPINION AND ORDER OVERRULING OBJECTIONS AND ADOPTING MAGISTRATE JUDGE'S ORDER**

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Objections **(# 491)** to the Magistrate Judge's February 8, 2012 Order **(# 487)** granting in part the Defendant's Motion to Strike **(# 451)**, and the Defendant's response **(# 498)**.[1]

## FACTS

As presently postured, the Plaintiffs in this action assert claims against the Defendant, **[*292]** the City and County of Denver ("Denver"), alleging that Denver's police department engaged in customs or policies that facilitated the mistaken arrest of individuals, in violation of their *4th Amendment* rights as secured by *42 U.S.C. § 1983*.

### A. Procedural history

The instant Objections relate to the timeliness of certain discovery disclosures by the Plaintiffs, and thus, it is necessary to address the lengthy history of this case. As amended **(#116)**, the Scheduling Order provided for a discovery cutoff of July 1, 2009. Nevertheless, it appears from the docket that various discovery disputes persisted for several additional months. For example, a September 3, 2009 Minute Entry **(# 281)** from a discovery hearing before the Magistrate **[**3]** Judge recites various items of discovery that remain to be produced and sets a schedule for such production. Of particular interest in that Minute Entry is a directive to Denver to conduct a database search to "identify other non-plaintiff mistaken identity arrests/detentions," and for the parties to engage in a process by which the Plaintiffs would identify specific individuals within such search results for whom the Plaintiffs would request, and Denver would produce, additional information about that individual's arrest or detention. It appears that the Magistrate Judge anticipated that this process would be complete by late October 2009. A September 22, 2009 joint motion **(# 294)** seeking to extend the dispositive motions deadline confirms that "Defendants estimate they will be searching . . . and producing materials for several more months."

On November 6, 2009, Denver filed a motion for summary judgment **(# 333)** on the certain claims by one of the Plaintiffs,[2] including a *Monell* claim against Denver itself. On December 29, 2009, the Plaintiffs sought relief **(# 349)** under then-*Rule*

---

[1] The contents of this Order were drafted by the undersigned more than a year ago. Miscommunications within the Court resulted in the completed Order not being promptly submitted for docketing, and internal administrative tools **[**2]** failed to report the Plaintiffs' Objections as being continuously pending, leading the Court to believe that the matter had been addressed and resolved. A recent telephone call by counsel to chambers prompted a review of the docket sheet, which revealed that this Order had not been timely issued. The Court apologizes to all parties for the oversight and accompanying delay.

[2] Denver filed similar motions directed at the other Plaintiffs and their *Monell* claims in January 2010 **(# 350, 356, 358)**. All four of the summary judgment motions were subsequently denied without prejudice to Denver filing a single consolidated summary judgment motion on the *Monell* claims, which it did in late 2011.

Case No. 1:18-cv-01144-DDD-STV Document 177-17 filed 09/23/21 USDC Colorado pg 6 of 17

Page 5 of 16

304 F.R.D. 289, *292; 2014 U.S. Dist. LEXIS 81255, **3

*56(f)*[3] explaining that "Denver is in the midst of producing voluminous discovery that bears directly [**4] on Plaintiffs' *Monell* theories" including "hundreds of pages" of logs that "show many dozens of occasions when the wrong person was arrested based on mistaken identity." The Plaintiffs' motion indicated that "Denver . . . may be able to complete production of many of the above documents by early January," stated that "Plaintiffs' counsel have been diligently analyzing the documents as they are produced," and posited that the Plaintiffs "expect they will need 30 days following completion of the production to evaluate the documents" sufficiently to respond to Denver's summary judgment motion.

On February 21, 2010, the parties filed a joint Motion to Continue Pretrial Conference **(# 373)**. That motion recited the current status of the parties' discovery exchanges, including the fact that Denver had conducted the database search, that the Plaintiffs had [**5] identified "approximately 237 cases with potential identification issues involving non-plaintiffs," and that Denver was "expending significant resources in determining what records exist relevant to each of these 237 non-plaintiff cases." The parties stated that they anticipated that Denver would complete its production of the relevant material within 60 days.

By July 2010, it appears that Denver had completed its production. In a July 12, 2010 motion **(# 400)** pursuant to *Rule 56(f)*, the Plaintiffs noted that "Denver has produced [the relevant material] from 2002 to September 2009," but was refusing to produce similar records for periods after 2009. (The Plaintiffs argued that such post-litigation records were relevant to the question of whether prospective equitable relief was appropriate.) This Court's Order **(# 418)** of August 4, 2010, granting in part and denying in part the Plaintiffs' *Rule 56(f)* requests, reflects the Court's understanding that the relevant discovery had now been produced by Denver: "Plaintiffs have since filed the second motion . . . which contains no indication that the [*293] information that was subject to discovery has not been disclosed."

On September 15, 2011, Denver [**6] — the only remaining Defendant in the case — filed another summary judgment motion **(# 439)**, directly attacking the sufficiency of the Plaintiffs' showing with regard to the remaining *Monell* claims against it. Shortly thereafter, the Plaintiffs filed a motion **(# 443)** requesting an extension of time to respond to Denver's summary judgment motion. The Plaintiffs' request pointed out that the Plaintiffs' counsel "had not prepared a response to any of Denver's [earlier] motions for summary judgment, in part, because Plaintiffs were awaiting supplemental discovery that counsel believed would be material to the *Monell* claims." The request further stated that, as of September 2011, Plaintiffs' counsel had recently "returned . . . from a three-month leave [and u]ntil he returned and began reviewing papers in preparation for drafting a response to Denver's motion for summary judgment, undersigned counsel had not reviewed any materials in this case for many months."

### B. The instant dispute

On November 8, 2011, the Plaintiffs filed the document that is at the core of the instant issue, the Plaintiffs Fourth Supplemental Disclosures **(# 447)**. That document purported to supplement the Plaintiffs' *Rule 26(a)(1)* [**7] disclosures by identifying 108 (presumably) new witnesses, each of whom was alleged to have "facts relating to arrest based on mistaken identity, including communications to and from law enforcement officers, court proceedings, circumstances of arrest, and length of detention." (The supplemental disclosures also identified certain documents the Plaintiffs intended to present.)

On December 13, 2011, Denver moved to strike **(# 451)** the Plaintiffs' Fourth Supplemental Disclosures. Denver argued that any outstanding discovery matters were resolved, at the latest, by

---

[3] Now *Fed. R. Civ. P. 56(d)*.

Case No. 1:18-cv-01144-DDD-STV Document 177-17 filed 09/23/21 USDC Colorado pg 7 of 17

Page 6 of 16

304 F.R.D. 289, *293; 2014 U.S. Dist. LEXIS 81255, **7

this Court's August 4, 2010 Order denying the Plaintiffs' *Rule 56(f)* requests; that the Plaintiffs were required to supplement their *Rule 26(a)(1)* disclosures on a timely basis; and that the late disclosure contained within the Fourth Supplemental Disclosures was prejudicial to Denver, coming after Denver had filed its summary judgment motion.

The Plaintiffs responded **(# 483)**, arguing that "all the witnesses [in the Fourth Supplemental Disclosures] have been previously disclosed, albeit not formally." In other words, the Plaintiffs contended that the various individuals mentioned in the disclosures "were first identified by Denver **[**8]** in its own . . . document productions" to the Plaintiffs. Relatedly, the Plaintiffs argued that conclusory statements in their prior disclosures, purporting to identify "any persons who were the subject of a mistaken-identification arrest or detention" was sufficient to encompass the particular individuals identified in the Fourth Supplemental Disclosures. The Plaintiffs further contended that, to the extent the disclosure was untimely, "there is good cause excusing it," owing both to the complexity of the issues and breadth of discovery, as well as to internal disruptions to the Plaintiffs' trial team.[4] Finally, the Plaintiffs argued that Denver was not prejudiced by any late disclosure, insofar as "it knew of the identities of the victims of mistaken identity arrest and detentions before Plaintiffs did.

On February 8, 2012, the Magistrate Judge granted**(# 451)** Denver's motion to strike, in part. She pointed out that *Rule 26(e)* requires parties to timely supplement their prior *Rule 26(a)* disclosures. She noted that the concept of "timeliness" is not clearly defined by *Rule 26(e)*, but that in the circumstances presented here, the Plaintiffs were in possession of the bulk of Denver's documentary discovery as early as February 2010, **[*294]** and that the production was unambiguously completed by August 4, 2010, and thus, the Plaintiffs' disclosures in November 2011 were the product of "delay of more than one year." The Magistrate Judge found that the "Plaintiffs' excuse for the delay is the press of business and, apparently, litigation strategy," and concluded that, pursuant to MSK Practice Standard (Civil) § II.G, that excuse was insufficient. The Magistrate Judge also rejected the Plaintiffs' argument that, **[**10]** because the names of the witnesses being disclosed were drawn from documents Denver had produced, Denver should be deemed to already have notice of such individuals. Citing *Gallegos v. Swift & Co., 2007 U.S. Dist. LEXIS 5440, 2007 WL 214416 (D. Colo. Jan. 25, 2007)*, the Magistrate Judge explained that "knowledge of the existence of a person is distinctly different from knowledge that the person will be relied upon as a fact witness." Thus, the Magistrate Judge concluded that "the delay in disclosure, in the context of the age of this case, the significant number of witnesses disclosed, and the minimal information provided regarding each witness, violates *Rule 26(e)*."

Turning to the question of the appropriate sanction to impose for this violation under *Rule 37(c)(1)*, the Magistrate Judge examined the factors set forth in *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.., 170 F.3d 985, 993 (10th Cir. 1999)* — namely: (i) the prejudice or surprise to Denver, (ii) the ability to cure the prejudice, (iii) the potential for trial disruption, and (iv) the Plaintiffs' bad faith or willfulness. As to prejudice, the Magistrate Judge found that "due to the timing of the Fourth Supplemental Disclosures" coming nearly **[**11]** two full months after Denver had filed its summary judgment motion on *Monell* issues, "Defendant has not had the opportunity to investigate the evidence related to the witnesses

---

[4] The motion pointed out that the Plaintiffs' "litigation team significantly changed in summer 2010," and that the attorney that had "handled virtually all the *Monell* discovery matters" withdrew in early August 2010. The Plaintiffs' current counsel repeated that he had gone on a "three-month sabbatical" between June and September, and that upon the departure of his co-counsel, his "analysis **[**9]** of the *Monell* discovery and preparation of a response to Denver's consolidated summary judgment motion was an extraordinary undertaking," including review of "thousands of *Monell* discovery documents received between August 2009 and spring 2010 . . . that counsel had never reviewed previously."

Case No. 1:18-cv-01144-DDD-STV Document 177-17 filed 09/23/21 USDC Colorado pg 8 of 17

Page 7 of 16

304 F.R.D. 289, *294; 2014 U.S. Dist. LEXIS 81255, **11

listed in the Fourth Supplemental Disclosures and relied upon by Plaintiffs in their voluminous response to the motion for summary judgment." Comparing this outcome to "trial by ambush," the Magistrate Judge noted that "[Denver] simply did not get a chance to determine how to use its allotted discovery regarding the witnesses . . . due to the delay of over one year in the Plaintiffs' issuance of the disclosures." In addition, the Magistrate Judge found that reopening discovery to cure that prejudice would result in additional delay and mounting attorney's fees, further demonstrating prejudice suffered by Denver.

Turning simultaneously to Denver's ability to cure and the potential for disruption of the trial, the Magistrate Judge found that, although no trial date had been set in this matter, curing the prejudice by granting Denver an extension of time to conduct additional discovery "would effectively reward Plaintiffs' non-compliance." She noted "the obvious disruption to the briefing on Defendant's motion for **[**12]** summary judgment," and concluded that, "although [re-opening discovery] might cure the prejudice endured by [Denver], doing so under these circumstances is unreasonable and unwarranted."

Finally, considering the Plaintiffs' bad faith, the Magistrate Judge found that, given the Plaintiffs' "flawed argument" that Denver already had notice of the witnesses, coupled with the fact that "the press of business does not constitute good cause for the delay," "the Plaintiffs acted willfully in delaying submission of their Fourth Supplemental Disclosures." Consequently, the Magistrate Judge directed that "Plaintiffs are prohibited from utilizing the witnesses or documents identified in the Fourth Supplemental Disclosures" (except with regard to three specific witnesses previously disclosed and documents that constituted public records).

On March 5, 2012, the Plaintiffs filed timely Objections **(# 491)** to the Magistrate Judge's order. The Court will not endeavor to summarize the arguments raised in that 82-page filing, and will address them only as part of its analysis.

## ANALYSIS

### A. Standard of review

*HN1*[⬆] *28 U.S.C. § 636(b)(1)(A)* authorizes a Magistrate Judge to "hear and determine any pretrial matter," **[**13]** with certain specific exceptions. Rulings by Magistrate Judges that fall within this general grant of authority are reviewed under a "clearly erroneous or contrary to law" standard. *Id.*; *Ocelot Oil [*295] Corp. v. Sparrow Industries, 847 F.2d 1458, 1461-62 (10th Cir. 1988)*. Rulings by Magistrate Judges on any matters falling within one of the listed exceptions are reviewed *de novo*.

*HN2*[⬆] *Fed. R. Civ. P. 72* uses somewhat different terminology, categorizing Magistrate Judge rulings as either "not dispositive of a party's claim or defense" (and thus subject to "clearly erroneous or contrary to law" review), or matters "dispositive of a claim or defense" (subject to *de novo* review). *Fed. R. Civ. P. 72(a)*, *(b)*. Notwithstanding this difference in terminology, the 10th Circuit treats the "dispositive/non-dispositive" distinction in *Rule 72* as conforming to the distinction between those motions falling within the general grant of authority in *28 U.S.C. § 636(a)(1)* and those motions specifically excepted by that section. *Ocelot, 847 F.2d at 1462*, *citing* 1983 Advisory Committee note to *Rule 72*. The penalty actually imposed by the Magistrate Judge determines whether the ruling is dispositive in nature. *Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1519 (10th Cir. 1995)*.

Here, **[**14]** the Plaintiffs argue that the ruling is "dispositive" of their *Monell* claim because if they are unable to present the evidence encompassed by the Magistrate Judge's ruling, they will be deprived of evidence "supporting a key theory of Denver's *Monell* liability, and, effectively . . . dismiss[es]

Case No. 1:18-cv-01144-DDD-STV Document 177-17 filed 09/23/21 USDC Colorado pg 9 of 17

Page 8 of 16

304 F.R.D. 289, *295; 2014 U.S. Dist. LEXIS 81255, **14

that theory." *HN3*[↑] A handful of cases recognize that, in certain unusual circumstances, a ruling that would ordinarily be non-dispositive, may nevertheless be reviewed as a dispositive ruling. *See e.g. Yang v. Brown University, 149 F.R.D. 440, 442-43 (D.R.I. 1993)* (sanction precluding causation expert from testifying in personal injury case "crosses the line from non-dispositive to dispositive decision-making" and "vitiates plaintiff's case . . . tantamount to an involuntary dismissal"); *see also OFS Fitel, LLC v. Epstein, Becker & Green, PC, 549 F.3d 1344, 1357 (11th Cir. 2008)* (finding District Court sanction order excluding expert testimony in malpractice case was "dispositive," and thus immediately appealable, because "it foreclosed Fitel from presenting the expert testimony required to prove . . . a core element in all of its claims"). This Court has profound doubts that this case presents **[**15]** the type of unusual circumstances that would warrant departing from review as prescribed by *Rule 72(a)*. Compare *Apple, Inc. v. Samsung Electronics Corp., 888 F.Supp.2d 976, 2012 WL 3627731 (N.D.Ca. 2012)* (slip op.) (sanction granting adverse inference instruction for discovery violations not dispositive, despite its potential to hamper defendant's case); *MOSAID Techs. Inc. v. Samsung Electronics Corp., 2004 U.S. Dist. LEXIS 23595, 2004 WL 2550309 (D.N.J. Oct. 1, 2004)* (unpublished) ("even if a magistrate judge's [evidentiary sanction] order has the potential to materially affect the outcome of an issue, the order should still be reviewed under the more deferential standard"). However, in order to ensure that the Plaintiffs' arguments are fully considered, the Court will review the objected-to portions of the Magistrate Judge's order *de novo*.

### B. Violation of Rule 26

The Court begins by examining whether the Plaintiffs violated the requirements of *Rule 26*. *HN4*[↑] *Rule 26(a)* required the Plaintiffs to make initial disclosures of: (i) the name (and address and telephone number, if known) of "each individual likely to have discoverable information . . . that [the Plaintiffs] may use to support [their] claims," along **[**16]** with a statement of the subjects of that information; and (ii) a copy of all documents in the Plaintiffs' possession that the Plaintiffs may use to support their claims. *Fed. R. Civ. P. 26(a)(1)(A)(i), (ii)*. The mandatory disclosures serve several purposes, including eliminating surprise, promoting settlement, and giving the opposing party information about the identification and locations of persons with knowledge so as to assist that party in contacting the individual and determining which witnesses should be deposed. *Sender v. Mann, 225 F.R.D. 645, 650 (D.Colo. 2004)*.

*HN5*[↑] *Rule 26(e)(1)(A)* requires that the Plaintiffs supplement their *Rule 26(a)* disclosures "in a timely manner" upon learning that their initial disclosures were incomplete, if "the additional or corrective information has not otherwise been made known to the other parties during the discovery process."

 **[*296]** 1. <u>Whether supplemental disclosures were necessary</u>

It appears to be undisputed that the Plaintiffs did not disclose the identities of most of the 108 individuals[5] in the Fourth Supplemental Disclosures in either their initial *Rule 26(a)* disclosures or in any of the three prior supplemental disclosures. They submit alternatively **[**17]** that: (i) they were not obligated to identify such individuals to Denver because Denver already knew about them; or (ii) they "re-disclosed" the identities of such individuals to Denver in correspondence that requested Denver to make particular document productions. Neither argument is availing.

---

[5] The Plaintiffs point out that, of the 108 individuals disclosed, 100 were victims of mistaken identity arrests, and 8 were Denver officials in various capacities. Denver withdrew its objections to disclosure of certain specified individuals among the 8 officials, and the Magistrate Jude's Order acknowledges that the Plaintiffs can use evidence from the un-objected to individuals.

Case No. 1:18-cv-01144-DDD-STV   Document 177-17   filed 09/23/21   USDC Colorado   pg 10 of 17

Page 9 of 16

304 F.R.D. 289, *296; 2014 U.S. Dist. LEXIS 81255, **17

As to the first argument, the Plaintiffs contend that because Denver was producing the names of certain individuals at the Plaintiffs' request, that Denver should be deemed to know that these were individuals that the Plaintiff intended to disclose under *Rule 26 (a)*. Thus, reason the Plaintiffs, they had no obligation to make an express disclosure under *Rule 26(a)* or *(e)*.

This argument misapprehends the purpose of *Rule 26*'s disclosure requirements. **HN6**[↑] *Rule 26(a)(1)(A)* requires each party to identify those persons who have **[**18]** information that the party "may use" in support of its claims. A *Rule 26* disclosure requires more than just the name of the person with such information; it also requires disclosure of the address and telephone number of the person and the information that such person has. The clear purpose of such disclosure is to permit the party receiving the disclosure to be able to understand what information the person has and to consider contacting the person in order to ascertain the significance of the individual's knowledge or to depose the individual. *Sender, 225 F.R.D. at 650*. Although Denver was requested to identify individuals who may have been victims of mistaken arrest, such identification did not tell Denver who the Plaintiffs thought might have useful information, what information that was or how to contact such person.[6] The most that can be said about the Plaintiff's request is that it advised Denver that Plaintiffs thought that **some** of these persons **might** have information that **might** prove useful. That is not sufficient disclosure under *Rule 26(a)*.

The court in *Kramer v. Gwinnett County, 306 F. Supp. 2d 1219, 1224-25 (N.D.Ga. 2004)*, considered and rejected a similar argument. There, the plaintiff was an inmate, alleging that prison officials demonstrated deliberate indifference to his medical needs. When the prison officials moved for summary judgment, the inmate responded with, among other things, an affidavit by a fellow inmate. The prison officials moved to strike the **[**20]** affidavit, stating that the plaintiff had not previously disclosed the fellow inmate under *Rule 26(a)*. The plaintiff responded that there were A a large number of inmates at the [prison] who may possess relevant information" and opposed the motion to strike, noting the prison officials' "superior position to determine the identity of such inmates." The court rejected that argument and disregarded the affidavit, finding that the assertion that prison officials were aware of and better able to identify fellow inmates "is not sufficient to obviate [the plaintiff's] duty to determine and disclosed with due diligence what evidence supports plaintiff's causes of action." *Id*.

 **[*297]** The same logic applies here. By reviewing its own records, Denver could identify persons who were arrested based on a mistaken identity, just as the prison officials in *Kramer* might have been able to identify inmates who might have information helpful to the plaintiff. But because the purpose of the disclosure under *Rule 26(a)* was to inform Denver of which individuals *the Plaintiffs* believed had pertinent information, what the information was and how to contact the individual, Denver's identification of individuals in **[**21]** response to discovery requests did not relieve Plaintiffs of the obligation of disclosing the individuals who they thought had useful information.

The Plaintiffs also contend that they <u>did</u> disclose (in the Plaintiffs' parlance, "re-disclose") the individuals to Denver in correspondence relating to further requests for production. As noted above, the

---

[6] The Plaintiffs argue that the Magistrate Judge conflated *Rule 26(a)(1)(A)*'s requirement that parties disclose individuals "that the **[**19]** disclosing party may use to support its clams" (*i.e*. in responding to pretrial motions) and *Rule 26(a)(3)(A)(1)*'s requirement (yet to mature in this case) that, prior to trial, parties disclose "each witness . . . the party expects to present." To the extent that there is any merit in this contention — and this Court does not suggest that there is — this Court has considered only the Plaintiffs' obligations under *Rule 26(a)(1)*. Nevertheless, this Court occasionally refers to an individual subject to disclosure under *Rule 26(a)(1)* as a "witness," as that term is equally applicable to the presentation of testimony by a deponent or affiant in support of a claim or defense during motion practice, even if the pre-trial obligations of *Rule 26(a)(3)* have not yet arisen.

Case No. 1:18-cv-01144-DDD-STV   Document 177-17   filed 09/23/21   USDC Colorado   pg 11 of 17

Page 10 of 16

304 F.R.D. 289, *297; 2014 U.S. Dist. LEXIS 81255, **21

Magistrate Judge directed that beginning in September 2009, the parties engage in a multi-stage process to identify other mistaken identity arrestees. In summary, that process directed: (i) that Denver search its police records database using certain specified search terms and produce to the Plaintiffs a list of search results; (ii) that the Plaintiffs specify the individuals within those results for whom the Plaintiffs sought additional information; and (iii) Denver produce the relevant records within its possession for the identified individuals. The Plaintiffs contend that, upon receiving Denver's production of the search results, they "re-disclosed" 83 of the 100 individuals to Denver in the course of "a multitude of discovery-conferral letters," thus satisfying their obligations under *Rule 26(a)* and *(e)*.

The Objections list a total of **[\*\*22]** 10 letters, written between May 2009 and February 2010, which the Plaintiffs argue reflects this "re-disclosure." This Court has reviewed those letters, and finds nothing therein that could be said to constitute the kind of designation constituted by *Rule 26(a)(1)(A)*. In several letters sent between May and September 2009, the Plaintiffs mention only a handful of individuals, primarily in passing. *See e.g.* July 17, 2009 letter at 1 ("[document number] indicates that there was an internal investigation closed in 2005 regarding the mistaken identity arrest of Leo Folks . . . Please provide a copy of all records related to that internal investigation"; "[document number] contains what appears to be a post-it note related to the mistaken identity arrest/detention of Keith Mitchell . . . Please produce a legible copy of the note"). In September 2009, the Plaintiffs sent two lengthy letters. The September 9, 2009 letter is essentially a request for production, seeking various records with regard to 51 particular individuals. The September 29, 2009 letter indicates that the Plaintiffs have reviewed Denver's search results, and "request the underlying records" with regard to 237 specifically-identified **[\*\*23]** individuals named in a spreadsheet attached to the letter.

The remaining letters, sent between December 2009 and February 2010, are essentially follow-ups on those September 2009 discovery requests, identifying certain individuals regarding whom the Plaintiffs were dissatisfied with Denver's production and supplying details of the particular documents the Plaintiffs were continuing to request. *See e.g.* February 1, 2010 letter at 10, ¶ 44 (stating that "On March 13, 2003, a Pedro Martinez (DOB __/67) was mistakenly arrested or detained . . . on a >failure to appear' warrant . . . for a Hector Ortega-Barraza (DOB __/59)" and requesting "remaining missing records that should be produced" regarding this incident, including "the arrest and detention records," "warrant teletypes," mugshots, etc.)

This Court finds that, taken individually or as a whole, this correspondence is not the functional equivalent of a *Rule 26(a)(1)(A)* disclosure. Key to this conclusion is *HN7*[⬆] *Rule 26(g)*, which provides that any disclosures made by a party must be signed, with the signature certifying that "to the best of the [signer's] knowledge, information, and belief formed after a reasonable inquiry," that the disclosure **[\*\*24]** is complete. *Fed. R. Civ. P. 26 (g)(1)(A)*. A disclosure that is made in the midst of the discovery process, before the details of the individual's circumstances are known to the Plaintiffs, cannot possibly satisfy the "after a reasonable inquiry" requirement of *Rule 26(g)*. By definition, the Plaintiffs' **[\*298]** correspondence requesting additional information with regard to various arrestees indicates that the Plaintiffs were uncertain whether those arrestees' circumstances were probative of the Plaintiffs' claims. If the Plaintiffs were uncertain whether those arrestees' circumstances were probative of their claims, their *Rule 26(g)* inquiry into whether the individual was a potential witness was not complete, and thus, the Plaintiffs correspondence cannot be deemed to constitute a *Rule 26(a)* disclosure. .

A similar situation was presented in *Sender*. There, the plaintiff alleged that the defendants committed fraud by causing a corporation to issue false

Case No. 1:18-cv-01144-DDD-STV Document 177-17 filed 09/23/21 USDC Colorado pg 12 of 17

Page 11 of 16

304 F.R.D. 289, *298; 2014 U.S. Dist. LEXIS 81255, **24

promissory notes to some 200 investors. The plaintiffs' *Rule 26(a)(1)* disclosures simply listed 196 individuals who purchased the notes, as well as 126 brokers through whom the notes were sold, along with a single, perfunctory statement of the **[**25]** subjects of those individuals' knowledge. When the defendants moved to strike those (and subsequent) disclosures as incomplete, the court agreed that the disclosure was insufficient. It noted that "[plaintiff's] counsel conceded that as of the date [plaintiff] served his initial disclosures, counsel had not interviewed all of the listed brokers and investors," and suggested that such efforts would have been too "time consuming and costly." *225 F.R.D. at 650-51*. The court explained that *HN8*[↑] "if a party is unwilling to conduct a reasonable inquiry in advance of making *Rule 26(a)(1)* disclosures, that party cannot defeat the purposes of *Rule 26(a)(1)* simply by providing a laundry list of undifferentiated witnesses." *Id*. As in this case, the plaintiff contended that "defendants were free to contact each and every one of the investors and brokers," but the court concluded that this argument would allow a party to "frustrate the salutary purposes underlying *Rule 26(a)(1)(A)*" by making only the broadest and most generalized disclosures. *Id. at 653*.

The Plaintiffs' correspondence here, requesting additional information on hundreds of individuals, is akin to the "laundry list of undifferentiated **[**26]** witnesses" deemed insufficient to constitute a disclosure in *Sender*. As in that case, the Plaintiffs' references to various individuals in its correspondence with Denver reflects the starting point of the Plaintiffs' inquiry into whether an individual should eventually be disclosed, not the point at which the Plaintiffs have completed their inquiry and are prepared to make a disclosure subject to the *Rule 26(g)* certification. For example, the September 9, 2009 letter from the Plaintiffs lists some 237 individuals for whom records are sought, but by the time of the Fourth Supplemental Disclosures, the Plaintiffs had whittled that list down to only 100. If, as the Plaintiffs suggest, the correspondence can be deemed to be substitute disclosure, the Plaintiffs are necessarily contending that Denver should somehow be obligated to determine which of the 237 individuals mentioned in the September 9, 2009 letter would be among the 100 that the Plaintiffs ultimately decided to use in support of their claims. Such an argument does nothing to advance the notice-giving principles underlying *Rule 26(a)*, *(e)*, and *(g)*. Thus, the Plaintiffs' correspondence here is indistinguishable from the pre-investigation **[**27]** mass "disclosure" in *Sender*, and insufficient under *Rule 26* for the same reasons.

Finally, the Plaintiffs argue that, pursuant to *Rule 26(e)*, supplemental disclosure of the individuals was unnecessary because those individuals had been "made known" to Denver "during the discovery process" under *Fed. R. Civ. P. 26(e)(1)(A)* — *i.e*. in the Plaintiffs' correspondence requesting additional document production for the individuals. In this context, it is important to consider the precise language of *HN9*[↑] *Rule 26(e)*: it directs that a party must supplement a disclosure when "some material respect [of] the disclose is incomplete" unless "the additional . . . information" necessary to make the disclosure complete has been previously disclosed. *Fed. R. Civ. P. 26(e)(1)(A)* (emphasis added). Thus, the question presented is what is the "additional information" necessary to make the Plaintiffs' *Rule 26(a)* disclosures complete?

When one considers the purposes of *Rule 26(a)* disclosures — eliminating surprise, providing the opposing party with an ability to contact persons the disclosing party may **[*299]** use — it is clear that the information the Plaintiffs were required to disclose was which particular mistaken identity **[**28]** arrestees, culled from the pool of those revealed in Denver's search results, had information that the Plaintiffs intended to use. In this sense, the fact that the Plaintiffs had mentioned the names of the 100 individuals on the Fourth Supplemental Disclosures in prior discovery requests is not sufficient to satisfy *Rule 26(e)*, because such requests also referred to more than a hundred other

Case No. 1:18-cv-01144-DDD-STV   Document 177-17   filed 09/23/21   USDC Colorado   pg 13 of 17

Page 12 of 16

304 F.R.D. 289, *299; 2014 U.S. Dist. LEXIS 81255, **28

individuals that the Plaintiffs did not consider worthy of disclosure.

This situation is akin to that of *Laboratory Skin Care, Inc. v. Limited Brands, Inc., 661 F.Supp.2d 473, 478-79 (D. Del. 2009)*. There, the defendant's summary judgment motion referenced a three-page document ("the PDR") that had not been specifically identified in the defendant's discovery responses. The plaintiff moved to strike the reference to the PDR, and the defendant responded that the document had been included in a supplemental interrogatory response. The court found that argument unavailing, finding that the defendant's disclosure of the PDR "was buried within roughly 1,500 pages of documents that were otherwise identified only by broad ranges of Bates numbers." *Id. at 479*. Explaining that "defendants cannot reasonably [**29] expect plaintiffs to be on notice of a three page reference — buried within roughly 1,500 pages of numerically identified documents — that was neither called out by specific Bates number or by name," the court concluded that "such identification, or lack thereof, does not qualify as adequate notice of defendant's . . . contentions." *Id*. Thus, the court found that the defendants "breached their duty to supplement under *Rule 26(e)*." Similar to *Laboratory Skin Care*, the Plaintiffs' contention that the identities of the 100 mistaken identity arrestees was "made known" to Denver through other discovery responses is misplaced, where those identities were never specifically identified to Denver as being of particular importance, and whose significance was overshadowed by an even greater number of seemingly similarly-situated individuals whom the Plaintiffs' implicitly concede are not going to be used in the case.

In this sense, the Plaintiffs' "made known" argument is far less persuasive than those cases in which courts have found *Rule 26(e)*'s "made known" exception to be satisfied where, for example, parties extensively discussed a particular undisclosed individual during other discovery [**30] proceedings. *See e.g. Kapche v. Holder, 677 F.3d 454, 468, 400 U.S. App. D.C. 201 (D.C. Cir. 2012)* (witness was "made known" to opponent under *Rule 26(e)* where disclosing party produced memorandum written by witness concerning events at issue, opponent asked questions about the witness during depositions of others and specifically requested documents written by or sent to the witness, and district court mentioned her as "potential witness" at pretrial conference). Here, although the Plaintiffs made document requests for Denver's own materials about the 100 mistaken identity arrestees (among many others), there is no indication that the Plaintiffs and Denver discussed the individuals themselves (much less the facts known by the individuals or the nature of the testimony they might give) during depositions or other discovery proceedings. Thus, this is not a circumstance where Denver was obviously aware of the particular facts and specific circumstances surrounding each designated individual's arrest, such that the Plaintiffs' obligation to make a supplemental disclosure under *Rule 26(e)* was relieved.

Accordingly, the Court finds that to comply with *Rule 26*, the Plaintiffs were required to identify for Denver [**31] the 100 specific mistaken identity arrestees (and the other officials mentioned in the Fourth Supplemental Disclosures subject to Denver's motion) as well as the information that such arrestees had that Plaintiffs considered useful. The Plaintiffs did not make such disclosure until November 2011. Thus, the Court turns to the question of whether such disclosure was timely.

2. Timeliness

*HN10*[↑] *Rule 26(e)* requires that any supplemental disclosures be made "timely." The obligation to supplement arises when the disclosing party reasonably should know that its prior discovery responses are incomplete, e.g. because the party has now obtained information [*300] it did not previously have. *See Robbins & Myers, Inc. v. J.M. Huber Corp., 274 F.R.D. 63, 75 (W.D.N.Y. 2011)*. Thus, the timeliness question is driven largely by the question of when the Plaintiffs came

Case No. 1:18-cv-01144-DDD-STV   Document 177-17   filed 09/23/21   USDC Colorado   pg 14 of 17

Page 13 of 16

304 F.R.D. 289, *300; 2014 U.S. Dist. LEXIS 81255, **31

into possession of the documents that would lead them to identify the particular individuals they would make use of in proving their claims.

The record reflects that Denver completed a significant portion of the production requested by the Plaintiffs in February 2010, and that it had conclusively completed that production by no later than the beginning **[**32]** of July 2010. Thus, the Plaintiffs' Fourth Supplemental Disclosures, made in November 2011, came some 16 months after Denver had produced all of the relevant records, nearly two years after Denver had produced a substantial amount of the total material requested.

The Plaintiffs do not offer any particular explanation as to why, in the exercise of due diligence, it required anywhere from approximately a year and a half to two years to digest the materials provided by Denver, settle on the particular arrestees that the Plaintiffs intended to use as witnesses, and to disclose those witnesses. The Plaintiffs' correspondence indicates that, although the Plaintiffs requested (and Denver produced) several thousand pages of documents, the Plaintiffs were keenly aware of basic details of most of the mistaken identity arrests, the documents that had been produced with regard to each, and the documents remaining outstanding with regard to each. For example, the Plaintiffs' February 1, 2010 letter individually addresses Denver's production with regard to each of the more than 230 individuals listed in the Plaintiffs' September 9, 2009 letter, often going into exacting detail as to the particular **[**33]** documents that remained outstanding. Thus, the Court finds that the Plaintiffs have not identified circumstances that would warrant the lengthy delay between completion of the production and the filing of the Fourth Supplemental Disclosures, and thus, the Court finds that the Plaintiffs' supplementation of its disclosures under *Rule 26(e)* was not timely.

**C. Sanction**

Having thus concluded that the Plaintiffs' Fourth Supplemental Disclosures violated *Rule 26(a)* and *(e)*, the question turns to the appropriate sanction to be imposed.

*HN11*[↑] The Court must choose a sanction that is both just and related to the particular issue that was implicated by the discovery violation. See *Procter & Gamble Co. v. Haugen, 427 F.3d 727, 738 (10th Cir. 2005)*. The parties agree that *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999)*, establishes the factors that the Court should consider in imposing a sanction: (i) the prejudice or surprise to the party entitled to receive the disclosures; (ii) the ability of that party to cure such prejudice; (iii) the extent to which allowing the undisclosed evidence would disrupt the trial; and (iv) the disclosing party's bad faith or **[**34]** willfulness. The Court will examine each factor in turn.

1. <u>Prejudice to Denver</u>

The untimeliness of the Plaintiffs' Fourth Supplemental Disclosure poses several forms of prejudice to Denver. First, and most tangibly, it resulted in the nullification of Denver's summary judgment motion at Docket # 439. Because that motion, filed in September 2011, was predicated on the Plaintiffs' discovery disclosures then-existing, Denver did not have the opportunity to consider and address the Fourth Supplemental Disclosures the Plaintiffs made two months later. The Court denied Denver's motion without prejudice (**# 500**), largely because the issues surrounding the admissibility of the material in the Plaintiffs' untimely disclosures bear significantly on Denver's motion. At a minimum, then, much of the time and attorney's fees already incurred by Denver in preparing and filing this motion were wasted as a result of the Plaintiffs' untimely production which, if allowed to stand, would significantly reshape the nature and contents of Denver's motion.

Similarly, the Plaintiffs untimely production poses prejudice to Denver in the form of additional and undue delay in the resolution of this already-aged

Case No. 1:18-cv-01144-DDD-STV   Document 177-17   filed 09/23/21   USDC Colorado   pg 15 of 17

Page 14 of 16

304 F.R.D. 289, *300; 2014 U.S. Dist. LEXIS 81255, **34

matter. [**35] If the Plaintiffs [*301] had made a timely supplemental disclosure — *i.e*. in or about July 2010, shortly after Denver's production had been completed — Denver's summary judgment motion could have been filed more than a year earlier, and if necessary, the matter could be one year closer to resolution via trial. Indeed, it can be said that all further proceedings in this case are prejudicial to Denver, insofar as the Plaintiffs contend that, if the Magistrate Judge's ruling (as the Plaintiffs interpret it) stands, the Plaintiffs cannot establish their sole remaining *Monell* claim, requiring dismissal. Thus, the Court finds that Denver is also prejudiced by both past and future delay in this action that is attributable to the Plaintiffs' untimely disclosures.[7]

Denver also argues that, should the disclosures be permitted to stand, it would request an opportunity to reopen discovery [**36] to determine what information to disclosed witnesses might have.[8] Assuming, without necessarily finding, that re-opening discovery would be an appropriate remedy, the delay and expense associated with such additional discovery proceedings also represents a form of prejudice that Denver has suffered.

2. Denver's ability to cure

To the extent Denver's prejudice is purely monetary and quantifiable — *e.g*. attorney's fees expended in making the summary judgment motion, fees actually expended conducting any [**37] re-opened discovery — it is arguable that this prejudice could be completely cured simply by awarding Denver those attorney's fees against the Plaintiffs.

But as to the more intangible types of prejudice — undue delay of the action and the unquantifiable expenses associated therewith — a potential cure is more elusive. No award of this Court can directly compensate Denver for the delay in the resolution of the case.

3. Trial disruption

This factor is effectively addressed by the discussion above. Although there is no trial date set in this case, and presumably, any curative sanction would produce its effect before any trial commences, there has been, and will continue to be, significant disruption and delay to the prompt and expedient resolution of this matter as a direct result of the Plaintiffs' untimeliness.

4. Plaintiffs' bad faith or willfulness

The record is particularly unclear as to what activities the Plaintiffs' litigation team engaged in between the bulk of Denver's document production in February 2010 and the filing of the Fourth Supplemental Disclosures in November 2011. As recited in the chronology above, the Plaintiffs state that the lawyer primarily responsible for reviewing [**38] *Monell* matters was permitted to withdraw in August 2010, and the Plaintiffs' lead counsel had gone on "sabbatical" from June - August 2011. Assuming — certainly without necessarily finding — these the withdrawal of the lawyer with primary responsibilities over the documents at issue here dissipates some degree of the Plaintiffs' culpability for the delay, the fact remains that from August 2010 to June 2011, a period of nearly a year, the Plaintiffs' current legal team was aware that their colleague with primary familiarity with the documents at issue here had withdrawn and that they themselves were now obligated to review and assess Denver's production and to make whatever supplemental disclosures were occasioned thereby.

---

[7] As the adage goes, "time is money." Undue delay necessarily translates to additional attorney's fees, incurred in revising strategies in light of the new disclosures, attorneys re-familiarizing themselves with the proceedings after delays, and even intangible costs relating to maintaining files for an ongoing action.

[8] The Plaintiffs' Objections make a curious argument on this point: they seem to suggest that no further discovery would be warranted, as they intend to "ma[k]e no testimonial use of any of the 100 named victims." *Docket* # 491 at 71-72 (emphasis in original). Rather, the Plaintiffs intend to rely upon the testimony of four specific victims, allegedly timely-disclosed (addressed *infra*.), and "rel[y] solely on previously-disclosed documents that were not subject to Denver's motion to strike" with regard to the remaining victims. This Court will not speculate as to the significance of this apparent trial strategy, nor consider the ramifications of it beyond the issues facially presented here.

Case No. 1:18-cv-01144-DDD-STV   Document 177-17   filed 09/23/21   USDC Colorado   pg 16 of 17

Page 15 of 16

304 F.R.D. 289, *301; 2014 U.S. Dist. LEXIS 81255, **38

It is unclear how counsel spent this period, with the exception of lead counsel's "sabbatical." Although the Court does not begrudge anyone **[*302]** a vacation, it cannot excuse an attorney's decision to neglect unfinished and overdue work to the detriment of an opposing party.

Simply put, the Court does not find anything in the record to suggest that the Plaintiffs' counsel acted in affirmative bad faith — *e.g.* with a malicious or obstructive intent — but the Court does find **[**39]** that the record supports a conclusion that Plaintiffs' counsel were, at the very least, neglectful of their obligations to Denver and to the judicial process.

5. Balancing the factors and selecting a sanction

Taken as a whole, the Court finds that the *Woodworker's* factors militate in favor of a significant sanction. The Plaintiffs' untimely disclosures have worked considerable tangible and intangible prejudice to both Denver and to the Court's ability to efficiently resolve this case. Although perhaps only negligent, rather than willful, the fact remains that the Plaintiffs themselves are entirely culpable for that prejudice.

This Court finds that a sanction that disregards any new material in the Fourth Supplemental Disclosures is appropriate in these circumstances. Although such a sanction does not compensate Denver for the delays attendant to consideration of the Plaintiffs' Objections, it effectively restores Denver to the position it was in at the time it filed its summary judgment motion. Such a sanction is also commensurate with the degree of diligence with which the Plaintiffs themselves pursued the litigation; in other words, the Plaintiffs' disregard of their obligation to supplement **[**40]** their disclosures is reflected by the Court disregarding those neglected disclosures. At the same time, because the sanction only applies to materials and witnesses that were disclosed for the first time in the Fourth Supplemental Disclosures, the Plaintiffs enjoy the right to use any previously disclosed evidence.

Because the Objections reflect some degree of uncertainty by the parties as to the precise effect of the sanction imposed by the Magistrate Judge (which, the Court believes, is identical to the sanction this Court has enunciated), the Court takes a moment to address the operation of that sanction. The sanction precludes the Plaintiffs from presenting testimony (via affidavit or in-person testimony, in motion practice or at trial) of any of the witnesses[9] in the Fourth Supplemental Disclosures, specifically-named or named solely in categorical terms (*e.g.* "all Denver law enforcement officers . . . who participated in the arrest[s of Plaintiffs]"), unless those persons were either: (i) identified by name in the Plaintiffs' initial *Rule 26(a)* disclosures or in any of the three prior supplements; (ii) actually deposed in this case; or (iii) persons about whom Denver made significant **[**41]** factual inquiry of (by name) during any deposition.[10] This articulation of the sanction ameliorates the Plaintiffs' argument that the sanction announced by the Magistrate Judge was overbroad in light of the Fourth Supplemental Disclosures' boilerplate designation of "all individuals who were deposed," as well as its contention that other individuals need not have been disclosed because they were "identified in depositions."

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Objections **(# 491)** are **OVERRULED**, **[**42]** and the Court **AFFIRMS** the Magistrate Judge's Order **(# 487)**

---

[9] Denver withdrew its opposition to the Plaintiffs' disclosures of Gerald Whitman, Richard Rosenthal, and Ruth Tafoya, and thus, the sanction does not apply to these witnesses.

[10] This sanction applies equally to the affidavits of four specific non-party arrestees that the Plaintiffs discuss in detail at pages 51-57 of their Objections. Unless the arrestees themselves are subject to one or more of the enumerated portions of the sanctions, the Plaintiffs may not offer their testimony via affidavit. The Court does not understand the Plaintiffs to object to the operation of the sanction as to any other documents disclosed in the Fourth Supplemental Disclosures. *See Docket* # 491 at 67.

Case No. 1:18-cv-01144-DDD-STV Document 177-17 filed 09/23/21 USDC Colorado pg 17 of 17

Page 16 of 16

304 F.R.D. 289, \*302; 2014 U.S. Dist. LEXIS 81255, \*\*42

granting in part Denver's Motion to Strike **(# 451)**, as discussed herein. Having resolved the discovery issue, the parties are authorized to file dispositive motions on the remaining claim no later than July 15, 2014 or, if no such motions are filed by that date, to jointly contact chambers to set a Pretrial Conference or take such other action **[\*303]** as may be appropriate under the circumstances.

Dated this 6th day of June, 2014

**BY THE COURT**:

/s/ Marcia S. Krieger

Marcia S. Krieger

Chief United States District Judge

**End of Document**