**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:18-cv-01144-DDD-STV

DEBRA BOURICIUS,

      Plaintiff,

v.

MESA COUNTY,

      Defendant.

---

## ORDER GRANTING IN PART AND DENYING IN PART MOTIONS *IN LIMINE*

---

Defendant Mesa County moves to exclude certain testimony and exhibits from trial. (Doc. 154, Doc. 175.) Plaintiff Debra Bouricius moves to exclude eight witnesses pursuant to Federal Rule of Civil Procedure 37(c)(1). (Doc. 177.) Mesa County's motions *in limine* are granted in part and denied in part, and Ms. Bouricius's motion *in limine* is granted in part and denied in part.

## BACKGROUND

In 2016, the IT Department at Mesa County laid off Ms. Bouricius, who was fifty-seven-years-old. (Doc. 1.) Frank Whidden, the supervisor who conducted the layoffs, also let go five other employees who were over the age of forty. (Doc. 134 at pp. 2-3.) Several of the employees brought actions against Mesa County alleging age discrimination. (*Id.*) Ms. Bouricius and two of the other employees brought complaints against Mesa County to the Colorado Civil Rights Division ("CCRD"). (Doc. 154 at Ex. 4, 10.) The CCRD issued determinations in favor of

Ms. Bouricius and the other employees. (*Id.*) Mesa County reached settlement agreements with the other two former employees. (*Id.* at Ex. 6.)

On September 14, 2021, Mesa County listed eight new witnesses it "may call" in a draft Pretrial Conference Order. (Doc. 177 at p. 2.) These witnesses had not previously been listed on Mesa County's Rule 26(a)(1) disclosures. Mesa County then filed its Fourth Supplemental Disclosures, adding the eight new witnesses. (Doc. 177-4.) This matter is set for a jury to trial to commence on October 18, 2021, with a Final Pretrial Conference and Trial Preparation Conference on October 7, 2021. (Doc. 172.)

## DISCUSSION

### I.   Mesa County's Opposed Motions *in Limine* (Doc. 154)

Mesa County seeks to exclude six types of evidence: (1) other employees' settlement agreements with Mesa County; (2) determinations made by the CCRD; (3) evidence of Mr. Whidden's outside counseling business, tax-related issues, and resignation from Mesa County; (4) evidence of an "age spreadsheet"; (5) news and media articles relating to the 2016 layoffs; and (6) evidence of compensatory and consequential damages. (Doc. 154.)

### A.   Other Employees' Settlement Agreements

Mesa County first seeks to exclude settlement agreements between it and three employees, arguing such evidence is barred under Federal Rule of Evidence 408(a)(1). (Doc. 154 at p. 3.) Rule 408(a)(1) provides that evidence of compromising a claim is inadmissible to "prove or disprove the validity or amount of [the] claim or to impeach by a prior inconsistent statement." And "evidence pertaining to the compromise 'of a

claim' includes evidence regarding the compromise of related cases, not just the one at hand." *Orr v. City of Albuquerque*, 531 F.3d 1210, 1218 (10th Cir. 2008) (citation omitted); *see also Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356, 1363 (10th Cir. 1987). But Rule 408(b) creates exceptions for admission of evidence "for another purpose," such as showing a witness's bias or negating a contention of undue delay.

The introduction of past settlement agreements compromising claims brought by other over-forty employees that Mesa County has terminated to prove the validity of Ms. Bouricius's age-discrimination claim is improper under Rule 408(a)(1). Such evidence, as the rule recognizes, does not necessarily indicate fault on the part of Mesa County; there may be reasons Mesa County would enter into settlement agreements with other employees without accepting fault.

Ms. Bouricius argues that the other settlement agreements are admissible for impeachment and can be used to "establish an employer's pattern or practice of discrimination, intent, and willfulness." (Doc. 165 at pp. 5-6.) But Rule 408(a)(1) clearly states that compromise discussions cannot be used for impeachment. And admission of the settlement agreements for the purpose of showing a "pattern or practice" is for the most part just another way of saying the settlements at issue would be used to prove the validity of Ms. Bouricius's claim, at least as to the settlements that arise from the same incident as the one at issue here and thus can hardly be considered a pattern.

The cases cited by Ms. Bouricius are distinguishable. In *Hamilton v. Water Whole International Corp.*, for example, the non-moving party did not object to admission of previous settlement agreements under Rule 408, and thus the Tenth Circuit reviewed for plain error. 302 F. App'x 789, 795 (10th Cir. 2008). While the settlement agreements were

relevant to establishing a pattern, the district court did not consider exclusion under Rule 408. *Id.* While the Tenth Circuit has recognized that in particular factual scenarios evidence of previous settlement agreements may be admissible, it also emphasized that the "proper approach is not simply to find a 'pigeonhole' in which the proof might fit, but to determine whether the evidence proves something other than propensity and then to weigh the particular relevancy against the risk of prejudice." *Bradbury*, 815 F.2d at 1364-65 (citing 2 D. Louisell and C. Mueller, *Federal Evidence*, § 140 at 176 (rev. ed. 1985)); *see also* Fed. R. Evid. 403.

Thus, the settlement agreements are inadmissible.

## B.  CCRD Determinations

The CCRD letters state that "from our investigation [] there is sufficient evidence to support the Complainant's claim of a discriminatory reduction in workforce based on age." (Docs. 154-4; 154-10.) Mesa County argues that evidence of CCRD determinations issued with respect to Ms. Bouricius and two other employees should be excluded at trial for risk of unfair prejudice under Federal Rule of Evidence 403. (Doc. 154 at pp. 5-6.) The Court agrees.

Under Rule 403, evidence may be excluded when "its probative value is substantially outweighed by a danger of one or more the following, unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The likelihood of jury deference to such a determination as well as jury confusion favors excluding the CCRD determinations. As the Tenth Circuit has held, the introduction of an analogous letter from the Equal Employment Opportunity Commission may have confused the jury and may have made jurors feel "the need to defer to the EEOC because of its

perceived expertise." *Tuffa v. Flight*, 644 Fed. App'x. 853, 856 (10th Cir. 2016). As another judge of this Court has explained, "admission of the EEOC Determination in this case would invite the jury to improperly supplant and substitute its judgment with that of the EEOC." *Arnold v. City and Cty. Of Denver*, No. 14-cv-00290-REB-CBS, 2015 WL 509489, \*2-3 (D. Colo. Feb. 4, 2015). Indeed, the

> findings and conclusions of one trier of fact in a non-judicial administrative proceeding do not bind and must not be allowed to direct or influence the findings and conclusions that must be made by the trier of fact in this very different public, judicial proceeding with different procedures, somewhat different issues, and a different standard of proof.

*Id.*

Ms. Bouricius nevertheless argues that this Court should exercise its discretion and admit such evidence at trial because it is relevant, the report is the result of investigation and expertise, and a limiting jury instruction could be provided. (Doc. 165 at p. 7-8.) The first two points are true, but the point of Rule 403 is that certain relevant evidence should be excluded when its probative value is substantially outweighed by its propensity to confuse or prejudice the jury even if a limiting instruction were provided. And it is precisely the perceived expertise of the CCRD that risks causing the jury to defer to the report, which, while the result of expertise and investigation, is not bounded by the rules of evidence or civil procedure that govern trial here. The CCRD reached its conclusion under one set of rules and processes; the jury in this case must reach its conclusion under another set. The relevance of a report with foregone conclusions is substantially outweighed by the risk of confusion and unfair prejudice of the jury simply deferring to CCRD determinations.

### C. Mr. Whidden's tax-related issues, counseling business, and reason for resignation from Mesa County

Mesa County objects to the admission of any evidence regarding Mr. Whidden's tax-related issues, counseling business, and the reason for Mr. Whidden's resignation from Mesa County as improper character evidence prohibited by Federal Rule of Evidence 404(a)(1) and irrelevant under Rule 401. (Doc. 154 at p. 6.)

Mesa County seeks to exclude evidence of Mr. Whidden's tax judgment as improper character evidence under Rule 404(b)(1). The Federal Rules of Evidence outline specific methods for attacking the credibility of a witness, including reputation or opinion testimony, and cross-examining a witness on a previous bad act that is indicative of truthfulness. Fed. R. Evid. 608. While Mr. Whidden's adverse tax judgment is not helpful in determining whether there was age discrimination, it could aid the jury in determining the credibility of Mr. Whidden as a witness. A witness's credibility, as Ms. Bouricius points out, is "always relevant, because credibility is always at issue." *United States v. Green*, 617 F.3d 233, 251 (3rd Cir. 2010). An adverse tax judgment can be indicative of a witness's truthfulness. *See Chnapkova v. Koh*, 985 F.2d 79, 82-83 (2nd Cir. 1993) ("Evidence that a witness has made false statements in a tax return is obviously a matter which affects the witness's credibility."), *abrogated on other grounds by Jaffee v. Redmond*, 518 U.S. 1 (1996). To the extent it is used to undercut Mr. Whidden's credibility as a witness, evidence of prior dishonesty on a tax return is admissible. It is unclear at this time how Ms. Bouricius might use the consulting payments, so the Court cannot grant the motion at this time. To the extent she seeks to use evidence of those payments in ways that violate the rules, Mesa County can, of course, raise its objection then.

Mesa County also seeks to exclude evidence related to Mr. Whidden's personal counseling business as improper character evidence under Rule 404(a)(1). Federal Rule of Evidence 404(a)(1) provides that "evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." While Ms. Bouricius contends that such evidence will go to the general credibility of Mr. Whidden, it is either irrelevant or it is improper character evidence. The chain of argument posited by Ms. Bouricius at the Final Pretrial Conference appears to be that because Mr. Whidden had poor financial practices in his role at Mesa County, the defense's argument that he laid off Ms. Bouricius based on his good business judgment must be suspect. But this is simply another way of saying he has a character for poor judgment, and he acted in conformity with that character when he terminated Ms. Bouricius. This is inadmissible. Likewise, Mr. Whidden may not introduce evidence that he has a character for good business judgment to prove he acted in conformity with that character when he terminated Ms. Bouricius. Both sides may, of course, introduce other evidence demonstrating that Mr. Whidden's termination of Ms. Bouricius was or was not, in fact, a good business decision.

For similar reasons, Mesa County also wants to exclude evidence relating to the reason for Mr. Whidden's resignation from employment with Mesa County. Ms. Bouricius asserts that this evidence will be used to attack Mr. Whidden's credibility. But she has offered no evidence that Mr. Whidden resigned as a consequence of making a false statement or some other form of dishonesty; instead Ms. Bouricius ties his resignation to his allegedly poor "business judgment" and use of government funds to develop the counseling business. Unlike a false statement on a tax form, poor judgment or wasting taxpayer funds does not necessarily

- 7 -

go to one's honesty. *Cf. Chnapkova*, 985 F.2d at 82-83. To the extent there might be some proper relevance to this evidence, it is significantly outweighed by the likelihood that it would cause confusion or unfairly prejudice the jury, suggesting they punish Mr. Whidden (or his employer) for acts not at issue in this case.

In sum, evidence of Mr. Whidden's adverse tax judgment is admissible for impeachment purposes under Rule 608(b)(1), but not as affirmative evidence. Evidence regarding Mr. Whidden's counseling business and resignation is inadmissible without a showing that the evidence involves specific false statements or acts of dishonesty.

### D.  Age Spreadsheet

Mesa County next argues that evidence of an alleged "age spreadsheet" should be excluded as irrelevant because Mr. Whidden never saw the spreadsheet. (Doc. 154 at p. 8.) But it is not necessary to show that Mr. Whidden's decision was based on the spreadsheet for it to meet the basic standard of relevance under Rule 401. While Mr. Whidden states he never saw such a document, he admitted to learning about it. That such a document existed within the County, and that the individual who terminated Ms. Bouricius had knowledge of such a document, makes the idea that decisions were based on age more likely. The extent of Mr. Whidden's knowledge of the spreadsheet is a matter the County can point out and argue to the jury. The spreadsheet itself, however, is relevant and admissible.

Mesa County nevertheless cites to *Young v. Smith*, No. 3:07-cv-00854, 2016 WL 3522965, *3-4 (M.D. Penn., June 28, 2016), for the proposition that courts can exclude evidence of documents that a party has never seen. (Doc. 154 at p. 8.) Certainly. *Young*, however, has little to do with this situation. *Young* involved the exclusion of documents that the

plaintiff had never seen when the claim was that the plaintiff had been exposed to sexually inappropriate material at school. 2016 WL 3522965 at *3-4. That is, the plaintiff's viewing of the materials was the very question at issue. Here, the spreadsheet's existence and Mr. Whidden's knowledge of the spreadsheet make it more likely that age discrimination occurred, whether or not Mr. Whidden saw the spreadsheet. That courts can exclude such evidence in some circumstances does not mean that this Court must do so in a very different legal and factual situation.

Evidence of the age spreadsheet is admissible.

### E. Statements made in News Articles

Mesa County's fifth motion *in limine* seeks to exclude the admission of news articles published around the time of Ms. Bouricius's termination as inadmissible hearsay. (Doc. 154 at p. 9.) Ms. Bouricius responds that she "does not intend to seek the admission of the actual news articles as exhibits at trial." (Doc. 165 at p. 13.) Instead, she contends, that statements in the news articles will be used to impeach witnesses if needed or admitted as statements made by an opposing party, which are not hearsay, Fed. R. Evid. 801(d)(2). (*Id.*)

It is unclear which statements in the news articles Ms. Bouricius is referring to as statements made by an opposing party. Because Ms. Bouricius is suing Mesa County, not an individual, to admit statements made by Mesa County employees or agents under Rule 801(d)(2), Ms. Bouricius must establish that such statements were made on a matter within the scope of such agents' relationship with Mesa County while that relationship existed. Fed. R. Evid. 801(2)(C)-(D).

Prior inconsistent statements by a witness that are not made under oath, on the other hand, are admissible against that witness for

impeachment purposes, though not for substantive use. Fed. R. Evid. 613. If a witness therefore testifies inconsistently with a previous statement he or she made, then Ms. Bouricius may use a statement from that witness made in a news article to impeach that witness. *Id.*

The Court denies without prejudice the motion on these matters. To the extent Ms. Bouricius establishes that particular statements are party admissions, they may be admissible. And, where applicable, Ms. Bouricius may use prior inconsistent statements for impeachment.

### F.   Compensatory and Consequential Damages

Mesa County's last motion *in limine* addresses the exclusion of compensatory and consequential damages. (Doc. 154 at p. 10.) Mesa County contends that evidence of damages from the cost of increased taxes and cost of living, the difference in value of her home, the difference in taxes, and the cost of living in a "much inferior home" should be excluded because they are not recoverable under the ADEA. (*Id.* at p. 13.)

Compensatory damages are not available under the ADEA. *See* 29 U.S.C. § 633a. The "ADEA provides no compensation for any of the other traditional harms associated with personal injury." *Comm'r of Internal Revenue v. Schleier*, 515 U.S. 323, 326 (1995) (internal quotation marks omitted). Indeed, "[m]onetary remedies under the ADEA are limited to back wages, which are clearly of an 'economic character,' and liquidated damages, which we have already noted serve no compensatory function." *Id.* The "ADEA provides for legal and equitable relief, including reinstatement, back-pay, and other pecuniary benefits associated with the job, but it does not permit the recovery of compensatory damages." *Ridgell-Boltz v. Colvin*, 565 F. App'x 680, 683 (10th Cir. 2014). Consequently, Ms. Bouricius would not be able to recover any damages associated with her relocation, new living conditions, or for emotional

distress because these are non-job-related compensatory damages. *See, e.g.*, *Lyons v. Allendale Mut. Ins. Co.*, 484 F. Supp. 1343, 1344 (N.D. Ga. 1980).

Despite this authority, Ms. Bouricius argues that the Court should exercise its "equitable powers" in line with the purposes of the ADEA to make Ms. Bouricius "whole." (Doc. 165 at pp. 14-15.) In support of her argument, Ms. Bouricius cites to *Greene v. Safeway Stores*, 210 F.3d 1237 (2000). In *Greene*, the Tenth Circuit discussed the timing of the sale of a stock option that an employee sold earlier because of his discriminatory termination. 210 F.3d at 1246. This is inapt. The damages Ms. Bouricius intends to discuss at trial, including an increase in taxes and the difference in value of her homes, are not tied to her job the same way the stock option was tied to the plaintiff's employment in *Greene*. Indeed, stock options are sometimes referred to as "contingent compensation." *Id.* at 1243 (internal quotation marks omitted).

Ms. Bouricius maintains that the Tenth Circuit precedent in *Villescas v. Abraham*, 311 F.3d 1253 (10th Cir. 2002) and *Ridgell-Boltz v. Colvin*, 565 F. App'x 680 (10th Cir. 2014), is distinguishable because those opinions address emotional distress and legal damages, not "compensatory damages" specifically. (Doc. 165 at p. 19.) But while the Tenth Circuit did not explicitly define "compensatory damages" in *Ridgell-Boltz*, the Tenth Circuit's other opinions do define the contours of the sort of compensatory damages that are not recoverable in an ADEA claim like this one. *See Greene*, 210 F.3d at 1246. The decisions of the Circuit and Supreme Court make it abundantly clear that damages recoverable under the ADEA must be closely tied to the pay and benefits of employment, not to costs and harms that might be recoverable in a typical tort action but are more distantly related to employment, such as relocation and cost of living expenses. The evidence Ms. Bouricius

seeks to admit is of the latter sort, and thus Mesa County's motion *in limine* to exclude evidence on compensatory and consequential damages is granted.

## II. Mesa County's Unopposed Motion *in Limine* (Doc. 175)

Mesa County's unopposed motion *in limine* to exclude evidence of or eliciting testimony regarding alleged statistical data rendered from the layoffs in the IT Department is granted.

## III. Ms. Bouricius's Motion in Limine to Strike Certain Witnesses (Doc. 177)

Ms. Bouricius seeks to exclude eight witnesses from Mesa County's "may call" witness list that were included in Mesa County's "Fourth Supplemental Disclosures" (Doc. 177-4), which the County disclosed after the close of discovery. (Doc. 177 at. p. 2.)

Under Federal Rule of Civil Procedure 37(c)(1),

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Rule 26(a) outlines the requirements of initial disclosures, and Rule 26(e) provides the manner in which parties supplement their disclosures.

### A. Sufficiency of Disclosure

Ms. Bouricius contends that Mesa County did not sufficiently disclose eight of its "may call" witnesses. (Doc. 117 at pp. 2, 5.) Indeed, September 14, 2021 was the first time Mesa County communicated to Ms.

Bouricius that it might call these witnesses. (Doc. 177 at p. 2.) This is over two years after the close of discovery. (*See* Doc. 63.)

Mesa County nevertheless argues that because Ms. Bouricius listed six of the eight witnesses in her initial disclosures, they were properly disclosed. (Doc. 179 at pp. 5-6.) Mesa County notes that it included a provision incorporating any witnesses listed by another party, and says this is adequate disclosure. And Mesa County also listed a generic provision including "any other person" whose identity was revealed during discovery, which it says covers the other two new witnesses. But giving such effect to these catch-all provisions would undermine the purpose of initial disclosures, and particularly the obligation to update them *See First W. Capital Mgmt. Co. v. Malamed*, No. 16-cv-01961-WJM-MJW, 2017 WL 6628108, at *3 (D. Colo. Oct. 2, 2017) ("[A] strict application of this type of "catch-all" provision would make supplemental disclosures unnecessary, which is obviously not in keeping with the letter or the spirit of Rule 26."); *Baird v. Blackrock Institutional Tr. Co., N.A.*, 330 F.R.D. 241, 244 (N.D. Cal. 2019) (explaining that party could not rely on its opponent's initial disclosures to satisfy its own Rule 26 disclosure obligations); *Jama v. City & Cnty. of Denver* (*Jama II*), 304 F.R.D. 289, 296 (D. Colo. 2014) ("the purpose of the disclosure under Rule 26(a) was to inform [the defendant] of which individuals *the Plaintiffs* believed had pertinent information"). Notably, Mesa County's initial disclosures were made before Ms. Bouricius's initial disclosures, which further undercuts the argument that an incorporation or catch-all clause could plausibly be read to include the individuals listed—later—by Ms. Bouricius. Mesa County's disclosures—including its first, second, and third supplemental disclosures—always explicitly included only two witnesses (Ms. Bouricius and Mr. Whidden) who are also listed on Ms. Bouricius's disclosures. Given this, the idea that Ms. Bouricius should have

presumed that other individuals she listed but whom Mesa County ignored were also incorporated in the County's disclosures is fanciful. *See Beaird v. Seagate Tech*, 145 F.3d 1159 (10th Cir. 1998).

"[K]nowledge of the existence of a person is distinctly different from knowledge that the person will be relied on as a fact witness." *Jama v. City & Cnty. of Denver* (*Jama I*), 280 F.R.D. 581, 584 (D. Colo. 2012). This is true of both the six witnesses Ms. Bouricius listed in her disclosures and even more so of the two others who were never listed but were mentioned in various documents during discovery. Mesa County produced 8,375 pages of discovery, and Ms. Bouricius produced 1,648 pages of discovery. (Doc. 177 at p. 7.) That is a grand total of 10,023 pages of discovery. To allow for references in discovery documents to constitute disclosure would make a mockery of Rule 26. Rule 26 is precisely written to prevent parties from searching for and guessing at what may be the needle in the haystack.

### B. Appropriate Remedy

Ms. Bouricius argues that this Court should strike Mesa County's witnesses. (Doc. 177 at p. 5.) Federal Rule of Civil Procedure 37(c)(1) states that Mesa County may not use these witnesses at trial unless the Court determines that the failure to disclose was substantially justified or harmless. This Court has discretion in determining the appropriate Rule 37(c)(1) remedy for a Rule 26(a) or (e) violation. *Sender v. Mann*, 225 F.R.D. 645, 656 (D. Colo. 2004).

A district court has broad discretion in determining whether a Rule 26(a) violation was substantially justified or harmless. *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993

(10th Cir. 1999). When exercising this discretion, courts should consider four factors:

> (1) prejudice or surprise to the party against whom the testimony is offered;
>
> (2) the ability of the party to cure the prejudice;
>
> (3) the extent to which introducing such testimony would disrupt the trial; and
>
> (4) the moving party's bad faith or willfulness.

*Id.*

### 1.   Prejudice or Surprise

Ms. Bouricius argues that the failure to disclose is prejudicial and comes as a surprise. (Doc. 177 at p. 5.) During a lawsuit that has been going on for over three years, Mesa County waited until approximately a month before trial to inform Ms. Bouricius that it may use these witnesses to support its claims or defenses.

Ms. Bouricius contends that the proximity of Mesa County's untimely disclosure to the trial date creates a prejudicial situation. (Doc. 177 at p. 5.) This late notice impacts litigation strategy, including the decision and ability to take depositions. As Ms. Bouricius mentions, discovery has been closed since July 12, 2019. It would be impractical to reopen it this late in the litigation and so close to trial. And "delay and mounting attorneys fees can equate to prejudice." *Sender*, 225 F.R.D. at 657 (citing *Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993)).

As Mesa County points out, Ms. Bouricius listed six of the eight witnesses on her own initial disclosures. She can hardly be surprised that they might have relevant information. Nevertheless, that is not the only kind of surprise or prejudice that Rule 26 seeks to avoid. Informing the

opposing party through proper disclosure what the other party believes is pertinent information is one of the purposes of Rule 26(a). *Jama II*, 304 F.R.D. at 296.

Failure to update disclosures can also lead to surprise and prejudice even if both parties know about the possible existence of the evidence or witnesses. A party may choose not to pursue or depose a witness during discovery, thinking that if the opposing party is not planning to use that witness's testimony, the expense is not worth it. Requiring parties to pursue such witnesses even where the opposing side has never listed them would only increase the already daunting costs associated with discovery and litigation. And as Ms. Bouricius argues is the case here, failing to disclose a number of witnesses who may testify to a new theory of the case when the only previously disclosed witnesses testified to something else is the epitome of the kind of surprise that is meant to be avoided by the Rule 26 disclosure requirements. And when it is too late to seek legitimate depositions or other inquiries, the prejudice is manifest. A party is entitled to rely on its opponent to update its disclosures to reflect those witnesses it actually plans to use during trial.

Two of the witnesses at issue, however, are Mesa County commissioners which means they were parties to this suit during the time in question: Scott McInnis and Rose Pugliese. While the Court believes the County should have disclosed in its own disclosures witnesses it actually planned to call (as it did with Ms. Bouricius, even though she is a party), the factor of surprise to Ms. Bouricius, is largely negated as to at least these two witnesses, who, as commissioners, were named parties during the relevant time period. The prejudice to her is also somewhat diminished with respect to these two witnesses for the same reason. And as discussed below, that prejudice may be curable by allowing Ms. Bouricius to depose these two witnesses before trial.

### 2. Ability to Cure and Disruption of Trial

With the trial date rapidly approaching, Ms. Bouricius asserts that the prejudice cannot be cured short of excluding all eight witnesses. The preparation for eight additional witnesses in roughly a month (which has become now less than two weeks) is no small task. But allowing brief depositions of only two of these witnesses should be achievable before the trial date without causing major disruption to the parties' trial preparations.

Mesa County argues that any prejudice that may have resulted from its late disclosures was already cured by the service of supplemental disclosures on September 16, 2021. (Doc. 179 at p. 10.) Not so. "[D]isclosures should provide the opposing party with enough useful information to make informed decisions regarding discovery and trial preparation." *Hertz v. Luzenac Am.*, No. 04CV1961LTBCBS, 2006 WL 994431, at *7 (D. Colo. Apr. 13, 2006). By only providing Ms. Bouricius with a month to prepare for these eight witnesses—after the close of discovery—Mesa County eliminated the opportunity for Ms. Bouricius to make informed decisions regarding discovery and trial preparation. And Mesa County appears to ignore the litigation timeline. The proximity of a disclosure to trial is a fact that can favor exclusion of witnesses. *See Gallegos v. Swift & Co.*, No. 04–cv–01295–LTB–CBS, 2007 WL 214416, at *1, *2 (D. Colo. Jan. 25, 2007) (noting that the disputed disclosures occurred only three months before trial). The key here is that Mesa County's supplementation occurred a little over a month before the trial date but more than two years after the close discovery. Reframing the case in such a significant way and curing the prejudice through eight new depositions without postponing the trial date at this point is impossible.

Mesa County asserts that there is "[n]o potential for delay of the trial" and no "need to reopen discovery" because these eight witnesses appeared in Plaintiff's documents and in discovery documents. (Doc. 179 at p. 11.) For the reasons discussed above, the Court is not persuaded. Ms. Bouricius was never put on notice that Mesa County actually intended to use these witnesses, and Mesa County ignores the time both parties and the Court have invested into trial preparation. While it is true that there are frequently surprises and changes at trial and on the eve of trial, one of this magnitude that the discovery rules specifically seek to prevent is different. And Mesa County's argument that the witnesses were referenced in previous documents and during discovery goes to the sufficiency of its disclosures, which, as discussed above, were not sufficient.

### 3.   Bad Faith or Willfulness

As to the last factor, Ms. Bouricius maintains that Mesa County was "at the very least, neglectful of [its] obligations." (Doc. 177 at p. 12 (quoting *Jama II*, 304 F.R.D. at 302) (internal quotation marks omitted).) The comments to Federal Rule of Civil Procedure 37 note that the rule's limitation on exclusionary sanctions to failures to disclose that were not substantially justified or harmless is "needed to avoid unduly harsh penalties in a variety of situations," including "the inadvertent omission from a Rule(a)(1)(A) disclosure of the name of a potential witness known to all parties." But the critical word there is "inadvertent." After years of litigation, Mesa County added eight witnesses that it had not previously disclosed one month before trial. This is not the sort of harmless technicality that the Rule 37 Advisory Committee Notes had in mind.

Mesa County, however, argues that it "reasonably believed the witnesses were properly disclosed." (Doc. 179 at p. 12.) Failing to ever list

eight witnesses a party plans to call based on the theory that they were already listed by the other side, as explained, does not comport with the purposes of or obligations created by the disclosure rules. Particularly when Mesa County did include other witnesses who were on Ms. Bouricius's disclosures, it is difficult to think that the County legitimately believed it should not list anyone already listed by Ms. Bouricius. The Court agrees with Ms. Bouricius that Mesa County was "at the very least, neglectful of [its] obligations." *Jama II*, 304 F.R.D. at 302.

Ms. Bouricius's motion *in limine* to strike the eight witnesses pursuant to Federal Rule of Civil Procedure 37(c)(1) is granted in part. Because determining whether and what sanctions to impose for Rule 26(a) and (e) violations is within the Court's sound discretion, the Court will allow Mesa County to call witnesses McInnis and Pugliese if the County is able to make them available for deposition before trial. The parties will be limited to a combined total of five hours for both depositions. The motion *in limine* is therefore denied as to those witnesses, subject to this condition, and granted as to the remaining six witnesses discussed in the motion.

## CONCLUSION

Mesa County's motions *in limine* (Doc. 154) are **GRANTED in part** and **DENIED in part**;

Mesa County's unopposed motion *in limine* (Doc. 175) is **GRANTED**; and

Ms. Bouricius's motion *in limine* (Doc. 177) is **GRANTED in part** and **DENIED in part**.

DATED: October 8, 2021                    BY THE COURT:

_____
Hon. Daniel D. Domenico
United States District Judge